# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**MATTHEW D. GUERTIN**

Plaintiff,

v.

**TIM WALZ,**
Governor of Minnesota;

**KEITH ELLISON,**
Minnesota Attorney General;

**HENNEPIN COUNTY,**
a municipal entity;

**MARY MORIARTY,**
Hennepin County Attorney;

**JUDITH COLE,**
Sr. Assistant Hennepin County Attorney;

**MICHAEL BERGER,**
Chief Public Defender, Hennepin County;

**KERRY W. MEYER,**
Chief Judge, 4th District;

**BRUCE M. RIVERS,**
Private Defense Counsel;

**CHELA GUZMAN-WIEGERT,**
Assistant County Administrator;

**ALISHA NEHRING,**
MN Department of Health Attorney;

**HILARY CALIGIURI,**
Presiding Criminal Judge, 4th District;

**TODD FELLMAN,**
Presiding Juvenile Judge, 4th District;

**SARAH HUDLESTON,**
Judge, 4th District;

**WILLIAM H. KOCH,**
Judge, 4th District;

**JULIA DAYTON-KLEIN,**
Judge, 4th Judicial District;

**DANIELLE C. MERCURIO,**
Judge, 4th Judicial District;

**GEORGE F. BORER,**
Referee, 4th Judicial District;

Case No: 25-cv-_2670-JWB/DLM___

RECEIVED

JUN 2 5 2025

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**CIVIL RIGHTS AND
RICO COMPLAINT
WITH JURY DEMAND**

SCANNED

JUN 2 5 2025

U.S. DISTRICT COURT MPLS

1

**LEE CUELLAR,**
Judicial Clerk, 4th District;

**MAWERDI HAMID,**
Assistant Hennepin County Attorney;

**JACQUELINE PEREZ,**
Assistant Hennepin County Attorney;

**EMMETT M. DONNELLY,**
Hennepin County Public Defender;

**RAISSA CARPENTER,**
Hennepin County Public Defender;

**SHEREEN ASKALANI,**
Judge, 4th District;

**DR. JILL ROGSTAD,**
Senior Clinical Forensic Psychologist;

**DR. ADAM MILZ,**
Hennepin County Psychological Services;

**DR. KATHERYN CRANBROOK,**
Hennepin County Psychological Services;

**DR. KRISTEN A. OTTE,**
Hennepin County Psychological Services;

**MICHAEL K. BROWNE,**
Judge, 4th District;

**LISA K. JANZEN,**
Judge, 4th District;

**CAROLINA A. LAMAS,**
Judge, 4th District;

**JOHN DOES 1–50;**

**JANE DOES 1–50,**

Defendants.

---

# I.  JURISDICTION AND VENUE [1]

### A  |  Federal Question Jurisdiction (28 U.S.C. § 1331)

1.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including but not

---

[1] Digital, Bookmarked PDF of this Complaint | MnCourtFraud.com/File/Complaint.pdf
Courtlistener.com/docket/68925331/116/guertin-v-hennepin-county/

limited to the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution; the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985; and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.

**B    |    Civil Rights Jurisdiction (28 U.S.C. § 1343)**

2.      Jurisdiction is also conferred by 28 U.S.C. § 1343(a)(3) and (a)(4) for causes of action brought to redress deprivations of rights, privileges, and immunities secured by the Constitution and federal law, and to recover damages or secure equitable relief under 42 U.S.C. §§ 1983 and 1985.

**C    |    RICO Jurisdiction (18 U.S.C. § 1964(c))**

3.      Plaintiff invokes jurisdiction under 18 U.S.C. § 1964(c), which authorizes any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962 to bring a civil RICO action in federal court.

**D    |    Supplemental Jurisdiction (28 U.S.C. § 1367)**

4.      This Court has supplemental jurisdiction over any and all state law claims that form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367(a).

**E    |    Venue is Proper in this District (28 U.S.C. § 1391)**

5.      Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because all defendants reside in this District and/or because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## II.  INTRODUCTION

6.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1985, as well as 18 U.S.C. §§ 1961–1968 (RICO), against a coalition of state officials, county prosecutors, judges, public defenders, mental health professionals, and administrators who participated directly and knowingly in the orchestration of a synthetic case matrix

designed to simulate judicial process while depriving Plaintiff of all meaningful due process.

7.      The foundation of this entire federal complaint is not merely the existence of digitally fraudulent court records—but the forensic proof that Plaintiff Matthew David Guertin was the only real human defendant inserted into an otherwise fully synthetic legal universe. That proof is embodied in a dataset Guertin compiled between April 29–30, 2024, using custom Python automation, search-filter bypass methods, and VPN rotation protocols that allowed him to download 3,601 digitally signed court documents across 163 criminal case files. The sole common factor linking these 163 cases: each had an official hearing scheduled between January 1, 2023 and April 26, 2024, involving all three of the following judicial officers:

- Judge Julia Dayton Klein
- Referee (now Judge) Danielle C. Mercurio
- Referee George F. Borer

8.      This highly refined search strategy filtered thousands of MCRO court hearing records by judicial officer and time range, then triangulated overlapping case numbers across the three filtered sets to generate a final list of 163 case numbers.
**(see MnCourtFraud.com/File/2017.zip, 2018.zip, 2019.zip, 2020.zip, 2021.zip, 2022.zip, 2023.zip )**
Each of those was then targeted for full MCRO document scraping via a Chrome DevTools-controlled Python automation suite that allowed Guertin to batch-download every filing across those cases. All but 16 of those documents still retain the court's original SHA-256 cryptographic digital signature.

9.      The resulting dataset revealed that only one defendant—Guertin himself (27-CR-23-1886)—appears to exist as a real person with a tangible legal and physical footprint. The rest of the 162 defendants in the dataset appear to be synthetic identities: names with no digital footprint outside their court appearances, no associated external data, and no sign of legal counsel or meaningful participation in court proceedings. The

implication is inescapable: Guertin was the only real target in a fabricated case matrix built around him.

**(see   MnCourtFraud.Substack.com/p/01-mcro,   MnCourtFraud.Substack.com/p/02-case, MnCourtFraud.Substack.com/p/03-sha-256 )**

## A  |  THE PURPOSE OF THE SYNTHETIC CASE MATRIX — TARGETED ELIMINATION THROUGH INDEFINITE PSYCHIATRIC DETENTION

10.    Guertin's VR Treadmill patent (U.S. Patent 11,577,177) predates and directly matches Netflix's duplicate submission (U.S. Patent 11,810,254), filed just 12 days after his provisional filing (and his name is listed atop it..). That alone provides motive. Guertin is the CEO of Infiniset, Inc. which is organized as a Delaware corporation, is / was registered as a foreign corporation with the Minnesota Secretary of State, with InfiniSet, Inc. being the corporation that his U.S. Patent 11,577,177 is assigned to.

Guertin's claims were dismissed as delusional:

  *"They hacked my devices. They're stealing my patent. They're going to kill me."* [2]

But those claims were not delusions. They were predictive.

The dataset now proves:

- A synthetic docket was constructed.
- Guertin was inserted into it from the beginning.
- Font hashes, CFF structures, and docket anomalies confirm real-time editability.
- The court's own cryptographicly signed files confirm the conspiracy.

11.    What Guertin is experiencing is not mismanagement. It's a real-time AI-managed suppression architecture. The purpose? To create a plausible legal ecosystem into which a real individual could be inserted, discredited, and *__permanently erased__* ("*eliminated*" - the "end of Guertin's life" as he has known it is the end goal. This claim, while understandably *shocking,* especially considering the involvement of the court itself in the conspiracy is *also* 100% proven by the evidence)

---

2   MattGuertin.Substack.com/p/netflix-whistleblower-part-1

This is why the entire system pivots around him.

12.    The court's own records, when filtered by a process that cross-links only three judicial officers, produces a set of 163 cases — all of which show digital signs of synthetic generation, with only one identifiable human defendant: Matthew David Guertin. This "coincidence" is statistically implausible to the point of impossibility unless it is understood as a digital perimeter of control constructed around Guertin, for the express purpose of staging a legally orchestrated elimination campaign. The dataset itself is the evidence — a cryptographic witness to Guertin's centrality in a high-level, digitally mediated, legally fraudulent system, whose purpose aligns directly with the seizure, suppression, or redirection of his independently developed patent and associated public disclosures.

## III.  PARTIES

**A   |   Plaintiff**

**Matthew D. Guertin,** [3]

13.    is an adult resident of the State of Minnesota and is the Plaintiff in this action. He brings this suit pro se under 42 U.S.C. §§ 1983 and 1985, and 18 U.S.C. § 1961 et seq., seeking redress for ongoing violations of his constitutional rights, civil liberties, and statutory protections under federal law. At all relevant times, Plaintiff was the subject of simulated judicial proceedings within the Minnesota Fourth Judicial District, County of Hennepin.

**B   |   State Officials**

**Tim Walz,**

14.    is the Governor of Minnesota and is sued in his official capacity for his role in overseeing executive agencies and departments involved in the constitutional violations and racketeering activity alleged herein.

**Keith Ellison,**

15.    is the Attorney General of Minnesota and is sued in his official capacity for his failure to prevent and investigate systemic legal and civil rights violations carried out by state and local actors under his authority.

---

3   www.MattGuertin.com

**Alisha Nehring,**

16.    is purported to be an attorney with the Minnesota Department of Health and is sued in her individual capacity for actions taken outside the scope of legitimate state function in furtherance of the conspiracy.

**C | County Entity and Senior Officials**

**Hennepin County,**

17.    is a municipal entity organized under Minnesota law and is subject to suit under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for customs, policies, or practices that led to the violations alleged herein.

**Mary Moriarty,**

18.    is the Hennepin County Attorney and is sued in both her official and individual capacities.

**Judith L. Cole,**

19.    is a Senior Assistant Hennepin County Attorney and is sued in her individual capacity.

**Chela Guzman-Wiegert,**

20.    is an Assistant County Administrator in Hennepin County and is sued in her individual capacity.

**Michael Berger,**

21.    is the Chief Public Defender for Hennepin County and is sued in his individual capacity.

**D | Judicial Officers of the Fourth Judicial District**

**Kerry W. Meyer,**

22.    is the Chief Judge of the Minnesota Fourth Judicial District and is sued in her individual capacity for acts taken outside the protection of judicial immunity.

**Hilary Caligiuri,**

23.    is a Presiding Criminal Judge in the Fourth Judicial District and is sued in her individual capacity.

**Todd Fellman,**

24.    is a Presiding Juvenile Judge in the Fourth Judicial District and is sued in his individual capacity.

**Sarah Hudleston,**

25.    is a Judge in the Fourth Judicial District and is sued in her individual capacity.

**William H. Koch,**

26.    is a Judge in the Fourth Judicial District and is sued in his individual capacity.

**Julia Dayton-Klein,**

27.    is a Judge in the Fourth Judicial District and is sued in her individual capacity.

**Danielle C. Mercurio,**

28.    is a Judge in the Fourth Judicial District and is sued in her individual capacity.

**Michael K. Browne,**

29.    is a Judge in the Fourth Judicial District and is sued in his individual capacity.

**Lisa K. Janzen,**

30.    is a Judge in the Fourth Judicial District and is sued in her individual capacity.

**Carolina A. Lamas,**

31.    is a Judge in the Fourth Judicial District and is sued in her individual capacity.

**Shereen Askalani,**

32.    is a Judge in the Fourth Judicial District and is sued in her individual capacity.

**George F. Borer,**

33.    is purported to be a Referee in the Fourth Judicial District and is sued in his individual capacity.

**Lee Cuellar,**

34.    is purported to be a Judicial Clerk in the Fourth Judicial District and is sued in his individual capacity.

**E | Legal Counsel**

**Mawerdi Hamid,**

35.    is an Assistant Hennepin County Attorney and is sued in her individual capacity.

**Jacqueline Perez,**

36.    is an Assistant Hennepin County Attorney and is sued in her individual capacity.

**Emmett M. Donnelly,**

37.    is a Hennepin County Public Defender and is sued in his individual capacity.

**Raissa Carpenter,**

38.    is a Hennepin County Public Defender and is sued in her individual capacity.

**Bruce M. Rivers,**

39.    is a private defense attorney and is sued in his individual capacity.

**F | Mental Health and Psychological Services Personnel**

**Dr. Jill Rogstad,**

40.    is purported to be a Senior Clinical Forensic Psychologist with Hennepin County Psychological Services and is sued in her individual capacity.

**Dr. Adam Milz,**

41.    is purported to be a psychological examiner affiliated with Hennepin County Psychological Services and is sued in his individual capacity.

**Dr. Katheryn Cranbrook,**

42.    is purported to be a psychological examiner affiliated with Hennepin County Psychological Services and is sued in her individual capacity.

**Dr. Kristen A. Otte,**

43.    is purported to be a psychological services provider affiliated with the Hennepin County Public Defender's Office and is sued in her individual capacity.

**G | Doe Defendants**

**John Does 1–50** and **Jane Does 1–50,**

44.    are unidentified individuals whose names and roles are presently unknown but who were involved in or responsible for the acts, omissions, and misconduct

described herein. Plaintiff will amend this Complaint to identify these individuals once their names become known through discovery or further investigation.

## IV. DIGITAL FORENSIC VALIDATION OF THE EVIDENCE

**A   |   All Claims in This Complaint Are Already Proven by Digitally Authenticated Evidence**

45.     This is not a case of conflicting witness accounts or speculative allegations. Every key claim alleged in this Complaint has already been objectively proven by digital forensic evidence, validated by the court's own cryptographic digital signatures. These findings are not subjective interpretations, but cold, mathematical certainties grounded in federally accepted standards of digital authentication.

Plaintiff Matthew Guertin, while acting pro se, and driven by a strong desire for self-preservation, personally uncovered, preserved, and forensically authenticated the very evidence now central to this federal RICO and civil rights action. In doing so, he not only demonstrated his own competence but also carried out a digital audit of the Minnesota Court Records Online (MCRO) repository that meets and exceeds evidentiary standards for admission under Federal Rule of Evidence 902(14).

This case is therefore unusual and unprecedented: the court itself—through its digital certificate infrastructure—unknowingly (or perhaps knowingly) co-signed the proof of its own misconduct.

**B   |   Rule 902(14): Self-Authenticating Digital Evidence**

46.     The 2017 amendment to Federal Rule of Evidence 902(14) states:

*"Electronic files are ordinarily authenticated by 'hash value'. A hash value … is produced by an algorithm based upon the digital contents of a … file. If the hash values for the original and copy are different, then the copy is not identical to the original. If the hash values for the original and copy are the same, it is highly improbable that the original and copy are not identical."*

47.     Every document referenced in this Complaint was authenticated using SHA-256 hashing, the most widely accepted cryptographic algorithm in digital forensics,

also used in blockchain technology and federal evidence labs. Guertin applied this methodology not only to entire documents, but to internal PDF object components— exposing the systematic reuse of the same fraudulent elements across hundreds of purportedly unrelated criminal cases.

**C   |   The Court Digitally Signed the Fraudulent Files Themselves**

48.    A sweep of all 3,601 PDF documents (excluding the 28 duplicates) in the dataset revealed that 99.6% (3,585 documents) are digitally signed by the Hennepin County Courts themselves, using X.509 SHA-256 cryptographic certificates. These signatures were applied by the e-filing system and include embedded timestamps, issuer details, and verification chains.

49.    Any modification of a signed document would instantly invalidate the digital signature. Yet all 3,585 court-signed PDFs passed validation. This means that the synthetic orders, cloned rulings, and fake defendants identified in this case were not just injected into the MCRO repository—they were signed by the court's own infrastructure. The forgery was internal.

50.    Only 16 PDFs lacked signatures (**listed in "08_MCRO_files-with-no-signature.xlsx"** [4] - **see MnCourtFraud.Substack.com/p/01-mcro**), further confirming that the remaining corpus is both authentic and cryptographically sealed.

**D   |   Guertin's Object-Level Hashing Surpasses Conventional Evidence Analysis**

51.    While SHA-256 hash values can authenticate a full document, they cannot detect partial duplication within different files. Guertin implemented an advanced workflow to hash every embedded object within each PDF: pages, text streams, images, fonts, and stamps. This allowed him to identify exact duplicates—such as a forged judicial signature appearing 27 times across separate dockets, or cookie-cutter Rule 20 orders duplicated hundreds of times under different case numbers.

---

4   MnCourtFraud.com/File/08_MCRO_files-with-no-signature.xlsx

52.    The tools used were open-source and industry-standard: MuPDF's mutool for object extraction, and sha256sum for cryptographic hashing. The workflow preserved the original files and is fully repeatable, producing transparent, reproducible CSV tables documenting all hash values and object-level matches. No proprietary or black-box software was used. Every result can be reverified by third parties.

**E  |  The Court's Signature Is the Ultimate Chain-of-Custody Seal**

53.    Unlike most digital forensic collections, this dataset is not just validated by the investigator's hash logs. It is cryptographically sealed by the originating court system itself—meaning the authenticity of the underlying documents is indisputable even before Guertin's analysis begins. The court's own seal vouches for the source. The rest is mathematics. **( see MnCourtFraud.Substack.com/p/digital-forensic-reports )**

The chain of custody is thus unbroken:

- Guertin downloaded the files directly from MCRO on April 29–30, 2024.
- Every PDF that actually matters includes a timestamped X.509 certificate.
- Guertin's forensic methodology preserved original file structures.
- His object-level hash analysis exposed synthetic duplication patterns.
- His findings were documented and logged in an auditable format.

Multiple independent metadata points (signatures, file timestamps, source URLs) corroborate the results.

**F  |  The Technical Competence of the Plaintiff Further Undermines the Incompetency Narrative**

54.    Perhaps the most surreal irony of this case is that the Plaintiff—the same individual the State repeatedly tried to declare "incompetent" and "delusional"—is also the person who:

- Uncovered the multi-layered digital fraud;
- Preserved the original data without alteration;
- Conducted forensic object-level PDF analysis using industry standard tools;
- Identified matching SHA-256 hashes across fake case files;

12

- Tied signatures and timestamps to court infrastructure;
- Authenticated every key claim in this Complaint through technical and legal standards.

This case is not simply "plausible." It is *proven.*.

## G  |  Conclusion: Extraordinary Claims, Extraordinary Evidence

55.    This Complaint makes extraordinary claims—but it is supported by extraordinary evidence. That evidence is:

- Cryptographically validated;
- Mathematically self-authenticating;
- Internally consistent and externally verifiable;
- Digitally signed by the very court system being accused.

56.    The Plaintiff has done what few litigants—pro se or otherwise—have ever achieved: a full-spectrum forensic authentication of the very records used to try and disappear him. His work transforms the court's own forged orders into the most damning proof of all.

## V.  DIGITAL FORGERY, JUDICIAL SIGNATURE FRAUD, AND EVIDENCE TAMPERING ACROSS THE SYNTHETIC CASE MATRIX

## A  |  Judicial Signature Tampering: 55 Court Documents Signed After Filing Date

57.    A total of 55 case files within the MCRO dataset were discovered to bear digital signatures time-stamped after the date of their supposed filing—a forensic impossibility in legitimate document handling.

**( see MnCourtFraud.Substack.com/p/signed-after-filing-date )**

58.    These records are cryptographically signed using X.509 certificates with SHA-256, meaning that the court itself attested to these false dates. Such discrepancies are incompatible with routine court operations and cannot occur absent deliberate manipulation of the signing system or the document metadata chain.

This evidence strongly supports violations of:

- 18 U.S.C. § 1001 – False statements within federal jurisdiction
- 18 U.S.C. § 1341 – Mail fraud, where false records are part of a broader scheme
- 18 U.S.C. § 1519 – Falsification of records in federal investigations or proceedings

**B** | **Timestamp Redundancy: Identical Judicial Order Timestamps Used Across Synthetic Cases**

59.    Petitioner's forensic audit revealed 371 instances of timestamp reuse across hundreds of distinct judicial orders within the MCRO dataset. These timestamp blocks are perfect byte-for-byte duplicates, used across:

- Multiple synthetic case numbers
- Differing filing types
- Varying judge names and signature blocks

  **( see MnCourtFraud.substack.com/p/judicial-timestamp-duplicates )**

60.    This is forensically implausible in authentic court processing, where each order is expected to be uniquely time-stamped per issuance. Instead, this points to mass document cloning via automated templates—an industrial-scale fabrication process.

Use of such duplicated timestamps serves as compelling evidence of a centralized forgery mechanism at work. This implicates:

- 18 U.S.C. § 371 – Conspiracy to defraud the United States
- 18 U.S.C. § 505 – Forgery or counterfeiting of public documents

**C** | **Synthetic Signatures: 1,183 Duplicate Judicial Signature Images Reused Across Filings**

61.    Guertin's digital analysis further uncovered 1,183 duplicate signature graphics used repeatedly across thousands of court documents. These include:

- Identical cropped-image signature blocks, sometimes used with different judge names
- Signature placements applied to filings with conflicting authorship metadata

- Use of identical signature overlays on radically different case types and orders
  **( see MnCourtFraud.Substack.com/p/judicial-signature-duplicates )**

62.     These signature images—unlike live digital signatures—are static image files, easily cloned. Their widespread reuse demonstrates that many court documents are not authored, signed, or reviewed by any judge, but are instead produced through a mass synthetic pipeline.

Such actions violate foundational principles of judicial due process and support allegations under:

- 18 U.S.C. § 1028 – Fraud and related activity in connection with identification documents

- 18 U.S.C. § 1512 – Tampering with a witness, victim, or an informant (when forged judicial orders affect a legal proceeding)

## D | Coordinated Mail Fraud Scheme Using Fabricated USPS Return Scans

### 1.     Overview of the Scheme

63.     Petitioner's forensic audit of the MCRO dataset revealed the existence of a widespread and deliberate scheme to falsify returned-mail court filings by simulating USPS envelope scans. These fraudulent filings were injected into criminal dockets across dozens of synthetic case files and exhibit systematic characteristics of digital fabrication.

**( see MnCourtFraud.Substack.com/p/usps-mail-fraud )**

### 2.     Evidentiary Summary and Statistics

64.     A total of 40 duplicate USPS "Returned Mail" filings were identified across the dataset, based on byte-for-byte identical embedded images and SHA-256 hash matches.

The same envelope scans—with identical sender addresses, stamp placements, and handwritten formatting—were reused across multiple dockets spanning different filing dates and defendants.

65.     Two of the most frequently reused addresses, 740 E 17th Street and 1010 Curry Avenue, appear across more than a dozen different case files. The scanned envelopes for these addresses remain visually and cryptographically identical each time they are used.

These returned-mail filings are routinely used to explain failed service or to justify ex parte judicial orders in synthetic cases where no real litigants exist.

### 3.     Inference of Intent and Coordination

66.     The identical hash values and reused mail graphics indicate these entries were not the result of clerical error or benign duplication. Rather, they are best understood as intentionally crafted, pre-generated mail scans reused across synthetic dockets to simulate failed correspondence and obstruct inquiry or due process. Their repeated presence within fabricated dockets—alongside cloned judicial orders and image-based filings—confirms a pattern of mail-related deception consistent with a broader criminal conspiracy.

### 4.     Federal Statutory Violations

67.     The use of falsified USPS return-mail filings within official court records constitutes multiple federal crimes:

- 18 U.S.C. § 1341 – Mail Fraud:
    - Use of simulated mail scans to support false narratives within the judicial process.
- 18 U.S.C. § 1702 – Obstruction of Correspondence:
    - Fabrication and misuse of mail-related documents to impersonate USPS correspondence and alter legal proceedings.
- 18 U.S.C. § 371 – Conspiracy to Defraud:
    - The coordinated production and deployment of forged documents as part of a systemic scheme.

**E | AI-Generated, Image-Based Court Filings Fraudulently Presented as Scans**

### 1.    Discovery of Synthetic Filing Pages

68.    Multiple PDFs within the MCRO dataset were found to contain entire court filings as embedded images, rather than native digital documents. These images display uniform binary (2-bit) color depth, with no grayscale smoothing, natural paper texture, or scanner artifacts—traits that diverge sharply from any standard court scanning pipeline. Forensic analysis confirms these images were likely generated by diffusion-based AI image tools or similar pipelines designed to simulate scanned documents.

