# EXHIBIT MAR-5

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce

Page: 1 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                              1

      1   STATE OF MINNESOTA               IN DISTRICT COURT
      2   COUNTY OF HENNEPIN        FOURTH JUDICIAL DISTRICT
      3   ----------------------------------------------------
      4   State of Minnesota,
      5
      6                Plaintiff,           HEARING
      7           vs.                  FILE NO. 27-CR-23-1886
      8
      9   Matthew David Guertin,
     10                Defendant.
     11   ----------------------------------------------------
     12           The above-entitled matter came on for hearing
     13   before the Honorable William H. Koch, Judge of District
     14   Court, on March 5, 2024, at the Hennepin County Government
     15   Center, Minneapolis, Minnesota.
     16
     17                    APPEARANCES
     18
     19           MAWERDI HAMID, Attorney at Law,
     20   appeared on behalf of the Plaintiff.
     21
     22           EMMETT DONNELLY and RAISSA CARPENTER,
     23   Attorneys at Law, appeared on behalf of the Defendant, who
     24   was personally present.
     25
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 2 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                    2
   1        (WHEREUPON, the proceedings were duly had:)
   2        THE COURT:  This is the matter of State of
   3    Minnesota versus Matthew David Guertin, Case Number
   4    27-CR-23-1886.  This is a four-count criminal
   5    complaint regarding firearms.  We're here today on a
   6    contested competency matter.
   7        If I could please have counsel note your
   8    appearances starting with the State.
   9        MS. HAMID:  Good morning, Mawerdi Hamid, last
  10    name H-A-M-I-D, for the State.
  11        MR. DONNELLY:  Your Honor, Emmett Donnelly and
  12    Raissa Carpenter on behalf of Mr. Guertin who is
  13    present and seated between us.
  14        THE COURT:  All right.  Good morning everyone.
  15        This case has had a history.  We -- I would note
  16    that there have been two earlier findings of
  17    incompetence in the case back on July 13th of '23 and
  18    January 17th of 2024.  There's been kind of an
  19    approach by Mr. Guertin to the Court of Appeals to
  20    review whether or not he could discharge his former
  21    counsel, and the Court of Appeals denied that request
  22    and did not look at a number of matters that were
  23    submitted by Mr. Guertin just as not being necessary
  24    for that.
  25        I saw you back in July of 2024, sir, and then in
```

**EXHIBIT MAR-5 | p. 2**

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 3 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                             3

  1        October we allowed Bruce Rivers to be discharged and

  2        we appointed the public defenders to work with you.

  3        Since that time one of my colleagues did order a new

  4        Rule 20.01 Evaluation and Dr. Cranbrook, who is here,

  5        had attempted to do that.  I know there was some

  6        federal litigation that kind of had several people

  7        have to kind of recuse from working on this case.

  8             The matter is still in the stayed status as far

  9        as the criminal matter.  That case is being moved from

 10        Judge Quam to Judge Hudleston because Judge Quam is

 11        retiring, but we still handle the competency matters

 12        here in probate mental health court and that's why I

 13        have the case.

 14             We do have a report from Dr. Cranbrook on

 15        December 20th indicating that she had attempted

 16        several times to set up an interview with you for this

 17        most recent evaluation, and that while you reached out

 18        to Ms. Carpenter you did not reach out and set up an

 19        interview.  Nonetheless, Dr. Cranbrook did submit her

 20        report on December 20th.  In response to that Ms.

 21        Carpenter said that she wanted to have a hearing on

 22        that.

 23             I'd like to just have a better understanding of

 24        what it is that the defense is challenging because the

 25        report was --
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 4 of 61        [ source file ]        [ .ots timestamp of source file ]

---

                                                                4

1            MR. DONNELLY:  I could speak to that, Judge.
2            THE COURT:  Okay.  Mr. Donnelly.
3            MR. DONNELLY:  So we are not -- I think the
4       present state of the law is that given the
5       incompetency opinion that it would be Mr. Guertin's
6       burden to show that he is competent.  Our contest here
7       is not what's in her report, it's what's not in it.
8       We do not have questions really for Dr. Cranbrook and
9       so I believe, I mean, I think it's our burden of proof
10      so technically I think we should be offering first.
11           THE COURT:  Right.
12           MR. DONNELLY:  We don't intend to call her and
13      don't intend to have any cross-examination questions
14      and would not object to -- if her report was submitted
15      wouldn't object to the hearsay element to that.
16           So our basic position, Mr. Guertin's basic
17      position is that he is competent because he can assist
18      in his defense, because he has reviewed, after kind of
19      a long, hard-fought effort to get the discovery in his
20      case, he's been able to review that and show that
21      there is false evidence that has been used in his
22      case, and particularly with respect to the assertion
23      that he is incompetent and that he participate -- he
24      understands by his ability to go through the evidence
25      and point out what has been doctored and what is false

---

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce

Page: 5 of 61      [ source file ]      [ .ots timestamp of source file ]

                                                                        5

    1      that he does have the ability to consult with counsel
    2      and understand the nature of the proceedings against
    3      him.
    4           He would offer to the Court minimally that there
    5      are photographs that have been doctored, that he can
    6      show that, and that they are using this basically
    7      false claims of evidence against him.  So that's the
    8      summation of our position.
    9           THE COURT:  Okay.  I'm going to ask for more
   10      clarification.
   11           MR. DONNELLY:  Um-hum.
   12           THE COURT:  We have a number of submissions that
   13      Mr. Guertin, your client, submitted to the Court in
   14      anticipation of this motion just like he did before
   15      the Court of Appeals and everything else, we're
   16      talking hundreds of pages.  And they're filed as being
   17      pro se, but Mr. Guertin is not pro se, he's
   18      represented by counsel.  So I don't know if counsel
   19      was aware of those filings and said we're not filing
   20      that and then he filed them on his own, or if you're
   21      adopting those and saying you want them considered by
   22      the Court.  That's kind of one issue.
   23           Another issue, obviously, is while the
   24      incompetency findings are still out there, the
   25      criminal matter is stayed so there's, you know,

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 6 of 61        [ source file ]        [ .ots timestamp of source file ]

6

```
 1        there's nothing to be filed or be heard with that.
 2             Any insight you can share on --
 3             MR. DONNELLY:  Well, Your Honor --
 4             THE COURT:  -- the submissions?
 5             MR. DONNELLY:  -- I think so.  Not a whole lot
 6        of insight but maybe some.
 7             Our -- The defense, I guess now at least two
 8        defense attorneys have raised the competency question.
 9        We do not intend to offer our own opinion today about
10        competence or incompetence, but you know from the
11        record and, of course, the proceedings that the
12        defense has raised that question.
13             THE COURT:  Sure.
14             MR. DONNELLY:  The present state of the law as
15        we understand it is that a person who is claimed to be
16        incompetent has a right to challenge that opinion and
17        that finding and have a contested hearing.  And it is
18        in that effort that I understand Mr. Guertin filed
19        those exhibits to discharge the defense burden to show
20        that he is, in fact, competent, that he understands
21        the nature of the proceedings against him, he
22        understands what evidence is and actually filed things
23        in court and, therefore, has exhibited an
24        understanding of what the court process is.
25             I think short of that I think Mr. Guertin would
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 7 of 61        [ source file ]      [ .ots timestamp of source file ]

```
                                                          7

    1      have to address that, you know, specifically.  I don't
    2      know that that's -- I don't know that counsel can --
    3      can speak or testify to his competency or --
    4           THE COURT:  Well, I understand that.  What
    5      I'm -- what I'm trying to get it is are these -- We
    6      have a number of filings here that are improper, they
    7      weren't filed by you.
    8           MR. DONNELLY:  Right.
    9           THE COURT:  Okay?  So what do you think I should
   10      do with regard to those?  Is it something that your
   11      client is going to have to testify and introduce all
   12      through testimony?  Do you basically say, Judge, we
   13      ask you to consider that as being submitted on behalf
   14      of our client whether it's us or our client.
   15           Because quite frankly, Mr. Guertin, it's not the
   16      way to do it.  You have counsel, they're very
   17      experienced, they know what they're doing.  They're
   18      representing you and they will zealously.  Trust me,
   19      I've had both these attorneys in other cases and
   20      they're very persistent.
   21           I don't want you to get in the practice of just
   22      filing things willy-nilly or filing things that are
   23      not with your attorneys' blessing.  Frankly, it
   24      undermines your claim that you're competent.  It's not
   25      because the things are nonsensical, I mean, the
```

**EXHIBIT MAR-5 | p. 7**

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 8 of 61         [ source file ]        [ .ots timestamp of source file ]

8

```
1       structure is there, the form -- it's very professional
2       looking.  I have not gone through the hundreds of
3       pages that we've gotten because I didn't know if your
4       attorneys would want me to consider it, but there's a
5       lot there.
6            And I know when this went up to the Court of
7       Appeals there was a lot there that you asked them to
8       take judicial notice of and everything.  This is not
9       something where there are three people, three counsel
10      on the defense side.  You have two and so whether it's
11      before me or whether it's before the criminal court I
12      just want you to work through your attorneys, that's
13      why they're there.
14           So, Mr. Donnelly, back to my original question,
15      do you think that these matters are properly before
16      the Court, these submissions?
17           MR. DONNELLY:  That's a tough question, Judge.
18           THE COURT:  I only ask tough questions.
19           MR. DONNELLY:  And this is -- these -- These
20      things are in a very difficult procedural posture
21      because the defendant is contesting his incompetency.
22           THE COURT:  Sure.
23           MR. DONNELLY:  And the defendant has a right to
24      do that.  And if the defendant were to disagree with
25      their lawyer it would seem that they would have a
```