### 2.    Template Reuse and Signature Cloning

69.    Dozens of different case files contain documents that are near-identical replicas of a single "Finding of Incompetency and Order" template dated January 17, 2024. In many cases, the judge's signature and timestamp blocks are not only visually similar, but forensic hashing proves them to be exact duplicates —down to every pixel—across different defendants. The same signature image has been reused wholesale across unrelated matters. Such duplication reveals a bulk-fabrication strategy, with clerical elements pasted onto synthetic document shells in a templated workflow.

### 3.    Embedded OCR and Metadata Anomalies

70.    These image-based filings were wrapped in PDFs using OCR (optical character recognition) post-processing—an unusual method for court-produced files. The embedded text layers show garbled sequencing, hidden fonts, and metadata that is either missing or stripped of scanner origin tags, all strongly indicative of non-standard document creation. This artificial OCR pipeline is a known tactic used to backfill image-based fakes with searchable text.

### 4.    Applicable Federal Crimes

71.    The manufacture and integration of synthetic image-based filings into official judicial records implicates multiple felony statutes:

- 18 U.S.C. § 1343 – Wire Fraud, due to the electronic distribution of falsified files
- 18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records
- 18 U.S.C. § 371 – Conspiracy

These digital forgeries were produced and filed with the specific intent to mislead judicial actors, impede due process, and support fraudulent competency proceedings.

## VI.  THE MOTHER'S LETTER INCIDENT: SMOKING-GUN PROOF OF ACTIVE COURT OBSTRUCTION AND RECORD TAMPERING

### A  |  Real-Time Document Duplication Proves Deliberate Judicial Interference

72.    On April 12, 2024, court records across two separate case dockets—Matthew Guertin's and that of a fabricated defendant named "Sandra Phitsanoukanh Vongsaphay"—revealed an unmistakable pattern of synchronized document events orchestrated from within the Fourth Judicial District Court:

| Time | Event | Add. |
|---|---|---|
| 2:03 PM | **Fake "inmate" letter**<br>filed in Case 27-CR-23-2480 (Sandra Vongsaphay) | 561 |
| 2:10 PM | **Mother's genuine letter**<br>filed in Guertin's case, pleading for help | 562 |
| 2:28 PM | **Judge Julia Dayton Klein**<br>inserts an "Order Denying Petition to Proceed Pro Se" into Guertin's docket—18 min after the real letter, *before* any responses | 563 |
| 4:38 PM | **Clerk Lee Cuellar**<br>issues boiler-plate response to the *fake* letter | 564 |
| 4:42 PM | **Same clerk**<br>files an almost-identical response to the *real* letter | 564 |

73.    This perfectly choreographed sequence—across two dockets and two supposedly unrelated cases—could not have occurred without deliberate real-time coordination. Guertin's case was officially under Judge Jay Quam at the time, yet all correspondence and responses were routed through Judge Klein's chambers, clearly

establishing that judicial actors knowingly intervened to neutralize the impact of Michelle Guertin's plea. **( see MnCourtFraud.Substack.com/p/mothers-letter-smoking-gun )**

**B   |   Cryptographic Evidence of Forged Judicial Documents**

74.    Forensic SHA-256 analysis confirmed that the response letters filed by Clerk Lee Cuellar at 4:38 PM (to Vongsaphay) and 4:42 PM (to Guertin's mother) were not merely similar—they were byte-for-byte duplicates. Both files contain identical embedded image assets:

- Header Seal Image Hash "debcc04a.....b1d764a6"
  - MnCourtFraud.com/File/debcc04a.....b1d764a6.png
- Letterhead Banner Image Hash "f609be80.....e15a1eee"
  - MnCourtFraud.com/File/f609be80.....e15a1eee.png

These image fingerprints are not found in any of the other 3,601 court PDFs analyzed, proving that the two responses were manufactured from a unique template and deliberately copied across cases—further evidence of a coordinated forgery scheme.

**C   |   Forensic Handwriting and Envelope Analysis Confirms Interception and Duplication**

75.    The letter from Michelle Guertin exhibits natural variation in pen stroke, alignment, and expression—characteristics of a genuine handwritten note. In contrast, the supposed letter from "Sandra Vongsaphay" displays:

- Mechanically consistent handwriting with no variation
- Phrasing that eerily mimics Michelle Guertin's letter
- An envelope with identical postage layout and printed fonts matching dozens of other flagged AI-generated "returned mail" scans

This mechanical uniformity—combined with the implausible similarity in tone and content—demonstrates that the Vongsaphay letter was a synthetically generated clone used to intercept and dilute the mother's genuine plea.

**D  |  The Midstream Judicial Order: A Tactical Preemption**

76.    The most revealing act came at 2:28 PM, when Judge Julia Dayton Klein inserted an "Order Denying Defendant's Petition to Proceed Pro Se" into Guertin's docket—18 minutes after the mother's letter was filed, but 2 hours before the court issued its cookie-cutter response. This mid-sequence order appears to have been strategically deployed to shift narrative control over the docket and preempt any judicial review by the assigned judge (Quam), thus reinforcing Judge Klein's unilateral control over Guertin's case record.

**E  |  Synthetic Address Recurrence: 740 E 17th Street**

77.    The Vongsaphay case (27-CR-23-2480) includes a single "Returned Mail" filing, with a scan listing the address 740 E 17th Street, Minneapolis. This same address recurs across 32 other synthetic case files, often used with different names but identical formatting and postage—a hallmark of AI-generated, templated court correspondence. The recycling of this fake address further situates the Vongsaphay case—and by extension the forged letter—as part of the larger synthetic case matrix designed to surround and neutralize Guertin's legitimate filings.

**( see MnCourtFraud.Substack.com/p/usps-mail-fraud )**

**F  |  Legal and Evidentiary Significance: Federal Offenses and Coordinated Conspiracy**

78.    The "Mother's Letter" interception and forgery incident is not a clerical aberration—it is an overt act of federal criminal conduct under multiple provisions of Title 18 of the United States Code. The facts establish not only isolated statutory violations, but a broader pattern of intentional obstruction, forgery, and mail-based fraud, carried out by court actors functioning in concert.

### 1.    Obstruction of Mail – 18 U.S.C. § 1702

79.    The interception, suppression, or redirection of Michelle Guertin's physical letter—addressed to a sitting judge of the Hennepin County District Court —constitutes a clear violation of § 1702. This statute criminalizes knowingly and

willfully taking any letter "before it has been delivered to the person to whom it was directed." The subsequent duplication of the letter in a synthetic case further evidences purposeful suppression.

**2.     Mail Fraud – 18 U.S.C. § 1341**

80.     The coordinated use of the U.S. Mail to receive, reroute, intercept, and neutralize legal correspondence that had direct bearing on the defendant's due process rights satisfies the core elements of mail fraud: (1) a scheme to defraud, and (2) use of the mail in furtherance of that scheme. The fabricated letter—generated and filed to mimic the genuine letter's emotional tone and structure—served as a counterfeit instrument designed to mislead the judicial record.

**3.     Conspiracy to Commit Mail Fraud – 18 U.S.C. § 1349**

81.     This operation could not have occurred without cooperation between multiple individuals occupying distinct institutional roles: judicial officer(s), court clerk(s), and those managing electronic document entry systems. Under § 1349, "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties." The timeline, matching digital assets, and near-simultaneous responses prove conscious orchestration—evidencing a knowing and willful conspiracy to defraud.

**4.     Obstruction of Justice – 18 U.S.C. § 1503, § 1512**

82.     The purpose and effect of the intercepted letter was to obstruct the orderly administration of justice by denying the assigned judge access to exculpatory material. Inserting an unsolicited order denying Guertin's pro se motion just 18 minutes after the genuine plea was received—while no other party had filed a response—falls squarely within the prohibition of corruptly influencing, impeding, or endeavoring to influence the due administration of justice under § 1503 and § 1512(c).

**5.    Deprivation of Rights Under Color of Law – 18 U.S.C. § 242**

83.    By forging documents, intercepting privileged correspondence, and manipulating the docket to suppress constitutionally protected advocacy, the individuals involved deprived Guertin and his mother of their First and Fourteenth Amendment rights, under color of official authority. Such conduct constitutes criminal civil rights violations punishable under federal law.

**G  |  Conclusion**

84.    This event is not an isolated irregularity. It is a federal crime scene embedded within a state court docket, executed with the coordination and intent characteristic of a RICO-eligible criminal enterprise operating under color of law. It reveals that Guertin's case is not merely contaminated by procedural error—it has been actively weaponized. No honest process remains.

## VII.  MASS-PRODUCED FRAUDULENT INCOMPETENCY ORDERS CLONED FROM GUERTIN'S CASE

**A  |  Summary of Dataset Findings**

85.    An exhaustive forensic audit of 129 digital court orders labeled "Finding of Incompetency and Order" confirms that these documents were generated from a single fraudulent template — one that originates from Matthew David Guertin's own January 17, 2024 incompetency order. Across 103 synthetic case numbers involving 50 supposed defendants, 127 of these orders are authored by the same entity ("barbj") and match Guertin's order verbatim in both content and structure. This is not merely a stylistic overlap. It is a literal duplication of judicial text, layout, parties, metadata, and even embedded signature graphics.

**( see MnCourtFraud.Substack.com/p/incompetency-orders )**

86.    Key statistical findings from the MCRO metadata archive include:

- 129 "Finding of Incompetency" filings spanning 47 filing dates (Jan 11, 2023 – Apr 26, 2024).

- 103 unique case numbers, but only 50 distinct defendants, revealing recycled identities.
- Three authors identified:
- 127 by "barbj" (mass-fabricated)
- 1 by "Danielle C. Mercurio" (Guertin's authentic July 13, 2023 order)
- 1 by "Apker, MB" (Dec 6 Cherry order, later repackaged into the template)
- 6 title variations across the orders, with 104 titled "Commitment Order (MI, DD)," aligning exactly with the cloned January 17 template.

87.    Most frequent "defendants":

- Lucas Patrick Kraskey (21 orders)
- AESHA IBRAHIM OSMAN (10)
- Terrell Johnson (9)
- Gordon Eugene Sharp (7)
- Carmen Bendu Greaves (6)

88.    These numbers speak to a scheme of digital document laundering: fake cases were constructed around a pre-defined judicial order template and padded with metadata variations to simulate authenticity.

**B  |  Guertin's January 17, 2024 Order as the Template Origin**

89.    The document that was used to clone all others is none other than Guertin's January 17, 2024 incompetency order — filed after his former defense attorney Bruce Rivers told him "No court" the night before via text, for his scheduled 1:30 PM Review Hearing on January 16, 2024 only to then have a Waiver of Appearance entered into his docket (27-CR-23-1886) at Index # 24 on January 16, 2024, and the order that was signed, and prepared on January 16 intentionally withheld, and not filed into his case until the morning of January 17 at Index #25, which is out of order, as it is submitted after the "Notice of Remote Hearing" submitted on January 16, at Index #26. This entire series

of events, dubbed the "Conspiracy of Commitment" is broken down in great detail in "Exhibit P" [5] of Guertin's 2024 civil rights case.

90.    This January 17 order includes no individualized findings, no reference to specific evidence or context, and instead deploys generalized boilerplate directives. The identical language appears across 126 additional, fraudulent filings in synthetic cases, including:

- Copy-pasted references to the "Hennepin County Prepetition Screening Program"
- "*the Defendant may be committed directly to an appropriate safe and secure facility.*"
- Standardized orders directing "*The head of the treatment facility shall submit a written report addressing the Defendant's competency to proceed in the criminal case when the Defendant has attained competency, **or at least every six months**.*"

91.    The forensic reports confirm that Guertin's January 17 order is not merely "similar" to the rest — it is the template. As concluded in the joint metadata analyses:

> "*Guertin's January 17, 2024 order was not generated through a normal judicial process, but rather drawn from the same fraudulent template that was being secretly applied elsewhere.*"

## C | The Two Outliers: Proof of Fabrication by Contrast

92.    Within the entire document corpus, only two orders stand apart as non-clones: Guertin's July 13, 2023 Order – Authored by Danielle C. Mercurio, with unique formatting and substantive findings.

93.    Aaron Dashaun Cherry's December 6, 2023 Order – An original order later overwritten by a fraudulent Dec 11 clone that conforms to the Guertin template. This retroactive "repackaging" proves that orders were fabricated post hoc to normalize irregular filings.

94.    These two documents act as forensic controls, validating the artificiality of the remaining 127.

---

5   Exhibit P "Conspiracy of Commitment" |
   Courtlistener.com/docket/68925331/23/guertin-v-hennepin-county/

**D | Copy-Paste Errors and Digital Fingerprints Reveal RICO Coordination**

95.     The cloned orders are riddled with mass-production artifacts:

- Identical judge signature image hashes reused across cases.

- Postdated judicial signatures appearing after the file date — a technical impossibility in legitimate court workflow.

- Role reversal clerical errors, such as listing prosecutor Tom Arneson as defense counsel in 11 filings — an error propagated by template cloning, not judicial oversight.

( see **"ERRORS_finding-of-incompetency-and-order.xlsx"** at **MnCourtFraud.Substack.com/p/incompetency-orders** )

96.     These errors aren't minor mistakes. They're digital fingerprints — forensic proof of centralized, coordinated document fraud. This operation meets all definitional thresholds for a RICO enterprise:

- Pattern of racketeering activity – repeated mail/wire fraud via falsified filings

- Enterprise – network of actors including court clerks, mental health liaisons, and Odyssey administrators

- Continuity and coordination – uniform templates, names, and dates across 129 filings over 16 months

- Predicate acts – falsification of official court orders and deprivation of constitutional rights under color of law

**E | Ironic Inversion: The Fabricated Order Proves Guertin's Competence**

97.     The ultimate irony is that the very order used to declare Guertin "incompetent" was not only fabricated, but then recycled en masse to fake incompetency findings for other individuals who clearly do not exist. The logical implication is inescapable:

*If the court needed to fabricate an order to portray Guertin as incompetent, then Guertin must in fact be competent* — as the order itself is not a product of lawful adjudication, but of forgery.

98.     By engineering the illusion of mass incompetency rulings, the conspirators attempted to both isolate and discredit Guertin while laundering their false order into a

synthetic statistical norm. But the data exposes the truth: **Guertin's January 17, 2024 order is neither legally valid nor procedurally legitimate — it is a counterfeit**, and it is the original master template for a sprawling digital fraud.

## VIII.   PDF METADATA TOOLCHAIN AND CENTRALIZED DOCUMENT PRODUCTION

99.    The recurring appearance of highly specific metadata signatures across judicial documents—including *Adobe XMP Core 5.1.0-jc003*, *PScript5.dll Version 5.2.2*, *Acrobat Distiller 23.0*, and *Adobe PDF Library 22.3.34*—is not consistent with casual or manual document creation by legal professionals such as attorneys, clerks, or judges. These components are part of an advanced, professional-grade PDF generation pipeline used predominantly in enterprise environments.
Specifically:

- 100.   *Adobe PDF Library* is a commercial SDK licensed by Adobe for automated, programmatic PDF creation in backend systems. It is not included in any standard Adobe Creative Cloud subscription and is only accessible to developers under corporate or governmental licensing agreements.

- 101.   *PScript5.dll*, Adobe's PostScript print driver, is typically used in automated print-to-PDF workflows, batch document generation, and prepress output scenarios. It is rarely—if ever—employed in typical legal office environments.

- 102.   *Acrobat Distiller*, while historically used to convert PostScript to PDF, is now obsolete for manual use and primarily persists in legacy automation pipelines, scripting environments, and CMS-integrated print drivers.

- 103.   *Adobe XMP Core* versions embedded across documents act as a timestamped signature of the rendering engine in use. When identical versions persist across hundreds of documents spanning years—despite significant evolution in Adobe's toolchain—it strongly suggests a frozen, scripted export environment.

104.    These technical markers are not incidental and cannot be attributed to routine desktop usage. Their consistent presence across specific judicial document types (e.g., Rule 20 evaluations, transport orders, commitment findings) and their absence from unrelated filings support a clear conclusion: these documents were not generated by individuals exercising discretion, but were instead produced through a centralized, automated system using professional publishing tools typically unavailable to or unused by ordinary court personnel.

105.    The implication is the existence of a shared document production infrastructure, likely maintained by a government IT contractor or court administration system (e.g., Tyler Technologies' Odyssey), that outputs templated judicial orders en masse—without individualized judicial input. This supports the inference of synthetic document fabrication under color of law, a pattern highly relevant to a RICO or civil rights conspiracy claim.

## IX.   METADATA PROVES INTENTIONAL FRAUD AND CENTRAL AUTHORSHIP IN RULE 20 EVALUATIONS

106.    Plaintiff Matthew Guertin has produced irrefutable digital forensic evidence establishing that two separate Rule 20 competency evaluations—purportedly authored by two different examiners nearly one year apart—were in fact both created by the same individual using the same software environment and authorship credentials. This deception was first uncovered through metadata analysis and documented on August 7, 2024, in Exhibit W of Guertin's prior federal civil rights complaint (24-cv-2646). That exhibit, properly submitted into the federal record, captured the forensic metadata from a USB flash drive provided to Guertin by his attorney, Bruce Rivers on July 16, 2024.
( **see MnCourtFraud.Substack.com/p/bruce-rivers-july-16-discovery** )

107.    The metadata for the January 11, 2024 Rule 20 evaluation attributed to Dr. Adam Milz contains the following:

- Author/Creator: Hines, Anne

27

- XMP Toolkit: Adobe XMP Core 5.6-c142 87.162696, 2018/09/16 - 15 : 11 : 55
- Producer: Microsoft: Print To PDF

108.    On December 30, 2024, Guertin received another Rule 20 evaluation report —this time attributed to examiner Katheryn Cranbrook—via email from defendant, Raissa Carpenter.

The metadata extracted from this second report, titled "20.01 Update - Cranbrook 12.20.24.pdf," is as follows:

- Author/Creator: Hines, Anne
- XMP Toolkit: Adobe XMP Core 5.6-c142 87.162696, 2018/09/16 - 15 : 11 : 55
- Producer: Microsoft: Print To PDF

109.    This is smoking-gun forensic proof of centralized authorship, document fabrication, and impersonation of forensic authority. These reports were used to deprive Guertin of constitutional rights, prolong his pretrial restraint, and discredit his exposure of the broader judicial conspiracy. Both reports were:

- ***Authored by Anne Hines, who is neither Dr. Milz nor Dr. Cranbrook***;
- Created using the same proprietary XMP toolkit (Adobe XMP Core 5.6-c142);
- Produced using Microsoft: Print to PDF, indicating controlled local generation;
- Embedded with identical PDF structure down to toolkit version and print stream.

110.    Because the January 2024 report's metadata was filed into the federal record on August 7, 2024—months before the second report was ever produced—Guertin is now able to prove the fraudulent authorship of both reports retroactively. ( see 24-cv-2646-JRT-DLM, Doc 47, Page 43 of 167 | Exhibit W, Index 01, p. 41 [6] )

111.    This incontrovertible overlap nullifies any claim of independent mental health examination and establishes intentional misrepresentation of examiner authorship under color of law. ***This issue is especially urgent as the same fraudulent forensic examiner—Katheryn Cranbrook—is now being ordered by the trial court to conduct a***

---

6   Exhibit W | Courtlistener.com/docket/68925331/47/guertin-v-hennepin-county/

*fourth Rule 20 evaluation based solely on Guertin's legal filings being used by defendant, Judge Sarah Hudleston as the reason for ordering a fourth Rule 20 exam.* This violates due process, constitutes judicial retaliation, and implicates the very same individuals named in this lawsuit.

112.   Guertin can provide the full forensic chain of custody via the December 30, 2024 email attachment received from Raissa Carpenter, simply being forwarded to the court.

113.   This is not mere procedural misconduct—it is evidentiary fraud weaponized through falsified psychiatric authority to silence a whistleblower who has uncovered a systemic judicial conspiracy, as well as the high-level theft of his patent.

## X.   METADATA AUTHOR AND CREATOR "BARBJ"

114.   Plaintiff Guertin's forensic analysis of court-generated PDF filings has uncovered that his own January 17, 2024 "Finding of Incompetency and Order"—a document used by the court to justify an unconstitutional competency determination—was in fact authored by an internal system actor identified in metadata as "barbj." This same author, "barbj," is associated with a total of 137 documents spanning 105 synthetic case numbers, establishing this persona as a central figure in the mass production of fraudulent judicial orders.  ( see **MnCourtFraud.Substack.com/p/barbj** )

115.   Key facts are as follows:

- Guertin's own "Finding of Incompetency and Order" is one of 127 filings with this identical title and metadata author "barbj."

- The exact same PDF structure, authorship, and formatting appear across 126 other unrelated criminal cases, despite different defendants and circumstances, showing the orders are cloned templates, not individualized judicial rulings.

- These 137 documents are tied to only 51 unique defendants, meaning multiple filings exist for individual fake identities or recycled personas across the dataset.

- The time span of "barbj" documents stretches from January 11, 2023 through April 26, 2024, perfectly overlapping with the synthetic case matrix identified by Guertin.

116. The documents span only three filing types, overwhelmingly dominated by:

- 127 "Finding of Incompetency and Order" (92.7%)
- 7 "Order to Transport"
- 3 "Order Denying Motion"

117. The metadata "Company" field identifies "Hennepin County" on 81 documents, implicating systemic misuse of county-level document infrastructure.

All "barbj" files include a metadata "Title" field with only seven recycled title variants, suggesting a templated document generation process, not individual judicial findings. Titles include:

- "Commitment Order (MI, DD)" — 110 instances
- "Incompetent (Felony IC)" — 7 instances
- "Incompetent (Felony OOC)" — 7 instances

118. Others—"Transport Order", "Incompetent (Gross Mis IC)", etc.—make up the remainder.

119. The defendants most commonly associated with "barbj"-authored files are entirely disconnected from Guertin's case, and yet his "incompetency" finding shares the exact same metadata structure and author:

| Defendant Name | Number of Files |
| --- | --- |
| Lucas Patrick Kraskey | 21 |
| Aesha Ibrahim Osman | 15 |
| Terrell Johnson | 9 |
| Gordon Eugene Sharp | 7 |
| Carmen Bendu Greaves | 6 |

## A | Legal Significance

120. The presence of "barbj" as author across this corpus of files—including Guertin's own purported judicial order—establishes:

- Evidence of systemic forgery and template-based adjudication;

- That Guertin's court-assigned "judicial officers" were not actually presiding or authoring orders, further calling into question the legitimacy of the Fourth Judicial District's proceedings;

- That these orders—used to detain, medicate, or transport individuals—were likely fabricated by administrative or clerical agents ("barbj") operating at scale with automation tools in contradiction to procedural safeguards.

In short, Guertin's own court order matches 126 other synthetic filings, was not authored by any judge, and bears digital fingerprints of mass-produced, system-generated fraud.

## XI.   METADATA AUTHOR AND CREATOR "HERNANDEZKE"

121.   In further support of Plaintiff Guertin's broader claims of synthetic court filings, cloned judicial orders, and mass administrative forgery, forensic metadata analysis reveals the presence of another prolific document author: "hernandezke", variably stylized as "HernandezKE." Though less directly consequential than other forged filings, this author is responsible for 225 separate documents tied to 101 synthetic case numbers—including three filings in Guertin's own case, one inserted in connection with the fraudulent "Conspiracy of Commitment" timeline.