**EXHIBIT MAR-5 | p. 8**

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 9 of 61        [ source file ]        [ .ots timestamp of source file ]

---

9

1    right to have the judge consider the arguments and
2    evidence that they want them to consider.  We have not
3    filed those exhibits, and this is material that Mr.
4    Guertin believes shows his competence.
5        THE COURT:  Okay.
6        MR. DONNELLY:  And I don't know that we as his
7    counsel when an individual has a right to contest
8    their competency or incompetency can decide we're not
9    going to provide that to the judge.
10        THE COURT:  All right.  Well, let me hear
11    from --
12        MR. DONNELLY:  Thank you.
13        MS. HAMID:  -- Ms. Hamid.  Oh, I'm sorry,
14    anything else?
15        MR. DONNELLY:  No.
16        THE COURT:  If I could hear from the State, what
17    are your thoughts about whether or not the Court can
18    properly consider the various submissions of Mr.
19    Guertin in anticipation of this hearing?
20        MS. HAMID:  Your Honor, it's the State's motion
21    because defendant has been found to be incompetent in
22    the past and in the current finding by the evaluator,
23    it's the State's position that defendant may not be
24    able to take the stand and to testify as a witness
25    because of the Rules of Evidence 601.  He is not a

---

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 10 of 61          [ source file ]       [ .ots timestamp of source file ]

10

```
 1     competent witness to testify, Your Honor, and to
 2     provide this evidence and submit it into the court.
 3     And for that reason it's the State's position that
 4     these documents should not be considered or the
 5     defendant not be allowed to testify in court.
 6          THE COURT:  Do you have any case law to support
 7     your assertion that someone in a competency
 8     determination cannot testify?
 9          MS. HAMID:  No, Your Honor, but I can -- I can
10     try to find it and supplement --
11          THE COURT:  Yeah, I don't think you're going to
12     find it, with all due respect.
13          MS. HAMID:  Okay, Your Honor.
14          THE COURT:  The -- Someone who's been opined
15     incompetent has a right to challenge that, and I
16     believe we have a duty to hear from that person.
17     Whether or not ultimately it's persuasive or not is a
18     separate issue, but I find it hard to believe that
19     there would be case law saying that, with no
20     disrespect to Dr. Cranbrook and her colleagues, but
21     just because a psychologist says that they believe
22     someone is incompetent that that somehow, and the
23     Court has ordered someone to be incompetent, they're
24     trying to return to competency and so they want to
25     demonstrate that.  So I think I have to be able to
```

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 11 of 61        [ source file ]        [ .ots timestamp of source file ]

11

```
 1      hear from Mr. Guertin if he wishes to take the stand.
 2          All right.  I don't want to get wrapped around
 3      the axle on the documents, I'd like to get to the
 4      substance and then I can look at the documents as may
 5      be needed.
 6          The defense has indicated they don't intend to
 7      call Dr. Cranbrook, does the State intend to call
 8      Dr. Cranbrook or can we release her?
 9          MS. HAMID:  The State does not intend to, Your
10      Honor, the State just offers the report.
11          THE COURT:  Okay.  It sounds like both sides
12      agree that that can be received.
13          So, Dr. Cranbrook, thank you for being here but
14      so long.
15          All right.  Mr. Donnelly or Ms. Carpenter, how
16      would you like to proceed?
17          MR. DONNELLY:  Well, I think Mr. Guertin would
18      call Mr. Guertin.
19          THE COURT:  Okay.  With all due respect, he
20      doesn't call himself, you guys can call him --
21          MR. DONNELLY:  We'll call Mr. Guertin.
22          THE COURT:  Okay.  Like I said, there are two
23      attorneys, there aren't three.
24          MR. DONNELLY:  Well, just -- just so you know
25      that, and you probably remember, that he wanted to be
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 12 of 61          [ source file ]          [ .ots timestamp of source file ]

                                                                    12

    1      pro se and --
    2          THE COURT:  Oh, I know.  I understand all that
    3      and the law says he can't do that.
    4          (WHEREUPON, a discussion was held off the
    5      record.)
    6          THE COURT:  We'll go back on the record.
    7          MR. DONNELLY:  Judge, I think the premise of our
    8      argument here is that Mr. Guertin has been able to
    9      analyze certain pieces of evidence and determine that
   10      it's false evidence and deceptive and some of that has
   11      been used, and the part that he's highlighting have
   12      been used in opining that he is incompetent.
   13          THE COURT:  Okay.  We'll, we'll see where it
   14      goes.  If he's offering expert testimony or something
   15      regarding some expertise or something I'd like to know
   16      more about that at the appropriate time.
   17          Okay.  Sir, why don't you come on up and take
   18      the stand please.  You can go ahead and have a seat,
   19      sir.
   20              MATTHEW DAVID GUERTIN,
   21          having been first duly sworn,
   22          testifies and swears as follows:
   23          THE COURT:  Thank you, sir.
   24          I'm going to turn the -- Who's doing the
   25      questioning?

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 13 of 61          [ source file ]          [ .ots timestamp of source file ]

---

                                                                    13

     1          MR. DONNELLY:  I'll do it.
     2          THE COURT:  Okay.  Mr. Donnelly, you may
     3      proceed.
     4                    EXAMINATION
     5   BY MR. DONNELLY:
     6   Q  All right.  So, Mr. Guertin, would you just start by
     7      telling Judge Koch what your recollection of the
     8      history, a brief history of the procedures that have
     9      brought you here today that you're contesting.
    10   A  A brief history of the procedures meaning?
    11          THE COURT:  Well, maybe -- I mean, you've been
    12      found incompetent and you believe that you are
    13      competent?
    14          THE WITNESS:  Yes, the -- What's brought me here
    15      is three Rule 20 exams that have determined I'm
    16      incompetent with the initial stayed over civil
    17      commitment being completed on my behalf successfully,
    18      and that hearing originally took place on August 1st
    19      of 2023 and after which point on August 3rd of 2023 I
    20      was emailed a PDF of 80 photographs from my
    21      court-appointed attorney at the time Michael Biglow.
    22          I never asked for these photographs so they
    23      didn't get reviewed until a few months later at which
    24      point I noticed discrepancies, and then filed my first
    25      ever court motion in my life on January 5th of 2024

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/mar-5

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 14 of 61        [ source file ]        [ .ots timestamp of source file ]

14

```
 1     which was seeking discovery materials.  And that's
 2     kind of been my consistent path and relentless pursuit
 3     of the truth ever since.
 4          And as a result the -- Dr. Michael Robertson who
 5     conducted my civil commitment exam hearing on
 6     August 1st over a Zoom hearing relied on those 80
 7     photographs that were provided in the manipulated
 8     discovery materials that I was given.  And then the
 9     subsequent two Rule 20 exams not only also used my
10     claim of there being manipulated evidence as evidence
11     of my supposed mental health issues and a reason why I
12     needed to be placed on powerful antipsychotic drugs
13     against my will to make me competent, but also they --
14     there's false narratives being perpetuated in all
15     subsequent Rule 20 exams after the first one that
16     would include me being very candidly honest in the
17     first one and saying that I've used every drug in my
18     life besides heroin, and then in subsequent exams it
19     says basically that it makes me look like I have a
20     continuing and ongoing problem with every drug besides
21     heroin.
22          It says that I have a history of suicide and
23     self-harm in the subsequent reports which is
24     completely not true.  I've never been hospitalized for
25     suicide.  I've never attempted suicide.  So that's
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 15 of 61        [ source file ]        [ .ots timestamp of source file ]

15

1    blatantly untrue.
2        It says that I have a history of psychosis, and
3    that's untrue, there is no history of psychosis.
4    There's no documentation that they can provide, that
5    the prosecution can provide that proves that I do have
6    it because that's not true.
7        There was a letter submitted by my California
8    physician that I've been seeing, I've been on the same
9    prescription for ten years since 2016 and that my
10   California physician confirmed that there's no history
11   of psychosis, et cetera.  It says that I have a
12   history of mania, that's untrue.
13       THE COURT:  Who -- I'm sorry, who is the doctor
14   in California?
15       THE WITNESS:  Dr., I'm going to space on his
16   name now.  I'm spacing on his name.
17       THE COURT:  Okay.  I just -- I just -- You're
18   giving kind of a bit of a narrative here, which I
19   understand, but I just -- I want to make sure that if
20   you want to give detail that we get it and it's not
21   coming --
22       THE WITNESS:  Yeah, it's -- It's submitted in
23   one of the filings, and it was submitted also in the
24   civil commitment hearing as a single piece of evidence
25   that was passed along by Michael Biglow during the