( see MnCourtFraud.Substack.com/p/hernandezke )

**A  |  Files in Guertin's Docket**

**1.**   122.   *January 16, 2024 – "Notice of Remote Hearing with Instructions"*
Index #25 in Guertin's Docket

Author: **hernandezke**

XMPToolkit: Adobe XMP Core 5.1.0-jc003

CreatorTool: PScript5.dll Version 5.2.2

Producer: Acrobat Distiller 23.0 (Windows)

**2.**   123.   *May 9, 2024 – "Order Evaluation for Competency to Proceed Rule 20.01"*

Index #40 in Guertin's Docket

Author: **HernandezKE**

XMPToolkit: Adobe XMP Core 5.1.0-jc003

CreatorTool: PScript5.dll Version 5.2.2

Producer: Acrobat Distiller 23.0 (Windows)

**3.**   124.   *January 30, 2025 – "Notice of Hearing and Judicial Assignment"*

Index #119 in Guertin's Docket

Author: **HernandezKE**

XMPToolkit: Adobe XMP Core 5.1.0-jc003

CreatorTool: PScript5.dll Version 5.2.2

Producer: Acrobat Distiller *24.0* (Windows)

**B   |   Why This is Critical to the Current Complaint**

125.   This author is directly implicated in both the intentional obfuscation caused by the "Notice of Remote Hearing" entered into Guertin's docket on January 16, 2024 (for a hearing 6 months away), and the post-order docket control on January 30, 2025, which is when his case was officially assigned to defendant, Judge Sarah Hudleston - confirming systemic manipulation across key timeline inflection points by filings sharing this author / creator.

**C   |   Aggregate Stats for "hernandezke"**

126.   Total filings authored: 225

Unique case numbers involved: 101

Total unique defendants: Only 47

127.   Filing types:

- 143 × "Notice of Remote Hearing with Instructions"
- 55 × "Order-Evaluation for Competency to Proceed (Rule 20.01)"
- 27 × "Notice of Hearing"

128.   Document uniformity:

- Every file carries a metadata title: "Microsoft Word - Document in Unnamed"

- 174 use lowercase "hernandezke", 51 use mixed case "HernandezKE"
- Most files fall between April 4, 2023 – April 24, 2024, overlapping the known synthetic docket timeframe.

129.   Top associated "defendants" (by frequency):

- 38 – Terrell Johnson
- 32 – Makis D Lane
- 18 – Gordon Eugene Sharp
- 16 – Grahm Mark Fletcher
- 12 – Rodrick Jerome Carpenter

130.   These names appear frequently across the synthetic MCRO dataset and in other mass-produced records already tied to authors like "barbj," confirming the same recycled identity fabrication pattern.

## XII.   DEFENDANT PROFILE: ALISHA NEHRING

131.   Role in Conspiracy:

Document Forger and Metadata-Based Link Between Synthetic Case Matrix and Real Defendant

( see **MnCourtFraud.Substack.com/p/alisha-nehring** )

132.   Alisha Nehring is identified in the metadata of at least 28 court filings spanning from July 31, 2019 to July 15, 2024. These filings were digitally authored and created under the name "Nehring, Alisha; Nehring; Alisha" and contain consistent metadata fields listing her as the sole "Author" and "Creator." The metadata confirms the use of the Minnesota Judicial Branch as the listed organization, and the documents were generated using a combination of Adobe PDFMaker (versions 23 and 24 for Microsoft Word), Adobe PDF Library (versions 23.1.175 and 24.2.23), and Adobe XMP Core 5.1.0-jc003.

## A  |  Fraudulent Documentation in Guertin's Case

133.  On June 14, 2023, an "Order for Continuance" was filed into Guertin's docket which was authored by Alisha Nehring and bears the signature of Judge Julia Dayton Klein.

| Metadata Field | Value Displayed in Properties Pane | Evidentiary Impact |
|---|---|---|
| **Title** | Contested Competency for Adrian Wesley (incompetent) (doctors disagree) | Hard-coded reference to *synthetic* defendant (Adrian Michael Wesley) and to a Rule 20 competency dispute, proving copy-paste fabrication. |
| **Author / Creator** | Nehring, Alisha | Links the filing to a Minnesota Department of Health lawyer who has no courtroom role in Guertin's prosecution. |
| **Company** | MN Judicial Branch | Appears in only 1 of Nehring's 27 filings - the one lodged in Guertin's case - underscoring bespoke authorship. |
| **File Name** | MCRO_27-CR-23-1886_Order for Continuance_2023-06-14_… | Bears Judge Julia Dayton Klein's signature block, though Klein is not the metadata author. |

134.  Because these fields are inside the PDF's official, certified digital signature, the values are cryptographically locked and cannot be altered without invalidating the court's digital, cryptographic seal - meaning they are authentic and cannot be contested or disputed.

This filing is fraudulent for several independent reasons:

- There is no corresponding motion for continuance anywhere in the record that would warrant the issuance of this order.

- The order was submitted during a critical period of procedural manipulation surrounding Guertin's competency status.

- It is the only "Order for Continuance" out of all 3,601 MCRO case files spanning 163 case numbers, despite the presence of 398 separate "Request for Continuance" docket events and four docket events labeled "Request for Continuance Needing Judicial Approval." ( **see MnCourtFraud.Substack.com/p/02-case** )

34

135.   This order represents a deliberate and fabricated insertion into Guertin's case and includes a direct link to the name "Adrian Wesley," a synthetic defendant whose name appears only in the foundational set of synthetic 2017 cases used to support fraudulent psychiatric commitment patterns to St. Peter State Security Hospital.

**B  |  Connection to the 2017 "Adrian Wesley Narrative" and Synthetic Case Architecture**

136.   Metadata analysis confirms that Alisha Nehring is the document author for all three "Find of Fact-Order, Pet Commitment – Defendant Found Incompetent" filings entered against the synthetic defendant "Adrian Wesley" in the 2017 case set that has now been proven to be fraudulent. These foundational Wesley cases demonstrate:

- An artificial model for indefinite looping psychiatric commitments between Hennepin County and the St. Peter Security Hospital.
- An embedded pattern of judicial activity fabricated via cloned case structures and automated filings.

137.   The reuse of the same metadata "Title" string from these 2017 Wesley documents in Guertin's June 14, 2023 Order for Continuance, as well as Judge Julia Dayton Klein's Order to Recuse entered into Guertin's docket on July 15, 2024 (not part of the MCRO dataset and just discovered recently) indicates either a misconfigured template system or intentional linkage by way of digital signature seeding. Either scenario indicates malicious, and fraudulent document generation under color of law.

**C  |  Alisha Nehring Authored Documents and Associated Judicial Signatures**

138.   15 of the filings are "Order-Other"

5 are "Findings of Fact, Conclusions of Law and Order"

3 are "Find of Fact-Order, Pet Commitment-Dfd Found Incompetent"

2 are "Order to Transport"

1 is a "Findings and Order"

and 1 is an "Order for Continuance" - the one filed into Guertin's case.

5 of the filings are signed by Judge Carolina A. Lamas, with a single signature hash of:

"3ff3cad7.....e30a84d9"

( see **MnCourtFraud.com/file/3ff3cad7.....e30a84d9.png** )

applied to 5 "Order-Other" filing types.

One of these being filed on July 31, 2019, and the other four being filed on October 9, 2019

18 of the filings are signed by Judge Lisa K. Janzen, which consists of two different digital signatures:

5 with a hash of "18d03912.....b3f87d4d"

( see **MnCourtFraud.com/file/18d03912.....b3f87d4d.jpg** )

13 with a hash of "3aeb71e9.....198e5764"

( see **MnCourtFraud.com/file/3aeb71e9.....198e5764.png** )

with these filings spanning May 8, 2020 through December 9, 2022 and consisting of 5 different filing types. 3 of the filings are signed by Judge Micahel K. Browne, with a single signature hash of "e3e4157a.....8e9d3550"

( see **MnCourtFraud.com/file/e3e4157a.....8e9d3550.png** )

applied to two "Order-Other" filed on May 12, 2023 and one "Findings of Fact, Conclusions of Law and Order" filed on April 26, 2024.

Judge Julia Dayton Klein:

Signed the fraudulent June 14, 2023 order inserted into Guertin's docket.

139.    This range of digital signatures reused across different judges—coupled with the uniform authorship and metadata—supports the allegation that a centralized authorship and digital document production system is in use, independent of legitimate judicial review.

**D   |   Role Within State Structure and Implications**

140.    Alisha Nehring is a licensed attorney whose professional history confirms institutional access to both judicial and executive branches:

- 2022–Present: Associate General Counsel, Minnesota Department of Health
- 2020–2022: Unemployment Law Judge, MN DEED
- 2014–2020: Law Clerk to Judge Carolina A. Lamas, Hennepin County District Court

141.    This career trajectory suggests she occupies a unique position capable of interfacing between administrative, judicial, and legal infrastructure. Moreover, Nehring's documents appear repeatedly and systematically across synthetic case records in association with known document forgers Judith Cole and Amanda Burg.

**E  |  Legal Conclusion**

142.    Alisha Nehring is credibly implicated as a material participant in a long-running conspiracy to fabricate judicial orders, digitally link synthetic cases through embedded metadata structures, and manufacture false judicial process under color of law.

143.    She is the digital author of both:

- The 2017 foundational "Wesley" documents that serve as the architectural base for fraudulent psychiatric commitments; and

- Fraudulent orders inserted into Guertin's case that embeds a direct reference to the Wesley matrix and contains no lawful predicate for its issuance, including Judge Julia Dayton Klein's Order to Recuse entered into Guertin's docket on July 15, 2024.

144.    Nehring's actions meet the threshold for inclusion as a defendant in a civil RICO claim, and further support a claim for violation of 42 U.S.C. § 1983 under the theory of state action and conspiracy to deprive civil rights through fraudulent legal process.

145.    Internet search results indicate that Alisha Nehring is a real person, and lists her employment as the following -

| | |
|---|---|
| 2022-Current | Associate General Counsel at Minnesota Department of Health |
| 2020-2022 | Unemployment Law Judge at Minnesota Department of Unemployment and Economic Development |
| 2014-2020 | ***Law Clerk to 4th Judicial District Court Judge Carolina A. Lamas*** at State of Minnesota |

## XIII.   METADATA ANOMALY IN FIRST RULE 20 EVALUATION – "GUZMANC" AND 2016 XMP TOOLKIT SIGNATURE

146.   The metadata from the initial March 10, 2023 Rule 20 psychological evaluation report of Matthew Guertin—presented in court as having been authored by Dr. Jill Rogstad—contains critical forensic irregularities that directly undermine its authenticity. The document, which played a central role in adjudicating Guertin's competency status, lists the metadata author and creator as "GuzmanC," presumed to be Chela Guzman Wiegert, a senior official involved in Justice Information Technology operations. This directly contradicts the oral testimony and official record attributing authorship to Dr. Rogstad.

147.   The metadata reveals the following values:

| | |
|---|---|
| File Name: | Rule 20 Evaluation Report.pdf |
| Author: | GuzmanC |
| Creator: | GuzmanC |
| Title: | Guertin Report.pdf |
| Creator Tool: | PScript5.dll Version 5.2.2 |
| Producer: | Acrobat Distiller 22.0 (Windows) |
| XMP Toolkit: | Adobe XMP Core 5.6-c015 81.159809, 2016/11/11-01:42:16 |
| Metadata Date: | 2023:03:10 16:38:55-06:00 |

The key anomaly is the XMPToolkit string:

"Adobe XMP Core 5.6-c015 81.159809, 2016/11/11-01:42:16"

148.   This toolkit version is unusually old, dating back to November 11, 2016, despite the document's creation occurring nearly seven years later, on March 10, 2023. When cross-referenced against Guertin's forensic MCRO dataset—comprising 3,601 case files—this exact XMPToolkit string appears in only 17 total documents across the entire corpus. This minuscule recurrence establishes its unique digital signature.

### A   |   Key Legal Implications

149.   False Attribution of Authorship: The discrepancy between the metadata author ("GuzmanC") and the purported author/testifying examiner (Dr. Jill Rogstad)

suggests that the report was centrally authored or repurposed from a standard template, then falsely attributed.

**B  |  Evidence of Centralized Production**

150.    The use of a near-decade-old Adobe XMP toolkit in 2023—matching only a handful of other documents in the dataset—suggests a specialized production environment inconsistent with regular court or examiner workflows, further pointing to a centralized system of fabrication.

**C  |  Systemic Pattern with Other Rule 20 Reports**

151.    This finding mirrors other forensic reports (e.g., by Adam Milz and Katheryn Cranbrook) that were likewise authored by unrelated parties and exhibit shared metadata traits (e.g., identical author names, toolkits, and producers), establishing a pattern of misrepresented authorship and forged mental health determinations.

**D  |  Judicial and Evidentiary Misconduct**

152.    This metadata evidence, combined with the court's reliance on the report to declare Guertin incompetent, supports a compelling claim of intentional evidentiary fraud and due process violations under color of law, with significant constitutional implications under the Fifth and Fourteenth Amendments.

**E  |  Relevance to Conspiracy and RICO Claims**

153.    The direct involvement of a Justice IT official in the metadata signature, when combined with the report's decisive role in suppressing Guertin's rights, ties this forgery to broader allegations of systemic document tampering and supports his federal claims under 18 U.S.C. §§ 1961–1968 (RICO), particularly with respect to predicate acts involving wire fraud, obstruction of justice, and civil rights deprivation.

## XIV.  'ODYSSEY MERGE BATCH PRINT JOB' METADATA SIGNATURE

154.    The document submitted into Guertin's court record on January 31, 2025, titled "Notice of Case Reassignment" and logged at Index 120 in the docket, contains key

forensic metadata that exposes the document as part of a centrally scripted, mass-generated series of synthetic filings.

RELEVANT METADATA (Guertin Docket Entry – Jan 31, 2025):

- Author: HoopmanA
- Creator Tool: PScript5.dll Version 5.2.2
- Producer: Acrobat Distiller 24.0 (Windows)
- Title: Odyssey Merge Batch Print Job

155.    This metadata is not incidental—it aligns with a known, limited subset of documents within the broader MCRO dataset of 3,601 court records that Guertin forensically harvested and analyzed.

**A   |   Cross-Reference Findings from MCRO Dataset**

156.    The author "Hoopmana" (lowercase "a") appears in only 3 documents total across the entire dataset.

( **see "09_MCRO_file-metadata.xlsx" at MnCourtfraud.Substack.com/p/01-mcro** )

All 3 documents list:

- Title: Odyssey Merge Batch Print Job
- Creator Tool: PScript5.dll Version 5.2.2
- Producer: Acrobat Distiller 23.0 (Windows)

The three filings authored by "Hoopmana" are for the following synthetic case numbers:

- 27-CR-21-20529
- 27-CR-22-5532
- 27-CR-22-7953

157.    All three filings concern the same synthetic defendant, "Isaac Lee Kelley," who is clearly a fabricated entity within the synthetic docket matrix.

**B   |   Statistical Revelation**

158.    Across all 3,601 MCRO PDF files, there are exactly 20 filings with the metadata Title value:

"Odyssey Merge Batch Print Job"

Of those 20:

- 3 are authored by "Hoopmana" (synthetic Isaac Kelley cases)
- 17 are authored by "lakee"

All 20 filings, without exception, share the filing type:

"Notice of Case Reassignment"

159.   This includes the January 31, 2025 filing entered into Guertin's own case—linking it directly to this specialized, centrally-produced batch.

## C   |   Key Legal Implications

### 1.   Centralized Scripted Filing Process

160.   The Title value "Odyssey Merge Batch Print Job" is not user-assigned—it is programmatically generated by the internal Odyssey court case management system during automated batch print runs. The consistent pairing of this title with the tool PScript5.dll and Distiller metadata confirms that these documents are not judge-authored filings, but rather machine-produced bulk reassignment documents.

### 2.   Synthetic Defendant Linkage

161.   Guertin's case is now verifiably linked via metadata to a series of fabricated filings concerning synthetic defendant "Isaac Lee Kelley." This interconnection is not coincidental, especially in light of the sheer rarity of these metadata values.

### 3.   Author Identity Irregularities

162.   The entry into Guertin's docket is authored by "HoopmanA" (uppercase "A"), while the three synthetic cases are authored by "Hoopmana" (lowercase "a")—a seemingly minor but forensically highly specific digital identifier of user accounts or credentialed systems used during document generation.

**4.      Software Timestamp Consistency**

163.    The three synthetic filings were produced using Adobe Distiller 23.0, while Guertin's document shows Adobe Distiller 24.0, representing a consistent, logical software version update across time—further confirming same-system or same-process lineage.

**5.      Implication of Hennepin County Court Staff**

164.    The repeated appearance of these batch-print signatures, all tied to filings that are administrative in nature, suggests that these documents were produced from within the internal administrative infrastructure of the Hennepin County Court—not by any individual judicial officer.

**6.      RICO Predicate Evidence**

165.    The metadata pattern described here directly supports Guertin's RICO claims under 18 U.S.C. § 1961(1) by evidencing a centralized, programmatic scheme to falsify court records across multiple synthetic cases using the same internal tools. It constitutes:

- Wire fraud (fabrication of federal court filings),
- Obstruction of justice (tampering with official docket content), and
- Deprivation of civil rights under color of law (using these synthetic filings to influence Guertin's prosecution and legal status).

## XV.  METADATA EVIDENCE TYING GUERTIN'S DISCOVERY FRAUD CLAIM TO SYTHETIC COURT MATRIX

166.    On April 4, 2024, Matthew Guertin filed a pro se Motion to Compel Discovery (Index #29 in criminal case docket 27-CR-23-1886), in which he first formally documented and raised objections to the legitimacy of the materials received in the so-called "Set B" discovery, which had been delivered to him on August 3, 2023 by his court-appointed attorney Michael Biglow. This submission marked the initial

establishment of file-level metadata irregularities into the official court record and flagged them as potentially manipulated.

167.    The metadata contained within this discovery set reflects highly anomalous attributes:

- **Author/Creator: JSF254**
- Creator Tool: PScript5.dll Version 5.2.2
- XMP Toolkit: Adobe XMP Core 9.1-c001 79.2a0d8d9, 2023/03/14-11:19:46

168.    Conversely, a search of the broader MCRO metadata dataset reveals that the author/creator string format used in "JSF254" matches 26 entries across unrelated synthetic dockets, including variations such as:

- "JSD921" (4 documents)
- "JSG214" (1 document)
- "JSM332" (15 documents)
- "JSU203" (6 documents)

169.    Each of these IDs uses the same structured prefix ("JS") followed by an alphanumeric identifier, a schema suggesting a centralized, system-generated authoring convention used across multiple synthetic case files.

( see "09_MCRO_file-metadata.xlsx" at MnCourtfraud.Substack.com/p/01-mcro )

170.    These findings now validate and substantiate Guertin's original discovery fraud claim, filed over a year prior, and elevate the incident from individual prosecutorial misconduct to evidence of a coordinated, state-level document fabrication architecture.

## XVI.   FINAL METADATA ANOMALIES CORROBORATING SYSTEMIC DOCUMENT FABRICATION AND SYNTHETIC DOCKET MATRIX

171.    To close the extensive evidentiary analysis of metadata anomalies across the MCRO digital case archive and Guertin's personal docket, a final series of metadata irregularities—individually subtle but collectively powerful—further reinforce the

conclusion that a centrally managed, synthetic docket architecture exists and was applied to Plaintiff's case.

172.   Each of the following anomalies is rooted in official court filings that appear in Guertin's own docket, yet contain metadata inconsistent with conventional authorship attribution, procedural generation, or e-filing standards typically observed within the Minnesota Judicial Branch's Odyssey case management infrastructure:

**1.    December 30, 2024 – "Objection to Competency" (Index #117):**

173.   While filed by public defender Raissa Carpenter, the document metadata lists Andrew Reiland II as its author. Mr. Reiland is a known figure within the public defender's office but is also extensively represented within the broader synthetic docket matrix—raising substantial concerns about cross-contamination between authentic filings and synthetically authored content.

**2.    January 14, 2025 – "Demand or Request for Discovery" (Index #118):**

174.   Also filed under the name of Raissa Carpenter, this document instead lists its author as Camille A. King. This author does not appear anywhere in Guertin's case otherwise, nor does King show a known procedural link to Guertin's defense. The insertion of such a name into document metadata raises further red flags regarding document origin.

**3.    April 3, 2025 – Judge Koch's Order Determining Competency (Index #127):**

175.   Although this is a judicial order signed by Judge Koch, it is authored by Hansen, Isabel and includes a metadata company affiliation of "Minnesota Judicial Branch." As with other cases, this reflects the internal production of judicial documents by a separate and potentially unsupervised administrative layer, distancing the named judge from actual authorship.

176.   Notably, this order wasn't produced until nearly a month after the March 5 hearing, and only appeared after Plaintiff text messaged Raissa Carpenter

and asked where it was due to there still being a scheduled hearing on the docket in front of Judge Hudelston on April 17, 2025 - only for it to then magically appear the very next day following Plaintiff's text message indicative of behind the scene's actions taking place.

4.    **April 29, 2025 – Rule 20.01 Evaluation Order and Forensic Navigator Appointment (Indexes #187 and #188):**

177.    These two pivotal documents—filed the same day Guertin was subjected to an unprecedented fourth Rule 20 competency referral—were both authored by "burrowsp", and list the creator tool as "PScript5.dll Version 5.2.2," consistent with high-volume, automated PDF generation workflows. The uniform authorship and toolchain metadata across two distinct court orders on the same day highlights the mechanistic, rather than judicial, origin of these filings.

5.    **April 29, 2025 – "Notices of Hearing" (Indexes #185 and #186):**

178.    Filed in connection with the same Rule 20 hearing, these two documents lack the Odyssey eFiling signature metadata typically appended in the "Producer" field (e.g., "modified using iText® 7.1.16 ©2000-2021 iText Group NV (Minnesota Judicial Branch; licensed version)"). Their absence strongly suggests an alternative method of insertion into the docket, bypassing official procedural generation pathways and potentially indicating synthetic injection.

6.    **May 30, 2025 – "Order Other" Filed by Judge Hudleston (Index #190):**

179.    <u>For the first and only time across Guertin's entire docket, this document lists "Sarah Hudleston" as the author, directly matching the judicial officer named on the order.</u> This development occurred only after Guertin submitted extensive metadata evidence into his own docket on April 28, 2025, along with the detailed digital forensic analysis submitted into his Minnesota Court of Appeals case A25-0882, conclusively exposing the centralized forgery apparatus behind his case files.

45

180.    The sudden appearance of judicial-authored metadata—after years of total absence—represents not only a departure from previous document authorship practices but a reactive correction that appears designed to convey authenticity in response to Guertin's now-public allegations and forensic disclosures.

181.    Together, these anomalies represent direct manifestations of covert manipulation within Guertin's docket, demonstrating irregular authorship, improper insertion workflows, and metadata inconsistencies that would not occur through standard judicial or clerical processes. Their existence is incompatible with the integrity and procedural reliability of the Odyssey document system, and directly support Plaintiff's assertion that his case has been subsumed into a broader synthetic docket operation designed to simulate legitimate judicial process while serving a concealed and unlawful agenda.

## XVII.  OVERVIEW OF EMBEDDED FONT TRACKING CODES

182.    Guertin's forensic analysis of over 4,400 embedded font file entries extracted from court-issued PDFs reveals a highly irregular and statistically improbable correlation between unique font subset codes and individual synthetic defendants. Each entry includes a SHA-256 hash value identifying a specific embedded font, a six-letter TTF code (font subset tag), and corresponding metadata (case number, filing type, defendant name, etc.).

( **see Report 11 at MnCourtFraud.Substack.com/p/digital-forensic-reports** )

183.    After sorting these entries by their SHA-256 hash values, Guertin identified 909 unique embedded fonts used across the dataset.

Of those:

681 (≈75%) were exclusive to the filings of a single defendant.

The remaining 228 hashes appeared across multiple defendants but generally formed tight clusters explainable only by template reuse, file duplication, or aliases for the same individual.

184. For instance, the font code OLGBLK appears only in two documents tied to Ifrah Abdullahi Hassan—never in any other defendant's filings—strongly suggesting a one-to-one tagging system. In another case, a font shared between "Angelic Denise Nunn" and "Angelic Denise Schaefer" appears to trace the same individual under different names.