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 16 of 61          [ source file ]          [ .ots timestamp of source file ]

16

1          August 1st hearing.
2              THE COURT:  Okay.  And the 80 photos that Dr. --
3          or that Mr. Biglow sent to you, what were they of?
4              THE WITNESS:  They were of my -- of the police
5          photographs of the incident that took place on
6          January 21st, 2023.
7              THE COURT:  That was from outside, inside, what?
8              THE WITNESS:  I believe outside and inside, and
9          it was only the -- the logical very simplistic way of
10         putting the -- the connections of it is that if you
11         consider that -- those 80 photographs Set A, well,
12         when I submitted my April 4, 2024 motion to compel
13         discovery in which I conducted a review of those --
14             (WHEREUPON, connection to the Crestron was
15         lost.)
16             THE COURT:  Back on the record.
17             We lost the Crestron connection to the court
18         reporter during some questioning about the photographs
19         being inside or outside.  I'll try to summarize.  I'm
20         not trying to put words in your mouth, sir, and you
21         can go through and repeat everything you said about
22         that.  But as I understand it you're concerned that
23         the -- you feel that the ratio of some of the photos
24         was not consistent so it indicated to you that some of
25         the photos were cropped, and you believe that, for

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 17 of 61          [ source file ]          [ .ots timestamp of source file ]

---

17

1     instance, a photograph of your medicine cabinet

2     focused unnecessarily and prejudicially on just your

3     prescription medications and didn't capture everything

4     that was in the medicine cabinet to include vitamins

5     and that sort of thing and that that was to put you in

6     a bad light.

7          And that you also felt that photographs, say, of

8     your kitchen didn't properly capture the granite

9     counters, some tarp, apparently there's some work

10    being done.

11         Is that an accurate summary?

12         THE WITNESS:  Yeah, it's excluding relevant

13    context.  And then just as my background I'll also say

14    that I -- I was trained in Crestron systems in

15    California.  My background is in digital media and --

16         THE COURT:  So you didn't fix all the problems

17    then?

18         THE WITNESS:  No, I'm just saying --

19         THE COURT:  So it's your fault is what you're

20    saying?

21         THE WITNESS:  I'm saying that I have a -- my

22    entire background is based in digital and interactive

23    media --

24         THE COURT:  Okay.

25         THE WITNESS:  -- and pixels and photographs and

---

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 18 of 61          [ source file ]          [ .ots timestamp of source file ]

18

```
 1    video, and while we're on the topic of Crestron I
 2    might as well throw it in.
 3         So the context that was excluded also includes,
 4    for instance, a bunch of books on the floor related to
 5    corporate startups and that are in all the other
 6    photos but were excluded.  So there's just a general
 7    false narrative.
 8         But even without the false narrative, or let's
 9    say there is the false narrative, that's my theory on
10    why, regardless if the 20 photographs remain that have
11    an inconsistent aspect ratio.  So those 20 images have
12    now been retroactively manipulated to fit into the 16
13    by 9 aspect ratio, and these are in the Hennepin
14    County One Drive official discovery system now, and
15    those are the images that are presented in the first
16    three exhibits that I submitted into the record prior
17    to this trial.  Those are all official so now they've
18    squeezed them and manipulated them to cover up the
19    previous tampering, so that's shows some rather --
20    that shows intent.  It shows effort.
21         THE COURT:  Okay.  With all due respect, I'm not
22    looking at court exhibits or trial exhibits, what I'm
23    focused on is competency and you believe --
24         THE WITNESS:  Yep.
25         THE COURT:  -- as I understand it that the
```

**EXHIBIT MAR-5 | p. 18**

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 19 of 61          [ source file ]          [ .ots timestamp of source file ]

---

19

1   photos were intentionally doctored to make you look
2   bad and to make you look incompetent, is that --
3          THE WITNESS:  Yes, by --
4          THE COURT:  Okay.
5          THE WITNESS:  -- excluding relevant context.
6          THE COURT:  Okay.  Anything else that you think
7   I need to know about the photos with regard to
8   competency?
9          THE WITNESS:  Just that -- that the -- that was
10  that thing that I had that there's multiple -- there's
11  multiple direct statements in the second Rule 20 exam
12  submitted to the Court on January 11, 2024 by Dr. Adam
13  Milz that contains multiple statements relating to my
14  claim about fraudulent discovery materials, and
15  actually used as evidence of why I need to be placed
16  on powerful antipsychotic drugs to make me well.
17         Just as there was also in the Dr. Cranbrook's
18  third Rule 20 exam the same exact statements eluding
19  to my belief that there's fraudulent discovery
20  materials as a reason for why I'm psychotic and need
21  to be placed on powerful antipsychotic drugs against
22  my will.
23         And so if there is indeed now substantiated and
24  irrefutable claims that cannot easily be discredited
25  about exactly that, then I would say that that is a

---

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 20 of 61          [ source file ]          [ .ots timestamp of source file ]

                                                                20

      1      rather compelling element of my competence, that is
      2      all.
      3            THE COURT:  Okay.  So the -- you believe that
      4      the psychologist who evaluated you discounted your
      5      concerns about the photos and used that to find that
      6      you were incompetent without understanding that you're
      7      right about the photos, I mean, is that --
      8            THE WITNESS:  Yes, and --
      9            THE COURT:  -- the gist of it?
     10            THE WITNESS:  There's that and then there's the
     11      origination of before there was the discovery issues
     12      of the entire origination of the original Rule 20 exam
     13      by Dr. Jill Rogstad that was submitted to the Court on
     14      March 10th of 2023 actually excludes the police report
     15      that was filed before it.  It's -- I showed up to my
     16      very first interaction with the court with labeled
     17      exhibits from the very beginning and then it's not --
     18      that evidence isn't considered and it is never
     19      included in any of the Rule 20 exams, but especially
     20      the first one where I have substantiating evidence of
     21      trying to get help for the claims that were deemed
     22      incompetent and that basically they're implausible
     23      claims that I made, right, but so there's a -- there's
     24      a --
     25            THE COURT:  I lost you there.

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 21 of 61          [ source file ]          [ .ots timestamp of source file ]

21

```
 1          THE WITNESS:  There's a police report of the
 2     fraud that I was claiming which was never factored in
 3     and which was made to look like there were statements
 4     that I was making that were crazy, but they're
 5     directly verified in the police report that I provided
 6     that's never mentioned.  So she didn't include
 7     relevant evidence that she did document as reviewed in
 8     the initial Rule 20, but it wasn't submitted or
 9     covered in the actual exam in any relevant way.  So it
10     seems to be intentionally excluded.
11          And then the other substantiating or big claim
12     was that I believe that I'm -- my claim that I'm an
13     engineer was claims of me being grandiose, even though
14     there's multiple high profile public -- like
15     publications that say I'm credited as an engineer for
16     very high-profile projects for the King of Saudi
17     Arabia and for the main stage at Coachella in 2019.
18          So she's using -- she used relevant claims of
19     mine that -- that I did in fact substantiate prior to
20     the hearing on July 7th which resulted in the
21     July 13th court order saying that I was incompetent.
22     So that was verified and she says that my -- my
23     prowess with technology is part of my delusions.  My
24     perceived achievements are part of my delusions, even
25     though I provided her with mattguertin.com, which is
```

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/mar-5

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 22 of 61          [ source file ]          [ .ots timestamp of source file ]

22

1    my website, which has plenty of verifiable claims on
2    it.
3         And then the main belief is that I believe that
4    Netflix and Microsoft were involved in the theft of my
5    patent, or basically it's eluded in the report that
6    it's crazy for me to even think Microsoft or Netflix
7    would know who I am, and now my name is on top of a
8    Netflix patent at the very top above everyone's with
9    my patent listed on it as prior art for a patent that
10   I would argue shouldn't have been granted because my
11   patent was 12 days prior.  They just happened to --
12   Netflix just happened to file a duplicate patent
13   application just 12 days after I filed mine.
14        And so those are all claims that were made that
15   have now been retroactively post facto substantiated.
16   So I would say that's rather compelling.
17        THE COURT:  Let me -- I'm going to ask a
18   question of counsel, I mean, you're challenging right
19   now the original determination back in July of 2023,
20   aren't we --
21        THE WITNESS:  Yeah, I'm challenging all of it.
22        THE COURT:  Well, I'm asking your attorneys,
23   aren't we well past the time to challenge that or even
24   the '24 determination?
25        MR. DONNELLY:  We would be challenging the

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf

SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce

Page: 23 of 61          [ source file ]          [ .ots timestamp of source file ]

---

                                                                    23

    1      present opinion.

    2              THE COURT:  Right.

    3              MR. DONNELLY:  And so I think what Mr. Guertin

    4      is getting to is that they've all built on each other

    5      and so he -- we're -- he's tracing back the present

    6      opinion of incompetency to the original opinions.

    7              THE COURT:  Okay.  Well, with all due respect,

    8      Dr. Cranbrook's current order or report doesn't

    9      actually say he's incompetent, it just says he's still

   10      suffering from mental illness.  Okay.

   11              Was there a reason, sir, why the July 13th, '23

   12      finding of incompetence was not challenged at that

   13      time?