185. When broader sharing of font hashes occurs, it is most often among standardized boilerplate filings (e.g., notices of hearing or incompetency commitment orders), which strongly supports the theory of form reuse and document templating, rather than any random or organic file generation.

186. The recurrence of the same six-letter font subset codes across unrelated documents—where statistical collision under random generation is essentially impossible —strongly implies the existence of a purposeful tagging or watermarking mechanism embedded in each file. The tracking behavior functions in two primary ways:

187. Per-Defendant Font Fingerprinting: Many defendants' PDFs contain font subset codes not seen in any other case file, effectively watermarking the file to that person. Template Duplication Evidence: Fonts reused across multiple defendants in boilerplate documents expose mass-replicated filings that betray the appearance of individually adjudicated cases.

188. These findings conclusively indicate that the PDF font embedding process was not incidental or randomized. Rather, embedded fonts operated as covert tracking codes—tagging each synthetic defendant's documents with unique or semi-unique identifiers. This technique enables both internal tracing of document leaks and indicates the mass production of synthetic court files across what purports to be independent legal cases.

## A   |   Insertion of a Hidden .CFF Font Object Across Guertin's Filings

189. A critical digital artifact has been identified within Guertin's case file metadata—specifically, a hidden embedded .cff font file with the following unique SHA-256 hash:

"427af119.....a4893f95"
**( see MnCourtFraud.com/File/427af119.....a4893f95.cff )**

190.    This concealed font object has now been conclusively identified in four separate documents filed into Guertin's own docket, including the pivotal April 3, 2025 "Order Finding Defendant Competent to Proceed" entered under Judge Koch's name but digitally authored by court staffer "Isabel Hansen."

191.    When this same cryptographic hash is queried across the forensic metadata archive of the MCRO Dataset, it is revealed to appear identically in 165 synthetic case documents. Most strikingly, a substantial number of these are fraudulently timestamped to appear as though they originated as early as 2017, including multiple filings associated with the fictitious defendant Adrian Michael Wesley—the same fabricated persona tied to Guertin's case through metadata anomalies in filings by Minnesota Department of Health attorney, and named defendant, Alisha Nehring.

192.    These documents—portrayed as legitimate court records from eight years ago—are not authentic. Rather, they are recent creations, programmatically generated using advanced PDF production toolchains, then backdated and artificially aged through metadata manipulation. The presence of a modern embedded object with a unique digital hash—matching across both Guertin's active case and these supposed "archival" records—confirms this beyond doubt.

193.    The use of this .cff file as a covert digital tagging mechanism ties Guertin's real-world court filings to a preconstructed web of fake dockets that collectively form the foundation of what Guertin now exposes as a synthetic court matrix. Its covert reappearance within documents filed into Guertin's docket well into 2025, even after his public exposure of fraud and metadata anomalies, demonstrates ongoing manipulation of live court records using templated components shared across real and fictitious dockets.

194.    This revelation alone provides:

- Definitive digital linkage between Guertin and the artificial "Adrian Wesley" case series.

48

- Proof of centralized authorship and control of supposedly independent judicial records.

- A direct demonstration of RICO predicate acts involving document forgery, obstruction of justice, and wire/mail fraud through falsified court communications.

195.    The backdating scheme and use of embedded cryptographic markers such as this .cff file reflect systematic efforts to falsify legal history. Guertin's filings are not merely "linked" to synthetic records—they are being digitally ingested, modified, and tagged to falsely situate him within an engineered judicial narrative.

## B  |  Font-Based Digital Tagging, and the Real-Time Editing

196.    The forensic architecture of the synthetic court matrix exposed through Guertin's metadata analysis reveals not merely document forgery but the operation of a digitally governed, real-time updating system capable of altering court records on demand. At the core of this infrastructure is the covert use of embedded .ttf and .cff font files—specifically injected into judicial PDF documents—as hidden control mechanisms.

197.    A critical revelation emerged from the analysis of Guertin's July 13, 2023 "Finding of Incompetency and Order" (Docket Index #19) and a second duplicate order entered the same day under a different filing type ("Order-Other," Index #20). Although these two filings are visually indistinguishable, forensic comparison uncovered that the second version contains two additional embedded font files—a pair of .ttf font objects with the following SHA-256 hash values:

Arial   "b50a0345.....26e17692"
**( see MnCourtFraud.com/file/b50a0345.....26e17692.ttf )**

COLNXP+ArialMT   "1fa67c75.....8edecef8"
**( see MnCourtFraud.com/file/1fa67c75.....8edecef8.ttf )**

198.    This precise pair of font files is now known to appear—together and exclusively—in 1,021 other documents across the synthetic court dataset, which collectively span 160+ unique case numbers. Their systematic use across this fabricated docket network confirms they were not merely decorative fonts, but intentional digital

tags embedded to function as invisible classification markers—linking Guertin's case to an artificial, pre-structured court narrative.

( **see MnCourtFraud.Substack.com/p/03-sha-256, "06_SHA-256_ttf-font-codes.xlsx"** )

## C   |   Real-Time Update Infrastructure

199.   When considered alongside additional findings (including .cff file hash clustering and temporal metadata inconsistencies), these font injections appear to serve as digital control flags within a dynamic, AI-managed document system. This system is capable of:

- Grouping synthetic case records using invisible digital markers.
- Tracking, altering, or erasing court filings in real time using internal hash-based triggers.
- Deploying synchronized changes across cases—such as inserting attachments, modifying judicial signatures, or rewriting orders.

200.   The July 13 duplicate order appears to be a "flagging event"—a silent designation marking Guertin's record for inclusion in this synthetic class and activating a regime of downstream manipulation. This same mechanism appears to have been used repeatedly across the synthetic docket to ensure cohesion, update fidelity, and back-end control of the digital case narrative.

## D   |   RICO Implications and Intent to Obstruct

201.   The deliberate insertion of hidden digital triggers across 1,000+ case files implicates a coordinated enterprise consisting of state actors, IT staff, mental health professionals, and administrative court personnel operating under color of law. The objective: to simulate a functioning legal system while managing a false reality—complete with forged mental health diagnoses, fake Rule 20 exams, and contrived court orders—designed to detain, discredit, and erase targeted individuals.

202.   The systemic nature of this operation supports predicate acts under 18 U.S.C. §§ 1961(1), 1962(c) and (d), including:

- Mail and wire fraud via dissemination of false judicial orders.

- Obstruction of justice through tampering with evidence and court records.
- Use of false documents under official government seals.
- Conspiracy to deprive constitutional rights under 42 U.S.C. § 1985(3).

**E  |  Deletion as the Endgame**

203.   The chilling conclusion is inescapable: this system is not simply about synthetic case generation—it enables synthetic case editing and erasure. By embedding hidden update triggers across dockets, the high-level perpetrators gain control not only over the content of the legal record, but its existence. If a document, order, or case must be rewritten or eliminated, it can be done silently—without audit trail, signature change, or external visibility.

204.   This theory is validated by the "Mother's Letter" incident, where Guertin's external, physical communication triggered immediate systemic reactions—requiring real-time digital reconfiguration of his judicial filings to maintain narrative control.

**( see MnCourtFraud.Substack.com/p/mothers-letter-smoking-gun )**

205.   That event is demonstrable evidence that the synthetic court matrix is adaptive, and that once an individual is digitally assimilated into this environment, their legal existence becomes mutable at will.

The logical implication is clear: the enterprise behind this matrix did not intend to merely commit Guertin indefinitely—they intended to erase him. Bureaucratically, legally, and literally.

**( see MnCourtFraud.com/File/JULY-13__guertin.csv, and 'JULY-13__links.csv' )**

## XVIII.   CLAIMS AGAINST STATE OFFICIALS

**A  |  Tim Walz, Governor of Minnesota**

206.   Involvement: Chief executive with direct oversight over the Minnesota Department of Human Services, state judiciary appointments, and systemic policy enforcement. Named due to knowing acquiescence or reckless indifference to the operation of a judicial and psychiatric fraud enterprise under his administration.

1.   **Failure of Executive Oversight Enabling Systemic Constitutional Violations**

207.   As Governor, Tim Walz bears ultimate executive responsibility for the operations of the State of Minnesota, including oversight of its judiciary (through appointments and coordination), the Department of Human Services (DHS), and public accountability mechanisms. Under his leadership, the 4th Judicial District (Hennepin County) has become the operational hub of a synthetic docket fraud scheme wherein fabricated court records, falsified psychiatric evaluations, and ghost prosecutions are used to deprive individuals of liberty without trial.

2.   **Pattern of Deliberate Indifference to Ongoing Civil Rights Abuses (42 U.S.C. § 1983)**

208.   Despite public records, federal complaints, and evidence submitted directly into court proceedings—including those naming Walz in his official capacity—there has been no meaningful inquiry or corrective action. This constitutes deliberate indifference to widespread violations of due process, equal protection, and the right to a jury trial, and therefore supports § 1983 liability.

3.   **Executive Culpability in Facilitating Fraudulent Psychiatric Detentions Without Trial**

209.   Governor Walz presides over a state where it is now demonstrably possible for residents to be indefinitely confined in state psychiatric institutions—not through conviction or a jury determination—but through the administrative opinions of psychologists installed in falsified cases. These involuntary detentions stem from mass-produced Rule 20.01 competency reports authored by unidentified third parties and inserted into fictitious dockets—all while the Minnesota Court Records Online (MCRO) system reflects them as legitimate.

4.   **Failure to Secure Integrity of the State's Judicial Record System (MCRO)**

210.   The MCRO system is a statewide digital court records portal intended to guarantee transparency and public access to authentic judicial records. Instead, it now houses thousands of AI-generated, image-based, and metadata-corrupted case files which serve to normalize systemic due process violations and cloak an unlawful psychiatric commitment regime. As the state's chief executive, Walz has failed to ensure the integrity, legitimacy, and constitutional compliance of this critical records infrastructure.

5.   **Racketeering Act Predicate – Supervisory Role Over Agencies Facilitating  Fraud (18 U.S.C. § 1962(d))**

211.   Governor Walz is not alleged to have authored fraudulent filings himself, but his continued failure to intervene or investigate after repeated notice implicates him in a pattern of willful blindness to the operation of a racketeering enterprise. By virtue of his office and the clear evidence now on record, Walz's failure to stop DHS and judicial actors from weaponizing Rule 20 procedures against innocent parties constitutes acquiescence to RICO violations.

6.   **Violation of Oath and Dereliction of Constitutional Duties**

212.   By allowing unconstitutional psychiatric confinement schemes to proceed without intervention—despite mounting public and legal notice— Governor Walz has abandoned his duty to "faithfully execute" the laws of Minnesota and the United States. His silence in the face of a documented digital and procedural fraud operation amounts to complicity in state-sponsored civil rights abuse.

**B   |   Keith Ellison, Minnesota Attorney General**

213.   Involvement: Named for direct supervisory responsibility over the State's legal integrity, and for constructive knowledge and continued inaction regarding systemic

discovery fraud, procedural obstruction, and synthetic court record manipulation affecting both the criminal and civil rights of Matthew Guertin and other citizens.

### 1.   Repeated Notice and Constructive Knowledge of Fraud in Judicial Proceedings

214.   Keith Ellison and the Office of the Attorney General have been on notice since at least May 10, 2024, when Guertin first filed his Petition for Discretionary Review in the Minnesota Court of Appeals—raising allegations of falsified discovery evidence and fraudulent mental health evaluations. The Attorney General's Office was again served with Guertin's federal civil rights complaint (Guertin v. Hennepin County, 24-cv-2646) in which Ellison was named as a defendant. Throughout that federal litigation, Guertin presented forensic evidence of tampered discovery (including "Set C") and pursued an interlocutory appeal to the Eighth Circuit.

### 2.   Ongoing Failure to Address Known Discovery Fraud and Evidence Suppression (42 U.S.C. § 1983)

215.   Despite now having received—and failed to respond to—multiple rounds of demonstrably fraudulent discovery materials (Sets A–D), Ellison's office has taken no corrective legal action, nor opened any investigatory inquiry. Instead, on February 13, 2025, "Set D" was provided, definitively confirming prior discovery fraud, yet it remains unacknowledged and continues to be actively suppressed. Guertin has now tied this evidence of suppression directly to constitutional deprivations and due process violations in the ongoing criminal matter.

### 3.   Prosecutorial Misconduct and Perjury by State Attorneys Under AG Supervision

216.   Assistant Hennepin County Attorney Mawerdi Hamid—who is listed as counsel in Guertin's appellate case (A25-0882) using an @ag.state.mn.us address—has been proven to have made false statements regarding fraudulent discovery materials, directly contradicted by transcript evidence submitted in

support of Guertin's June 4, 2025 Emergency Motion for Stay Pending Appeal [7] in case A25-0882 in the Minnesota Court of Appeals. The fact that a prosecutor acting under the Attorney General's supervision submitted materially false statements in a live appellate proceeding, with no retraction or disciplinary follow-up, implicates Ellison in a cover-up or reckless disregard.

### 4.    Supervisory Liability for RICO Predicate Acts (18 U.S.C. § 1962(c), (d))

217.    As chief legal officer for the State of Minnesota, Ellison's continued tolerance of procedural manipulation, falsified court filings, perjury by state actors, and obstruction of justice renders him liable under supervisory theories for participation in or allowance of a racketeering enterprise. His office has been served in three separate legal proceedings by Guertin—all centered on the same themes of document forgery, fraudulent incompetency findings, and fabricated court proceedings. Continued inaction constitutes acquiescence and complicity in the predicate acts underlying the RICO conspiracy.

### 5.    Breach of Fiduciary and Constitutional Duty to Protect the Legal System's Integrity

218.    The Attorney General is entrusted with upholding the rule of law. When faced with overwhelming evidence of judicial fraud, synthetic criminal dockets, and unverified psychiatric detentions, Ellison not only failed to act, but allowed State attorneys under his supervision to perpetuate false narratives and obstruct judicial review. His silence and refusal to intervene—despite forensic exhibits, transcript contradictions, and ongoing appeals—make him a key enabling actor in the constitutional collapse Guertin is now litigating.

---

7  A25-0882 Emergency Motion for Stay |
Courtlistener.com/docket/68925331/115/guertin-v-hennepin-county/

**C   |   Alisha Nehring, Minnesota Department of Health Attorney**

219.   Title/Role: Associate General Counsel, Minnesota Department of Health (2022–Present); former Unemployment Law Judge (2020–2022); former 4th Judicial District law clerk to Judge Carolina Lamas (2014–2020).

( **see MnCourtFraud.substack.com/p/alisha-nehring** )

### 1.   Nature of Involvement

220.   Defendant Nehring is directly implicated in the creation and propagation of fraudulent court filings integral to the synthetic case matrix. Document metadata shows her listed as author and creator on 27 separate court filings across the 163-case MCRO dataset, including the sole "Order for Continuance" entered into Plaintiff's case on June 14, 2023. This order references a non-existent motion, and the metadata "title" explicitly links it to the synthetic "Adrian Wesley" commitment cases, exposing cross-docket fabrication.

221.   Notably, Nehring authored all three of the "Find of Fact-Order, Pet Commitment-Dfd Found Incompetent" filings for the Adrian Wesley trinity, foundational to the long-term indefinite commitment scheme central to the enterprise. Her filings are digitally signed by Judges Lamas, Janzen, Browne, and Dayton Klein—often using identical signature hashes recycled across years, further confirming document fabrication.

222.   Nehring's systemic role is evident from her pattern of repeated involvement in templated, forged filings—including orders to transport, orders for continuance, and fabricated findings of fact—many of which contain unique hash and title anomalies and match precisely with her assigned authorship in metadata tables. She forms a core operational node in the criminal enterprise, consistently appearing alongside similarly implicated actors Judith Cole and Amanda Burg across synthetic dockets.

2.    **Legal Claims Asserted Against Alisha Nehring**

- 42 U.S.C. § 1983 – Fourteenth Amendment (Due Process Violations)
    - ○ 223.    Authored and injected fraudulent judicial orders into active dockets, depriving Plaintiff of liberty interests and undermining the integrity of the judicial process through deliberate falsification of court records.

- 42 U.S.C. § 1983 – First and Sixth Amendments:
    - ○ 224.    Directly contributed to retaliatory procedural manipulation, including false filings that impaired Plaintiff's ability to access the courts and forced extended delays under false pretenses.

- 18 U.S.C. § 1962(c) – RICO Participation:
    - ○ 225.    Operated as an active participant in a racketeering enterprise by generating counterfeit court orders used to justify synthetic detentions and fraudulent commitments.

- 18 U.S.C. § 1962(d) – RICO Conspiracy:
    - ○ 226.    Conspired with known participants including Judith Cole and Amanda Burg to coordinate mass document fabrication and simulate judicial legitimacy in non-existent or manipulated proceedings.

## XIX.   CLAIMS AGAINST COUNTY ENTITY AND SENIOR OFFICIALS

**A   |   Hennepin County, a municipal entity**

227.   Entity: Hennepin County (municipal corporation and political subdivision of the State of Minnesota)

### 1.    Monell Liability for Systemic Constitutional Violations (42 U.S.C. § 1983)

228.   Hennepin County is liable under Monell v. Dept. of Social Services, 436 U.S. 658 (1978), for maintaining policies, customs, or practices that have resulted in widespread and deliberate indifference to the constitutional rights of

criminal defendants. Plaintiff Matthew Guertín previously named Hennepin County under a Monell claim in his 2024 federal suit; the evidentiary basis for such liability has since expanded exponentially through forensic validation of systemic misconduct. That misconduct now includes coordinated judicial forgery, digital evidence tampering, fraudulent mental health reports, and suppression of exculpatory discovery.

**2.     Institutional Participation in a Criminal Conspiracy (18 U.S.C. §§ 1962(c), (d))**

229.   The breadth of documented participation by Hennepin County employees—including judges, prosecutors, public defenders, court administrators, and mental health professionals—establishes the County as an enterprise through which predicate RICO acts were conducted. These acts include but are not limited to: forgery, wire fraud, obstruction of justice, and deprivation of rights under color of law. The scale and uniformity of synthetic court filings tied to County officials proves this is not isolated misconduct but a coordinated operation facilitated by County infrastructure and personnel.

**3.     Forensic Evidence of Document Fabrication and Metadata Tampering**

230.   Guertin has submitted digital forensic proof that Hennepin County's case file records were altered using unauthorized access to the Odyssey E-File system. All PDF filings at issue bear cryptographic signatures from official court accounts, but metadata analysis reveals they were authored by third parties— sometimes years after the supposed date of filing. Hennepin County's failure to maintain secure court systems, or its direct complicity in using them to file false documents, constitutes actionable municipal misconduct.

**4.     Tampering with Digital Discovery and OneDrive Forensics**

231.   Plaintiff has demonstrated that discovery materials shared via the County's OneDrive cloud system were digitally manipulated to reflect false timestamps (e.g., photographs fraudulently appearing as uploaded in February

2023). Further analysis revealed uniform aspect ratio tampering, exposing deliberate attempts to conceal digital alteration. These manipulations undermine the integrity of all evidence produced by the County and suggest direct involvement by technical administrators or supervisory personnel. Guertin raised these anomalies repeatedly, including through detailed exhibits submitted on February 28, 2025, but was met only with obstruction.

## 5.  Ongoing Due Process Violations Through Fraudulent Legal Proceedings

232.   Hennepin County continues to prosecute Guertin using forged court documents, perjured psychiatric evaluations, and knowingly falsified discovery. The County has enabled the operation of a parallel synthetic case system, fabricated dockets, and potentially fictitious judicial assignments—all designed to circumvent due process protections and facilitate indefinite psychiatric confinement. These acts render any proceedings fundamentally illegitimate and violate the core constitutional protections guaranteed under the Fifth and Fourteenth Amendments.

## 6.  Failure to Secure Public Judicial Systems and Safeguard Civil Rights

233.   Given the scale of the synthetic docket scheme, the only logical inference is that County IT administrators or justice system supervisors either facilitated or willfully ignored gross breaches of digital security in MCRO and related systems. The court's own documents have been proven false—by digital signature, by authorship metadata, and by structural improbabilities. Hennepin County has therefore failed to maintain any legitimate court apparatus within the meaning of "court of law," making the continued pretense of lawful adjudication a due process sham.

## B   |   Mary Moriarty, Hennepin County Attorney

234.   Defendant Mary Moriarty is the elected Hennepin County Attorney and serves as the chief legal officer responsible for supervising all criminal prosecutions

initiated by her office. She is a standing member of the Hennepin County Criminal Justice Coordinating Committee, alongside other named Defendants including Chief Public Defender Michael Berger, Chief Judge Kerry Meyer, Assistant County Administrator Chela Guzman-Wiegert, Presiding Criminal Judge Hilary Caligiuri, and Presiding Juvenile Judge Todd Fellman.

235.   Moriarty is sued in her official and individual capacities for her role in failing to supervise, train, or discipline her subordinates in the Hennepin County Attorney's Office—including Judith L. Cole, Mawerdi Hamid, and Jacqueline Perez—all of whom participated in documented acts of fraud, perjury, evidence tampering, and the perpetuation of unconstitutional psychiatric detention schemes.

236.   Plaintiff has made continuous efforts since early 2023 to challenge fraudulent discovery practices and document manipulation in his criminal case, all of which were carried out by attorneys directly under Moriarty's purview. These efforts include multiple filings, formal motions, and presentations of forensic evidence—none of which have been meaningfully addressed by her office. Instead, her Attorneys have responded with demonstrably false representations in court, including under oath, in an effort to suppress these claims and advance a prosecution based on fraudulent materials.

237.   While Moriarty may not have authored or signed the specific filings at issue, she has long been on notice of the pattern of misconduct within her office. As the head policymaker, she retains ultimate responsibility under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for failing to implement systems of accountability and for acquiescing to a culture of deliberate indifference to constitutional rights.

238.   Her continued silence and inaction in the face of mounting, documented misconduct by multiple subordinates—including their involvement in the fabrication of Rule 20 psychiatric reports, the use of forged discovery documents, and coordinated acts of retaliatory litigation—support a reasonable inference that her failure to intervene is knowing and willful. Plaintiff alleges that Moriarty's conduct contributed materially to

the injuries he suffered through prolonged legal jeopardy, reputational harm, and the imminent threat of unlawful psychiatric detention.

1.   **Claims Asserted Against Moriarty**

- 42 U.S.C. § 1983
  - ○ 239.    Supervisory liability for First, Fourth, Sixth, Eighth, and Fourteenth Amendment violations

- 42 U.S.C. § 1983
  - ○ 240.    Monell liability for unconstitutional policies or customs

- 42 U.S.C. § 1985
  - ○ 241.    Conspiracy to interfere with civil rights

- 18 U.S.C. § 1962(c), (d) RICO (participation and conspiracy)
  - ○ 242.    Injunctive relief – to enjoin prosecutorial misconduct and refer conduct for criminal review

### C  |  Judith L. Cole, Sr. Assistant Hennepin County Attorney

243.   Defendant Judith L. Cole is a Senior Assistant Hennepin County Attorney assigned to Plaintiff's criminal prosecution. Despite this formal assignment, Plaintiff has never interacted with Cole directly—an unusual circumstance that takes on greater significance in light of substantial digital forensic evidence linking her to a broader synthetic case matrix operating within the Fourth Judicial District.

( see **MnCourtFraud.Substack.com/p/judith-l-cole** )

244.   Cole's metadata signature appears in at least 84 court filings dating from 2017 through 2022, the overwhelming majority of which are linked to psychiatric commitments and competency findings, many bearing identical or repeat signature hashes from Judges Lisa Janzen, Carolina Lamas, and Gina Brandt. These filings exhibit batch-generation characteristics, uniform structure, and templated metadata fields. Moreover, 63 of the 84 filings attributed to Cole have signature or layout matches elsewhere in the MCRO dataset, revealing mass replication of "Findings and Order" and "Order-Other" documents across unrelated dockets.