   14              THE WITNESS:  Because I had ineffective counsel

   15      and that's why I replaced Bruce Rivers.

   16              THE COURT:  Okay.  And the January 17th, 2024?

   17              THE WITNESS:  Because I had ineffective counsel

   18      because he refused to -- I didn't even get the 2020 --

   19      I didn't even get the January 11th until I filed the

   20      federal lawsuit.  So I was asking for it, there was

   21      multiple filings and documentation that can prove

   22      that, and I wasn't provided with the discovery or the

   23      January 2024 Rule 20 exam until July 16th of 2024

   24      despite multiple attempts at receiving it, documented

   25      attempts from Bruce Rivers.

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/mar-5

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 24 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                    24

      1          THE COURT:  Okay.  So I understand you're -- the
      2     two concerns -- the two primary concerns that you've
      3     raised now are that the photos were doctored in a way
      4     to make you look bad?
      5          THE WITNESS:  Correct.
      6          THE COURT:  And secondly your experience with
      7     electronics and your technical competence was
      8     improperly questioned, that whatever --
      9          THE WITNESS:  Yeah, me saying --
     10          THE COURT:  -- information --
     11          THE WITNESS:  Me saying I'm an engineer was used
     12     as evidence of me being grandiose because he claims
     13     he's an engineer, well, I am.
     14          THE COURT:  Okay.  Are you an engineer?
     15          THE WITNESS:  Not a licensed engineer but I'm --
     16          THE COURT:  Well, okay, so did you --
     17          THE WITNESS:  You don't have --
     18          THE COURT:  -- go to engineering school?
     19          THE WITNESS:  No.
     20          THE COURT:  Did you get an engineering degree?
     21          THE WITNESS:  No.
     22          THE COURT:  So you've worked in the area and
     23     built up your expertise that way?
     24          THE WITNESS:  I'm credited as an engineer in
     25     multiple high-profile publications.
```

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/mar-5

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 25 of 61        [ source file ]        [ .ots timestamp of source file ]

                                                      25

    1          THE COURT:  What publications would you --
    2          THE WITNESS:  PLSN for one, I -- I was done with
    3     a one-hour live interview for the BlackTrax computer
    4     system that was used for live projection mapping of a
    5     50' Falcon I designed and engineered that was puppeted
    6     by 24 people and was put on for a UNESCO World
    7     Heritage event at Diriyah in Riyadh, Saudi Arabia in
    8     November of -- or November of 2019.  And that was
    9     broadcast to millions of people on NBC and it was
   10     attended by all members of the Saudi royal family
   11     including the prince and the king and it was
   12     successful.
   13          THE COURT:  Okay.  And how long have you worked
   14     in that kind of sphere?
   15          THE WITNESS:  Well, my -- since 2008 when I
   16     started getting into production design in Minneapolis
   17     where I worked at the old Quest Nightclub which later
   18     became Epic Nightclub.  Prior to that it was Prince's
   19     Glam Slam.  So I was the main lighting designer there,
   20     and that's kind of where I cut my teeth, so to speak.
   21     My interest has always been in lighting.  And then
   22     I --
   23          THE COURT:  I'm sorry, did you say 2008 or --
   24          THE WITNESS:  2008 I was --
   25          THE COURT:  Okay.

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 26 of 61          [ source file ]          [ .ots timestamp of source file ]

```
                                                    26

   1            THE WITNESS:  -- became the main LD, I did the
   2    main LD for the Republican National Convention that
   3    was in town just about around the time that I started.
   4    And then in 2014 I had the opportunity to go work for
   5    my dream job, which was lots of people's dream job,
   6    which was V Squared Labs for Vello Virkhaus who's been
   7    in multiple publications including Rolling Stone and
   8    he's well known in the industry.
   9            I had no guarantees of nothing, I just had the
  10    opportunity so I gave away a bunch of stuff and packed
  11    a trailer up, and now I realize in hindsight that I
  12    was that guy that was trying to chase a dream, but at
  13    the time there was, obviously, no -- it wasn't a dream
  14    because I knew it was going to happen basically.
  15            And that's where I was working until 2020.  I
  16    spent 70 days in Vietnam installing of nightclub.  I
  17    went on multiple projects where I was lying around the
  18    world with Pelican cases, tons of logistical -- tons
  19    of logistics and needing to have every single piece
  20    with you to make sure the project happened basically,
  21    like there's no second chance to order a new -- a new
  22    fiberoptic cable when you're in Vung Tau, Vietnam.
  23            So -- And I basically oversaw what a lot of
  24    people in the industry would consider crazy projects
  25    or crazy for taking on, and I successfully completed
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 27 of 61        [ source file ]        [ .ots timestamp of source file ]

27

```
 1    every single one and never had a failure the entire
 2    time, which includes main stage Coachella and multiple
 3    events that were seen and broadcast to millions of
 4    people live.
 5         THE COURT:  And that's, obviously, something I
 6    would fail at so --
 7         THE WITNESS:  And that's all on my website at
 8    mattguertin.com.
 9         THE COURT:  Okay.  We have people who can be
10    very, very successful and yet still have mental
11    illness or be incompetent to represent themselves or
12    be incompetent to be tried for criminal charges.
13    They're not mutually exclusive, they're not overlap,
14    okay?
15         When it comes to competence what we basically
16    look at is do you understand the nature of the charges
17    against you.  Are you able to rationally consult with
18    your attorneys to listen to them, to engage with them
19    understanding that they have a role to play.  And then
20    if you are competent if you wish to discharge your
21    attorneys are you in a position to represent yourself
22    basically.
23         Can you articulate for me your understanding of
24    the charges against you?
25         THE WITNESS:  Yes, I'm charged with, what is it,
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 28 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                              28

  1      reckless discharge of a firearm within a municipality
  2      and three counts of possession of a gun without a
  3      serial number.  And those three charges are currently
  4      awaiting a decision within the Minnesota U.S. Supreme
  5      Court for the case Vagle v. Minnesota that's A23-0863.
  6          THE COURT:  Okay.  And do you know what level
  7      charges those are --
  8          THE WITNESS:  Felonies.
  9          THE COURT:  -- whether they're -- I'm sorry?
 10          THE WITNESS:  Felonies.
 11          THE COURT:  Okay.  And do you know what a felony
 12      means?
 13          THE WITNESS:  Felony means that it's punishable
 14      by one year and one day or more.
 15          THE COURT:  Okay.  Have you been able to talk
 16      with your attorneys about kind of the legal issues on
 17      how a case is presented?
 18          THE WITNESS:  Yeah, I understand how a case is
 19      presented.
 20          THE COURT:  Okay.  Can you -- I'm not asking you
 21      to go into like tremendous detail, but can you outline
 22      for me how you think a criminal case proceeds.
 23          THE WITNESS:  A criminal case proceeds to -- the
 24      basic understanding is that it proceeds to court and
 25      you have an opportunity to most likely have a plea
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 29 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                    29

     1      bargain based on talking to the prosecution so
     2      there's no -- there's no guarantee or -- on my part or
     3      whatever that it would have to go to trial
     4      necessarily.
     5            THE COURT:  Okay.
     6            THE WITNESS:  And then based upon that it can go
     7      to trial where I would have a chance to argue my case
     8      in front of a jury of my peers and call witnesses to
     9      the stand.
    10            THE COURT:  Okay.  And you mentioned the
    11      prosecution or the State, are they for you or against
    12      you in that case?
    13            THE WITNESS:  The prosecution?
    14            THE COURT:  Yeah.
    15            THE WITNESS:  They're against me.
    16            THE COURT:  Okay.  And I'm -- You might think
    17      I'm asking very simple questions but they are the
    18      basic questions regarding competency, okay?
    19            THE WITNESS:  Yeah.
    20            THE COURT:  And do you understand that it's up
    21      to you whether or not you would agree to any kind of a
    22      plea deal with the State, any plea agreement?
    23            THE WITNESS:  Yeah, it's always up to me
    24      technically.
    25            THE COURT:  Okay.  If you take it to trial you
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 30 of 61        [ source file ]        [ .ots timestamp of source file ]

30

```
 1      mentioned that it would most likely be with a jury,
 2      you could elect to have a judge trial, have a judge
 3      decide it without a jury; do you understand that?
 4            THE WITNESS:  I -- Yeah, now, I mean.
 5            THE COURT:  Okay.  I mean, just so you know
 6      that's a power that you have, the State can't decide
 7      that.
 8            THE WITNESS:  Yeah, I understand that that's --
 9      ultimately all decisions come down to me.
10            THE COURT:  Okay.  Do you believe that you're
11      able to talk in a rational basis with your attorneys
12      about how to approach the case and everything?
13            THE WITNESS:  Yeah.
14            THE COURT:  Okay.
15            THE WITNESS:  I -- I have more to offer, if I
16      can?
17            THE COURT:  I'm sorry?
18            THE WITNESS:  I said I have more to offer if I
19      can?
20            THE COURT:  I'm sorry, I didn't --
21            THE WITNESS:  Oh, I have more to offer if I can,
22      I'd --
23            THE COURT:  Like what?
24            THE WITNESS:  Like my whole -- my whole reason
25      for this and for what's taking place is that
```

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/mar-5

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 31 of 61          [ source file ]          [ .ots timestamp of source file ]

31