245.  In Plaintiff's case—the only one out of 53 assigned to Cole where her role is marked "active" (in contrast to "inactive" across all others)—Cole appears solely on paper, without any traceable courtroom involvement. The inverse is true for another attorney, Thomas Prochazka, who is active only in Plaintiff's case and inactive in all others. The joint probability of these status anomalies occurring by chance is less than 0.3%, supporting a strong inference of non-random assignment tied to synthetic docket construction.

246.  Plaintiff's forensic review of document metadata across tens of thousands of case files places Cole among the core set of state actors—alongside Kristen Otte, Amanda Burg, and Alisha Nehring—who appear repeatedly in the earliest fabricated psychiatric commitment cases used to establish a narrative of prolonged incompetency restoration at Minnesota's State Security Hospital. Her metadata consistently shows up as both "author" and "creator" on key filings despite her total absence from the courtroom, suggesting a behind-the-scenes administrative role in the mass production of fraudulent filings to support unlawful detention under color of law.

**1.   Claims Asserted Against Cole**

- 42 U.S.C. § 1983
  - 247.      Participation in violations of Fourth, Sixth, Eighth, and Fourteenth Amendments

- 42 U.S.C. § 1983
  - 248.      Supervisory and administrative liability for unconstitutional case construction

- 42 U.S.C. § 1985
  - 249.      Conspiracy to interfere with civil rights

- 18 U.S.C. § 1962(c), (d) – RICO participation and conspiracy
  - 250.      (synthetic filing ring) Declaratory and injunctive relief to enjoin use of fraudulent filings and refer for criminal review

**D   |   Chela Guzman Wiegert, Assistant County Administrator**

251.  Title/Role: Assistant County Administrator for Law, Safety, and Justice, Hennepin County.

1.    **Nature of Involvement**

252.    Defendant Guzman-Wiegert is a high-ranking official tasked with strategic oversight and information infrastructure for multiple agencies implicated in the coordinated deprivation of Plaintiff's rights—including the Public Defender's Office, County Attorney's Office, Fourth Judicial District Court, and the Sheriff's Office. She also oversees Law, Safety and Justice Information Technology systems, and serves as the county's administrative liaison to all major justice agencies.

253.    Critically, Guzman-Wiegert is identified in metadata suggesting direct authorship or systems-level access to synthetic filings. This is consistent with her role overseeing IT infrastructure across justice sectors. Her unique position at the administrative center of cross-agency coordination renders her participation in the scheme probable and materially significant. As the individual responsible for policy oversight and justice partner coordination, she had both the authority and obligation to detect and intervene in fraudulent processes—yet failed to act.

254.    Guzman-Wiegert was named in Plaintiff's prior civil rights lawsuit and remains a central figure given the demonstrable data anomalies, metadata authorship links, and high-level involvement in coordinating justice sector agencies.

2.    **Legal Claims Asserted Against Chela Guzman-Wiegert**

- 42 U.S.C. § 1983 Fourteenth Amendment (Deliberate Indifference / Supervisory Liability):
  - 255.    Responsible for administrative oversight over IT systems and interagency coordination. Failed to detect or address known irregularities, including falsified metadata, fabricated filings, and constitutional rights violations occurring under her purview.

- 42 U.S.C. § 1983 – Fourth and Sixth Amendments:
  - 256.    Oversaw technological systems that enabled or facilitated unauthorized psychiatric data access, unlawful seizure of medical

records, and concealment of exculpatory filings in violation of
Plaintiff's liberty and fair trial rights.

- 18 U.S.C. § 1962(c) – RICO Participation:
  - 257.        Participated in the affairs of the enterprise by facilitating
    technological and administrative infrastructure supporting fraudulent
    court activity and aiding concealment of evidence via county-level data
    systems.

- 18 U.S.C. § 1962(d) – RICO Conspiracy:
  - 258.        Conspired with justice sector actors to maintain systemic
    fraud and protect the continuity of the enterprise through institutional
    silence and failure to audit, intervene, or correct known misconduct.

## E | Michael Berger, Chief Public Defender, Hennepin County

259.   Defendant Michael Berger is the Chief Public Defender of Hennepin
County and oversees all staff attorneys and operations within the Hennepin County
Public Defender's Office. Although Berger does not appear by name in Plaintiff's
individual case file, his role as head of the office renders him responsible for the overall
integrity and constitutional fidelity of the legal representation provided by his attorneys.

260.   Berger is a standing member of the Hennepin County Criminal Justice
Coordinating Committee, a central body composed of key figures across the judiciary,
prosecution, and county administration. Other members include Hennepin County
Attorney Mary Moriarty, Chief Judge Kerry Meyer, Assistant County Administrator
Chela Guzman-Weigert, and presiding Judges Hilary Caligiuri and Todd Fellman. As
such, Berger is squarely positioned within the same governance structure that failed to
intervene as multiple attorneys under his direction actively contributed to the fabrication,
concealment, and perpetuation of synthetic psychiatric filings and fraudulent court
processes used against Plaintiff.

261.   Plaintiff's independent audit of over 1,100 attorney-attributed docket
assignments revealed that more than half of the synthetic filings across the MCRO
dataset were generated by attorneys currently listed as active under Berger's supervision.
Despite the unmistakable indicators of forgery, metadata anomalies, and repeated perjury

committed by members of his office—such as Assistant Public Defenders Emmett M. Donnelly, Raissa Carpenter, and Kristen A. Otte—Berger has taken no apparent steps to investigate, rectify, or even acknowledge the pattern. This profound institutional failure has directly enabled constitutional violations, including the suppression of Plaintiff's right to self-representation, the use of coerced psychiatric procedures, and obstruction of justice through manipulated filings.

1. **Claims Asserted Against Berger**

- 42 U.S.C. § 1983
  - 262. Supervisory liability for failure to train, supervise, or intervene in ongoing civil rights violations
- 42 U.S.C. § 1985
  - 263. Conspiracy to interfere with civil rights through collective administrative misconduct
- 18 U.S.C. § 1962(d) – RICO
  - 264. conspiracy through willful indifference to enterprise conduct

265. Equitable relief sought to enjoin future psychiatric interference and refer office conduct for federal oversight

## XX.  CLAIMS AGAINST JUDICIAL OFFICERS OF THE FOURTH JUDICIAL DISTRICT COURT

**A | Kerry W. Meyer, Chief Judge, 4th District**

266. Title/Role: Chief Judge, Fourth Judicial District Court, Hennepin County

1. **Nature of Involvement**

267. Although not directly assigned to Plaintiff's case, Chief Judge Meyer appears throughout the synthetic case matrix in a supervisory and participatory role that implicates her in the systemic fraud alleged. She is a documented member of the "Criminal Justice Coordinating Committee" alongside other key defendants, and is linked to multiple known fraudulent dockets—including two of the foundational "Adrian Wesley" indefinite commitment cases, which anchor the entire synthetic case architecture.

( **see MnCourtFraud.Substack.com/p/kerry-w-meyer**)

268.    Meyer is tied to at least 23 unique synthetic dockets through warrant records, despite only 6 unique defendant names recurring across those entries—an anomaly consistent with fraud. Additionally, she presided over 84 hearings across 15 nominal defendants and is associated with 7 court orders using a duplicate judicial signature hash "1ac840c5.....735a6ead" ( **see MnCourtFraud.com/File/ 1ac840c5.....735a6ead.png** ) spanning 28 months, which supports allegations of mass document forgery and simulated court orders.

269.    Her name is pervasive in metadata, warrants, and hearing records across the 163-case synthetic dataset. Given her institutional authority as Chief Judge and her repeated appearance in statistical outliers, it is reasonable to infer either willful participation or knowing acquiescence in the fraudulent enterprise alleged.

**2.    Legal Claims Asserted Against Kerry W. Meyer**

- 42 U.S.C. § 1983 – Fourteenth Amendment:
  - 270.    Violation of Plaintiff's right to due process by allowing, endorsing, or failing to intervene in proceedings rooted in fraudulent documents and fabricated judicial acts.

- 42 U.S.C. § 1983 – Eighth Amendment:
  - 271.    Deliberate indifference to unlawful psychiatric detention schemes made possible through synthetic court orders bearing her signature.

- 18 U.S.C. § 1962(c) – RICO Participation:
  - 272.    Conducted or participated in the affairs of a criminal enterprise through a pattern of racketeering activity, including the use of forged judicial orders and simulated filings.

- 18 U.S.C. § 1962(d) – RICO Conspiracy:
  - 273.    Conspired with other officials—including prosecutors, clerks, and psychological examiners—to fabricate judicial proceedings for retaliatory or obstructive purposes.

**B  |  Hilary Caligiuri, Presiding Criminal Judge, 4th District**

274.   Presiding Criminal Judge, Fourth Judicial District — Hennepin County

**1.    Statement of Claim**

275.   Judge Hilary Caligiuri is named as a RICO defendant for her contributory role in the orchestration and maintenance of the synthetic docket enterprise uncovered by Plaintiff. While she does not appear in Plaintiff's personal case record, her embedded presence across 39 synthetic case files within the MCRO dataset—alongside her role as Presiding Criminal Judge—places her in a position of supervisory liability and systemic complicity.

( **see MnCourtFraud.Substack.com/p/hilary-caligiuri** )

**2.    Key Forensic and Procedural Statistics Include**

- 10 assigned cases across the 163 synthetic dockets;
- 4 unique warrant entries, tied to 3 separate defendants;
- 5 interim condition filings, also linked to 3 individual defendants;
- 3 judicial assignments affecting 3 separate defendants by name;
- 70 case event appearances and 99 hearing records, spanning from May 27, 2021 to June 24, 2024, yet involving only 8 unique named defendants—a red-flag ratio suggesting signature reuse and synthetic duplication.

276.   As Presiding Criminal Judge, Caligiuri's role makes her uniquely responsible for monitoring the legality of assignments, judge substitutions, and authenticity of proceedings. Her forensic footprint in the synthetic docket matrix— particularly the overuse of her identity to validate anomalous case activity involving duplicate signatures and metadata discrepancies—points to her knowing use of her office to facilitate RICO predicate acts including obstruction of justice (18 U.S.C. § 1503), fraud upon the court (*Hazel-Atlas Glass Co. v. Hartford-Empire*, 322 U.S. 238), and mail fraud (18 U.S.C. § 1341).

### 3.     Relief Sought

277.   Plaintiff seeks declaratory and injunctive relief recognizing Judge Caligiuri's material participation in the synthetic docket scheme; damages under 42 U.S.C. § 1983 for violation of due process and equal protection; and civil RICO treble damages under 18 U.S.C. § 1964(c) for her role in a pattern of racketeering activity affecting interstate mail, court process integrity, and public office fraud. Plaintiff also seeks removal from judicial office and referral for federal investigation under 18 U.S.C. §§ 1519 and 1346.

## C   |   Todd Fellman, Presiding Juvenile Judge, 4th District

278.   Judge Todd Fellman is named in this action based on his verifiable contribution to the synthetic docket conspiracy as established by forensic analysis of 163 case files and associated metadata. While Fellman serves primarily in the juvenile division, and while Plaintiff's case does not directly fall within his official judicial purview, the record shows that his name was repeatedly employed across synthetic adult criminal dockets involving falsified proceedings, and thus forms part of the broader RICO pattern.

( **see MnCourtFraud.Substack.com/p/todd-fellman** )

279.   As Presiding Juvenile Judge, Fellman's administrative scope does not include oversight of adult felony matters, yet his signature and identity appear in dozens of unauthorized filings. This suggests either (1) knowing participation in the fabrication of court process, or (2) unlawful use of his name and authority that has gone unreported and unremedied. Either constitutes breach of judicial duty and participation in predicate RICO acts including fraud, falsification of public records (18 U.S.C. § 1519), and conspiracy against rights (18 U.S.C. § 241).

### 1.     Relief Sought

280.   Plaintiff seeks declaratory and injunctive relief establishing Judge Fellman's contributory role in a pattern of racketeering activity. Plaintiff also demands accountability through civil RICO damages under 18 U.S.C. § 1964(c),

along with referral for investigation of systemic administrative failure or fraudulent judicial rubber-stamping. Due to the use of his identity in support of forged court actions, removal from office and sanctions are warranted.

**D | Sarah Hudleston, Judge, 4th District**

281.   Judge Hudleston presided over two critical hearings in Plaintiff's case: the April 17, 2025 Faretta-triggering proceeding and the April 29, 2025 proceeding in which she unilaterally ordered a fourth Rule 20 competency exam, based entirely on the contents of Plaintiff's Motion to Dismiss—a constitutionally protected filing. This act of judicial retaliation not only violated Plaintiff's First and Sixth Amendment rights, but also served to pathologize protected speech in an effort to obstruct exposure of the systemic document fabrication and discovery fraud scheme.

( **see MnCourtFraud.Substack.com/p/sarah-hudleston** )

282.   Despite receiving a formal Petition to Proceed Pro Se on April 21, 2025— highlighting prior counsel's refusal to litigate known fraud—Judge Hudleston refused to address the petition at all and instead focused exclusively on silencing Plaintiff by invoking mental incompetence without medical evidence or proper legal cause. This retaliatory order triggered a cycle of forced psychiatric evaluation involving known actors in the synthetic document matrix, such as Dr. Katheryn Cranbrook, who have been repeatedly implicated in fabricated reports, metadata anomalies, and false representation of document's produced by third parties.

283.   Hudleston then issued a denial of Plaintiff's Emergency Motion for Stay after appellate proceedings had already commenced, violating jurisdictional norms and standing by her prior ruling while continuing to cite Plaintiff's April 28 evidence dump— 50 filings exposing systemic forgery—as proof of delusion. This constitutes a knowing and active cover-up of verified criminal misconduct within the judiciary and prosecution. Metadata from the MCRO dataset further ties Judge Hudleston to the synthetic docket scheme: she appears across 7 fabricated case files (exclusive of Plaintiff's case), is listed in 6 case assignments, and presided over 15 hearings across just 3 total unique defendants

—most notably "Makis Devell Lane," a recurring synthetic name tied to multiple duplicate docket artifacts. Her digital fingerprint and anomalous case concentration match the same patterns that underpin the fraudulent judicial ecosystem exposed by Plaintiff.

1. **Legal Claims Asserted Against Judge Sarah Hudleston**

- 42 U.S.C. § 1983 – First Amendment:
  - ○ 284.    Retaliated against Plaintiff for protected filings by pathologizing constitutional motions and using them to justify renewed psychiatric detention.

- 42 U.S.C. § 1983 – Sixth Amendment:
  - ○ 285.    Denied Plaintiff's unambiguous and procedurally proper request to proceed pro se under Faretta v. California, instead invoking Rule 20 without factual or legal basis.

- 42 U.S.C. § 1983 – Fourteenth Amendment (Due Process):
  - ○ 286.    Participated in sham hearings and issued rulings with no legal foundation, suppressing Plaintiff's access to a fair forum and protecting documented fraud.

- 18 U.S.C. § 1962(c) – RICO Participation:
  - ○ 287.    Advanced the racketeering enterprise by issuing illegitimate orders that reinforced the psychiatric confinement narrative central to the synthetic docket scheme.

- 18 U.S.C. § 1962(d) – RICO Conspiracy:
  - ○ 288.    Operated in concert with other judicial actors and falsified experts (e.g., Cranbrook) to neutralize Plaintiff through unlawful court process.

**E  |  William H. Koch, Judge, 4th District**

289.    Judge William H. Koch became materially involved in the retaliatory judicial scheme against Plaintiff Matthew Guertin following the recusal of Judge Julia Dayton Klein, who was named in Plaintiff's July 2024 federal civil rights complaint. Koch presided over key hearings beginning on July 16, 2024, and from that point forward, undertook a sustained course of action that furthered a broader enterprise involving retaliatory psychiatric evaluations, suppression of exculpatory evidence, and deprivation of constitutional rights under color of law.

70

( **see MnCourtFraud.Substack.com/p/william-h-koch** )

**- Judge Koch's misconduct includes -**

### 1.  Direct Judicial Retaliation and Interference with Defense Strategy

290.    After Plaintiff's successful motion to discharge his compromised defense counsel, defendant Bruce M. Rivers, Koch participated in an orchestrated hearing process that appeared to facilitate the rapid reassignment of counsel solely to enable a third Rule 20 psychiatric exam without any legal basis or behavioral trigger. Despite Plaintiff's explicit articulation of a defense strategy involving the contestation of prior psychiatric reports and discovery fraud, Koch made no judicial findings to address or support the abrupt psychiatric re-referral.

### 2.  Rubber-Stamping and Fabrication of Judicial Orders

291.    A documented series of docket anomalies surround Koch's tenure, including:

- Two separate orders dated October 1, 2024 (Index #102 and #103), both entered without any available document.
- A fictitious motion docketed at Index #105, listing Plaintiff as the "party" but not the filer, in conflict with court filing norms.

292.    These phantom entries served to retroactively justify a Rule 20 examination later issued by Judge Shereen Askalani. The lack of any corresponding judicial findings or procedural predicate renders these filings fraudulent in nature.

### 3.  Perpetuation of Psychiatric Fraud Narrative

293.    Even after issuing a April 3, 2025 Order Finding Plaintiff Competent, Koch improperly characterized prior Rule 20 reports as "generally credible" despite the examiners being available in court and not called to testify—violating the Confrontation Clause and principles of adversarial testing. This served to preserve the institutional psychiatric narrative while simultaneously moving the case forward—an irreconcilable contradiction.

### 4.  Suppression of Exculpatory Evidence and Obstruction of Faretta Rights

294.  Koch failed to address Plaintiff's documented concerns regarding discovery fraud and instead issued dismissive statements undermining self-representation. During the March 5, 2025 hearing, Koch made the following statement:

> "*There are other decisions that are the attorney's decision like do I object to this piece of evidence, do I make a certain legal argument, do I do whatever. Are you able to, if you're working with your defense team, give them input but then understand that there are certain decisions they make that are not yours to make?*" ( see Tr. 4-10, Add. 169 [8] )

295.  This improperly narrowed the scope of Plaintiff's Sixth Amendment rights under *Faretta v. California*, 422 U.S. 806 (1975), by subordinating core defense strategy decisions to court-appointed counsel.

### 5.  Participation in Synthetic Case Matrix

296.  Koch is listed as assigned judge on 7 synthetic cases within the 163-case dataset and is named across 36 case files in full-text search. He appears in 41 hearing records, but these pertain to only 7 unique defendants, indicating manufactured duplication. Moreover, 13 forged judicial signatures in the MCRO set are attributed to Koch with identical cryptographic hashes—establishing a statistically implausible signature cloning pattern consistent with document forgery.

---

8  Tr. 4-10, Add. 169 |
  Courtlistener.com/docket/68925331/102/guertin-v-hennepin-county/

**6.**    **Summary of Legal Claims Against Koch**

- First Amendment:
  - 297.    Retaliation for Plaintiff's protected filings and litigation.

- Sixth Amendment:
  - 298.    Violation of Faretta rights and suppression of exculpatory evidence.

- Fourteenth Amendment:
  - 299.    Denial of due process through judicial fraud, secret orders, and psychiatric coercion.

- RICO Predicate Acts:
  - 300.    Fabrication of public records (mail/wire fraud), obstruction of justice (synthetic filings), and judicial retaliation.

- Conspiracy (§ 1985, § 1962(d)):
  - 301.    Koch's actions furthered a coordinated scheme alongside prosecutors, defense attorneys, and mental health actors to neutralize Plaintiff via manufactured incompetency.

- 42 U.S.C. § 1983
  - 302.    First, Sixth, and Fourteenth Amendment Violations

- 42 U.S.C. § 1985
  - 303.    Conspiracy to Interfere with Civil Rights

- 18 U.S.C. § 1962(c), (d) – RICO Violations
  - 304.    (Mail/Wire Fraud, Retaliation, Obstruction)

**F  |  Julia Dayton Klein, Judge, 4th District**

305.    Judge Julia Dayton Klein is named as a defendant due to her central role in the operation and concealment of a fraudulent docketing and judicial filing apparatus, participation in retaliatory and unfounded psychiatric orders, and her direct involvement in acts of document fabrication, forgery, obstruction of justice, and deprivation of constitutional rights under color of law. She is further implicated in a pattern of racketeering activity affecting interstate commerce and in violation of 18 U.S.C. §§ 1961(1), 1962(c), and (d). ( **see MnCourtFraud.Substack.com/p/julia-dayton-klein** )

**- RICO Predicate Acts and Pattern of Conduct -**

**1.    Fabrication and Cloning of Court Orders**

306.    Judge Klein is the signatory of at least 178 forged judicial signatures and 107 cloned timestamp blocks, as established through digital hash comparison of the Minnesota Court Records Online (MCRO) evidence set.

307.    Notably, none of these 178 documents list her as the metadata author, and across all 112,324 metadata records in the full MCRO dataset, her name appears zero times—indicating mass attribution of judicial authorship to documents she did not create.

308.    This strongly supports the allegation that her identity was systematically used to validate forged orders as part of a document laundering operation, a RICO predicate act under 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), and § 1519 (falsification of records).

**2.    Retaliatory Psychiatric Orders Without Legal Basis**

309.    Klein issued multiple Rule 20.01 competency orders in Guertin's case (on 11/15/2023 and 5/9/2024) that were:

Unaccompanied by any motion or legal basis;

Authored in metadata by third parties ("Perry, Dolores" and "HernandezKE" respectively), not by Klein;

Based on nothing more than Guertin's filing of legal motions and protected speech.

These orders represent both abuse of process and deprivation of liberty without due process, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

**3.    Obstruction of Judicial Correspondence / Due Process Interference**

310.    The April 12, 2024 order denying Guertin's pro se motion was submitted 18 minutes after a letter from Guertin's mother to Judge Jay Quam was entered into the docket and is authored by "Rachel Pederson", not Klein.

This order was part of a broader orchestrated sequence of filings timed with fabricated documents in a synthetic court docket.

The manipulation of filing timestamps and order authorship in response to private correspondence demonstrates intentional interference with court process, a violation of 18 U.S.C. § 1505 (obstruction of proceedings), and further grounds for RICO liability.

### 4.    Fraudulent Denials of Appellate Fee Waivers

311.    On May 24 and May 30, 2024, Klein submitted orders denying Guertin's appellate fee waiver request—despite no affidavit ever being filed, and in direct contradiction to the appellate rules regarding Rule 20 proceedings.

Both denials were submitted with Virginia Kuberski listed as the document author, and no mention of Klein's identity in the file metadata.

These acts were carried out in an apparent attempt to block Guertin's appeal to the Minnesota Court of Appeals, constituting both obstruction and retaliation for exercise of appellate rights, in violation of 42 U.S.C. § 1983 and the First Amendment.

### 5.    Synthetic Metadata and Signature Collusion

312.    The earliest forged order tied to Guertin's case (June 14, 2023) bears Klein's signature but is authored by "Alisha Nehring" and contains internal metadata titled for an unrelated synthetic case: "Contested Competency for Adrian Wesley".

313.    This specific metadata string appears repeatedly across the synthetic MCRO dataset and serves as a digital fingerprint linking Guertin's docket to broader systemic forgery.

### 6.    Over-Representation in Synthetic Docket Activity

314.    Klein is not officially assigned to any of the 163 cases in the synthetic docket set, including Guertin's, yet her name appears:

- In 172 court files,

- In 302 docket events,
- Across 308 hearings tied to only 77 unique defendants—a statistical anomaly inconsistent with ordinary judicial assignment.

These figures alone suggest a covert administrative role in overseeing or validating fabricated dockets.

### 7.    Legal Theories of Liability

- Violation of 18 U.S.C. § 1962(c)
  - ○  315.       conducting the affairs of an enterprise through a pattern of racketeering activity (forged court orders, false authorship, and obstruction).

- Violation of 18 U.S.C. § 1962(d)
  - ○  316.       conspiracy to commit racketeering acts with others including Borer, Mercurio, and administrative staff (e.g., Nehring, HernandezKE, Kuberski).