```
 1        regardless of whatever my claims are regarding
 2        fraudulent discovery, et cetera, is that this has been
 3        dragging on for two years so far, and regardless of
 4        whether or not there's competent whatever or not it's
 5        like I want -- I want some kind of resolution to this.
 6        And that's what I feel that I've been deprived of, and
 7        that's why I am challenging the competency because
 8        even if it resulted in something that wasn't
 9        necessarily a hundred percent win for me that it would
10        still have closure or would be able to not have this
11        continuing process of mental health which is
12        completely subjective, in my opinion.  Mental health
13        is completely subjective versus, okay, here's --
14        here's what you have this and this and this and then
15        you're done, it's set in stone.  Whereas this -- this
16        non -- this nonstop to make mental health stuff is
17        just like, oh, he's -- it's completely subjective
18        whereas the other path is rules.
19             THE COURT:  Sure, and there's certainty there.
20             THE WITNESS:  Yeah, that's what I -- this is --
21        that's the part that is bothering me so much is the
22        subjective nature of this and the nonstop never ending
23        aspect of it, like, I want closure.  I want to be able
24        to regardless of what happens wrap this up and put it
25        behind me.
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 32 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                    32

     1         THE COURT:  Sure, and I -- There is appeal to
     2    that, I understand.
     3         In looking -- I had another question but I was
     4    trying to listen intently to what you were saying and
     5    I lost my next question there.
     6         THE WITNESS:  That means it was good; right?
     7         THE COURT:  Well, I'm not going to comment on
     8    that, I was following what you were saying and I just
     9    wanted to make sure.  I'm blanking on what my next
    10    question was going to be.
    11         Let me see if Mr. --
    12         MR. DONNELLY:  I have a couple --
    13         THE COURT:  Yeah, let me have Mr. Donnelly jump
    14    in.
    15  Q  (By Mr. Donnelly, continuing)  One of the things that
    16    you mentioned was a psychiatrist in California, has the
    17    name come back to you at all?
    18  A  Yeah, Dr. Martin Schuster.
    19  Q  Okay.  And there are -- You mentioned at the beginning
    20    of your testimony having filed a motion of some kind in
    21    order to get the discovery, where did you learn to file
    22    motions?  How did you figure out how to do that?
    23  A  I learned of it as I went.  I originally found the
    24    Tyler Tech or the Tyler System.
    25  Q  Okay.
```

**EXHIBIT MAR-5 | p. 32**

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 33 of 61          [ source file ]          [ .ots timestamp of source file ]

```
                                                          33

     1    A   And just figured it was interesting and that I should
     2        figure out how to use it and be logged in.  And then it
     3        wasn't until I had a reason to -- once I had issues
     4        with the discovery then the first process of my first
     5        motion was I went and looked at my Bruce Rivers'
     6        originally demand for discovery and then just copied it
     7        and changed my name.  That was my first motion I ever
     8        filed.
     9    Q   Okay.  All right.  And, you know, what about the
    10        research process involved in having to know when to
    11        file something and --
    12    A   Well, the research process for all of my filings was
    13        extensive for, like, the Minnesota Court of Appeals and
    14        the federal case that I filed.  My research process for
    15        that was to go and -- well, I have a -- I collected a
    16        bunch of case law so I signed up for a website that
    17        allows you to look up case law.  So I have -- I have
    18        compilations of prosecutorial misconduct found in the
    19        court, competency-related case law.  So I have all the
    20        direct experts -- experts of case law compiled.
    21                And then my other process was that I
    22        collected other cases that were similar or related to
    23        the same issue, so I downloaded all those cases and I
    24        have compilations of other cases.  And then I assembled
    25        all that and used that to create my own custom ChatGPT
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 34 of 61          [ source file ]          [ .ots timestamp of source file ]

34

```
 1     computer.  So basically I have multiple custom ChatGPT
 2     lawyers that I had working for me that completely have
 3     all of the Minnesota Court Rules.
 4            So I download every single Minnesota Court
 5     Rule pertaining to all criminal court rules, all
 6     Minnesota Statutes -- not all Minnesota Statutes but
 7     all the Court rules, and so I have all that fed into
 8     custom ChatGPT bots basically, you can create a custom
 9     ChatGPT and then give it a prompt.  And so it's a
10     defense attorney that's acting on my behalf and that's
11     able to process and analyze various aspects of the case
12     and make recommendations on meeting the qualifications
13     of the court as far as the rules of the court.
14            And so that was, like, for the Minnesota one
15     and for the local one, and then the process to file the
16     federal case was extensive.  And the main thing was to
17     make sure that I properly delineated each of the 11,
18     because there was a Monell claim which just deals with
19     the county and indifference to the issues that were
20     being ignored.
21            And then there was Keith Ellison who was
22     included just basically under the Ex Parte Young Act, I
23     believe, so he was included basically as a symbolic
24     inclusion.  The three judges were included on their
25     personal for acting outside of their judicial
```

**EXHIBIT MAR-5 | p. 34**

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 35 of 61        [ source file ]        [ .ots timestamp of source file ]

35

```
 1      jurisdiction, which I believe that I've -- that I
 2      proved so -- because you can't sue a judge so they were
 3      sued in their personal.
 4              And then the -- everyone else was included, I
 5      don't know, it was extensive -- it was an extensive
 6      process.  So it wasn't just me throwing together, there
 7      was a ton of, like, hours of research, many hours of
 8      research that went into that.
 9              So it doesn't mean that I necessarily believe
10      that every single filing that I make is -- there is --
11      there's a certain aspect of my filings where I'm
12      assuming that maybe they're not a hundred percent what
13      an attorney would do or maybe that, but there's a
14      certain aspect of my strategy that based on me wanting
15      the truth and simply making sure it's part of the
16      record.
17    Q  It sounds like at the time you made those first filings
18       that you were represented by a lawyer?
19    A  Yeah, Bruce Rivers.
20    Q  Okay.  And also you had a lawyer in mental health court
21       or not at that time?
22    A  There was -- There has been two of them.  Now I have
23       Fisher, I forgot his first name, but then the first one
24       was Biglow, he's the one -- Michael Biglow, he's the
25       one that sent me the discovery, the first 80
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 36 of 61          [ source file ]          [ .ots timestamp of source file ]

36

```
 1      photographs.
 2   Q  What -- what prompted you to proceed basically on a pro
 3      se passion or on your own to represent -- basically do
 4      legal filings and self-representation despite having
 5      two lawyers?
 6   A  Because -- because I had been asking Bruce Rivers for
 7      discovery and he wouldn't provide me with that, and he
 8      wouldn't provide me with the first or the second Rule
 9      20.  And so as soon as he told me not to file, that I
10      shouldn't file the thing pro se but didn't offer me the
11      discovery I'd been asking for, then that's when I said
12      maybe I should be filing it, right?
13           It was basically, like, if I'm asking for
14      discovery and you're not providing it to me but you're
15      telling me I shouldn't be filing -- shouldn't be
16      submitting a pro se filing asking for discovery but
17      aren't providing me with the discovery even though
18      that's their obligation, then why would you -- there
19      seems to be a inconsistency there with a defense
20      attorney's obligations to their client and me being his
21      client seeking the discovery and not being provided
22      with it.
23           So it basically was a why is he not providing
24      me with this discovery and that's -- and there was the
25      whole issue of him telling me that there's powerful
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 37 of 61          [ source file ]          [ .ots timestamp of source file ]

37

```
 1    people keeping an eye on me which is documented in
 2    emails before I was ever declared incompetent.  So I
 3    have phone records and I submitted tons of evidence for
 4    that.  I text all my friends the next day because I was
 5    freaked out.  So there's a whole paper trail of stuff
 6    and issues surrounding everything leading up to that
 7    point so that's --
 8  Q Was it -- Was it a disagreement basically with your
 9    lawyer and not --
10  A It wasn't --
11  Q -- the court --
12  A -- a disagreement it was his -- it was him not
13    following through on his obligations to his client.
14  Q Okay.  And so it seems like a big step for a non-lawyer
15    to take self-representation into their own hands, what
16    made you feel like you could do that?
17  A Because I'm very good at --
18  Q Competent to do that?
19  A Because I'm very good at putting pieces together and
20    figuring things out.  I'm an unlicensed engineer, I was
21    able to think up ideas in my head that were $2 million
22    in value and have companies trust with me with their
23    dire reputation, and all of that is based on me being
24    able to conceptualize pieces in my head that I could
25    then put out and create 3D designs for all.  It's all
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 38 of 61        [ source file ]        [ .ots timestamp of source file ]

38