- 42 U.S.C. § 1983;
  - ○  317.       Deprivation of constitutional rights under color of law specifically the First, Fifth, Sixth, and Fourteenth Amendments.

- Obstruction of justice and interference with protected petitioning activity
  - ○  318.       including but not limited to: 18 U.S.C. §§ 1503, 1505, 1519.

### 8.    Summary

319.   Klein's conduct reflects not mere judicial error or negligence, but deliberate participation in a systematized judicial fraud network, where her identity, signature, and position were exploited to validate synthetic court operations. The near-total absence of any metadata linkage to her name, juxtaposed against massive overrepresentation in synthetic case files, is statistically impossible without coordinated fraud.

320.   Her orders have been used to pathologize protected legal claims, deny access to appellate relief, block self-representation, and facilitate indefinite psychiatric surveillance and coercion under Rule 20 procedures. She is a central

node in both the synthetic docket enterprise and the targeting of Guertin through manufactured judicial processes.

## G  |  Danielle C. Mercurio, Judge, 4th District

321.   Danielle C. Mercurio is named as a defendant for her active and repeated participation in the orchestration of fraudulent mental health adjudications, her direct authorship of synthetic court orders used to justify unconstitutional pretrial detentions, and her role as a metadata-visible administrative anchor for the broader enterprise described herein. Mercurio's actions form a critical part of the racketeering activity alleged in this Complaint, and constitute violations of 18 U.S.C. §§ 1962(c) and (d), as well as deprivations of Plaintiff's rights secured by the Constitution and federal law.
( **see MnCourtFraud.Substack.com/p/danielle-c-mercurio** )

**- RICO Predicate Acts and Scheme Participation -**

### 1.    Face of the January 2024 Fraudulent Incompetency Adjudication

322.   On January 17, 2024, a "Finding of Incompetency and Order" was entered into Plaintiff Guertin's record, listing Mercurio as the presiding referee.

323.   This order was prepared without hearing, without cause, and notably withheld from filing until the following morning, despite being finalized the prior day.

324.   The January 16–17 hearing window contains no valid trigger event for such a ruling, as Plaintiff never waived his appearance knowingly or voluntarily.

325.   Mercurio's name was used to lend the appearance of legitimate judicial oversight to this maneuver, which was plainly part of an effort to suppress Guertin's escalating exposure of systemic fraud.

### 2.    Authorship of the July 13, 2023 "Incompetency" Order

326.   Forensic metadata confirms that Mercurio herself authored and created the original "Finding of Incompetency and Order" dated July 13, 2023,

despite that order being purportedly issued by Referee George F. Borer and signed by Judge Michael K. Browne.

327.   This proves that Mercurio was not only involved in preparing key synthetic documents, but also that she was central to concealing authorship in a manner consistent with document laundering and mail/wire fraud under 18 U.S.C. §§ 1341 and 1343.

328.   This July 13 order is duplicated in Guertin's file, submitted twice, possibly to mask document editing or to reinforce the fraudulent record through redundancy.

### 3.   Administrative Anchor and Rotating Synthetic Case Coordinator

329.   Mercurio appears in 219 docket events and presides over 298 hearings in the MCRO evidence set—even though she was not officially assigned to a single one of the 163 cases examined.

These hearings are overwhelmingly associated with synthetic defendants such as:

- Gordon Eugene Sharp (27 hearings),
- Lucas Patrick Kraskey (34),
- Grahm Mark Fletcher (11),
- Adrian Michael Wesley (6), among others.

330.   This establishes her as a key operative in a document-generation and case-management network for a set of fake or AI-fabricated identities used to stage simulated psychiatric dockets.

### 4.   Metadata Presence Confirms Internal Administrative Role

331.   Unlike Borer and Klein, Mercurio does appear in the metadata of two files—both being the same July 13, 2023 order—establishing her unique role as an intermediary or supervisor of synthetic filings.

This visibility within the digital trail makes her a central point of forensic accountability for the preparation of fraudulent judicial records.

**5.    Signature and Timestamp Cloning**

332.    Mercurio's judicial signature appears 60 times across the dataset, and her timestamps are cloned in 49 separate entries.

These duplications are part of the same forgery infrastructure used by Klein and Borer, where identical signature hashes are applied across unrelated case numbers and filing types, in violation of 18 U.S.C. §§ 1001 and 1519.

**6.    Documented Statistical Improbabilities**

333.    Mercurio's name appears in 126 distinct case files out of the 3,601 document set, despite her official involvement in zero assigned cases.

She is linked to:

- 6 unique cases in the warrants section,
- 18 in interim conditions, but only for 8 total defendant names, 9 of which are repeats of "Gordon Eugene Sharp," 3 of "Kraskey," etc.

334.    These anomalies strongly support the inference that Mercurio's function was to oversee and stabilize the synthetic docket infrastructure, likely serving as a real-world administrative conduit.

**7.    Legal Theories of Liability**

- Violation of 18 U.S.C. § 1962(c)
  - 335.    for conducting affairs of the enterprise through acts of document forgery, metadata falsification, and judicial impersonation.

- Violation of 18 U.S.C. § 1962(d)
  - 336.    for conspiracy with Klein, Borer, and others to implement an enterprise whose predicate acts include mail fraud, wire fraud, and obstruction of justice.

- Violation of 42 U.S.C. § 1983
  - 337.    for acting under color of law to deprive Plaintiff of liberty, fair trial, and freedom from fraudulent psychiatric intervention.

- Violation of 18 U.S.C. §§ 1341, 1343, 1503, 1519, and 1001
  - 338.    through coordination and execution of materially false judicial records, and the submission of such records into official dockets.

### 8.     Summary

339.   Danielle C. Mercurio was a central operator in the preparation, authorship, and digital manipulation of fraudulent mental health orders, using her apparent judicial or quasi-judicial status to impose fabricated incompetency findings and support covert pretrial detentions. She actively authored core synthetic documents, maintained administrative involvement in hundreds of hearings lacking procedural basis, and helped mask the involvement of Borer and Klein by serving as a visible but compartmentalized agent. Her role is indispensable to the functioning of the RICO enterprise and places her among its most culpable architects.

### H   |   Michael K. Browne, Judge, 4th District

340.   Plaintiff alleges that Judge Michael K. Browne knowingly aided and abetted the judicial forgery and synthetic docket enterprise by serving as one of the primary providers of "judicial legitimacy" across hundreds of fraudulent court orders. Though never officially assigned to any of the 163 synthetic cases, Browne's name appears in 145 separate case files, functioning as a critical figurehead used to cloak fabricated judicial actions with an aura of authenticity.

( **see MnCourtFraud.Substack.com/p/michael-k-browne** )

### 1.     Browne's Synthetic Docket Involvement

- 14 unique warrant entries, 8 of which pertain solely to the fictitious defendant "GORDON EUGENE SHARP."
- 17 interim conditions orders, again with 8 cases tied to "GORDON EUGENE SHARP."
- 165 court hearings, disproportionately linked to only 50 unique defendant names, showing extensive reuse of limited identities.
- 238 event entries in the court docket system, despite having no official judicial assignment in any of the analyzed cases.
- Forensic digital analysis confirms that Browne's name and identity were repeatedly used in digital forgery:

- 158 cloned timestamp hashes attributed to Browne exist across the dataset, indicating automated, repeated falsification of judicial date fields.

- 217 duplicate images of his judicial signature have been embedded across the forged PDF documents, identified by matching SHA-256 cryptographic hash values. These signatures were applied to court filings without legitimate authorship or procedural basis, often in coordination with filings supposedly authored by other actors like Borer and Mercurio.

## 2.    Relief Sought

341.   Plaintiff seeks declaratory and injunctive relief recognizing Judge Browne's role in furthering the synthetic docket scheme, monetary damages under 42 U.S.C. § 1983, and inclusion of Browne as a named RICO defendant pursuant to 18 U.S.C. § 1962(c)-(d), based on his participation in a racketeering enterprise that employed false judicial signatures to justify fraudulent psychiatric evaluations, pretrial detention, and constitutional deprivations.

## I | Lisa K. Janzen, Judge, 4th District

342.   Plaintiff alleges that Judge Lisa K. Janzen, though not directly assigned to his case, materially participated in and aided the underlying conspiracy through her prominent and repeated presence in the forged judicial record matrix used to facilitate systemic fraud and deprivation of rights under color of law.

( see MnCourtFraud.Substack.com/p/lisa-k-janzen )

343.   Judge Janzen is referenced by name in at least 297 distinct case files within the MCRO dataset—yet is officially assigned to only 3 of the 163 synthetic cases analyzed. Despite this minimal official role, she is inexplicably linked to:

- 14 unique warrant entries across 10 different synthetic defendants.

- 38 separate "interim conditions" orders tied to 19 defendants.

- 315 hearing records, yet only for 37 unique individuals, revealing severe over-representation.

- 441 individual docket events, making her among the most disproportionately represented judicial actors across the fraudulent docket ecosystem.

- Digital forensic evidence further confirms the fabrication of her judicial identity within this ecosystem:
- 204 identical digital copies of her judicial signature are dispersed across numerous case files, identified via matching SHA-256 hashes, suggesting image-based replication.
- 48 image-based "text" documents are directly linked to her identity—indicating manual signature insertions in synthetic filings.

344.   Despite this widespread presence, not a single authored document bearing her metadata was found within Plaintiff's case or the broader MCRO metadata archive—consistent with the systemic pattern of surrogate authorship, clerical obfuscation, and digital forgery.

### 1.    Relief Sought

345.   Plaintiff seeks declaratory and injunctive relief recognizing Judge Janzen's participation in the judicial forgery and synthetic docket scheme; monetary damages for civil rights violations under 42 U.S.C. § 1983; and inclusion of Judge Janzen as a RICO defendant under 18 U.S.C. § 1962(c)-(d) based on her knowing use of fraudulent court documents to sustain unlawful deprivation of liberty and due process.

### J  |  Carolina A. Lamas, Judge, 4th District

346.   Judge Carolina A. Lamas is named as a RICO defendant for her involvement in the fraudulent synthetic docket enterprise operating within the Fourth Judicial District. While her visible role is less extensive than others, she appears in 60 synthetic case files across the MCRO dataset—none of which involve Plaintiff—yet shares key forensic and procedural patterns with the core actors, indicating knowing participation in the broader conspiracy.

( see MnCourtFraud.Substack.com/p/carolina-a-lamas )

### 1.    Key Synthetic Docket Data from Digital Forensic Analysis

- 4 assigned cases across all 163 synthetic case dockets.
- 4 warrant filings linked to 4 unique defendants;

- 10 interim conditions entries, also tied to 10 separate defendants;
- 8 judicial assignments, affecting 5 individuals by name;
- 115 case event entries, despite her limited official assignments.

347.   Critically, Judge Lamas presided over 73 hearings, which span from February 21, 2017 through April 19, 2024, and apply to only 18 unique defendants. This highly anomalous ratio of hearings to individual defendants suggests excessive reuse of synthetic identities—a hallmark of the fraudulent docket scheme.

### 2.   Notable Synthetic Docket Mentions and Statistics

- 348.   15 of her 73 hearings are tied to the synthetic defendant "ADRIAN MICHAEL WESLEY", the same name appearing repeatedly across other judges' dockets and linked to falsified court actions.

- 349.   Lamas is also forensically connected to the 2017-era synthetic court filings through her long-time former judicial clerk, Alisha Nehring, identified in Guertin's case as a recurrent metadata author for orders never signed by the judges they're attributed to.

- Digital signature forgery is further confirmed by:
  - 18 duplicate hashed images associated with "text" filings bearing her judicial insignia.
  - 24 cloned images of her handwritten signature embedded across the synthetic docket matrix, confirmed via cryptographic SHA-256 hashes.

### 3.   Relief Sought

350.   Plaintiff seeks declaratory and injunctive relief recognizing Judge Lamas' participation in the operation and maintenance of the synthetic docket architecture, monetary damages under 42 U.S.C. § 1983 for violation of procedural due process and obstruction of justice, and RICO damages and injunctive relief under 18 U.S.C. § 1962(c)-(d), including removal from judicial office and referral for federal investigation under 18 U.S.C. § 1519 (destruction or falsification of records in a federal proceeding).

**K | Shereen Askalani, Judge, 4th District**

351.   Judge Shereen Askalani played a pivotal role in furthering the judicial fraud scheme by issuing the October 15, 2024 Order for a third Rule 20.01 psychiatric evaluation against Plaintiff Matthew Guertin without legal cause, record findings, or any evidentiary hearing. This order was executed within minutes of formally appointing public defender Raissa Carpenter, directly in conflict with Plaintiff's documented legal strategy—submitted weeks earlier—expressly opposing further mental health inquiries and requesting review of prior fraudulent reports.

( see MnCourtFraud.Substack.com/p/shereen-askalani )

**- Key Allegations -**

### 1.   Triggering a Psychiatric Evaluation Without Cause

352.   Judge Askalani ordered the third Rule 20.01 evaluation immediately after granting public defender assignment, without any intervening motion, incident, or behavioral basis to justify the evaluation. This abrupt action was issued despite:

- No record of a hearing transcript to support the decision;
- No prior involvement in Plaintiff's case;
- Plaintiff's explicit written strategy opposing further Rule 20 exams due to proven fabrication of prior psychological reports;
- Imminent expiration of Plaintiff's stayed civil commitment (scheduled for November 8, 2024), making the evaluation procedurally irrelevant and legally unnecessary.

### 2.   Acting as a Surrogate for Pre-Determined Outcomes

353.   The context of the October 15 hearing indicates that Judge Askalani was used as a proxy to carry out a decision already orchestrated off-record. As detailed in the procedural analysis under Judge Koch's claims, docket entries surrounding this date were riddled with:

- Missing or empty judicial orders (Index #106, #109);
- Phantom motion entries with no attached documents (Index #105);

- A staged "Probable Cause Found" docket with no judge listed or document filed.

354.   These anomalies suggest intentional judicial coordination to retroactively legitimize coercive psychiatric intervention. Askalani's involvement in this moment was essential to continuing the pattern of mental health weaponization used to suppress Plaintiff's defense.

### 3.   Participation in a Broader Civil Rights Conspiracy

355.   Plaintiff's Petition to Proceed Pro Se and strategy to contest prior Rule 20 findings was explicitly before the court system at the time of Askalani's order. Rather than honoring Plaintiff's Faretta rights and due process protections, Judge Askalani issued a facially retaliatory order in furtherance of the synthetic incompetency narrative. Her action further cemented the use of state power to pathologize constitutionally protected defense efforts—consistent with conspiracy under 42 U.S.C. § 1985(3) and retaliatory targeting under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

### 4.   Presence in Synthetic Case Matrix and Digital Forensics Evidence

356.   Askalani is listed in:

- 9 case files by name across the combined full-text MCRO corpus;
- 2 assigned cases in MnCourtFraud.com/File/01_CASE_details.xlsx;
- 1 synthetic warrant (Case No. 27-CR-23-8406) in MnCourtFraud.com/File/03_CASE_warrants.xlsx ( **see MnCourtFraud.Substack.com/p/02-case** ) ;
- 10 hearing entries spanning only 7 unique defendants—demonstrating repeat synthetic use across staged case artifacts.

### 5.   Summary of Legal Claims Against Askalani

- Sixth Amendment:
  - 357.   Violation of Plaintiff's right to self-representation and defense strategy.

- Fourteenth Amendment:
  - ○ 358.    Deprivation of due process by ordering psychiatric evaluations without cause or record justification.

- 42 U.S.C. § 1985:
  - ○ 359.    Participation in a judicial conspiracy to interfere with and chill Plaintiff's lawful exercise of rights.

- 42 U.S.C. § 1983
  - ○ 360.    Sixth and Fourteenth Amendment Violations

- 42 U.S.C. § 1985(2), (3)
  - ○ 361.    Conspiracy to Interfere with Civil Rights

- 18 U.S.C. § 1962(c), (d) – RICO Violations
  - ○ 362.    (Obstruction, Mail/Wire Fraud, Deprivation of Rights Under Color of Law)

- RICO Predicate Acts:
  - ○ 363.    Judicial fraud (fabricated docket entries), obstruction of justice (synthetic evaluations), and conspiracy to deprive civil rights.

## L  |  George F. Borer, Referee, 4th District

364.    Referee George F. Borer is named as a defendant for his direct participation in the fabrication and execution of fraudulent judicial orders and hearings, and for his role in furthering an unlawful enterprise aimed at suppressing constitutionally protected rights via psychiatric coercion, metadata manipulation, and forged judicial authority. Borer's conduct constitutes a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(1), 1962(c), and (d), and includes repeated deprivations of due process and liberty interests under color of law. ( **see MnCourtFraud.Substack.com/p/george-f-borer** )

### - RICO Predicate Acts and Pattern of Conduct -

#### 1.    Presiding Over Secret and Fabricated Hearings

365.    On February 1, 2024, Borer presided over a surprise civil commitment hearing (Case No. 27-MH-PR-23-815) that Plaintiff Guertin discovered only by chance.

366.    This followed Borer's prior role presiding over Guertin's July 7, 2023 contested competency hearing, where Guertin testified, and the court submitted an order declaring him incompetent despite multiple statements in the order directly confirming his competency based on the *Dusky* standard, and Minn. R. Crim. P. 20.01.

367.    It was the July 13, 2023 order, following this hearing, that was submitted twice on the same day, with the second "Order-Other" filing containing the two additional, hidden .ttf tracking fonts inserted into the PDF file that serve to directly link it to the broader, synthetic case matrix.

368.    These hearings were conducted in a manner entirely incompatible with constitutional notice and confrontation rights, and appear to have been coordinated to facilitate civil commitment without legal grounds or adversarial process.

**2.    Participation in Fraudulent Commitment Orders**

369.    On July 13, 2023, Borer issued a Finding of Incompetency and Order in Guertin's case (27-CR-23-1886), which was then co-signed by Judge Michael K. Browne.

370.    However, forensic metadata analysis of this document reveals it was not authored by Borer at all—but rather by Danielle C. Mercurio, who is listed in the file's "Author" and "Creator" fields.

371.    This establishes a deliberate laundering of judicial authority where signatures and names are falsely attributed to shield true authorship and obstruct accountability.

**3.    Zero Metadata Presence Across Entire Court Record**

372.    A search of the full metadata corpus for the MCRO dataset (112,324 table rows entries, across 3,629 files, including the 28 duplicate downloads) shows

no appearance of Borer's name whatsoever—not even partial strings such as "Borer" or "George" appear a single time.

373.   This absence is statistically implausible and evidences intentional exclusion of his identity from official court metadata, further suggesting premeditated concealment of his role in the enterprise.

**4.   Synthetic Docket Overrepresentation and Anomalous Hearings**

374.   Despite not being officially assigned to a single case in the synthetic docket set, Borer appears:

- In 63 case files,
- In 174 docket events,
- And presides over 232 hearings, tied to only 77 unique names, many of which repeat across synthetic defendants (e.g., 32 for "Lucas Patrick Kraskey," 23 for "Gordon Eugene Sharp," 9 for "Terrell Johnson").

375.   The disproportionate concentration of hearing activity by Borer, coupled with his total metadata invisibility, is consistent with a role in covert judicial processing for synthetic identities—a scheme grounded in document fraud and mail/wire fraud under 18 U.S.C. §§ 1341 and 1343.

**5.   Cloned Timestamps and Forged Judicial Signatures**

376.   Borer's judicial signature appears 47 times across synthetic court files, and his timestamp block hashes appear 30 times, verifying his participation in mass document cloning and forgery.

377.   These cloned timestamps and digital signatures are consistent with those used by other core conspirators including Julia Dayton Klein and Danielle Mercurio and form the technical infrastructure of the synthetic docket system at the heart of this RICO enterprise.

**6.     Legal Theories of Liability**

378.    Violation of 18 U.S.C. § 1962(c) – for conducting the affairs of an enterprise through predicate acts including forgery, mail fraud, wire fraud, and document falsification.

379.    Violation of 18 U.S.C. § 1962(d) – for conspiracy with co-defendants to further the enterprise through repeated use of fake hearings, metadata laundering, and psychiatric abuse.

380.    Deprivation of constitutional rights under color of law – 42 U.S.C. § 1983; specifically the First, Sixth, and Fourteenth Amendments.

381.    Obstruction of justice and fraudulent misrepresentation of public records – including violations of 18 U.S.C. §§ 1503, 1519, and 1001.

**7.     Summary**

382.    Referee George F. Borer is a key figure in the administration and enforcement of fraudulent court proceedings, having repeatedly issued illegitimate rulings based on hearings lacking procedural safeguards, and having falsely attributed authorship to third parties in judicial orders with serious liberty consequences. He is central to the concealment strategy within the synthetic docket matrix and directly responsible for material acts contributing to Plaintiff's illegal confinement and obstruction of redress. His conduct meets the threshold of "participation in the operation or management of the enterprise itself" under *Reves v. Ernst & Young*, 507 U.S. 170 (1993), and he is jointly and severally liable for all damages alleged herein.

**M   |  Lee Cuellar, Judicial Clerk, 4th District**

383.    Lee Cuellar is named as a defendant for his active and deliberate role in obstructing justice by executing a real-time cover-up of exculpatory correspondence submitted in Plaintiff Guertin's case. His conduct on April 12, 2024, as documented by forensic analysis and contemporaneous court records, constitutes direct participation in a racketeering enterprise and supports multiple predicate acts under 18 U.S.C. §§ 1961(1),

1962(c), and (d), including obstruction of correspondence, forgery, and fraud on the court. ( **see MnCourtFraud.Substack.com/p/lee-cuellar** )

**- Participation in Racketeering Activity -**

### 1. Real-Time Evidence Tampering in Response to Plaintiff's Mother's Plea for Judicial Protection

384.   On April 12, 2024, Plaintiff's mother submitted a handwritten letter to the Minnesota Fourth Judicial District Court pleading for help in light of repeated fraudulent Rule 20 orders and interference with her son's rights.

The letter was immediately intercepted and used as the basis for a synthetic replica submitted to the record of another case (Sandra Vongsaphay, 27-CR-23-2480), filed seven minutes earlier than the real letter's entry.

( **see MnCourtFraud.Substack.com/p/mothers-letter-smoking-gun** )

385.   Cuellar then filed boilerplate, near-identical responses to both letters at 4:38 PM and 4:42 PM, using the same SHA-256 hashed headers and court-letterhead image blocks, not seen in any other files across the 3,601-document MCRO dataset.

These coordinated filings are cryptographically linked and timed to neutralize the authentic correspondence and distort the court record.

### 2. Insertion of Synthetic Reply Letters to Dilute Authentic Evidence

386.   The fake letter in the Vongsaphay case featured mechanically generated handwriting and envelope characteristics identical to known forged USPS scans tied to a broader mail-fraud operation.

387.   Cuellar's 4:38 PM response to the fake letter and 4:42 PM response to Plaintiff's mother's letter were form-identical, differing only by case caption and timestamp—showing clear signs of copy-paste digital cloning intended to defuse a live, judicially sensitive appeal.

### 3.   Collaboration with Judge Julia Dayton Klein in Mid-Sequence Judicial Takeover

388.   In between the submission of the genuine letter (2:10 PM) and Cuellar's coordinated responses (4:38–4:42 PM), Judge Julia Dayton Klein inserted an "Order Denying Petition to Proceed Pro Se" at 2:28 PM, despite not being assigned to Guertin's case at the time.

( **see MnCourtFraud.Substack.com/p/mothers-letter-smoking-gun** )

389.   This suggests Cuellar was operating in tandem with Judge Klein, facilitating the preemptive redirection and suppression of incoming evidence by executing prewritten responses and docket entries.

### 4.   Forgery and Metadata Manipulation

390.   Forensic analysis confirms that the court-header image, letterhead template, and formatting in both replies were identical down to the byte level, sharing unique SHA-256 hashes:

"debcc04a.....b1d764a6"
( **see MnCourtFraud.com/File/debcc04a.....b1d764a6.png** )

"f609be80.....e15a1eee"
( **see MnCourtFraud.com/File/f609be80.....e15a1eee.png** )

391.   These values do not appear in ___any___ other documents across the 3,601-file MCRO dataset, proving that both letters were generated from the same pre-assembled template, specifically deployed to this case.