```
 1    based on getting it out of my head and into a computer
 2    and putting into the real world.
 3            So I would say that there's a pretty
 4    significant track record of me being able to work with
 5    very complex -- a lot of the stuff I built was
 6    completely custom so it's -- it's -- I'm -- I have a
 7    record of being able to assemble and conceptualize very
 8    complex mechanical assemblies, conceptual assemblies
 9    whether that be ideas, pieces of -- just putting pieces
10    together basically so I know that if I needed to
11    represent myself that I would be able to given the
12    proper time and consideration and a consideration of
13    competence.
14  Q  So moving forward with the case if you felt that your
15    lawyers were not representing you adequately or not
16    pursuing the strategies that you feel were appropriate,
17    how would you feel about representing yourself?
18  A  I -- I would feel fine representing myself but I
19    wouldn't -- it's not something that even though I
20    understand that hypothetically if I'm determined
21    competent today I would have the right to tell you guys
22    to screw off and represent myself, right, but that
23    doesn't mean that that's what I would do.  If -- It
24    means that I know I have the option, but it's not
25    something that I'm dead set on doing and if there was a
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 39 of 61          [ source file ]          [ .ots timestamp of source file ]

39

```
 1     problem I would probably prefer to -- I wouldn't
 2     necessarily think it's a -- regardless of my abilities
 3     to understand and put pieces together I wouldn't
 4     necessarily -- I understand the risks of proceeding to
 5     trial, representing myself for felony charges, so I
 6     would feel more comfortable having defense counsel
 7     represent me.
 8   Q Okay.  In this -- just before this hearing like a day
 9     or a few days before you filed some -- some pleadings,
10     some exhibits?
11   A Yes.
12   Q Why did you do that?
13   A Because I felt they were important.
14   Q What was important about them?
15   A The fact that I've -- I've been relentless in my
16     pursuit of the truth and I have never wavered once in
17     my consistency concerning the fraudulent discoveries
18     going all the way back to January 5th, 2024 when I
19     filed my first court motion ever.  And so the fact that
20     now I've -- have all this documentation and have
21     brought it up to that point where now it can't be
22     disputed because it's the advantage, like I said out in
23     the hall, was that if I had a private attorney, which
24     was the case before, that it wouldn't necessary be
25     considered an official legal chain of custody, but now
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 40 of 61          [ source file ]          [ .ots timestamp of source file ]

40

```
 1     it is because it's in the Hennepin County One Drive
 2     System, right, because the public defender's office is
 3     provided discovery through Hennepin County, right?
 4             So that now makes the evidence official, and
 5     it's officially manipulated as I've recorded with the
 6     manipulated squishing it back into the correct aspect
 7     ratios and comparing it with the original -- the
 8     original discovery provided on August 3rd by Michael
 9     Biglow that I forwarded to you guys.  I feel that it's
10     now in a state where there's no more manipulation or
11     room to maneuver or make any adjustments to fix the
12     problem that exists, and so I feel that it's a rather
13     compelling and significant discovery on my behalf that
14     I took the time to investigate.
15  Q  Why do you -- What of those materials that you filed do
16     you think are relevant to Judge Koch making the
17     decision about whether you're competent or not?
18  A  I feel that they're all technically made relevant based
19     upon the claims solely made -- based upon the fact that
20     they directly pertain to the claims made in --
21     obviously I'm going back retroactively to the first --
22     I'm sort of holistically covering all of these
23     determinations, not just the most recent one, but all
24     of the issues of the fraudulent discovery.  And, for
25     instance, the value of my patent, the relevance to the
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 41 of 61          [ source file ]          [ .ots timestamp of source file ]

```
                                                    41

  1      military, all that's made relevant by the claims that
  2      are contained in across my various Rule 20 exams that
  3      claim that I'm crazy for thinking those things
  4      basically, that I'm incompetent or mentally ill because
  5      of my claims pertaining to things which I can now
  6      validate.
  7   Q  So what you're saying is those exhibits support the
  8      truth of your assertions here today about your
  9      background and about those photographs?
 10   A  Yeah, it's pertaining to my claims which were used as
 11      evidence against me to claim that I'm incompetent in
 12      the Rule 20 exams.
 13   Q  Okay.  Do you feel that in the past you've been able to
 14      assist your attorneys in your defense?
 15   A  Yeah, I know I have.
 16   Q  And how do you feel that you would be able to assist
 17      your lawyers in your defense moving forward?
 18   A  Because I'm highly intelligent and can put pieces
 19      together.  I went -- when I went to Bruce Rivers --
 20   Q  Review of the discovery?
 21   A  On any aspect of the case.  When I went to Bruce
 22      River's office initially before everything got strange,
 23      so to say, I'm the one that told him about the
 24      (indiscernible) brought up in the second Rule 20 exam
 25      as well.
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 42 of 61        [ source file ]        [ .ots timestamp of source file ]

---

42

1            I'm the one that told him about the Minnesota
2        Statute pertaining to building your own guns and not
3        being illegal for the intire serial number issue, and
4        he started looking it up in a book, and I told him what
5        he was going to find was that the Minnesota Statute
6        essentially points you to the federal statute and says
7        look over here, and that the federal statute does not
8        have any requirement at all for someone building a
9        firearm for personal use to maintain a -- to put a
10       serial number on it, and that that was verified by
11       things Biden put out pertaining to it and it's still
12       verified.
13            And now that's been retroactively -- Number
14       one he looked it up and goes you're right, and then
15       number two now it's been validated by the fact that the
16       Supreme Court apparently agrees with me because they
17       accepted the exact same charges in the exact same case
18       and with the entire argument outlining exactly what I
19       told Bruce Rivers initially.  That was the argument
20       made by Anderson, I forgot, he does a lot of appellate
21       cases, Anderson.
22            They argued it in front of the Supreme Court
23       at the capitol on June 5th of 2024 and it's in a
24       decision phase currently, but the arguments that they
25       put forward are rather compelling because the argument

---

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 43 of 61          [ source file ]          [ .ots timestamp of source file ]

43

```
 1     says that if the current -- if the current overturning
 2     that was overturned in the Court of Appeals were to
 3     stand it would mean that every single citizen that has
 4     an old firearm would be -- currently be guilty of a
 5     felony.  It would mean that even the police and
 6     sheriffs that are, like, reselling specific -- they
 7     have, like, collections of firearms and sales,
 8     whatever, all of that would be illegal.  So it
 9     basically makes everyone a felon, a bunch of
10     law-abiding citizens, just like I was law abiding
11     because I specifically researched to make sure that I
12     wasn't breaking the law before I purchased the parts
13     and made my own guns during the summer of --
14  Q  Okay --
15  A  -- 2020.
16          MR. DONNELLY:  Let's cut it off there, Judge, I
17     don't have any other questions.
18          THE COURT:  Okay.  I remembered my questions,
19     I'm going to ask them before I turn it over to the
20     State.
21          You mentioned earlier your stayed commitment,
22     you were civilly committed but it was a stay and then
23     you successfully completed the stay?
24          THE WITNESS:  Correct.
25          THE COURT:  Do you recall when you completed
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 44 of 61          [ source file ]          [ .ots timestamp of source file ]

44

```
 1      that roughly?
 2          THE WITNESS:  November 8th of 2024.  There was a
 3      letter submitted by my worker at Vail Place I'm still
 4      seeing.
 5          THE COURT:  Yep.  And do you agree that you
 6      suffer from a mental illness?
 7          THE WITNESS:  I have ADHD and generalized
 8      anxiety disorder.
 9          THE COURT:  Okay.
10          THE WITNESS:  I've been -- and that was -- I've
11      been self-treated for that meaning since 2016 when I
12      was in California I've been seeing the same doctor on
13      my own for nearly ten years.
14          THE COURT:  And are you following all the
15      recommendations of that doctor?
16          THE WITNESS:  Yeah, it's worked out great for
17      me, I don't even -- I haven't had a sip of alcohol in
18      I don't even know how long.  I'm like literally at the
19      most, like, responsible and grown up, so to speak,
20      I've been in my life thus far.  So besides all this
21      stuff going on I'm doing great, that's why this is all
22      so disappointing.
23          THE COURT:  And are you on any medication for
24      that?
25          THE WITNESS:  Yeah, I take Adderall and Klonopin
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 45 of 61        [ source file ]        [ .ots timestamp of source file ]

45

1    as needed.
2         THE COURT:  Okay.  What is the status of the
3    federal case?
4         THE WITNESS:  It got dismissed or -- and then --
5    and then the -- it got dismissed and whatever, I
6    forgot, it was -- because I appealed one of the
7    interlocutory, or however it's pronounced, to the
8    Eighth Circuit, both of those got dismissed on the
9    same day which was the day before I came -- went and
10   saw you last.
11        And then the -- I -- Bruce Rivers never
12   responded to it so I successfully got an entry of
13   default against him and then he -- he hired an
14   attorney and had that attorney, whatever, and I think
15   it just got -- I haven't read any of it, but it looks
16   like he just got dismissed like a couple days ago.  I
17   never -- I never participated in the -- in the
18   arguments once he hired the attorney to fight back
19   against.  He was just trying to clear his name
20   basically off the case for an entry of default filed
21   against him.
22        THE COURT:  And you mentioned that you built
23   your own kind of custom ChatGPT AI defense attorney, I
24   think you called it, just so you know, ChatGPT even if
25   it's something you created isn't always right.

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 46 of 61          [ source file ]          [ .ots timestamp of source file ]