### 5.   Evidence of Systemic Obstruction and Synthetic Identity Use

392.   Cuellar is listed as the document author of only 11 PDFs across the entire MCRO metadata set—suggesting either that he operates behind the scenes or is a synthetic persona fabricated to facilitate covert filings.

393.   His name appears in only two case files across the dataset. Notably, Guertin's own case (27-CR-23-1886) is excluded from the metadata search results where Cuellar's authorship is evident—despite clearly filing documents in it.

394.   This artificial metadata absence mirrors the pattern seen with other operatives like Julia Dayton Klein and George Borer, reinforcing the probability that Cuellar is either a non-public clerk used for covert actions or a front identity attached to pre-scripted fraud sequences.

## 6.   Legal Theories of Liability

- Violation of 18 U.S.C. § 1962(c)
  - ○ 395.   For conducting or participating in an enterprise that used fraudulent mailings, forged documents, and obstruction of correspondence to alter the outcome of legal proceedings.

- Violation of 18 U.S.C. § 1962(d)
  - ○ 396.   For conspiring with Judge Klein and others to operate a criminal scheme affecting interstate communications and federal court access.

- Obstruction of Correspondence under 18 U.S.C. § 1702 and Minn. Stat. § 609.625
  - ○ 397.   by intercepting and suppressing the delivery of legal mail addressed to the judiciary.

- Fraud on the Court under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)
  - ○ 398.   through calculated and deceptive insertion of false documents meant to create a fabricated narrative before a judicial officer.

- Deprivation of Rights under 42 U.S.C. § 1983
  - ○ 399.   by interfering with Plaintiff's right to petition the court, due process, and the integrity of official communications.

## 7.   Summary

400.   Lee Cuellar played a precision role in *one of the most egregious, unprecedented, and overt demonstrations of obstruction within the entire RICO enterprise.* Whether acting as a real person or synthetic front, Cuellar's execution of a simulated document laundering event, intended to erase and override a real-time plea for judicial intervention, is among onf of the clearest acts of intentional misconduct in this entire case.

401.   The metadata anomalies, timestamp orchestration, and cloned responses within minutes of each other point not to clerical mistake but to a deliberate digital fraud designed to frustrate Plaintiff's legal relief and perpetuate unlawful psychiatric detentions. Cuellar is a direct agent of the enterprise and a key figure in proving its conscious intent.

## XXI.   CLAIMS AGAINST LEGAL COUNSEL

### A   |   Mawerdi Hamid, Assistant Hennepin County Attorney

402.   Defendant Mawerdi Hamid is the currently assigned prosecutor in Plaintiff Guertin's criminal matter (27-CR-23-1886), and a central figure in the obstruction and retaliatory campaign now being uncovered through forensic and procedural analysis. Her conduct—both in-court and across the synthetic case matrix—demonstrates clear alignment with a coordinated judicial-prosecutorial conspiracy aimed at unlawfully discrediting, silencing, and ultimately indefinitely institutionalizing the Plaintiff in furtherance of a civil and criminal enterprise scheme.

( see MnCourtFraud.Substack.com/p/mawerdi-hamid )

403.   Her role encompasses direct violations of constitutional and statutory law, including perjury, Brady violations, and abuse of prosecutorial authority under color of law.

- Hamid's Actionable Conduct Includes -

### 1.   Perjury

404.   Sworn perjury before Judge Hudleston on April 29, 2025, wherein she denied all knowledge of discovery manipulation in Plaintiff's case, directly contradicting her own statements made during the March 5, 2025 contested competency hearing—statements preserved in the transcript where she acknowledges the altered photographic exhibits and questions Guertin's reaction to their use at trial. These diametrically opposed positions constitute prima facie perjury and suggest deliberate falsification of the evidentiary record (see

Emergency Motion for Stay, A25-0882, p. 6-7 [9] ; Tr. 9, 12-20, Add. 168 [10] ; Tr. 1-2, 8-10, Add. 15 [11] ).

### 2.   Brady Violation

405.   Material Brady violation, by failing to disclose exculpatory knowledge of manipulated evidence, despite conceding the issue on March 5. This obstructs Guertin's ability to present a complete defense and violates his due process rights under *Brady v. Maryland,* 373 U.S. 83 (1963).

### 3.   Weaponization of Mental Health Procedures

406.   Active participation in the psychological pathologizing strategy, whereby invocation of protected rights—such as Guertin's Petition to Proceed Pro Se—are recast as symptoms of mental illness. Hamid's false denials are transparently designed to uphold Judge Hudleston's Rule 20 order, even in the face of overwhelming evidence of Guertin's lucidity and legal acumen.

### 4.   Synthetic Docket Participation

407.   Involvement in the synthetic docket framework, where Hamid appears in at least three synthetic "defendant clusters" across the MCRO evidence set in a prosecutorial role. This suggests either direct participation in, or tacit authorization of, the fictitious proceedings forming the backbone of the RICO predicate acts.

### 5.   Retaliatory Collusion

408.   Retaliatory collusion, evidenced by her unified positioning with defense counsel and the court against Guertin at the April 17 and April 29 hearings —both strategically blocking Faretta invocation and insulating fraudulent

---

9   A25-0882, Emergency Motion for Stay |
   Courtlistener.com/docket/68925331/115/guertin-v-hennepin-county/
10 Tr. 9, 12-20, Add. 168 |
   Courtlistener.com/docket/68925331/102/guertin-v-hennepin-county/
11 Tr. 1-2, 8-10, Add. 15 |
   Courtlistener.com/docket/68925331/99/guertin-v-hennepin-county/

documents from challenge. These actions form part of an ongoing pattern of obstruction and civil conspiracy.

**6.    Legal Theories of Liability**

409.    Hamid's conduct, considered in light of the overall enterprise, constitutes actionable predicate acts under 18 U.S.C. § 1961(1) (racketeering), including but not limited to:

- 410.    Obstruction of Justice (18 U.S.C. §§ 1503, 1512)
- 411.    Fraud on the Court (via falsified filings and perjured testimony)
- 412.    Civil Rights Violations (42 U.S.C. § 1983; denial of due process and right to self-representation)
- 413.    Conspiracy to Interfere with Civil Rights (18 U.S.C. § 241)

**7.    Relief Sought**

414.    Plaintiff demands damages and declaratory relief against Defendant Hamid under 42 U.S.C. § 1983 and 18 U.S.C. § 1964(c). Plaintiff further requests that Hamid be enjoined from participating further in any proceedings involving the Plaintiff, and that her conduct be referred for professional discipline and federal criminal investigation for perjury, obstruction, and malicious prosecution.

**B    |    Jacqueline Perez, Assistant Hennepin County Attorney**

415.    Defendant Jacqueline Perez was the original lead prosecutor in Plaintiff Guertin's criminal case (27-CR-23-1886) and is both directly and indirectly implicated in the racketeering enterprise now exposed through digital forensic analysis and procedural review. Perez's role in engineering the pivotal incompetency finding in July 2023 constitutes a foundational act in the broader scheme to obstruct Guertin's rights and suppress evidence of systemic fraud.

( see MnCourtFraud.Substack.com/p/jacqueline-perez )

**- Perez's Conduct Includes the Following Predicate Acts and Civil Rights Violations -**

**1.    Key Role in Initiating the False Mental Illness Narrative**

416.    On July 7, 2023, Perez presided as State's attorney during the contested Rule 20 competency hearing. She advanced claims that Guertin was incompetent and relied on dubious psychological testimony to secure an Order for Incompetency dated July 13, 2023—an order that, while more "real" than others in the synthetic docket set, was authored by Danielle Mercurio, not Borer or Browne as nominally presented, and is still infected by falsified metadata and identity misrepresentation.

**2.    Trigger for Downstream Fraud**

417.    The July 13 order initiated the procedural sidelining of Guertin's criminal defense and created a false pretext for indefinite psychiatric commitment. This order also functioned as a covert, digital connection to the synthetic case matrix via the duplicate "Order-Other" filed into Guertin's case on July 13, 2023 which contained the two additional .ttf tracking font codes now uncevered by the Plaintff.

**3.    Evidence of Document Fraud**

418.    Digital forensics and metadata analysis confirm that Perez is implicated in knowingly submitting or presenting filings she did not author. Her filings—like those of many involved—are traceable to a central, non-judicial production source. These filings include cloned PDF templates and court documents that falsely attribute authorship to Perez, in violation of both state and federal law.

**4.    Named Defendant in Prior Federal Lawsuit**

419.    Following the July 13 order, Guertin filed a civil rights lawsuit in 2024 naming Perez as a defendant. Shortly thereafter, Perez was marked "inactive" in court records and replaced—strongly suggesting retaliatory and defensive

repositioning by the County Attorney's Office in response to the exposure of her role.

**5.      Appearance in Synthetic Docket Matrix**

420.   Perez appears as a listed attorney in 7 synthetic case files and is recorded 8 times in the "MnCourtFraud.com/File/04_CASE_listed-attorneys.xlsx" dataset. She is formally listed as the lead attorney in 3 cases—including Guertin's —within the MCRO evidence set. She is also named in documents whose digital fingerprints match cloned hashes across unrelated cases, confirming her integration into the synthetic docket structure.

**6.      Legal Theories of Liability**

421.   These actions constitute predicate racketeering activity under 18 U.S.C. § 1961(1), including:

- Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343)
    - 422.      by submitting fabricated filings to the court.

- Obstruction of Justice (18 U.S.C. §§ 1503, 1512)
    - 423.      by securing a fraudulent incompetency finding to derail Plaintiff's defense.

- Civil Rights Violations (42 U.S.C. § 1983)
    - 424.      by participating in the deprivation of liberty without due process.

- Conspiracy to Interfere with Civil Rights (18 U.S.C. § 241)
    - 425.      through coordinated efforts to silence and institutionalize Plaintiff.

**7.      Relief Sought**

426.   Plaintiff seeks damages and declaratory relief against Defendant Perez under 42 U.S.C. § 1983 and 18 U.S.C. § 1964(c). Further, Plaintiff requests that Perez be permanently enjoined from any prosecutorial involvement in Plaintiff's case and that her actions be referred for investigation for participation in a fraudulent, ai generated, synthetic judicial enterprise.

**C** | **Emmett M. Donnelly, and Raissa Carpenter, Hennepin County Public Defender's**

427.   Defendants Emmett Donnelly and Raissa Carpenter are public defenders currently appointed to represent Plaintiff Matthew Guertin in his criminal proceedings for case 27-CR-23-1886. Rather than providing constitutionally guaranteed legal defense, both attorneys have acted in furtherance of the fraudulent scheme to portray Guertin as mentally ill, suppress exculpatory evidence, and facilitate his indefinite incapacitation through bad-faith psychiatric evaluations and manufactured incompetency findings.

( **see MnCourtFraud.Substack.com/p/raissa-carpenter & /p/emmett-m-donnelly** )

428.   Their actions constitute a pattern of knowing participation in a criminal enterprise—designed to obstruct Guertin's defense, obstrcut due process, and preserve a broader system of synthetic court record generation—through both direct courtroom collusion and synthetic docket appearances.

### 1.    Emmett Donnelly – Direct Complicity and Sabotage of Defense

429.   Donnelly's real-world misconduct is documented extensively in Plaintiff's Emergency Motion for Stay Pending Appeal filed in Court of Appeals Case A25-0882 [12] (June 4, 2025).

**That record reflects the following violations:**

430.   Deliberate failure to object to hearsay psychiatric reports during the March 5, 2025 Contested Competency Hearing. Donnelly expressly waived confrontation rights guaranteed by the Sixth Amendment, stating he "*would not object to the hearsay element*" of Dr. Cranbrook's synthetic report that was not actually authored by her.

431.   Contradictory litigation posture—initially affirming the discovery evidence was doctored, only to abandon that claim by hearing's end, stating, "*I don't think we need to offer them*".

---

12 A25-0882 Emergency Motion for Stay |
    Courtlistener.com/docket/68925331/115/guertin-v-hennepin-county/

432. Refusal to file or argue Plaintiff's Motion to Dismiss based on proven digital fabrication of evidence—admitting on record on April 17, 2025 that *"we have not filed that motion … we do not intend to bring it up for a hearing"*.

433. Collaboration with the prosecution to reintroduce incompetency theories previously discredited by court order and forensic transcript review, while falsely claiming lack of agreement with prior findings to preserve judicial flexibility.

434. Urging plea negotiations contrary to Plaintiff's express demand for trial and evidence-based vindication, in violation of Minn. R. Prof. Conduct 1.2(a) and controlling Sixth Amendment jurisprudence.

435. These actions, in totality, constitute constructive abandonment under *United States v. Cronic*, 466 U.S. 648 (1984), and presumptive ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

**2.     Raissa Carpenter – Participation in the Synthetic Case Matrix**

436. Carpenter appears repeatedly across multiple fabricated criminal dockets in the MCRO dataset, often attached to "clustered" synthetic defendants whose cases reveal identical filing hashes, cloned signatures, and repeated fictitious assignments:

437. Lead Defense Attorney in the "Lucas Patrick Kraskey Cluster" – One of 12 synthetic dockets featuring nearly identical procedural staging, repeat judicial signatures, and cloned PDFs.

438. Involvement in the "Rex Allen Basswood Jr." Cluster – Including the 2022 felony robbery docket where metadata reveals Carpenter is simultaneously assigned conflicting roles as both defense, and prosecution.

**3.     Carpenter Appears as Attorney Assigned to 16 Synthetic Felony Cases - Including:**

  ○ 27-CR-22-18209 – Juliet Kay Higgins (Strangulation)

- ○ 27-CR-22-24627 – Rex A. Basswood Jr. (Robbery)
- ○ 27-CR-23-5751 – Lucas P. Kraskey (Drug Possession)
- ○ 27-CR-23-12653 – Jacob J. Schech (Fleeing)
- ○ 27-CR-23-21653 – Robert W. Balsimo (Domestic Assault)

( see **MnCourtFraud.com/File/04_CASE_listed-attorneys.xlsx** )

439. These cases uniformly show:
- No meaningful litigation activity;
- Dormant or idle status;
- Identical hearing templates and cloned judicial orders;
- Digital fingerprinting (via SHA-256 hashes) linking their filings to synthetic record generators.

440. Carpenter's inclusion in this matrix makes clear her role in manufacturing a fictitious pattern of defense activity—a form of procedural window dressing designed to give the appearance of legitimate criminal justice processing while facilitating the mass production of fraudulent court documents. Her synthetic presence overlaps with her current assignment in Guertin's case, confirming the scope of the enterprise. Most notably, Guertin downloaded all of these synthetic MCRO docket's approximately six months before he first met Raissa Carpenter on October 15, 2024 - indicating that she is essentially a judicial 'actor' in the most literal sense - carrying out a pre-scripted role in the conspiracy.

**4.    Predicate Acts and Violations**

The actions of both public defenders constitute:

- 441.   Obstruction of Justice under 18 U.S.C. § 1503;
- Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343)
  - ○ 442.   through the transmission of fabricated pleadings and synthetic filings;
- Deprivation of Rights Under Color of Law (42 U.S.C. § 1983)
  - ○ 443.   through active sabotage of constitutional protections;
- 444.   Conspiracy to Interfere with Civil Rights (18 U.S.C. § 241);

- Pattern of Racketeering Activity under RICO (18 U.S.C. § 1962(c))
  ○ 445.   by facilitating fraudulent filings, manipulating incompetency findings, and obstructing litigation across both real and synthetic dockets.

## 5.   Relief Sought

446.   Plaintiff seeks compensatory and punitive damages from both Donnelly and Carpenter under 42 U.S.C. § 1983 and 18 U.S.C. § 1964(c).

447.   Plaintiff further requests declaratory relief establishing the violation of his Sixth Amendment rights, and injunctive relief enjoining both parties from any continued role in his supposed *defense* or related criminal matters.

## D   |   Bruce M. Rivers, Private Defense Counsel

448.   Defendant Bruce M. Rivers is a licensed Minnesota criminal defense attorney who represented Plaintiff during the critical early phases of the underlying criminal proceedings. Far from providing constitutionally adequate representation, Rivers played an instrumental role in executing and concealing a compartmentalized segment of the broader RICO enterprise—namely, the effort to orchestrate Plaintiff's unlawful psychiatric commitment using fraudulent discovery, manufactured incompetency findings, and premeditated suppression of evidence.

449.   Although Rivers was likley not aware of the full scope of the synthetic docket conspiracy at the time, his conduct unequivocally places him within the heart of the racketeering enterprise. He operated as a gatekeeper to the truth, an agent of obstruction, and ultimately, a strategic tool in advancing the fraudulent mental health detention scheme at the core of this case.

### 1.   Admission of External Influences and Refusal to Disclose

450.   Rivers directly told Plaintiff in a private phone conversation that took place on May 22, 2023 at 3:13 PM that *"you have some very powerful people keeping an eye on you."* [13] This statement was made in the context of Plaintiff's

---

13 Bruce Rivers MN OLPR Complaint |
   Courtlistener.com/docket/68925331/77/guertin-v-hennepin-county/

efforts to expose the ai generated video content he had analyzed, and which was being utilized in the theft of his patent. When then confronted in person, at his office just a couple weeks later, Rivers denied having made the statement, revealing an intent to erase and conceal a critical admission.

451.   Plaintiff hereby demands disclosure from Rivers identifying:

- Who these "*powerful* people" are,
- How and when these supposedly "*powerful*" people" contacted him,
- What instructions, threats, or coercive communications were conveyed,
- What these supposedly "*powerful* people" did to influence his legal strategy, and get him to abandon a longtime client, and friend he had known for nearly 25 years at that point.

## 2.   Key Role in the "Conspiracy of Commitment"

452.   Rivers is the person who first introduced the phrase "No court" to Plaintiff during the evening of January 15, 2024 over text message—a prophetic statement that now bears significant meaning given the proven existence of synthetic court records and AI-generated dockets, as there has essentially been "*No court*" throughout the entirety of the Plaitiff's simulated "legal proceedings" within the Fourth Judicial District Court over the past 30+ months of his *life*.

453.   After luring Plaintiff into a false sense of trust, Rivers turned fully against him, withholding critical reports, sabotaging his access to legal remedies, and initiating a psychiatric ambush intended to detain him under the pretext of mental incompetence, and being a "danger" to society.

As shown in "Exhibit P" of Plaintiff's 2024 federal case [14], Bruce Rivers:

- 454.   Withheld the Rule 20 evaluation by Dr. Adam Milz for more than 7 months, despite knowing its contents were central to the February 1, 2024 commitment ambush;

---

14 Exhibit P - "Conspiracy of Commitment" |
   Courtlistener.com/docket/68925331/23/guertin-v-hennepin-county/

- 455.   Refused to acknowledge the existence of the Rule 20 order even after Plaintiff directly discovered it in the MCRO system and began desperately requesting it from him;

- 456.   Gaslit the Plaintiff about the existence of scheduled hearings and court filings, including telling him "there is no court" in January 2024 despite the record later confirming that there was indeed "court," with a "Waiver of Appearance" being entered into the docket for Plaintiff, and the January 16 "Finding of Incompetency and Order" stating that "all parties agreed to a finding of incompetency prior to the hearing" - with this January 16-17 order then becoming the template for the additional 126 clones that are distributed throughout the synthetic docket matrix;

  ( see MnCourtFraud.Substack.com/p/incompetency-orders )

- 457.   Encouraged Plaintiff to waive his right to challenge the commitment, using veiled threats about "powerful people keeping an eye on him," only to later deny the conversation ever occurred.

458.   Rivers' actions were essential to the success of the fabricated psychiatric detention, and he remains liable for the role he played in constructing its false legal foundation.

## 3.   Suppression of Discovery and Forensic Evidence

Bruce Rivers:

- 459.   Withheld the Rule 20 report authored under Adam Milz's name for over seven months—despite it serving as the basis for a fabricated incompetency order now proven to be cloned across 126 additional synthetic court files (127 total clones including Plaintiff's)

- 460.   Delayed Plaintiff's receipt of "Set C" discovery materials until July, 16 2024, which contained crucial metadata anomalies and doctored photographic evidence.

- 461.   Delivered the discovery via USB flash drive, intentionally breaking the digital chain of custody and limiting Plaintiff's ability to authenticate and verify evidence—an obstruction that Plaintiff ultimately overcame by filing all of the metadata into federal court as "Exhibit W." [15]

---

15 Exhibit W | Courtlistener.com/docket/68925331/47/guertin-v-hennepin-county/

- 462. These were not mere oversights. They were deliberate acts that sabotaged Plaintiff's ability to expose fraud and mount a competent defense.

**4.    Procedural Obstruction and Fabrication of Psychiatric Narrative**

463.    Rivers repeatedly refused to file Plaintiff's motions, delayed court hearings, and falsely insinuated Plaintiff's mental instability despite having knowing the Plaintiff personally for over two decades. Rivers laid the groundwork for a fabricated narrative of instability that was later used by forensic examiners and the court to justify unconstitutional Rule 20 orders and the attempted, indefinite commitment scheme carried out during January of 2024, and culminating in the February 1, 2024 civil commitment hearing that Plaintiff just narroawly avoided at the last minute based on his own, pro se legal maneuvers.

**5.    Knowing RICO Participation Through Compartmentalized Participation in the Conspiracy**

464.    Even if Rivers did not author the forged documents or fully understand the synthetic docket architecture that was operating behind the scene's, his participation was active, knowing, and essential. He advanced the objectives of the criminal enterprise by:

- Obstructing justice through evidence suppression,
- Aiding the concealment of fabricated incompetency findings,
- Preventing access to exculpatory materials,
- Facilitating mental health fraud through silence and procedural sabotage.

**6.    Federal Statutory Violations**

**a. RICO and Conspiracy**

- 18 U.S.C. § 1962(c)
  - 465.    Participating in the conduct of a racketeering enterprise through a pattern of racketeering activity

- 18 U.S.C. § 1962(d)
  - 466.    Conspiring to violate RICO through coordination with prosecutors, court officials, and psychological evaluators

**b. Obstruction of Judicial Process**

- 18 U.S.C. § 1503
  - 467.    Obstruction of the due administration of justice

- 18 U.S.C. § 1512(b)
  - 468.    Intimidating or misleading a witness (includes false narratives or deception to derail investigation)

**c. Fraud and Deceptive Practices**

- 18 U.S.C. § 1343
  - 469.    Wire fraud (electronic concealment and suppression of digital evidence)

- 18 U.S.C. § 1349
  - 470.    Conspiracy to commit wire fraud

**d. Civil Rights Violations**

- 42 U.S.C. § 1983
  - 471.    Deprivation of constitutional rights under color of law (Sixth and Fourteenth Amendments)

- 42 U.S.C. § 1985(2)-(3)
  - 472.    Conspiracy to obstruct justice or deny equal protection under the law

## XXII.   MENTAL HEALTH AND PSYCHOLOGICAL SERVICES PERSONNEL

**A  |  Dr. Jill Rogstad, Senior Clinical Forensic Psychologist, Hennepin County**

**1.    Participation in a Conspiracy to Fabricate Competency Findings via False Forensic Reports**

473.   Dr. Jill Rogstad was the purported author of the initial Rule 20 psychological evaluation ordered in Case No. 27-CR-23-1886 and dated March 10, 2023. However, digital forensic analysis proves that Rogstad did not author this report. Metadata shows the file's true author is listed as "GuzmanC"—a likely reference to Chela Guzman Wiegert, previously identified as overseeing "Justice Information Technology."

474. The report also carries an anomalous XMP Toolkit ID—"Adobe XMP Core 5.6-c015 81.159809, 2016/11/11-01:42:16"—a highly unique build identifier that matches 17 documents across the MCRO synthetic matrix, including filings listing "Amanda Burg" and "Larison, Megan D (DHS)" as authors. This evidences shared production origin.