```
                                                          46


     1            THE WITNESS:  Oh, I know.
     2            THE COURT:  Okay.  We've had court cases where
     3       folks are setting a --
     4            THE WITNESS:  There -- there's major attorneys
     5       that are --
     6            THE COURT:  Yeah.
     7            THE WITNESS:  -- in hot shit right now for using
     8       ChatGPT and --
     9            THE COURT:  Well, I wouldn't put it that way
    10       but, right, there are people that --
    11            THE WITNESS:  I've read up on --
    12            THE COURT:  -- blindly go with it and don't do
    13       their research.
    14            Okay.  Let me see if the State has questions.
    15            MS. HAMID:  Thank you, Your Honor.  They're just
    16       going to be very quick questions, a very few
    17       questions.
    18                         EXAMINATION
    19  BY MS. HAMID:
    20  Q  I'm sorry that this case has taken almost three years,
    21     and I just want to tell you that before I ask you some
    22     questions.  When the Judge asked you earlier about the
    23     commitment case being successfully completed, do you
    24     remember what you had to do?
    25  A  The stipulations of the --
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 47 of 61        [ source file ]        [ .ots timestamp of source file ]

47

```
 1   Q   Yes.
 2   A   Yeah, it was a plan for care agreement that I initially
 3       signed after the August 1st, and it was meet with my
 4       case worker that I've been doing with Vail Place, not
 5       have any guns or ammunition, remain law abiding, follow
 6       the recommendations of my current doctor I've been
 7       seeing for -- in California.
 8   Q   And how often were you supposed to meet with him?
 9   A   There isn't a -- I meet with my caseworker from Vail
10       Place once a month.  My doctor in California I meet
11       with about every two or three months because I pay cash
12       and I've been seeing him so long he gives me a break
13       on -- so I don't have to pay $200 every month.  But
14       there was -- it basically was just -- said to follow
15       those rules and just behave, right?
16   Q   And you have met with them --
17   A   Yeah --
18   Q   -- and the required --
19   A   -- I completed all of that, and then initially there
20       was a -- after the January 11th, 2024 Rule 20 exam by
21       Dr. Adam Milz that was submitted into the record there
22       was a -- there was a -- This is my first time spacing
23       out.  For the -- What was the question again?
24   Q   You have been meeting with the caseworker; is that
25       correct?
```

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/mar-5

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf

SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce

Page: 48 of 61          [ source file ]          [ .ots timestamp of source file ]

```
                                                      48

   1    A   Oh, yeah, no, so they -- they recommended that it be
   2        extended when -- that it be extended for another nine
   3        months during -- after the second Rule 20 exam at the
   4        beginning of January.  So that completed in -- on
   5        November something but the -- I believe that the
   6        document was committed -- or submitted to the court in
   7        my other case which is 27-MH-PR-815 which is the civil
   8        case.  So that was submitted into that record I believe
   9        on November 8th from the worker at Vail Place saying
  10        that -- that I have been abiding by everything and that
  11        they have met with the team at Vail Place and they
  12        agree that I have successfully completed and no longer
  13        need to have any -- that they were -- that basically
  14        they were fine with the state ordered civil commitment
  15        expiring.
  16    Q   Okay, thank you.  And you mentioned your doctor in
  17        California, that was Dr. Schuster; is that correct?
  18    A   Martin Schuster.
  19    Q   What is he, a psychologist or psychiatrist?
  20    A   He's a psychiatrist, he's a -- He does a bunch of
  21        studies and stuff.  I don't know, he has a pretty big
  22        practice if you look him up.  He's, like, reputable.
  23    Q   Okay.  And how long have you been seeing him?
  24    A   Since 2016.
  25    Q   Okay.  And did he diagnose you with anything?
```

**EXHIBIT MAR-5 | p. 48**

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 49 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                    49

  1   A   Yes, it's generalized anxiety disorder and I don't know
  2       if it's ADD or ADHD but I've -- he agreed with my take
  3       on -- I was in a lot of -- I was, like, grew up in the
  4       system, so to speak or whatever, there was a lot of
  5       interactions when I was younger that weren't of my own
  6       issues.  But there was a diagnosis at some point of
  7       bipolar, which I have never agreed with, and which he
  8       agreed with because apparently -- you're supposed to go
  9       up and down and I've always just been kind of
 10       high-strung.
 11               And if, for instance, if I -- if I -- when I
 12       don't take Adderall or whatever you would think that I
 13       was on Adderall, and if I am on Adderall then I appear
 14       calm like I'm not on Adderall.  It basically organizes
 15       my thoughts in a more logical way or without me being
 16       scatterbrained kind of to put it.
 17               But the entire reason of the bipolar, which
 18       is also mentioned in the Rule 20, is that there was
 19       never any time where I've been depressed or down which
 20       is something that apparently from what I understand is
 21       part of bipolar, like, you go up mania and then you go
 22       down depression and it's kind of like a rollercoaster.
 23       That's never been my life, my life has just always been
 24       up, right?
 25   Q   And what do you -- What's the Adderall for?
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 50 of 61          [ source file ]          [ .ots timestamp of source file ]

```
                                                        50

  1    A   For the ADD.
  2    Q   Okay.  Do you take any other medication?
  3    A   I take the lowest dose of Klonopin as needed.
  4    Q   What is that for?
  5    A   Anxiety, like if I -- if I'm feeling nervous or, like,
  6        bite my fingers or something like that I just take it.
  7        I could get -- I could get it filled every month but,
  8        like, the last ones lasted me two months.  Like I told
  9        one of the Rule 20 examiners that I'm aware that -- of
 10        the addiction potential of Benzodiazepines so it scares
 11        me so I treat it with respect, I've never taken more
 12        than one pill ever the entire time I've been on it, so
 13        it's something that I treat with respect and don't
 14        abuse at all.
 15    Q   So you don't take anything for the bipolar because you
 16        said you --
 17    A   No, I'm just saying that was mentioned in the --
 18        because I was very candidly honest in my first Rule 20
 19        exam which is the reason why I said I've tried every
 20        drug in my life besides heroin.  So I was just honest
 21        about everything because I wasn't -- I was expecting
 22        them to be honest in their report, right?
 23    Q   Yeah.
 24    A   Which they didn't seem to be.
 25    Q   Okay.  And just talking about the photos you mentioned
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 51 of 61          [ source file ]          [ .ots timestamp of source file ]

---

51

```
 1      earlier when the Judge was asking you questions, you
 2      said there were 80 photos that had problems in them; is
 3      that correct?
 4   A  No, there were 80 photos -- technically there was a set
 5      of discovery before that because in Jill Rogstad's --
 6      in Dr. Jill Rogstad's initial Rule 20.01 she -- she
 7      mentioned 104 photographs.  I never saw those
 8      photographs, I just know the number that's documented.
 9      So technically the 80 photographs are the second set of
10      discovery that was what was given to me on August 3rd
11      via email after the August 1st actual civil commitment
12      exam by Dr. Michael Robertson where he documents those
13      80 photographs as being reviewed as part of his
14      examination process.
15              And those 80 photographs are -- if you look
16      at them compared to all the discovery that exist now
17      there's, what, over 700, I don't know, there's 518 --
18      518 images in the one set that matches the set that
19      Bruce Rivers gave me on July 16th, but now there's a
20      new folder that appeared that contains all of the other
21      photos, including the 28 images that were missing.  And
22      those are, if we exclude eight of those because of the
23      16 by 9 now apparently being uniform across the whole
24      folder, that leaves 20 images that match my April 4th
25      motion that's been consistent, that has a chronological
```

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/mar-5

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 52 of 61          [ source file ]          [ .ots timestamp of source file ]

52

```
 1     connected timeline to it.
 2            Those 20 images now with all inconsistent
 3     aspect ratios now all appear consistent with 16 by 9
 4     aspect ratios because they've all been squished, some
 5     of them significantly to the point of you flip through
 6     them and it's blatantly obvious what that -- so the
 7     question becomes why have the -- they've -- Someone had
 8     to sit down and do that is what I'm saying.
 9  Q  Yeah, so you said that these photos have a problem; is
10     that correct?
11  A  Yeah, they have a problem.
12  Q  If you disagree with your attorney that the photos are
13     not a problem how would you go about --
14  A  If they --
15  Q  -- when those photos are introduced in court?
16  A  If I disagreed with my attorneys --
17  Q  Yes.
18  A  -- if they -- So what do you mean?
19  Q  If they think that their photos don't have any
20     problems?
21            THE COURT:  Basically I think what, and I don't
22      mean to put words in your mouth but I'm going to try
23      to rephrase --
24            MS. HAMID:  Yes.
25            THE COURT:  -- it just a little bit.  There are
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 53 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                    53