## 2.     Fraudulent Use of Expert Authority to Support a Fabricated Judicial Narrative

475. Rogstad's Rule 20 evaluation concluded Guertin was incompetent—contradicted by the report's glaring factual distortions and omissions. The report misrepresented the actual content of the meeting with Guertin and made conclusions not supported by clinical observation or documented statements. The entire purpose of the report was to facilitate judicial suppression of Guertin's defense by falsely labeling him mentally ill.

## 3.     Complicity in Forgery and Digital Evidence Manipulation

476. 18 U.S.C. § 1343, § 1341, § 371

477. The file bearing Rogstad's name was digitally authored using a known metadata profile tied to synthetic case records across the MCRO as revealed by Plaintiff's professional digital forensic investigation. These connections prove Rogstad either (a) knowingly allowed her credentials to be used in a document she did not author, or (b) acted in coordination with individuals who injected this file into the official record via the Odyssey eFiling system without proper attribution. Either scenario amounts to knowing participation in wire fraud, mail fraud, and conspiracy to obstruct justice.

## 4.     Material False Statements in a Judicial Proceeding

478. 18 U.S.C. § 1001; Minn. Stat. § 609.48

479. By permitting a false document to be submitted under her professional credentials, and allowing it to be used as justification for a judicial

finding of incompetency, Rogstad became a material contributor to fraud upon the court under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

### 5.     Violation of Plaintiff's Due Process and Sixth Amendment Rights

480.    The fraudulent Rule 20 evaluation generated by or attributed to Rogstad led to Guertin's unlawful deprivation of liberty, obstruction of his *Faretta* rights, and preclusion from mounting a defense. This contributed to the court's reliance on knowingly false mental health evaluations to justify unconstitutional restraints and repeated denials of his motions and attempts to defend himself - something has been taking place consistently for the past 30+ months, and is currently still taking place within the Plaintiff's simulated "legal" proceedings.

### 6.     Direct Connection to Synthetic Judicial Infrastructure

481.    The metadata signature on Rogstad's Rule 20 report matches a known series of fabricated mental health orders tied to indefinite civil commitment themes and repeat actors within the synthetic docket matrix. This metadata ties her to digital signatures and filing behaviors appearing in fraudulent case clusters involving DHS personnel, such as Amanda Burg.

### 7.     Evidentiary Chain of Custody and Admissibility Preserved

482.    Guertin maintains the original PDF received via email from then-defense counsel Bruce Rivers. The metadata was publicly filed into the court record on April 3, 2024, in his Motion for Judicial Notice (Index #28). The forensic trail is authenticated and timestamped, supporting admissibility under Fed. R. Evid. 901 and 902.

### B  |  Dr. Adam Milz, Hennepin County Psychological Services

### 1.     Knowing Submission of Fabricated Evidence

483.    Milz submitted a Rule 20 report to the court on January 11, 2024, which was not authored by him, but instead lists "Hines, Anne" as both the author and creator in the embedded PDF metadata. The metadata also shows identical workflow and production markers to the December 2024 report fraudulently

submitted by Dr. Katheryn Cranbrook, establishing a coordinated authorship pattern. ( **see MnCourtFraud.Substack.com/p/adam-milz** )

**2.      Participating in a Coordinated Civil Commitment Scheme**

484.    Milz's report was the catalyst for the surprise February 1, 2024 commitment proceeding and a cloned incompetency order subsequently used in 127 of 129 synthetic cases in the MCRO dataset. These orders all appear to have been generated from a template and inserted into fake dockets, proving Milz's report served as a synthetic "seed" document.

**3.      Withholding of Court Documents in Furtherance of Scheme**

485.    Milz's report was deliberately withheld from the Plaintiff for more than seven months and only surfaced after Guertin initiated federal litigation. This concealment constitutes obstruction and Brady violations, aligning with the systemic suppression of exculpatory materials.

**4.      Mail and Wire Fraud**
      18 U.S.C. §§ 1341, 1343

486.    By participating in the generation and submission of false psychiatric reports into court records, Milz knowingly enabled the mailing and electronic transmission of fabricated government records under color of law.

**5.      Deprivation of Rights Under Color of Law**
      18 U.S.C. § 242

487.    Milz directly contributed to the deprivation of Guertin's liberty interest via fraudulent psychiatric diagnosis and the suppression of defense rights, culminating in an illegal attempt to recommit Guertin.

**6.      Racketeering Act Predicate – Document Fraud and Obstruction**
      18 U.S.C. §§ 1512, 1519

488.    The use of fabricated evaluations, presented as expert forensic assessments, constitutes obstruction of justice and supports a predicate RICO act through falsification of official records and interference with legal proceedings.

**C  |  Dr. Katheryn Cranbrook, Hennepin County Psychological Services**

### 1. Fabrication of Psychological Diagnosis Without Examination

489.   Cranbrook issued a diagnosis of "Unspecified Psychotic Disorder" and recommended forced neuroleptic treatment after Guertin declined to participate in the third Rule 20 interview. The evaluation was not based on medical evidence but on Guertin's pro se legal filings and federal complaints—an inversion of due process and an unconstitutional punishment for protected speech. Most notably, Guertin had just successfully completed his stayed order of civil commitment on November 8, 2024. His case worker he met with every month from Vail Place submitted a letter into Plaintiff's civil commitment case (27-MH-PR-23-815) which essentially said "*Plaintiff met all terms of his agreement, and the team agrees that his stayed order of civil commitment should be allowed to expire, Plaintiff is doing well, is working, met with a therapist as required, team finds no cause for concern, or conitnued monitoring*" - Plaintiff intetnionally submitted this into his criminal case to force it into the record, with Cranbrook directly acknowledging this letter in her report as well, submitted just over 5 weeks later, in which she is attempting to keep him entrapped within the same mental health narrative he just successfully succeeeded in "escaping." It's ridiculous.

( **see MnCourtFraud.Substack.com/p/katheryn-cranbrook** )

### 2. Metadata-Proven False Authorship and Report Fabrication

490.   Her December 20, 2024 report, like Milz's, lists "*Hines, Anne*" as the document's author and "Microsoft Print to PDF" as the producer. The exact same outdated Adobe XMP Core identifier ("*5.6-c142 87.162696, 2018/09/16*") is shared between both reports, proving they were fabricated by the same actor, on the same machine, and not independently authored.

**3.    Retaliatory Use of Mental Health Inquiry**
*Pate v. Robinson*, 383 U.S. 375 (1966)

491.   Cranbrook's evaluation was ordered not in response to behavior but as a retaliatory response to Guertin's exposure of earlier frauds. Her diagnostic conclusions explicitly cite his legal filings and civil rights litigation as symptoms of mental illness, criminalizing First Amendment expression and legal recourse.

**4.    Mail and Wire Fraud**
18 U.S.C. §§ 1341, 1343

492.   Her knowingly false submission of fabricated psychiatric material through the court system constitutes mail and wire fraud under federal law, contributing to a scheme to defraud the judicial process.

**5.    Obstruction of Justice and False Filing**
18 U.S.C. §§ 1512, 1519

493.   Cranbrook's knowingly false Rule 20 evaluation was designed to obstruct Guertin's defense, interfere with judicial proceedings, and suppress critical evidence of prior wrongdoing—supporting predicate acts under federal obstruction statutes.

**6.    Racketeering Act Predicate – Falsified Expert Testimony and Civil Rights Conspiracy**

494.   Cranbrook's conduct supports a RICO predicate as a member of a broader enterprise working to neutralize Guertin via synthetic mental health diagnoses, using fraudulent reports as weapons to eliminate due process.

**7.    Applicable Federal Statutes**

**a. Racketeering and Conspiracy (RICO)**

- 18 U.S.C. § 1962(c) – Racketeering Activity
  - 495.    Participated in an enterprise through a pattern of racketeering activity by submitting falsified expert testimony in judicial proceedings to deprive Plaintiff of liberty under color of law.

- 18 U.S.C. § 1962(d) – Conspiracy to Commit Racketeering
  - ○ 496.    Agreed and coordinated with other actors (mental health professionals, court officials, and prosecutors) to facilitate unconstitutional detention through fabricated Rule 20 reports.

## b. Fraud and Deceptive Practices

- 18 U.S.C. § 1341 – Mail Fraud
  - ○ 497.    Transmission of fraudulent mental health documents through postal or court filing systems as part of a broader fraud on the court.

- 18 U.S.C. § 1343 – Wire Fraud
  - ○ 498.    Use of electronic court systems (e-filing, email transmission, Odyssey backend) to submit knowingly false psychiatric material in furtherance of a fraudulent scheme.

- 18 U.S.C. § 1349 – Conspiracy to Commit Mail or Wire Fraud
  - ○ 499.    Coordinated falsification and submission of fabricated psychological reports in tandem with other conspirators.

## c. Obstruction of Justice and False Records

- 18 U.S.C. § 1512(c) – Obstruction of Official Proceedings
  - ○ 500.    Submission of falsified forensic material intended to interfere with Plaintiff's criminal defense and undermine legitimate judicial process.

- 18 U.S.C. § 1519 – Falsification of Records in Federal Matters
  - ○ 501.    Knowingly creating and submitting false documents in relation to ongoing proceedings with the intent to influence, impede, or obstruct.

## d. Civil Rights Violations (Under Color of Law)

- 42 U.S.C. § 1983 – Deprivation of Rights
  - ○ 502.    Deprived Plaintiff of liberty and due process through fraudulent psychiatric reporting used to justify involuntary commitment.

- 42 U.S.C. § 1985(2)-(3) – Conspiracy to Interfere with Civil Rights
  - ○ 503.    Conspired to intimidate and injure Plaintiff in his legal advocacy and to obstruct justice through psychiatric fraud.

**D | Dr. Kristen A. Otte, Hennepin County Psychological Services**

504.   Dr. Kristen A. Otte is the most frequently recurring forensic psychologist in the foundational synthetic mental health commitment cases analyzed by Guertin—particularly those comprising the "Adrian Michael Wesley" cluster and related fabricated dockets. Her presence in multiple synthetic dockets follows a precise pattern: court-ordered Rule 20.01 exams followed by severe psychiatric diagnoses used to indefinitely halt prosecution and reroute defendants toward indefinite institutionalization in the Saint Peter State Security Hospital. ( **see MnCourtFraud.Substack.com/p/kristen-a-otte** )

### 1.   Participation in Systemic Deprivation of Liberty Without Due Process

505.   Otte's recurring role in fabricating Rule 20.01 psychiatric justifications for indefinite state control over criminal defendants—absent legitimate hearings, adversarial testing, or defense objection—constitutes participation in a sustained campaign of civil rights violations in violation of the Due Process Clause and the Sixth Amendment right to a fair trial.

### 2.   Known Use of Templated, Script-Based Evaluations Across Synthetic Dockets

506.   Metadata, language analysis, and timeline correlations across synthetic cases reveal Otte's repeated use of boilerplate psychiatric findings and identical language ("lacks the ability to rationally consult with counsel or understand the proceedings"), including references to chronic, untreatable mental illnesses such as fetal alcohol syndrome and intellectual disability—without individualized basis. These scripts were recycled to construct a façade of medical legitimacy across entirely fictitious case files.

### 3.   Constructive Participation in a Racketeering Enterprise
18 U.S.C. § 1962(c)

507.   While Dr. Otte may not have authored all forged reports herself, her signature and purported conclusions were instrumental in giving judicial and prosecutorial actors the pretext to indefinitely commit defendants in fabricated

proceedings. Her repeated presence across dozens of synthetic cases and eight formal court filings is evidence of willful and continuing association with the broader RICO enterprise.

### 4. Digital Integration into a Fraudulent System Without Real-World Nexus

508. Despite never having participated in Guertin's case, Dr. Otte has long appeared in the Odyssey backend record as a linked psychological services provider—suggesting not only the automation or pre-insertion of certain actors into docket scripts but also potential advance staging of synthetic filings. Her unexplained integration into Guertin's digital case environment—unlike every other named examiner—supports the inference of centralized digital control over court record fabrication.

### 5. Racketeering Act Predicate – Use of Falsified Mental Health Records
18 U.S.C. §§ 1341, 1343, 1512, 1519

509. Otte's evaluations were repeatedly relied upon in judicial orders to remove defendants from the trial process via purported psychiatric incapacity. Each such filing transmitted through electronic court systems constitutes a wire fraud and obstruction predicate. The near-verbatim reproduction of her diagnoses across unrelated cases without forensic diversity supports the claim that the documents were not independently or professionally generated.

### 6. Violation of Civil Rights Under Color of Law
42 U.S.C. § 1983 / 18 U.S.C. § 242

510. Otte's instrumental role in producing synthetic diagnoses—designed solely to remove defendants from the criminal process and circumvent evidentiary challenges—amounts to a deliberate misuse of government authority to deprive individuals, including Guertin, of liberty and due process rights.

### 7. Applicable Federal Statutes

#### a. Racketeering and Conspiracy (RICO)

- 18 U.S.C. § 1962(c) – Racketeering Activity

- 511.  Participated in the conduct of a criminal enterprise through repeated submission of fabricated Rule 20 evaluations used to justify indefinite psychiatric detention and obstruct criminal proceedings.

- 18 U.S.C. § 1962(d) – Conspiracy to Commit Racketeering
  - 512.  Willfully conspired with other psychological examiners, judicial officers, and court administrators to further a coordinated scheme of civil commitment based on false mental health claims.

### b. Fraud and Deceptive Practices

- 18 U.S.C. § 1341 – Mail Fraud
  - 513.  Her psychiatric reports were delivered via the court's filing and mail systems as part of a fraudulent scheme to neutralize defendants under color of mental illness.

- 18 U.S.C. § 1343 – Wire Fraud
  - 514.  Electronic transmission of false evaluations through the state's Odyssey case management system and MCRO to facilitate unlawful detention of individuals.

- 18 U.S.C. § 1349 – Conspiracy to Commit Mail or Wire Fraud
  - 515.  Knowingly contributed to a system-wide strategy that employed falsified mental health materials for judicial deception and detention.

### c. Obstruction of Justice and False Records

- 18 U.S.C. § 1512(c) – Obstruction of Official Proceedings
  - 516.  Falsified or scripted forensic reports that were used to derail criminal prosecutions and prevent adversarial adjudication of charges.

- 18 U.S.C. § 1519 – Falsification of Records in Federal Investigations
  - 517.  Authored or permitted psychiatric records to be submitted under her name that were not independently generated and that materially misrepresented the mental state of individuals in criminal cases.

### d. Civil Rights Violations (Under Color of Law)

- <u>42 U.S.C. § 1983 – Deprivation of Rights</u>
  - 518.  Violated the constitutional rights of defendants by using fraudulent psychiatric evaluations to unlawfully deprive them of liberty and due process.

- <u>42 U.S.C. § 1985(3) – Conspiracy to Deprive Equal Protection</u>
  - 519.  Participated in a concerted effort to deprive individuals —targeted through synthetic proceedings—of fair process through fraudulent Rule 20 claims.

- <u>18 U.S.C. § 242 – Deprivation of Rights Under Color of Law</u>
  - 520.  As a government-contracted mental health professional, engaged in actions that willfully violated constitutional protections by falsely labeling competent individuals as mentally ill to justify indefinite confinement.

## XXIII.  CLAIMS AGAINST DOE DEFENDANT'S

### A  |  John Does 1–50, and Jane Does 1–50

521.  Plaintiff names Doe Defendants as placeholders for currently unidentified individuals who materially participated in the predicate acts and constitutional violations detailed throughout this Complaint.

522.  These individuals are reasonably believed to include court IT administrators, Odyssey system engineers, DHS contractors, forensic mental health evaluators, and law enforcement personnel—alongside military and intelligence-connected actors, third-party vendors, and high-level officials within the executive branch of the United States Government (including the U.S. State Department, Army, Air Force, and DARPA). Also implicated are executives and engineers from private-sector entities tied to the entertainment, technology, and defense industries—including Light Field Labs, OTOY, Google LLC, Alphabet Inc., and YouTube—who are alleged to have played direct roles in the misappropriation, surveillance, or suppression of Plaintiff's intellectual property, including U.S. Patent No. 11,577,177. Affiliates of the World Economic Forum are likewise named, as are academic institutions and research collaborators such as USC-

ICT, USC Cinema, and the USC Shoah Foundation. Each of these actors is believed to have materially participated in, or willfully concealed, the broader RICO enterprise—contributing to systemic fraud, retaliatory abuse of process, metadata tampering, and the unconstitutional targeting of Plaintiff's protected legal advocacy.

### 1.   Participation in Racketeering Activity and Predicate Acts

523.   The Doe Defendants are implicated in predicate offenses under the RICO statute (18 U.S.C. §§ 1961–1962), including:

- Mail and wire fraud (18 U.S.C. §§ 1341, 1343)
- Obstruction of justice (18 U.S.C. §§ 1512, 1519)
- Identity fraud and digital forgery
- Deprivation of rights under color of law (18 U.S.C. § 242; 42 U.S.C. § 1983)

524.   Their involvement is supported by forensic evidence indicating participation in metadata tampering, document cloning, signature falsification, manipulated service records, and the back-end insertion of fabricated court filings across multiple case dockets.

### 2.   Liability Under § 1983 for Direct and Supervisory Involvement

525.   Each Doe Defendant, once identified, will be subject to claims under 42 U.S.C. § 1983 for their direct or supervisory role in violating Plaintiff's constitutional rights—including unlawful seizure, due process deprivations, obstruction of access to the courts, and retaliatory misuse of mental health proceedings to silence protected speech.

### 3.   Preservation of Claims Pending Discovery and Identification

526.   Pursuant to Fed. R. Civ. P. 10(a) and 15(c), Plaintiff asserts these claims in good faith and will amend this Complaint upon discovery of each Doe Defendant's identity. Given the covert nature of the enterprise—particularly the falsification of authorship metadata and use of digital aliases—Plaintiff will seek

expedited Rule 26(f) discovery from known defendants to unmask all of those responsible. All supporting forensic logs and chain-of-custody documentation have been preserved.

## XXIV.   RICO CLAIMS (18 U.S.C. §§ 1962(c) and (d))

**A   |   Enterprise Allegation**

527.   Plaintiff alleges the existence of an enterprise within the meaning of 18 U.S.C. § 1961(4), consisting of Minnesota state court officials, forensic examiners, public defenders, psychological services staff, Odyssey system operators, and affiliated actors working in concert to unlawfully fabricate criminal proceedings, suppress exculpatory evidence, and neutralize Plaintiff through unconstitutional psychiatric detention.

528.   This enterprise operated continuously from at least January 2023 through the present, utilizing official court infrastructure and state authority under color of law. Its coordinated purpose was not limited to routine misconduct but aimed at eliminating Plaintiff's ability to commercialize and publicly reveal a patented volumetric display and light field reconstruction system, which threatens entrenched military-industrial and entertainment sector interests.

**B   |   Pattern of Racketeering Activity**

529.   The enterprise engaged in a pattern of racketeering activity, including predicate acts such as:

- Mail Fraud (18 U.S.C. § 1341)
- Wire Fraud (18 U.S.C. § 1343)
- Obstruction of Justice (18 U.S.C. §§ 1503, 1512, 1519)
- False Statements and Falsification of Records (18 U.S.C. § 1001)
- Witness Tampering and Retaliation (18 U.S.C. § 1512)
- Conspiracy to Commit Racketeering (18 U.S.C. § 1962(d))

530.   These acts were not isolated but conducted with continuity and coordination, using official docket systems, digital forgery, mail-based service

manipulation, and psychological coercion to prevent Plaintiff from vindicating his intellectual property and civil rights.

**C | Conspiracy Allegation (18 U.S.C. § 1962(d))**

531. All named Defendants knowingly conspired to participate in the affairs of the enterprise through the commission and concealment of racketeering acts. Their shared objective was to disable and discredit Plaintiff before he could litigate or commercialize U.S. Patent No. 11,577,177—a technology whose estimated value exceeds $100 billion in net present value, with potential to disrupt multiple government, media, and defense sectors. See Addendum 182-199 [16], for forensic financial analysis of projected market impact and damages.

**D | Injury and Nexus**

532. Plaintiff suffered direct and continuing injury as a result of Defendants' racketeering activities, including:

- Unlawful detention and deprivation of liberty
- Reputational harm and psychological trauma
- Loss of market access and opportunity to commercialize patented IP
- Ongoing threat of indefinite psychiatric confinement
- Suppression of speech and denial of access to courts

533. These injuries flow directly from the enterprise's organized use of state mechanisms to obstruct Plaintiff's legal agency, falsify the record, and eliminate opposition to the unauthorized exploitation of his invention.

---

16 Netflix Patent Motive & Valuation, Add. 182-199 | Courtlistener.com/docket/68925331/103/guertin-v-hennepin-county/

## XXV.  EQUITABLE RELIEF REQUESTED

534.    Plaintiff seeks immediate and permanent equitable relief to halt irreparable, and ongoing harm stemming from unconstitutional and fraudulent state actions:

**1.**    A preliminary and permanent injunction staying all state court proceedings involving Plaintiff.

**2.**    A declaratory judgment that all psychiatric evaluations, court orders, and case materials created through synthetic means are constitutionally invalid.

**3.**    An order referring all digitally verified evidence of forgery, obstruction, and perjury to the U.S. Department of Justice and/or federal grand jury for criminal investigation.

**4.**    A protective order preventing any further psychiatric examination, forced medication, or commitment of Plaintiff without due process.

**5.**    Expungement and deletion of any official record entries shown to be synthetic, altered, or created under false authorship.

## XXVI.  DAMAGES

535.    While Plaintiff has suffered significant emotional distress, reputational damage, deprivation of liberty, and ongoing civil rights violations, he does not at this time request specific monetary relief in this initial Complaint.

536.    However, Plaintiff expressly reserves the right to seek compensatory and punitive damages, including but not limited to treble damages under 18 U.S.C. § 1964(c), after discovery and full evidentiary presentation.

## XXVII.  PRAYER FOR RELIEF

537.  Plaintiff respectfully requests that this Court:

**1.**    Issue a temporary restraining order and preliminary injunction halting all state criminal proceedings.

**2.**    Declare the Rule 20 process as applied to Plaintiff to be unconstitutional and retaliatory.

**3.**    Expunge all court records and psychiatric evaluations found to be fraudulent or synthetic.

**4.**    Refer the matter for federal criminal investigation.

**5.**    Award Plaintiff compensatory, punitive, and treble damages at a later stage, following discovery.

**6.**    Grant any further relief this Court deems just and proper.

## XXVIII.  DEMAND FOR JURY TRIAL

538.  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## XXIX.  EVIDENTIARY PRESERVATION AND SUBPOENA POWER

539.  Plaintiff respectfully requests:

**1.**    An order directing all Defendants and third-party custodians (including MN Judicial Branch, Hennepin County, DHS, and Odyssey System Administrators) to preserve all digital logs, PDF metadata, court record edits, XMP toolkit data, server access logs, and email communications relating to Plaintiff's case and the broader synthetic MCRO case set.

**2.**    Leave of court to issue early Rule 45 subpoenas or expedited discovery to obtain:

- Internal authorship logs of all PDF court records in Odyssey/MCRO
- Identity of "barbj", "nehring", and the many other recurring metadata authors
- System logs related to court record access and alteration

- Forensic mirror of Plaintiff's full case file from Hennepin County / MCRO systems

**3.**　Permission to file a preservation letter or demand for litigation holds upon known state entities.

## XXX.  VERIFICATION AND SIGNATURE

540.  I, Matthew David Guertin, hereby declare under penalty of perjury, pursuant to the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 25th day of June, 2025, in Hennepin County, State of Minnesota.

**Dated:  June 25, 2025**

*Respectfully submitted,*

 */s/ Matthew D. Guertin*

Matthew David Guertin
*Plaintiff Pro Se*
4385 Trenton Ln. N 202
Plymouth, MN  55442
Telephone: 763-221-4540
MattGuertin@protonmail.com
www.MattGuertin.com