    1      some decisions at trial which are your decisions --
    2           THE WITNESS:  Yep.
    3           THE COURT:  -- like whether or not you testify,
    4      things like that.  There are other decisions that are
    5      the attorney's decision like do I object to this piece
    6      of evidence, do I make a certain legal argument, do I
    7      do whatever.  Are you able to, if you're working with
    8      your defense team, give them input but then understand
    9      that there are certain decisions they make that are
   10      not yours to make?
   11           THE WITNESS:  Oh, I understand that, but that
   12      doesn't mean that I would necessarily for sure abide
   13      by that if I vehemently -- if I vehemently disagreed
   14      with something.
   15           THE COURT:  Okay.
   16           THE WITNESS:  But I don't understand -- but I
   17      don't understand how I -- I don't know, I've listened
   18      to their advice before for the most part, but if there
   19      was something that was a big issue I would at least
   20      clarify and discuss it or address it, I wouldn't just
   21      ignore it.
   22   Q  (By Ms. Hamid, continuing)  Yes, I'm just giving you a
   23      scenario in a situation where that would happen, you
   24      know, those images that you disagreed with will be
   25      admitted into court and will be in evidence against
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 54 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                      54

1      you, how would you handle that?
2   A  I don't know yet, I haven't -- I haven't thoroughly
3      investigated, we're still at this phase.
4   Q  And you mentioned that the custom ChatGPTs are defense
5      attorneys, and I know that you filed some papers on
6      Friday, did you use the ChatGPT to file those
7      documents?
8            THE COURT:  You mean to draft them?
9            MS. HAMID:  Yes.
10           THE COURT:  Okay.
11           THE WITNESS:  I drafted all of that stuff, some
12      of it -- some of it was used for that but the -- I
13      completed all of the forensic exams on my own and
14      then, yes, some of the forensic examinations were
15      completed with ChatGPT.
16  Q  (By Ms. Hamid, continuing)  Okay.
17  A  And they're mathematical -- they're mathematically --
18      My background is in projection mapping and that
19      involves using points to mathematically convert space
20      with projection matrixes.  So basically by me doing all
21      the leg work and defining a red, green, blue, and
22      orange point I'm then able to use ChatGPT to conduct
23      the mathematical formula that any expert -- any expert
24      would tell you is sound --
25  Q  Yeah.
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 55 of 61        [ source file ]        [ .ots timestamp of source file ]

55

```
 1   A  -- evidence.
 2   Q  And you mentioned that there are defense attorneys that
 3      are acting on your behalf; is that correct?
 4   A  Yeah, they're right there (indicating.)
 5   Q  Okay.  I thought you were mentioning -- you were
 6      talking about the custom --
 7   A  No, I was -- I was referring to me knowing -- seeing
 8      news stories pop up about attorneys that are in a lot
 9      of hot water for using ChatGPT and pretending like
10      they're not.
11   Q  Okay.  So when you filed these documents on Friday did
12      you have a disagreement with your counsel, is that why
13      you filed it or you just filed it on your own?
14   A  I didn't hear back from them so I -- I learned that --
15      I did research and learned that there's -- you're
16      supposed to basically -- technically I'm -- I think it
17      was supposed to be entered through a different system,
18      Minnesota Evidence, there's like a separate system to
19      enter evidence in.
20          THE COURT:  Minnesota Digital Exhibit System.
21          THE WITNESS:  Yeah, that, and I also learned
22       something about that --
23          THE COURT:  That's, just so you know, that's for
24       the parties to put things in so you work through your
25       attorneys.
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 56 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                          56

    1            THE WITNESS:  Yeah, and that there was a
    2       seven-day window normally that I -- that I realized
    3       that I was past so that's why I filed them.  The
    4       entire main reason I went down and met with them
    5       originally was because I've still been talking about
    6       the fraudulent discovery, that's all I've been talking
    7       about the entire time.
    8            THE COURT:  Okay.  Folks, we're at 12:15 or
    9       12:20, are there many more questions because --
   10            MS. HAMID:  No --
   11            THE COURT:  -- we need to break for lunch.
   12            MS. HAMID:  -- two more questions, Your Honor,
   13       and then I'll be done.
   14  Q  (By Ms. Hamid, continuing)  Do you think you'll be
   15       filing documents on your own when you have attorneys or
   16       if they don't -- you don't hear from them or you
   17       disagree with them?
   18  A  That depends on how things proceed.
   19  Q  Okay.
   20            THE COURT:  Well, that's not really a great
   21       answer, just so you know.  You've got attorneys, you
   22       should be filing things with them, I'm just --
   23            THE WITNESS:  Well, I get it.
   24            THE COURT:  -- letting you know.
   25            THE WITNESS:  I get it, I'm just saying -- I
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 57 of 61          [ source file ]          [ .ots timestamp of source file ]

57

```
 1       don't know, that's my answer.
 2   Q  (By Ms. Hamid, continuing)  Okay.  And you mentioned
 3       earlier a law change, if there is a current law right
 4       now and your attorney gives you advice on what the law
 5       is currently would you be able to follow it even if you
 6       don't agree with it?
 7   A  Are you referring to the Minnesota Supreme Court?
 8   Q  Yeah, but I'm -- In general if there is a law that you
 9       believe should be changed but if your attorney gives
10       you advice on what the current law is would you be able
11       to follow it?
12   A  Yeah, the current law is what abides by until the
13       decision comes out from the Supreme Court.
14           MS. HAMID:  Okay.  Thank you.  That's all I
15       have, Your Honor.
16           THE COURT:  All right.  Anything else from the
17       defense?
18           MR. DONNELLY:  No, Your Honor.
19           THE COURT:  All right.  Thank you, sir, you can
20       step down.
21           Folks, it is 12:20, I need to give my court
22       reporter a break.
23           Are there any other witnesses that the defense
24       wishes to call?
25           MR. DONNELLY:  No, Your Honor.
```

**EXHIBIT MAR-5 | p. 57**

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 58 of 61        [ source file ]        [ .ots timestamp of source file ]

58

```
 1          THE COURT:  Are there any witnesses the State
 2     would like to call?
 3          MS. HAMID:  No, Your Honor.
 4          THE COURT:  So it's just argument?  How long do
 5     you think your argument would be if we did it right
 6     now?
 7          MS. HAMID:  Your Honor, if it's possible I would
 8     like to come back after lunch to do it.
 9          THE COURT:  Okay.  Sure.
10          Why don't we go off the record just to talk
11     about this.
12          (WHEREUPON, a discussion was held off the
13     record.)
14          THE COURT:  Back on the record.
15          So we can get the closing arguments of counsel
16     let's start with defense counsel, and then the State,
17     and then defense can have a short rebuttal since you
18     carry the burden.
19          Mr. Donnelly.
20          MR. DONNELLY:  Judge, I really don't have a
21     whole lot to supplement in terms of argument, I mean,
22     you're an experienced judge, you know the legal
23     standard, I don't really need to educate you on that.
24          Mr. Guertin has testified as to, you know, why
25     he believes that he is competent and has carried that
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 59 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                    59

      1      burden and that is that he can assist counsel in his
      2      defense and analyze the evidence and make reasonable
      3      choices about how to move forward with the case.
      4           THE COURT:  All right.  Ms. Hamid.
      5           MS. HAMID:  Your Honor, mine is also going to be
      6      short.
      7           The State would just request that the Court look
      8      at Dr. Cranbrook's evaluation report on December 20th,
      9      2024, and all the evidence that's provided before Your
     10      Honor and defer to the Court's decision, Your Honor.
     11           THE COURT:  Okay.
     12           MR. DONNELLY:  Can I say one thing?
     13           THE COURT:  Sure.
     14           MR. DONNELLY:  One piece of housekeeping that's
     15      left undone is the exhibits that were filed by
     16      Mr. Guertin on Friday.
     17           THE COURT:  Um-hum.
     18           MR. DONNELLY:  He did reference in his testimony
     19      what he thought the relevance of those were.  Those
     20      weren't really offered here or were discussed, and I
     21      don't think we need to offer them outside of the
     22      record that has already been made.
     23           THE COURT:  Okay.  So just the testimony about
     24      it?
     25           MR. DONNELLY:  I think so.
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

---

Guertin, Matthew - March 5, 2024.pdf

SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce

Page: 60 of 61        [ source file ]        [ .ots timestamp of source file ]

```
                                                              60

    1          THE COURT:  Okay.  All right.  Thank you all
    2     very much.
    3          MS. HAMID:  Thank you.
    4          THE COURT:  We'll be adjourned.
    5          (WHEREUPON, the proceedings were adjourned.)
    6
    7
    8
    9
   10
   11
   12
   13
   14
   15
   16
   17
   18
   19
   20
   21
   22
   23
   24
   25
```

**Hearing Transcript | March 5, 2025 | Contested Competency Hearing**
EXHIBIT MAR-5

Guertin, Matthew - March 5, 2024.pdf
SHA-256 Hash of Source File:  c4540b66c4698f52c4e03b8e60425ddd9272427ebf09ca91198ac79eab3a22ce
Page: 61 of 61        [ source file ]      [ .ots timestamp of source file ]

```
                                                              61

        1

        2

        3

        4

        5

        6          I hereby certify that the foregoing is a true

        7     and correct transcript from my original stenographic

        8     notes taken at the time and place in the

        9     above-entitled matter and prepared under my direction

       10     and control.

       11

       12

       13

       14                              /s/ Melinda K. Anderson

       15                              Melinda K. Anderson
                                       Official Court Reporter
       16                              Government Center MC 422
                                       300 South Sixth Street
       17                              Minneapolis, MN  55487.
                                       (612) 348-7685
       18

       19

       20

       21

       22

       23

       24

       25
```