# EXHIBIT APR-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 1 of 110          [ source file ]          [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">
Filed in District Court
State of Minnesota
4/21/2025 7:48 AM
</div>

| | |
|---|---|
| **STATE OF MINNESOTA** | **DISTRICT COURT** |
| **COUNTY OF HENNEPIN** | **FOURTH JUDICIAL DISTRICT** |

| | |
|---|---|
| State of Minnesota, | Court File No. : 27-CR-23-1886 |
| Plaintiff, | |
| vs. | **DEFENDANT'S PETITION TO PROCEED AS PRO SE COUNSEL** |
| Matthew David Guertin, | |
| Defendant. | Judicial Officer: Sarah Hudelston |

TO:    THE HONORABLE SARAH HUDELSTON, JUDGE OF DISTRICT COURT; MARY F. MORIARTY, HENNEPIN COUNTY ATTORNEY; AND MAWERDI HAMID, ASSISTANT HENNEPIN COUNTY ATTORNEY

## I.   INTRODUCTION

Defendant Matthew David Guertin, by and for himself, hereby petitions this Court for an order permitting him to represent himself (pro se) in the above-captioned case and to discharge his court-appointed counsel. This petition is grounded in the Sixth [1] and Fourteenth [2] Amendments of the U.S. Constitution, which guarantee a criminal defendant's right to self-representation, as recognized in *Faretta v. California,* 422 U.S. 806 (1975) [3], and in Minnesota law (Minn. R. Crim. P. 5.04 [4]; Minn. Stat. § 611.19). [5] The Defendant does not take this step lightly; he fully understands the seriousness of self-representation. However, as detailed below, the Defendant's choice is not truly voluntary in the ordinary sense - it is being forced by circumstances in which his court-appointed attorneys have actively obstructed his defense and the Court has refused to hear his motions while he remains represented. In short, the Defendant's

---

1   6th Amendment of the U.S. Constitution | https://tinyurl.com/3nfsynmd
2   14th Amendment of the U.S. Constitution | https://tinyurl.com/2ducwnwf
3   *Faretta v. California*, 422 U.S. 806 (1975) | https://tinyurl.com/mwvyr4e9
4   Minn. R. Crim. P. 5.04 | https://tinyurl.com/267r3p6j
5   Minn. Stat. § 611.19 | https://tinyurl.com/mtsvz8ad

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 1**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 2 of 110          [ source file ]          [ .ots timestamp of source file ]

only remaining avenue to a meaningful defense is to invoke his *Faretta* right and proceed without appointed counsel.

> *"The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction."*  - *Faretta*, 422 U.S. at 834-35. [6]

Thus, if the Defendant must bear the consequences, he must also be free to chart his own defense, especially when current counsel and the Court have made it impossible to do so otherwise.

> The Defendant's choice "*must be honored out of that respect for the individual which is the lifeblood of the law*." [7]

Request for Relief: Through this petition, the Defendant seeks to vindicate his constitutional rights by proceeding pro se. He asserts that his waiver of counsel is made knowingly, intelligently, and voluntarily, with eyes open to the risks. [8] He further asserts that the extraordinary breakdown in the attorney-client relationship, and the collusive actions of counsel and the prosecution (with the tacit approval of the Court), have nullified any benefit of counsel and in fact are depriving him of a fair defense. Under these circumstances, the Defendant has an unconditional right to represent himself. He asks this Court to promptly grant that right so that he can pursue his defense strategy on the record and without further obstruction.

## II.  RELEVANT BACKGROUND AND FACTS

Charges and Proceedings to Date: the Defendant is charged in this matter with multiple felony offenses arising from an alleged incident on January 21, 2023. Despite the case pending for over two years, it has been fraught with irregularities. The Defendant was subjected to a series of Rule 20 competency evaluations at the State's behest. For the entirety of 2023 and 2024, the case remained 'dormant' as the State pursued a narrative that the Defendant was not competent to stand trial - a narrative that conveniently delayed any substantive confrontation of the Defendant's evidence and defenses. Eventually, after a contested competency hearing on

---

[6]  *Faretta*, 422 U.S. at 834-35 | https://tinyurl.com/45zhxcd5
[7]  "respect for the individual which is the lifeblood of the law." | https://tinyurl.com/yytdy53m
[8]  "his choice is made with eyes open." | https://tinyurl.com/22mjmk7f

**EXHIBIT APR-21 | p. 2**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 3 of 110          [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

March 5, 2025, the Court issued an Order on April 3, 2025 finding the Defendant competent to stand trial (*see* Index *127*, attached Exhibit B, '*Court Order Declaring the Defendant Competent*'). This April 3 competency ruling should have cleared the way for the Defendant to participate fully in his defense. Indeed, as a matter of law, a defendant presumed competent is entitled to make decisions about his case and have his motions heard.

**A   |   Court-Appointed Counsel's Obstruction**

Unfortunately, the Defendant's court-appointed public defenders - Ms. Raissa Carpenter and Mr. Emmett Donnelly - have denied the Defendant any meaningful advocacy since their appointment. The relationship between the Defendant and these attorneys has completely broken down. The Defendant has repeatedly directed counsel to pursue specific defenses and motions, only to be met with silence, refusal, or outright opposition. For example:

- **January 2025 Emails**

  The Defendant sent detailed emails to his attorneys (*see Exhibit A, January 2025 Emails*) outlining his legal strategy and requesting that counsel file a motion to dismiss all charges with prejudice. These emails were cogent and supported by legal authorities (including *State v. Camacho*, 561 N.W.2d 160, 173 (Minn. 1997) [9], *State v. Sabahot*, A10-2174, (Minn. App. Jan. 3, 2012) [10], *State v. Thompson*, 988 N.W.2d 149 (Minn. App. 2023) [11], and others) that the Defendant himself researched. Rather than act on these well-founded requests, defense counsel ignored and stonewalled them. They neither filed the proposed motion nor meaningfully responded to the Defendant's legal points. This betrayal of the Defendant's objectives is evidenced in Exhibit A, which shows counsel's dismissive attitude toward the Defendant's rights. Such conduct violates Minn. R. Prof. Conduct 1.2(a) [12] (requiring a lawyer to abide by the client's decisions concerning the objectives of representation) and Rule 1.4 [13] (duty to communicate). If counsel believed the Defendant's requests were frivolous or objectionable, their ethical course was to discuss it

---

9    *State v. Camacho*, 561 N.W.2d 160, 173 (Minn. 1997) | https://tinyurl.com/3ra8wr54

10   *State v. Sabahot*, A10-2174, (Minn. App. Jan. 3, 2012) | https://tinyurl.com/447bwnj3

11   *State v. Thompson*, 988 N.W.2d 149 (Minn. App. 2023) | https://tinyurl.com/hdhn9pa4

12   Minn. R. Prof. Conduct 1.2(a) | https://tinyurl.com/mws3hcnr

13   Minn. R. Prof. Conduct 1.4 | https://tinyurl.com/2h7x2rfd

3

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

<div align="right"><span style="color:red">**EXHIBIT APR-21 | p. 3**</span></div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 4 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

with the Defendant candidly or, if irreconcilable, move to withdraw (Minn. R. Prof. Conduct 1.16 [14]), not to simply ignore the client.

- **April 16, 2025 Motion to Dismiss**

  After being found competent, the Defendant himself prepared and electronically filed a Motion to Dismiss All Charges With Prejudice (*see Index 131, attached as Exhibit C*). In the introduction to that motion, the Defendant explicitly stated he was "*proceeding pro se for this motion only, while also represented by counsel*" in an attempt to get his arguments before the Court despite counsel's inaction. The Motion to Dismiss is a substantial brief asserting numerous grounds for dismissal, including pervasive fraud, prosecutorial misconduct, and constitutional violations that have corrupted every stage of this case. It incorporates newly prepared evidence (discussed below) of systemic wrongdoing far beyond the immediate criminal charges. Notably, the Defendant served a copy of this motion , as well as all previous exhibits on his defense counsel for their review. Yet counsel still refused to advocate for it or even acknowledge its merits. They took no action whatsoever in support of their client's motion.

- **April 17, 2025 Hearing**

  During the hearing before the Honorable Judge Sarah Hudelston, defense counsel's obstruction came to a head in open court. The Defendant was present and prepared to address his Motion to Dismiss. However, before the Defendant could speak, his attorneys immediately told the Court that they disagreed with the Defendant's motion and would not be pursuing it as part of his defense. Counsel essentially *repudiated their own client's motion* in front of the judge. This left the Defendant in an untenable position – his counsel (ostensibly his advocates) were actively arguing against his interests. Even more egregiously, Mr. Donnelly, one of the public defenders, informed the Court that he disagreed with the finding that Defendant is competent. In other words, counsel openly suggested that their own client should perhaps still be considered mentally incompetent, directly undermining the April 3 competency order (*see Index 127, attached as Exhibit B*) and the Defendant's credibility. This statement was not only disloyal; it was prejudicial to the Defendant and had no purpose except to bolster the State's effort to marginalize the

---

14  Minn. R. Prof. Conduct 1.16 | https://tinyurl.com/49htk3zx

4

**EXHIBIT APR-21 | p. 4**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 5 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Defendant. Such conduct may violate Minn. R. Prof. Conduct 1.6 [15] (confidentiality / loyalty) and certainly 1.7 [16] (conflict of interest), as counsel effectively aligned themselves with an adverse position (the suggestion that their client is not competent) without any legal basis or authorization.

- Faced with this sabotage by his own attorneys, the Defendant himself addressed the Court at the April 17 hearing. He clearly and unequivocally asserted that his attorneys work for him and are obligated to follow his chosen strategy. He stated on the record that his preferred legal strategy is to have the Court hear and rule on his Motion to Dismiss - a motion raising serious issues of misconduct that go to the heart of the case. He also noted that he had no confidence in counsel if they refused to present this fundamental motion. In response, the Court bluntly stated that it would not consider the Defendant's Motion to Dismiss because the Defendant was still "*represented by counsel who does not agree with the motion*". **The Court thus *endorsed* counsel's obstruction** and used it as a basis to silence the Defendant's pro se filing. At this point, it became evident that the Defendant's defense was effectively being muzzled by the combined actions of his own lawyers and the Court's procedural stance.

**B  |  New Evidence Exposing Systemic Misconduct**

It must be emphasized *why* the Defendant is so insistent on getting his Motion to Dismiss heard. After the competency ruling in early April, the Defendant was finally able to actively participate in his case - and he promptly did so by filing the Motion to Dismiss with extensive supporting evidence. Specifically, the Defendant submitted three sets of evidentiary exhibits (*see Index 128, 129, and 130*) that corroborate his claims of fraud and misconduct:

- **Index 128 | "Netflix Whistleblower" Evidence Exhibit**
  This exhibit presents a first-person narrative documenting the events leading up to Defendant's criminal charges, focused on his discovery of a competing Netflix patent filed just days after his own, which cites his patent at the top. The story is constructed from real-time email records, publicly filed patents and trademarks, and LinkedIn activity metadata that suggest Defendant's intellectual property was being monitored and

---

15  Minn. R. Prof. Conduct 1.6 | https://tinyurl.com/4e2u7adz
16  Minn. R. Prof. Conduct 1.7 | https://tinyurl.com/nheez6bu

5

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 5**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 6 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

targeted. The exhibit includes live hyperlinks to original Dropbox archives, attachments, and communications, all of which were preserved and publicly shared as part of Defendant's ongoing transparency strategy. It establishes the foundation of Defendant's claims regarding motive, surveillance, and early-stage retaliation - before any involvement with law enforcement or the court system.

- **Index 129 | 'Brodsky USPTO Patent Fraud' Exhibits**
  This exhibit contains two linked reports that expose strategic patent manipulation centered on U.S. Patent No. 11,383,062 (the "Brodsky Patent"). It presents detailed forensic and legal analysis showing how the Brodsky patent - originally unrelated to locomotion - was retroactively amended to closely mirror the technical innovations of InfiniSet's earlier patent (U.S. 11,577,177). The timeline, claim language, and synchronized publication dates point to insider awareness of InfiniSet's confidential filings. Additional irregularities include a missing Israeli priority document, vague claim definitions, and image inconsistencies in the USPTO file wrapper. Together, the exhibits provide a direct, evidence-based account of high-level IP fraud occurring within the federal patent system - without speculation, and using only publicly accessible, authenticated records.

- **Index 130 | 'Netflix Academic Patent Fraud' Exhibits**
  This exhibit comprises four interlinked evidence sets (*Exhibits D-G*) that expose a coordinated academic fraud involving fabricated research papers attributed to Paul Debevec, and USC-ICT. These papers, which claim groundbreaking virtual production capabilities as early as 2006, are shown through timeline analysis, citation audits, and forensic inconsistencies to be retroactively constructed and technologically implausible for their claimed era. Although these academic documents are not cited in the Netflix patent (U.S. 11,810,254), the exhibit presents compelling evidence that they are now being positioned as a fallback "Plan B" prior art narrative - intended to sidestep the Defendant's successful third-party submission of U.S. Patent 11,577,177, which is currently listed at the top of the Netflix patent itself. The significance of this exhibit lies in the fact that Paul Debevec, author of the suspect papers, is now directly affiliated with Netflix and the very company to which the competing patent is assigned. Together, these

6

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 7 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

documents reveal a strategic effort to erase the Defendant's contribution by seeding false historical records that could be used to invalidate his invention's novelty and enable the ongoing exploitation of his intellectual property.

This attempt to erase the Defendant's contribution through fraudulent academic backdating directly parallels the Court's own efforts to erase him personally - by portraying him as 'psychotic' and seeking to have him unjustly committed, thereby silencing the only individual capable of exposing the full scope of the scheme.

**C  |  Counsel's Willful Blindness to the Above**

All of the above evidence (*see Index 128, 129, and 130*) was served upon defense counsel or otherwise made available in the court file after the competency finding. Yet counsel willfully ignored these materials. They did not discuss them with the Defendant, did not investigate their implications, and certainly did not incorporate them into any defense theory. This abdication of duty is tantamount to a constructive denial of counsel. When an attorney refuses to consider exonerating or favorable evidence - especially evidence that reveals falsified discovery and malicious motives behind a prosecution - that attorney is no longer functioning as defense counsel in any meaningful sense. Instead, they are colluding with the adversary or at least with an outside agenda to ensure the truth never comes to light. The Defendant asserts that his counsel's conduct in this regard violates *multiple* provisions of the Minn. Rules of Prof. Conduct and his Sixth Amendment right to effective assistance. As the U.S. Supreme Court noted in *United States v. Cronic*, 466 U.S. 648 (1984) [17], if the adversarial process breaks down due to counsel's non-representation, prejudice is presumed. Here, counsel's neutralization of the Defendant's defense is so complete that the adversarial process has, in effect, broken down.

**D  |  April 17, 2025 Hearing - Defendant Forced to Choose Self-Representation**

At the April 17 hearing, after the Court stated it would not hear the Defendant's motion due to his representation status, the Defendant was put in an impossible Catch-22: either accept the silencing of his defense or fire his attorneys on the spot to free his motion from procedural limbo. The Defendant chose the latter, as any rational person in his position would. During a brief off-the-record break (white noise enabled), the Defendant asked his attorneys directly if he could discharge them and proceed pro se in order to get his motion heard; they admitted he

---
17  *United States v. Cronic*, 466 U.S. 648 (1984) | https://tinyurl.com/4r9yxn3h

7

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 8 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

could. When proceedings resumed, counsel informed the Court that *"Mr. Guertin has expressed his desire to discharge us and proceed pro se."* The Court reacted with evident concern, warning the Defendant about the seriousness of self-representation and the training that lawyers have. The Defendant affirmed he understood the gravity of the decision. He then reiterated clearly to the judge: *"If I proceed on my own, that means you will have to rule on my motion to dismiss, correct? … That is what I want: to represent myself so that my motion to dismiss will be ruled upon."* The Defendant could not have been more clear that his intent in going pro se is to secure a ruling on a crucial motion that has been obstructed by counsel and the Court's current stance.

At the conclusion of the April 17 hearing, the Court set a further hearing on April 29, 2025 at 11:00 AM to formally address the Defendant's self-representation request. The Court provided the Defendant with a standard *"FORM 11 - PETITION TO PROCEED AS PRO SE COUNSEL"*[18] (a fill-in-the-blank questionnaire) to be completed. The Court also indicated that the Defendant's current attorneys would remain present on April 29, possibly to argue against the Defendant's petition. In essence, the stage is set for an unusual, and surreal scenario in which the Defendant must legally justify his right to fire attorneys who have confessed their inability to support his defense. This petition now follows, in advance of the April 29 hearing, to comprehensively set forth why the Defendant must be allowed to proceed pro se and why any opposition to that request - whether by his appointed lawyers or by the State - has no legal or moral merit.

### III.   THE CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION

It is well established that a criminal defendant has a constitutional right to represent himself at trial. This right is grounded in the Sixth Amendment (applicable to the States via the Fourteenth Amendment's Due Process Clause) and was unequivocally recognized by the U.S. Supreme Court in *Faretta v. California*, 422 U.S. 806 (1975). In *Faretta*, the Supreme Court held that forcing a lawyer upon a defendant against his will violates the defendant's constitutional right to conduct his own defense. The Court explained that the Framers intended the assistance of counsel to supplement, not override, the accused's personal autonomy in conducting his case. [19] *"An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal*

---

18  FORM 11 - PETITION TO PROCEED AS PRO SE COUNSEL | https://tinyurl.com/ms88t694
19  *"primary right to conduct one's own defense in propria persona."* | https://tinyurl.com/2ukddr9c

8

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 9 of 110          [ source file ]          [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

*fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense."* [20] id. at 821, and a nearly universal principle of law and history supports that right [21]. Indeed, the *Faretta* Court eloquently noted that although self-representation may often be ill-advised, a defendant's choice in this regard must be respected because *"personal liberties are not rooted in the law of averages. The right to defend is personal." Id.* At 834 [22]. The Defendant alone bears the consequences of a conviction, thus *"he must be free personally to decide whether, in his particular case, counsel is to his advantage." Id.* At 835 [23].

Minnesota law fully embraces the *Faretta* principle. Minn. R. Crim. P. 5.04, subd. 1(4) [24] provides the procedure for waiver of counsel in felony cases, and Minnesota courts have consistently held that a knowing and voluntary waiver of the right to counsel must be honored by the trial court. See, e.g., *State v. Richards*, 456 N.W.2d 260, 263 (Minn. 1990) [25] *"the self-representation right embodies such bedrock concepts of individualism and personal autonomy that its deprivation is not amenable to harmless error analysis.";* *State v. Camacho*, 561 N.W.2d 160, 173 (Minn. 1997) [26] (reiterating that if the waiver is clear, knowing, and voluntary, the court should grant self-representation, even if the decision is foolish). Minnesota has codified the requirement that a waiver of counsel be either in writing or on the record in open court. Minn. Stat. § 611.19 [27] mandates: *"Where counsel is waived by a defendant, the waiver shall in all instances be made in writing, signed by the defendant, except that in such situation if the defendant refuses to sign the written waiver, then the court shall make a record evidencing such refusal of counsel"* In the present case, the Defendant is submitting this Petition in writing (and signing it), thereby satisfying § 611.19's writing requirement. Additionally, the Defendant will orally reaffirm his waiver on the record at the April 29 hearing.

---

20  *"not the defense guaranteed him by the Constitution"* | https://tinyurl.com/44k6jfzr
21  *"forcing a lawyer…. is contrary to his basic right"* | https://tinyurl.com/4zf9n2ew
22  *"The right to defend is personal."* | https://tinyurl.com/yz8zdxv2
23  *"It is the defendant…. who must be free personally to decide"* | https://tinyurl.com/45zhxcd5
24  Minn. R. Crim. P. 5.04, subd. 1(4) | https://tinyurl.com/3p9yzk8f
25  *State v. Richards*, 456 N.W.2d 260, 263 (Minn. 1990) | https://tinyurl.com/38cwm29z
26  *State v. Camacho*, 561 N.W.2d 160, 173 (Minn. 1997) | https://tinyurl.com/3y594c5h
27  Minn. Stat. § 611.19 | https://tinyurl.com/3kj8bfds

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 10 of 110          [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

To comply with Rule 5.04 and constitutional standards (see *Faretta*, 422 U.S. at 835-36 [28]), a court must ensure that a defendant's waiver of counsel is made with knowledge of the dangers and disadvantages of self-representation. The Defendant preemptively acknowledges those dangers here: He understands that if allowed to proceed pro se, he will be solely responsible for defending himself, will need to follow court rules and procedures, and will lose the benefit of a lawyer's training and experience. The Defendant is prepared to accept these conditions. He is a highly literate, extremely competent adult who has demonstrated a devastatingly effective ability to research law and articulate arguments (as evidenced by his filings). He understands the charges against him (including their statutory elements) and the potential maximum penalties (including that the most serious charge could carry a  5 year prison term). He understands that if he proceeds pro se, he cannot later claim ineffective assistance of counsel regarding his own performance. In short, the Defendant knows what he is doing, and his choice is made "with eyes open." *Faretta*, 422 U.S. at 835 [29] (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942) [30]).

The Court's role, upon this *clear and unequivocal* request, is limited to ensuring the waiver is knowing and voluntary - not to evaluate the wisdom of the Defendant's decision or the content of his beliefs. *Faretta* expressly forbids denying self-representation simply because the court thinks the defendant is making a poor choice. 422 U.S. at 834 [31]. Here, the Defendant's choice is rational given the circumstances (as detailed in the next section). But even if the Court harbors reservations, the law requires that the Defendant's autonomy be respected once he demonstrates understanding of his rights. Stated differently, self-representation is the Defendant's constitutional right - he does not need anyone's permission to exercise it, so long as he is competent and informed.

The Defendant also notes that under Minnesota law, a court may (but is not required to) appoint advisory or standby counsel for a self-represented defendant. *See* Minn. R. Crim. P. 5.04, subd. 2. However, Minnesota statutes prohibit a district public defender from serving as standby counsel.

---

28  *Faretta*, 422 U.S. at 835-36 | https://tinyurl.com/bdhd3anj
29  *Faretta*, 422 U.S. at 835 *"his choice is made with eyes open."* | https://tinyurl.com/matztxys
30  *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942) | https://tinyurl.com/34nzrfc5
31  *Faretta*, 422 U.S. at 834 | https://tinyurl.com/yz8zdxv2

10

**EXHIBIT APR-21 | p. 10**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133  Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 11 of 110        [ source file ]      [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Minn. Stat. § 611.26, subd. 6 [32] *"The district public defender must not serve as advisory counsel or standby counsel."*. Thus, if the Court grants this petition, the Defendant's current public defenders must be fully discharged from the case (consistent with the Defendant's wishes). The Court could consider appointing conflict-free standby counsel from outside the public defender's office, but the Defendant is not requesting standby counsel at this time. The Defendant is confident in his ability to present his motions and arguments. Indeed, given his counsels' overt antagonism to his defense, he sadly trusts that he will represent his interests far better alone than with any court-appointed lawyer whose loyalties might be divided.

## IV.   DEFENDANT IS BEING DENIED A MEANINGFUL DEFENSE BY HIS COURT-APPOINTED COUNSEL

A fundamental purpose of the right to counsel is to ensure the accused a meaningful defense. When counsel refuses to advocate the defense that the client and the facts require, the right to counsel becomes an empty formality. In this case, the Defendant's public defenders have not merely been ineffective; they have been adversarial to their own client. The record already demonstrates this in several undeniable ways (detailed in Section II above), which can be further summarized, and expanded upon:

### A   |   Refusal to Present Critical Motions/Evidence

Counsel has flatly refused to file or argue the Motion to Dismiss (*see Index 131, attached Exhibit C*) that the Defendant views as vital. They took this stance despite the motion being well-researched and supported by evidence. By doing so, counsel deprived the Defendant of any advocacy on what may be a dispositive issue (if the motion's allegations of pervasive misconduct are even *partially* true, dismissal or other severe sanctions would be warranted). Counsel similarly ignored the *trove* of evidence (*see Index 122, 123, 124, 125, 128, 129, and 130*) supporting the Defendant's claims. This is not a strategic decision within the bounds of reasonable professional judgment – it is wholesale abandonment of the client's case. No competent, loyal attorney would ignore evidence of falsified discovery or theft of intellectual property that serves to irrefutably prove the very conspiracy which has been used for the past 26+ months as evidence of their client's supposed 'incompetence', and 'psychotic' disorder. The

_____

32  Minn. Stat. § 611.26, subd. 6 | https://tinyurl.com/yc2dzxyf

11

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 11**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 12 of 110         [ source file ]      [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

only plausible explanation for counsel's inaction is that their interests (or instructions from superiors) are not aligned with the Defendant's interest in revealing the truth. In effect, defense counsel have been acting as gatekeepers for the prosecution, keeping exculpatory and scandalous information out of the Court's view.

**B    |    Opposing the Client in Open Court**

At the April 17 hearing, defense counsel took the extraordinary step of advocating *against* their client's position. By telling the judge they disagreed with the competency finding *and* with the Defendant's motion, counsel joined forces with the State to paint the Defendant as *delusional or misguided*. This poisoned the well against the Defendant's pro se efforts and signaled to the Court that counsel had no intention of helping the Defendant pursue his chosen defense. It is difficult to imagine a more glaring conflict: the Defendant wanted his motion heard; his attorneys wanted it buried. The Minnesota Rules of Professional Conduct provide that if a fundamental disagreement arises, a lawyer "shall withdraw" if the client requests it (Rule 1.16(a)(3) [33]), or may withdraw if the representation has become unreasonably difficult or the client insists on action the lawyer fundamentally disagrees with (Rule 1.16(b)(4), (6) [34]). Here, counsel did not withdraw on their own – likely because withdrawing would allow the Defendant to speak for himself. Instead, they stayed on the case to actively obstruct. This is a gross ethical violation. It also effectively denied the Defendant the assistance of any genuine counsel at that hearing. For Sixth Amendment purposes, when an attorney sides against his client on a core issue, the client is left without counsel in substance.

**C    |    Lack of Communication and Good Faith**

The January 2025 emails (*see attached Exhibit A*) show the Defendant diligently attempting to communicate his strategy and even citing relevant case law to his attorneys. The response? As the Defendant notes, counsel provided virtually no meaningful reply and certainly did not act on his requests. The professional norm is that a defense attorney should consult with the client about important decisions and keep the client informed (Rule 1.4 [35]). Here, counsel's silence and inaction speak volumes. They did not explain why they refused to file the motion;

---

33  Minn. R. Prof. Conduct 1.16(a)(3) | https://tinyurl.com/664up495

34  Minn. R. Prof. Conduct 1.16(b)(4), (6) | https://tinyurl.com/b8832smv

35  Minn. R. Prof. Conduct 1.4 | https://tinyurl.com/e8fxve4t

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 12**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 13 of 110          [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

they simply ignored the client's directives. This lack of engagement is tantamount to a constructive severance of the attorney-client relationship. By the time of the April hearing, there was no trust or communication left - counsel and client were operating at cross-purposes. Such a breakdown by itself can justify granting a motion for self-representation (or at least substitution of counsel), because a complete communication breakdown means the Defendant is not receiving the benefit of counsel in any meaningful sense. See *State v. Clark*, 722 N.W.2d 460, 464 (Minn. 2006) [36] (noting that an irreconcilable conflict or a total breakdown in communication may require appointment of substitute counsel; a fortiori, it should allow self-representation if the defendant so chooses).

**D  |  Discovery Fraud Alone Justifies Immediate Discharge of Counsel**

This case cannot lawfully proceed to trial due to the deliberate and irrefutable manipulation of discovery materials by the State, compounded by defense counsel's repeated refusal to act after being specifically notified. As documented in attached Exhibit A (*January 2025 Emails*), the Defendant raised these concerns multiple times - detailing falsified metadata, aspect ratio anomalies, OneDrive inconsistencies, and lighting/reflection discrepancies that irrefutably proved fabrication. Rather than investigate or pursue a motion to dismiss, counsel - specifically Raissa Carpenter - repeatedly downplayed the issue, insisting that discovery was "*not a big deal*" in Minnesota courts and discouraging any effort to challenge the falsified evidence.

This assertion was false, and any attorney competent in Minnesota criminal law knows that discovery tampering is not only a legitimate issue - it is grounds for dismissal with prejudice when proven.

Under *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963) [37], the suppression or manipulation of evidence favorable to the defense constitutes a due process violation. Here, the discovery was not just suppressed - it was fabricated. This includes images with falsified timestamps, images altered to conceal cropping and distortion, and metadata that contradicts the physical lighting environment - specifically, flash shadow direction and object reflection analysis. These issues are extensively documented in Exhibits A–L of Defendant's pro se evidence submissions, which

---

36  *State v. Clark*, 722 N.W.2d 460, 464 (Minn. 2006) | https://tinyurl.com/4b9kmam4
37  *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963) | https://tinyurl.com/3uawcpb6

13

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 13**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File: 4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 14 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

were presented in support of his competency during the March 5, 2025 contested hearing before Judge Koch. (*see Index 122, 123, and 124*)

The State's final maneuver - embedding the manipulated images directly into the official Hennepin County OneDrive discovery system - now binds them to the fraud. This is not an allegation; it is digitally verifiable. Under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250 (1944) [38], this conduct constitutes fraud on the court, which requires vacatur or dismissal regardless of procedural posture.

Moreover, as held in *Giglio v. United States*, 405 U.S. 150, 153-154 (1972) [39], even passive use of false evidence by the prosecution - without correction - violates the defendant's rights and warrants reversal or dismissal. That principle applies here with full force.

The fraud also fatally tainted the Rule 20 psychiatric evaluations, which relied on these manipulated images to justify findings that the Defendant's claims were delusional. This triggers the exclusionary rule under *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) [40] : all downstream products of that falsified discovery must be deemed inadmissible.

The Defense counsel's role in this is equally damning. Despite receiving detailed forensic analyses from the Defendant - including PDF exhibits, annotated flipbooks, and a narrated explanation - counsel refused to take action. This constitutes a failure of the most basic Sixth Amendment obligations under *Strickland v. Washington*, 466 U.S. 668 (1984) [41], and a constructive denial of counsel as articulated in *United States v. Cronic*, 466 U.S. 648 (1984) [42]. Per *Cronic*, when defense counsel fails to subject the prosecution's case to adversarial testing, prejudice is presumed.

> *"What remains is not a prosecution - it is a procedural corpse propped up by falsified images and ethical evasion."*
>
> - *Paraphrasing Hazel-Atlas Glass*, 322 U.S. at 246

---

38  *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250 (1944) | https://tinyurl.com/3s4etfjy
39  *Giglio v. United States*, 405 U.S. 150, 153-154 (1972) | https://tinyurl.com/r79cdtau
40  *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) | https://tinyurl.com/znp6rrfw
41  *Strickland v. Washington*, 466 U.S. 668 (1984) | https://tinyurl.com/4y3sj9r5
42  *United States v. Cronic*, 466 U.S. 648 (1984) | https://tinyurl.com/4r9yxn3h

14

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

<div align="right">**EXHIBIT APR-21 | p. 14**</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 15 of 110          [ source file ]      [ .ots timestamp of source file ]

---

27-CR-23-1886

<div style="text-align:right">Filed in District Court
State of Minnesota
4/21/2025 7:48 AM</div>

No legitimate court can allow this case to proceed to trial under these circumstances. The Court must acknowledge that the Defendant's counsel was confronted with irrefutable fraud and knowingly chose inaction, thereby forfeiting any credibility or justification for continued representation.

**E    |    Counsel of Record, But Not in Reality**

In sum, the Defendant's court-appointed lawyers have failed to provide a defense and instead have impeded one. The Sixth Amendment guarantees the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). But more fundamentally, it guarantees the loyal assistance of counsel, untainted by conflicts of interest or ulterior motives. *See id.* At 692 [43] (prejudice presumed when counsel is burdened by an actual conflict of interest). Here, counsel's actions exhibit a conflict of interest - whether due to personal belief that the Defendant's claims should be squelched, pressure from the public defender hierarchy, collusion with the State, or perhaps even collusion with the very same "powerful people" the Defendant's previous, privately retained defense counsel, Bruce Rivers, told the Defendant "were keeping an eye on him". This Court need not find the precise cause; the effect is clear: the Defendant has no true advocate as long as these attorneys remain his representatives.

It bears emphasis that the Defendant did attempt less drastic remedies before resorting to self-representation. He repeatedly asked his lawyers to do their job. He essentially begged the Court on April 17 to hear his motion without having to fire counsel (*"perhaps a continuance to allow the judge to review it since it was only filed at 3:15 PM yesterday"*). These pleas were unavailing. The procedural paradox forced upon the Defendant is this: He cannot get a ruling on his motion *because he has counsel*, and he cannot get counsel to act *because they disagree with his motion*. The only escape from this circular trap is to remove counsel from the equation.

Minnesota courts have recognized that a defendant should not be left defenseless or forced to proceed with counsel who is working against him. *State v. Gillam*, 629 N.W.2d 440, 449 (Minn. 2001) [44] (reversible error to deny substitution of counsel when conflict is so great it results in a total lack of communication). In the present case, however, substituting one public defender for another would likely not cure the problem, as the obstruction appears to be institutional. The

---

43  *"prejudice….when counsel is burdened….conflict of interest"* | https://tinyurl.com/3a956f75
44  *State v. Gillam*, 629 N.W.2d 440, 449 (Minn. 2001) | https://tinyurl.com/yc6jpear

15

**EXHIBIT APR-21 | p. 15**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 16 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div style="text-align: right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

public defender's office has had the case for many months and has never pursued the Defendant's leads; moreover, one of the Defendant's attorneys, Emmett Donnelly, explicitly stated on April 17 that he thinks the Defendant should not have been found competent. This suggests an entrenched view within the defense team that the Defendant's own perspective is not to be taken seriously. At this juncture, the Defendant reasonably fears that any attorney appointed by the State (whether current counsel or a new one) will similarly resist his defense strategy, especially since that strategy involves exposing misconduct by government actors. There is also the reality of timing - the case is headed toward trial, and the Defendant's motion to dismiss is time-sensitive. Injecting a new attorney now (even if one could be found who truly supports the Defendant's aims) would cause further delay and, potentially, new clashes. Therefore, the Defendant asserts that proceeding pro se is not only his right but the most practical and just solution. Only by representing himself can he ensure that the suppressed evidence and arguments are finally brought to light in open court.

To allow the current situation to continue - with counsel ostensibly representing the Defendant while actually suppressing his defense - would be a travesty of justice. It would deny the Defendant any defense at all, which the Sixth Amendment cannot tolerate. The Court should thus find that the Defendant's dissatisfaction with counsel is fully justified and that his waiver of counsel is made advisedly, out of necessity. His request to discharge his lawyers and proceed pro se should be granted forthwith.

## V.   THE JUDICIAL PARADOX: COMPETENCY FINDING VS. DENIAL OF DEFENDANT'S VOICE

On April 3, 2025, this Court entered an order declaring the Defendant competent to stand trial (*see Index 127, attached Exhibit B*). That order followed extensive psychological evaluations and a full competency hearing. The legal effect of the order is that the Defendant is presumed capable of understanding the proceedings and assisting in his own defense. Indeed, from that date forward, the Defendant stood on equal footing with any other competent defendant - with full rights to participate in his defense, make decisions about his case, and have his motions heard. Yet the events that immediately ensued have contradicted and undermined the competency ruling, creating a profound judicial paradox.

16

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

<div style="text-align: right; color: red">EXHIBIT APR-21 | p. 16</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 17 of 110          [ source file ]       [ .ots timestamp of source file ]

<div style="border">

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

If the Defendant is competent (as the Court's own order says he is), then the Defendant's motions and filings are entitled to judicial consideration on their merits. The Court cannot simply ignore a pro se motion to dismiss that was properly filed, especially when that motion raises serious claims of misconduct. By rule, even pro se filings by represented defendants may be accepted or at least made part of the record (Minn. R. Crim. P. 1.04 provides courts flexibility to relieve a party from the strict application of rules "in the interest of justice"). Here, rather than engage with the substance of the Defendant's motion, the Court chose to hide behind the shield of representation: *"I won't consider it because you have a lawyer who doesn't agree with you."* This stance, in context, appears to be a deliberate tactic to dodge inconvenient facts. The Court knew the Defendant had been declared competent and was actively trying to be heard; it also knew defense counsel wouldn't champion his motion. By siding with counsel's refusal, the Court effectively nullified the Defendant's post-competency participation. This raises a stark question of due process under the Fourteenth Amendment. A defendant has a due process right to be heard at meaningful times and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)[45]. Declaring someone competent but then not allowing them any meaningful hearing of their claims is a form of procedural bait-and-switch.

**A   |   The Courts Self-Inflicted Contradiction**

Now, if the Court (or the prosecution, or defense counsel) takes the position that the Defendant's filings (such as the Motion to Dismiss and supporting evidence) are so outlandish that they indicate a lack of competency, then the Court faces a self-inflicted contradiction. The April 3 competency finding has not been vacated or challenged through proper channels. Defense counsel's offhand remark that they "disagree" with it is not a legal motion, and the State has not moved for reconsideration of competency. **Absent new evidence of incompetence, the Court is bound by its prior determination that the Defendant is competent.** Any attempt now to declare the Defendant incompetent *simply because he insists on raising issues that embarrass the State* would appear blatantly pretextual. It would also violate due process, as it would imply that the competency process is being used as a *weapon* to silence a defendant rather than to ensure his understanding. The Minnesota Rules of Criminal Procedure, Rule 20.01 [46]

---

45  *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) | https://tinyurl.com/4bbafx4a
46  Minn. R. Crim. P. 20.01 | https://tinyurl.com/79e6kwm5

17

</div>

**EXHIBIT APR-21 | p. 17**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133___Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 18 of 110          [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

require that competency evaluations be ordered only upon a showing of reason to doubt the defendant's competence. Here, the Court has no reason to doubt the Defendant's competence - if anything, the Defendant's articulate motion and strategic acumen at the April 17 hearing confirm his competence, as he navigated a complex situation to preserve his rights, which a truly incompetent person could not do.

To put it bluntly: The Court cannot have it both ways. Either the Defendant is competent, in which case he has the right to represent himself and to have his motions decided on their merits; or the Court now wants to assert he is incompetent, in which case it would be contradicting its own ruling and depriving the Defendant of due process. Any reversal on competency at this juncture, lacking substantive new evidence, would reek of an attempt to avoid addressing the Defendant's claims. It would also invite scrutiny under *Pate v. Robinson*, 383 U.S. 375 (1966) [47] (due process violated where competency procedure is misused or ignored). Moreover, declaring the Defendant incompetent again would not magically erase the evidence he has put forth; it would merely delay the day of reckoning and likely bolster the Defendant's eventual claims of judicial abuse.

It is also worth considering the optics and implications currently at play:

**B   |   If this Petition to Proceed Pro Se is denied**

The Court will be effectively saying that the Defendant must remain shackled to lawyers who refuse to defend him, meaning his Motion to Dismiss will never be heard. In that scenario, the Defendant's constitutional right to *any* defense is eviscerated. The record would show that the Court knowingly left a competent defendant with no avenue to raise serious legal challenges. This would be an appealable issue in its own right (structural error).

**C   |   If this Petition is granted**

The Court implicitly acknowledges that the Defendant's appointed counsel have not served him adequately (otherwise, why permit the discharge?). Granting the petition also means the Court can no longer dodge the Motion to Dismiss; once the Defendant is pro se, his filings are properly before the Court. The Court will have to confront the merits of the Defendant's

---

47  *Pate v. Robinson*, 383 U.S. 375 (1966) | https://tinyurl.com/yc32vvdx

18

**EXHIBIT APR-21 | p. 18**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 19 of 110          [ source file ]      [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

allegations of fraud and misconduct, which may prove highly embarrassing or inconvenient for the judicial system and other actors.

**D   |   If the Court or State attempt to question the Defendant's competency again**

It will be transparently seen as a tactic to avoid the two outcomes above. It would signal that the Court is so unwilling to hear the Defendant's case that it would rather invalidate him as a person. This route would undermine confidence in the judiciary's integrity, appearing as an act of reprisal or suppression. It could also open the door to federal civil rights liability, as continually tagging someone as "incompetent" after they've been found competent - merely because they persist in whistleblowing - could be viewed as an unlawful deprivation of rights under color of law (42 U.S.C. § 1983 [48]).

**E   |   The Court and State are Procedurally Trapped**

The only lawful and logical path is to honor the Defendant's rights: recognize his competency and allow him to represent himself, thereby letting his motions be heard. The Court should remember that justice must not only be done, but be seen to be done. To any neutral observer, the Defendant's insistence that his Motion to Dismiss be ruled upon is entirely reasonable - he simply wants a judge to address his evidence and arguments. The refusal to do so thus far (under cover of procedure) appears unjust. By granting this Petition, the Court can correct course and eliminate the "Catch-22" that currently imperils the Defendant's rights.

**F   |   The Right to be Heard According to Law**

Finally, the Defendant notes that the Minnesota Code of Judicial Conduct expects a judge to uphold the law and ensure every litigant's right to be heard. Rule 2.6(A) [49] of the Code states: *"A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law."* Up to now, the Defendant has *not* been accorded the right to be heard according to law - his lawyers wouldn't speak for him, and he was not allowed to speak for himself. This has in fact been the case for the past 26+ months and counting. Granting this Petition will align the Court's actions with its ethical duty to ensure the Defendant can be heard. Conversely, continuing to block the Defendant's voice (either by

---

48  42 U.S.C. § 1983 | https://tinyurl.com/mpkzudvv

49  Minnesota Code of Judicial Conduct Rule 2.6(A) | https://tinyurl.com/yjah7yw8

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 19**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

---

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 20 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

denying self-representation or by misusing competency assessments) would violate this judicial duty and further the appearance that the Court is suppressing the truth to avoid embarrassment.

## VI.  "TRUTH-AS-PSYCHOSIS" - THE OPPOSITION'S MISUSE OF PSYCHIATRY TO SUPPRESS DEFENDANT'S EVIDENCE

Throughout these proceedings, whenever the Defendant has attempted to expose the extraordinary misconduct underlying his case, the response from the State (and, at times, from the Court and even his own counsel) has been to dismiss those revelations as products of a disordered mind. This strategy might be dubbed *"Truth as Psychosis."* [50] Instead of addressing the content of the Defendant's claims, the opposition attributes them to mental illness, thereby avoiding any investigation into whether the claims are true. Such a tactic is a cynical abuse of the mental health system and Rule 20, and it must be called out and rejected in this context.

The Defendant is acutely aware that some of the information he has brought forward sounds alarming: multi-billion-dollar corporations, patent theft, high-ranking officials, and coordinated cover-ups are not the stuff of a routine criminal case. But sometimes, reality is alarming. Whistleblowers often face disbelief when they first expose corruption, precisely because the truth is so far from ordinary expectations. The evidence the Defendant has submitted speaks for itself - and notably, no party has actually refuted or disproven *any* of it. Instead of confronting the evidence, the opposition has tried to shoot the messenger's sanity. The Court should not be swayed by this improper tactic.

To drive this home: If the Defendant's assertions were truly delusional, one would expect them to be internally inconsistent, unsupported by external evidence, or outright fantastical (e.g., involving aliens, magic, or other hallmarks of true 'psychosis'). Instead, what do we have? We have a Motion to Dismiss (*see Index 131, attached Exhibit C*) with 56 footnotes, containing a total of 78 different links, and a meticulous inclusion of index citations. We have exhibits including real emails, patent filings, corporate records, and timelines. We have forensic metadata, timestamps, and image forensic reports which irrefutably establish fraudulent discovery materials, and an attempt at covering it up. **This is not how delusions present. This is how *evidence* presents.** The opposition's unwillingness to engage with the substance of this evidence

---

50  The Defendant's *"Truth as Psychosis"* analysis posted on his Substack | https://tinyurl.com/ybw53x6j

**EXHIBIT APR-21 | p. 20**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 21 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

<div style="text-align:right">
Filed in District Court<br>
State of Minnesota<br>
4/21/2025 7:48 AM
</div>

speaks volumes. They know that if a court of law actually scrutinizes these materials, the implications are explosive: it would unveil serious misconduct by the State, mental health experts, and possibly even judicial officers who may have been complicit in an effort to unjustly 'disappear' the Defendant into a mental institution to cover up the high-level theft of his patent.

Thus, rather than deal with that fallout, the strategy is to declare, "*He's crazy - nothing he says can be believed.*" Such a declaration might find initial traction in a system predisposed to doubt a lone individual against institutions. But now that the Defendant has been found competent, the "crazy" label is legally much harder to apply. Competency is a low bar - it means one is not so impaired as to be unable to participate in the proceedings. Defendant more than clears that bar; in fact, by any fair assessment, he appears highly intelligent and knowledgeable about his case. There is no evidence that the Defendant suffers from 'delusions' or 'psychosis'. His beliefs about the case's backstory are based on evidence and lived experience. They may be unusual, but so too are the facts of what happened to him leading up to the origination of his criminal charges on January 21, 2023 (*see Index 128*, '*Netflix Whistleblower is Found Alive and Well | Part 1 – The Patent*'). One person's whistleblower is another person's madman - until the evidence is laid out. Here, the Defendant has laid out that evidence. Calling him crazy without refuting the evidence is an admission of intellectual bankruptcy.

The Court should also be mindful of the incentives at play. If the Defendant's allegations are correct, multiple careers and reputations are on the line. There are individuals who might face professional discipline, civil liability, even criminal charges, if the Defendant's story is validated. Those individuals have every motive to use *any means necessary* to shut the Defendant down. That could include pressuring this Court, the public defenders to keep him under wraps, and leaning on psychiatric evaluations to declare him 'psychotic'. It is not a far-fetched scenario - history is replete with examples of dissidents or inconvenient persons being labeled mentally ill by regimes to discredit them. We do not usually think of that happening in American courts, but the Defendant's case bears an unsettling resemblance to exactly that.

The Defendant urges this Court to break from that pattern. The Rule 20 process should be used to protect a defendant's rights (ensuring he isn't tried while unable to defend himself), not to strip him of rights because he is defending himself *too well*. The notion that the Defendant must be crazy because he believes in a conspiracy against him is a logical fallacy - sometimes people really are conspired against. The question should always come down to evidence, not armchair

21

**EXHIBIT APR-21 | p. 21**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 22 of 110          [ source file ]       [ .ots timestamp of source file ]

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

psychology. And on the evidence, the Defendant has made a prima facie showing of serious wrongdoing by specific people. Neither his defense counsel nor the prosecution has countered that showing with any substantive rebuttal - they've relied solely on characterizing it as 'delusional', and 'psychotic'. That tactic has run its course. With competency established, the Court should no longer entertain dismissive psychiatric labels in lieu of argument.

To illustrate the absurdity of the "truth-as-psychosis" approach: the Defendant's Motion to Dismiss details multiple instances of deliberate discovery fraud and evidentiary tampering, including falsified image metadata, manipulated aspect ratios, embedded forgeries in the official Hennepin County OneDrive system, and a provable effort to suppress or fabricate material evidence central to the State's case. Instead of addressing these allegations, the prosecution and defense counsel simply ignore them. If those allegations were false, one would expect the State to come forward with affidavits or evidence to the contrary, or at least an explanation. The silence is telling. The plan, evidently, was to *never* have to answer those points because the Defendant's own lawyers wouldn't press them, and the Defendant himself would be sidelined as "incompetent," and "psychotic." Now that that plan has failed (due to the April 3 competency ruling), the backup plan is to apparently fight the Defendant's self-representation and keep the case on a track where none of these issues get aired.

This Court must not allow itself to remain complicit in a criminal conspiracy to suppress exculpatory evidence and silence the Defendant through psychiatric suppression. The Fourteenth Amendment's guarantee of due process includes the idea that a person can't be adjudged insane in order to strip him of rights without robust procedures. *Cf. Jackson v. Indiana*, 406 U.S. 715, 731 (1972) [51] (indefinite commitment of a criminal defendant who cannot be tried violates due process). Here, repeatedly questioning the Defendant's sanity whenever he asserts his rights is a form of harassment that offends due process. The Court's responsibility is to independently evaluate whether the Defendant's perspective has grounding in reality - and the record evidence shows that it does. This petition itself is an example of the Defendant's clarity: it cites rules, cases, emails, orders, and evidence. There is a very clear, consistent, and cohesive logic to the Defendant's complaints, even if they allege shocking misconduct. Simply put, nothing in the Defendant's presentation suggests a disorganized or irrational mind. To the contrary, he has

---

51  *Cf. Jackson v. Indiana*, 406 U.S. 715, 731 (1972) | https://tinyurl.com/nhjpcfmh

22

**EXHIBIT APR-21 | p. 22**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 23 of 110          [ source file ]        [ .ots timestamp of source file ]

---

shown remarkable composure and strategic thinking under very stressful and surreal circumstances.

By granting this Petition to Proceed Pro Se, the Court will send a message that it will judge this case on facts and law, not on stigma or facile character assassination. The Defendant will then be able to directly marshal the evidence of misconduct in open court, where it can be scrutinized properly. If the Defendant's claims truly lack merit, the State should have no fear of meeting them head-on in motions or at trial. The State's fear of the Defendant speaking for himself indicates that his claims likely *do* have merit - otherwise, letting him rant would only undermine him. It is precisely because the Defendant's claims are credible and supported that the State (and his conflicted defense counsel) have been so keen to prevent him from bringing them to light. This Court's duty is to ensure a fair process, not one rigged to avoid inconvenient truths. Enough with the "*he must be crazy*" dodge - let's proceed with the Defendant in charge of his defense, and let the truth come to light via adversarial testing and judicial rulings.

## VII.   FORM 11 IS UNNECESSARY AND INTRUSIVE; DEFENDANT SUBMITS THIS PETITION INSTEAD

At the conclusion of the April 17 hearing, the Court handed the Defendant a paper form titled "*FORM 11 - PETITION TO PROCEED AS PRO SE COUNSEL.*" This appears to be a boilerplate questionnaire given to defendants who express a wish to represent themselves. It asks a series of mostly check-the-box or short-answer questions, including personal inquiries about the defendant's background. Having reviewed that form, the Defendant has serious reservations about its relevance and lawfulness in this context.

### A   |   Forced Disclosure of Medical History Violates HIPAA and Due Process

The form requests irrelevant personal information and potentially sensitive medical history. For example, questions 6–9 on the form ask about the Defendant's mental health history, any treatments or medications, etc. While the Court may have an interest in ensuring a defendant isn't currently incapacitated by medication or illness, a broad inquiry into medical history goes beyond what is necessary for a *Faretta* waiver. The Defendant asserts his HIPAA [52] right to privacy regarding medical information. Forcing him to disclose medical history in a public court

---

52  HIPAA Privacy Rules | https://tinyurl.com/yksctxdy

23

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 24 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

file (or to prosecutors) as a condition of self-representation is unwarranted. The Rules of Criminal Procedure do not stipulate that a defendant must reveal such history to waive counsel; they only require that the court ensure the defendant is making an informed decision. The Defendant's medical history is either already known to the Court via the fraudulent Rule 20 reports he made public (in which case further disclosure is redundant) or not relevant if he is presently competent (which he has now 'officially' been determined to be, by this very Court).

**B    |    This Petition Is the Waiver - Form 11 Is Legally Superfluous**

The form is not a substitute for the court's colloquy and findings on the record. It is not signed by any judge, nor does any rule explicitly require its use. It appears to be an administrative convenience at best. Minnesota law requires a written waiver (Minn. Stat. § 611.19), but this Petition, signed by the Defendant, serves that function. A simplistic form with checkboxes cannot capture the nuance of the Defendant's situation. Worse, it might be used against him if he answers questions in a way that the State tries to twist (for instance, if he mentions a past diagnosis, the State may pounce on that to renew competency challenges). The Defendant should not be compelled to self-incriminate or arm his adversaries under the guise of a procedural form.

**C    |    A Strategic and Qualified Invocation of Faretta Rights**

The Defendant is entitled under *Faretta* and *McKaskle v. Wiggins*, 465 U.S. 168 (1984)[53], to assert and exercise his self-representation right in a manner that preserves his autonomy and strategy. *McKaskle* emphasizes that one of the core rights of a pro se defendant is to maintain actual control over the case, without undue interference by standby counsel or procedural hurdles. Requiring the Defendant to fill out a form that oversimplifies his case does not respect the complexity of his legal strategy. It treats him like a routine defendant making a whimsical choice, rather than what he is: an individual *forced* to self-represent due to obstruction. Given these unique circumstances, a fully briefed, narrative petition (such as this document) is far more appropriate to place before the Court. It ensures the Court is aware of the context and reasons for the Defendant's decision, thereby enabling a truly knowing acceptance of his waiver. A checkbox form cannot convey how this is not a typical *Faretta* scenario, but a qualified *Faretta* scenario - one compelled by the denial of a meaningful defense by counsel.

---

53  *McKaskle v. Wiggins*, 465 U.S. 168 (1984) | https://tinyurl.com/mtsex5yd

24

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 24**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 25 of 110          [ source file ]          [ .ots timestamp of source file ]

---

<div align="center">27-CR-23-1886</div>

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

**D    |    The Constitution Doesn't Require a Checkbox**

In light of the above, the Defendant has opted to file this comprehensive Petition in lieu of merely submitting Form 11. This Petition contains all the information the Court needs to determine that the Defendant is knowingly and voluntarily waiving counsel (*see especially Section III*). If the Court has additional questions for the Defendant, he will address them at the hearing on April 29. The Defendant is not categorically refusing to answer pertinent questions (such as "Do you understand you must follow rules?" or "Do you know the charges?"). He is simply declining to memorialize potentially prejudicial personal information in a written form not required by law. Indeed, given the legal and factual complexity of this case, filling out Form 11 with a straight face would likely require a trip to the store for a fresh box of color crayons. Nothing about the Defendant's choice to use this format prejudices the State or the Court - on the contrary, it provides far more insight into the Defendant's decision-making than a bare form would.

The Defendant respectfully asks the Court to accept this Petition as substantial compliance with any requirement for a written waiver of counsel. Insisting on the Form 11 under these circumstances would elevate form over substance to an extreme degree. The key point is that the Defendant's waiver is intelligent and voluntary - which this Petition amply demonstrates. Forcing the Defendant to also divulge private medical details or check some boxes would add nothing to that determination, except possibly to create side-issues or ammunition to cloud the real issues. The Court should focus on the big picture painted here, not on bureaucratic formalism. Indeed, insisting on extraneous disclosures could itself be seen as an "unnecessary barrier" to self-representation, which *Faretta* forbids. 422 U.S. at 835-36 (warnings are needed, but a defendant need not possess technical legal knowledge; the focus is on knowing the general disadvantages). The Defendant has shown he knows the disadvantages and still chooses this path. That is sufficient.

Accordingly, the Defendant respectfully requests that this Court proceed to rule on this Petition on its merits and not delay or complicate matters by quibbling over Form 11. The Constitution is the supreme law, and under it, the Defendant has a right to represent himself when he makes a clear informed choice. This Petition is an embodiment of that choice.

<div align="center">25</div>

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

<div align="right">**EXHIBIT APR-21 | p. 25**</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 26 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

### VIII.   FORMAL RECORD OF APRIL 17, 2025 HEARING

Defendant notes that the April 17, 2025 hearing appeared to proceed without a court reporter or standard transcription equipment. In response, he has submitted a formal request for a transcript to the Hennepin County Court Reporter Unit via email at:

**4thCourtReporterUnit@courts.state.mn.us**

This step was taken to ensure that a formal record exists of what transpired - specifically, the Court's and defense counsel's coordinated efforts to obstruct Defendant's legal strategy and avoid addressing his pending Motion to Dismiss.

### IX.   EXHIBITS ATTACHED TO THIS PETITION

The Defendant attaches the following exhibits in support of this Petition (all of which are referenced in the above text):

- **Exhibit A | Email Record Between Defendant and Defense Counsel**

  This exhibit is a comprehensive January 2025 email thread in which the Defendant repeatedly alerts court-appointed counsel to specific, high-stakes issues - namely, discovery fraud, falsified Rule 20 evaluations, and constitutional violations - while also laying out a multi-step legal strategy, complete with citations and procedural recommendations. Defense counsel fails to engage meaningfully, offers dismissive replies, and in some cases directly misleads the Defendant about the legal significance of the discovery violations. The exchange proves not only the collapse of the attorney-client relationship, but the willful obstruction of a meritorious legal defense. It also establishes that the Defendant was the only party actively investigating, documenting, and addressing discovery fraud - well before his contested competency hearing - and that counsel's inaction was not strategic, but suppressive.

- **Exhibit B | Order Determining Defendant Competent**

  This is the April 3, 2025 Order signed by Judge William Koch formally declaring the the Defendant competent to proceed. The ruling follows an in-person evidentiary hearing in which the Defendant testified extensively, demonstrated understanding of the charges, court procedure, and the roles of counsel, and directly rebutted the psychiatric opinion

26

**EXHIBIT APR-21 | p. 26**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 27 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

offered by Dr. Cranbrook. The Court ultimately found that the Defendant had met his burden to prove legal competency under Rule 20.01. The Court acknowledged the Defendant's grasp of due process, and his ability to consult with counsel, affirming his right to proceed. This Order confirms that as of April 3, 2025, the Defendant is legally competent, fully capable of directing his own defense, and any continued efforts to suppress his filings or silence his legal strategy must now be viewed as constitutionally indefensible.

- **Exhibit C | Defendant's Pro Se Motion to Dismiss with Prejudice**

  This is the 50-page motion that the Defendant personally authored and filed pro se after court-appointed counsel refused to do so. The motion is a comprehensive legal and evidentiary brief detailing the full scope of misconduct in this case, including: falsified Rule 20 evaluations, manipulated discovery evidence, altered court records, a "conspiracy of commitment" carried out by this Court, and the Defendant's previous defense counsel, *Brady* and *Mooney* violations, prosecutorial suppression, and defense counsel obstruction. It is supported by meticulous citations to Minnesota and federal case law, direct hyperlinks to forensic reports and digital evidence, and organized across a structured framework of constitutional claims. The motion demonstrates not only that the Defendant is legally competent and factually correct, but that his filings exceed the strategic quality of those submitted by many licensed attorneys. This document serves as both a legal demand for dismissal and the foundational basis for the Defendant's Petition to Proceed Pro Se.

These exhibits are submitted to give the Court a full factual record on which to base its decision. They objectively corroborate the Defendant's descriptions in this Petition. The Defendant believes that any fair review of these materials will reinforce the necessity and reasonableness of granting the relief sought.

27

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 27**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 28 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## X.  PRAYER FOR RELIEF

**WHEREFORE,**

the Defendant, Matthew David Guertin, respectfully requests that this Court grant the following relief:

1.  **Permit Self-Representation**

    Enter an Order granting this Petition and allowing the Defendant to proceed pro se, effective immediately and in any event no later than the next scheduled hearing on April 29, 2025 at 11:00 AM. The Defendant asks that the Court affirm on the record that his waiver of counsel is accepted as knowing, intelligent, and voluntary, pursuant to Minn. R. Crim. P. 5.04 and applicable law.

2.  **Acknowledge Motion to Dismiss is Pending**

    In the same Order (or a concurrent Order), acknowledge that the Defendant's Motion to Dismiss with Prejudice (*see Index 131, attached Exhibit C*) is properly before the Court and remains pending, and that upon the Defendant being recognized as pro se, the Court will schedule or otherwise address that motion for a formal ruling. (The Defendant suggests the Court set a prompt hearing or briefing schedule on the Motion to Dismiss so it can be decided on the merits without further delay. The issues raised are time-sensitive and central to the case's integrity.)

3.  **Discharge Current Counsel**

    Permit the Defendant's court-appointed attorneys, Ms. Carpenter and Mr. Donnelly, to withdraw from representation of the Defendant. They have been effectively discharged by the Defendant as of April 17, 2025. The Order should relieve them of any further duties to the Defendant in this matter. (Consistent with Minn. Stat. § 611.26, subd. 6, they should not be appointed as standby counsel, nor do they wish to be, presumably. Should the Court insist on appointing standby or advisory counsel, the Defendant requests it be an independent attorney with no prior involvement in the case or vested interest against the Defendant's strategy.)

28

**EXHIBIT APR-21 | p. 28**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 29 of 110          [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

4.  **Clarify Basis of Petition - Obstruction, Not Mere Preference**

    It is important for the record and any higher review that the Court recognize the unique context of this Petition. The Defendant asks that the Order or hearing transcript reflect that the Defendant's invocation of self-representation is made *not simply as a waiver of counsel in the abstract*, but as a response to the obstruction of the Defendant's constitutional legal strategy by his court-appointed counsel and by procedural rulings to date. In other words, the Court should acknowledge that the Defendant did not lightly waive counsel, but did so because he was left with no other way to pursue his fundamental rights. This clarification will ensure that this move is not mischaracterized as the Defendant "gaming the system" or vacillating on counsel  - in truth, it is the system that forced his hand.

5.  **Any Other Relief Deemed Just**

    Grant such further relief as may be just and proper to guarantee the Defendant's rights are protected. (For example, the Defendant would welcome an explicit statement that no adverse inference about competency or credibility will be drawn from the mere fact of him representing himself, and that his evidence will be judged on its merits. While such a statement should be unnecessary, given the presumption of competency and innocence, it could help dispel any remaining prejudice from the blatantly false, prior "psychosis" narrative perpetuated about him.)

## XI.   CONCLUSION

The Defendant submits that granting this Petition is not a favor - it is a constitutional necessity. It restores this case to the only path that honors due process: one where evidence is weighed, misconduct is confronted, and the Defendant is not silenced for uncovering inconvenient truths. Denial of this Petition would not merely preserve the record of injustice - it would escalate it, signaling that this Court is prepared to shield institutional actors rather than confront constitutional violations already in plain view.

This Court has both the authority and the obligation to intervene before this case becomes a permanent stain on the judicial record. The Defendant urges the Court to exercise that authority now - because the precedent being set is already underway. History will judge how this justice

29

---

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 30 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

system responds to detailed, evidence-backed allegations of fraud, psychiatric suppression, and digital manipulation. The question is whether this Court will meet those facts with accountability - or with obstruction.

Let the Defendant speak. Let him make his case. Let the truth emerge in open court - no matter how disruptive it may be to prosecutors, public defenders, judges, the State, corporate interests, political interests, or "powerful people."

**Dated:  April 21, 2025**

*Respectfully submitted,*

*  /s/ Matthew D. Guertin*

Matthew David Guertin
***Defendant Pro Se***
4385 Trenton Ln. N 202
Plymouth, MN  55442
Telephone: 763-221-4540
MattGuertin@protonmail.com
www.MattGuertin.com

30

**EXHIBIT APR-21 | p. 30**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 31 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">
Filed in District Court<br>
State of Minnesota<br>
4/21/2025 7:48 AM
</div>

## XII.   TABLE OF AUTHORITIES

**A   |   Federal Cases**

*Adams v. U.S. ex rel. McCann,* 317 U.S. 269, 279 (1942)

*Brady v. Maryland*, 373 U.S. 83 (1963)

*Giglio v. United States,* 405 U.S. 150 (1972)

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)

*Jackson v. Indiana*, 406 U.S. 715 (1972)

*Mapp v. Ohio*, 367 U.S. 643 (1961)

*Mathews v. Eldridge*, 424 U.S. 319 (1976)

*McKaskle v. Wiggins,* 465 U.S. 168 (1984)

*Mooney v. Holohan*, 294 U.S. 103 (1935)

*Pate v. Robinson*, 383 U.S. 375 (1966)

*Strickland v. Washington*, 466 U.S. 668 (1984)

*United States v. Cronic*, 466 U.S. 648 (1984)

**B   |   Minnesota Cases**

*State v. Camacho,* 561 N.W.2d 160, 173 (Minn. 1997)

*State v. Clark,* 722 N.W.2d 460, 464 (Minn. 2006)

*State v. Gillam,* 629 N.W.2d 440, 449 (Minn. 2001)

*State v. Richards,* 456 N.W.2d 260, 263 (Minn. 1990)

*State v. Sabahot,* A10-2174 (Minn. App. Jan. 3, 2012)

*State v. Thompson,* 988 N.W.2d 149 (Minn. App. 2023)

**C   |   Statutes**

*42 U.S.C. § 1983*

*Minn. Stat. § 611.19*

*Minn. Stat. § 611.26, subd. 6*

31

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 31**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 32 of 110       [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

**D   |   Rules & Professional Conduct**

Minn. R. Crim. P. 1.04

Minn. R. Crim. P. 5.04

Minn. R. Crim. P. 5.04, subd. 1(4)

Minn. R. Crim. P. 5.04, subd. 2

Minn. R. Crim. P. 20.01

Minn. R. Prof. Conduct 1.2(a)

Minn. R. Prof. Conduct 1.4

Minn. R. Prof. Conduct 1.6

Minn. R. Prof. Conduct 1.7

Minn. R. Prof. Conduct 1.16

Minn. R. Prof. Conduct 1.16(a)(3)

Minn. R. Prof. Conduct 1.16(b)(4), (6)

Minnesota Code of Judicial Conduct, 2.6(A)

**EXHIBIT APR-21 | p. 32**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 33 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## Matthew Guertin / January 7th Court Date / Judge Recusal

From   mattguertin <MattGuertin@protonmail.com>

To     Raissa Carpenter<Raissa.Carpenter@hennepin.us>

Date   Friday, January 3rd, 2025 at 12:50 PM

Raissa,

I am writing you to find out what the deal is with my scheduled January 7th appearance in front of Judge Quam and if that is still going to be taking place or not?

I would also like to inquire about the possibility of rescheduling my evidentiary hearing or having it take place in front of a different judge as Julia Dayton Klein is the same judge that was named in my federal civil rights lawsuit who I can irrefutably prove issued two ruling outside of her jurisdiction insofar as submitting two separate orders denying my supposed 'affidavit of fee waivers' which I 100% NEVER actually submitted - EVER. She was submitting rulings into my Minnesota Court of Appeals Case A24-0780 based on non existent affidavits for a fee waiver to try and prevent my appeal from moving forward
(*see Index #115, pp. 6-7, Exh. H, I, J, K, and L*)

She is also the same judge that granted an order for continuance on June 14th, 2023 on a non-existent motion for continuance in my case as detailed in previous motion for judicial notice I submitted into my case (*see Index #115, p. 4, Exh. D*)

Thanks,

Matthew Guertin
Inventor / Founder / CEO
InfiniSet, Inc.
Minneapolis, MN
US Patent 11,577,177 (Listed at the VERY top of Netflix US Patent 11,810,254)
MattGuertin.com
763-221-4540

Sent with Proton Mail secure email.

<span style="color:red">Exhibit A |  p. 1</span>

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

<span style="color:red">**EXHIBIT APR-21 | p. 33**</span>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133   Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 34 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## RE: [External] Matthew Guertin / January 7th Court Date / Judge Recusal

| | |
|---|---|
| From | Raissa Carpenter <Raissa.Carpenter@hennepin.us> |
| To | mattguertin<MattGuertin@protonmail.com> |
| CC | Emmett M Donnelly<Emmett.Donnelly@hennepin.us> |
| Date | Friday, January 3rd, 2025 at 1:07 PM |

Good afternoon,

The January 7th appearance with Judge Quam should be getting continued until after our evidentiary hearing. There was an email about it this morning. Attaching the email for your reference. Are you ok with me responding that we are fine continuing that appearance?

Judge Dayton Klein will not preside over your evidentiary hearing. If they scheduled it in front of her, that was an error and they will have to fix it. On July 15th, Judge Dayton Klein issued an order recusing herself from your case. So she cannot preside over it based on her own order. A copy of the order is attached for your reference.

Sincerely,

Raissa R. Carpenter (she/her)
Assistant Public Defender - Office of the Hennepin County Public Defender
Location: 701 4th Avenue South, Suite 1400, Minneapolis, MN 55415
Contact: 612-348-9676    raissa.carpenter@hennepin.us

Disclaimer: If you are not the intended recipient of this message, please immediately notify the sender of the transmission error and then promptly permanently delete this message from your computer system.

---

610.82 KB    3 files attached

| email-1.2.eml 275.16 KB | image001.png 146.43 KB |
|---|---|

| 27-CR-23-1886 - Order to Recuse.pdf 189.22 KB |
|---|

Exhibit A |  p. 2

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File: 4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 35 of 110       [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## RE: [External] Matthew Guertin / January 7th Court Date / Judge Recusal

From    mattguertin <MattGuertin@protonmail.com>

To      Raissa Carpenter<Raissa.Carpenter@hennepin.us>

CC      Emmett M Donnelly<Emmett.Donnelly@hennepin.us>

Date    Monday, January 6th, 2025 at 9:32 AM

Raissa,

I am fine continuing the appearance unless there is any benefit in making an appearance for whatever reason? I have never appeared in front of or met Judge Quam since the origination of my case...

Thanks,

Matthew Guertin
Inventor / Founder / CEO
InfiniSet, Inc.
Minneapolis, MN
US Patent 11,577,177 (Listed at the VERY top of Netflix US Patent 11,810,254)
MattGuertin.com
763-221-4540

Sent with Proton Mail secure email.

Exhibit A | p. 3

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 36 of 110        [ source file ]        [ .ots timestamp of source file ]

---

<div style="text-align:center">27-CR-23-1886</div>

<div style="text-align:right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

## RE: [External] Matthew Guertin / January 7th Court Date / Judge Recusal

| | |
|---|---|
| From | Raissa Carpenter <Raissa.Carpenter@hennepin.us> |
| To | mattguertin<MattGuertin@protonmail.com> |
| CC | Emmett M Donnelly<Emmett.Donnelly@hennepin.us> |
| Date | Monday, January 6th, 2025 at 9:35 AM |

The only thing he could do is address the conditions of your release. So, unless we have a request with respect to release conditions, I don't think there's any point in making an appearance.

Sincerely,

Raissa R. Carpenter (she/her)

Assistant Public Defender - Office of the Hennepin County Public Defender

Location: 701 4th Avenue South, Suite 1400, Minneapolis, MN 55415

Contact: 612-348-9676   raissa.carpenter@hennepin.us

<div style="text-align:right"><span style="color:red">Exhibit A |  p. 4</span></div>

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

<div style="text-align:right"><span style="color:red">**EXHIBIT APR-21 | p. 36**</span></div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 37 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## RE: [External] Matthew Guertin / January 7th Court Date / Judge Recusal

| | |
|---|---|
| From | mattguertin <MattGuertin@protonmail.com> |
| To | Raissa Carpenter<Raissa.Carpenter@hennepin.us> |
| CC | Emmett M Donnelly<Emmett.Donnelly@hennepin.us> |
| Date | Monday, January 6th, 2025 at 9:45 AM |

okay.

Sent with Proton Mail secure email.

Exhibit A | p. 5

---

**EXHIBIT APR-21 | p. 37**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 38 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## RE: [External] Matthew Guertin / January 7th Court Date / Judge Recusal

From    Raissa Carpenter <Raissa.Carpenter@hennepin.us>

To      mattguertin<MattGuertin@protonmail.com>

CC      Emmett M Donnelly<Emmett.Donnelly@hennepin.us>

Date    Monday, January 6th, 2025 at 9:57 AM

---

Ok I will let them know we are fine with that appearance being continued.


Sincerely,


Raissa R. Carpenter (she/her)

Assistant Public Defender - Office of the Hennepin County Public Defender

Location: 701 4th Avenue South, Suite 1400, Minneapolis, MN 55415

Contact: 612-348-9676   raissa.carpenter@hennepin.us

Exhibit A |  p. 6

**EXHIBIT APR-21 | p. 38**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 39 of 110       [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## RE: [External] Matthew Guertin / January 7th Court Date / Judge Recusal

| | |
|---|---|
| From | mattguertin <MattGuertin@protonmail.com> |
| To | Raissa Carpenter<Raissa.Carpenter@hennepin.us> |
| CC | Emmett M Donnelly<Emmett.Donnelly@hennepin.us> |
| Date | Tuesday, January 7th, 2025 at 7:05 AM |

Good morning,

**Discovery Fraud and Competency Issues Pertaining to 'State of Minnesota v. Matthew David Guertin' - 27-CR-23-1886**

**Key Issues and Procedural Background -**

**Discovery Fraud Allegations**
The case involves three sets of discovery materials:

**Set 1:** An initial set of 104 photographs referenced in Dr. Jill Rogstad's Rule 20 report. These images were never provided to me, only documented as reviewed.
https://matt1up.substack.com/api/v1/file/1b926873-0ad0-47f6-8240-4f4491bb7836.pdf

**Set 2:** A second set of 80 photographs reviewed by Dr. Michael Robertson during the civil commitment hearing on August 1, 2023. These were identified and detailed in my April 4, 2024 motion to compel discovery as being photographs which were cropped and manipulated to present a false narrative.
https://matt1up.substack.com/api/v1/file/96a5de26-014f-459e-b77d-50eeac400400.pdf

**Set 3:** A third set of 518 photographs was provided to me on July 16, 2024, by Bruce Rivers. Despite the large number, this set omitted the exact 28 images I flagged as manipulated in Set 2. This omission forms the basis of my argument that the discovery materials were fraudulently altered and intentionally excluded.
https://storage.courtlistener.com/recap/gov.uscourts.mnd.216796/
gov.uscourts.mnd.216796.42.0.pdf

**Catch-22 Argument (Exhibit Y)**
Exhibit Y outlines a critical dilemma for the court:
https://storage.courtlistener.com/recap/gov.uscourts.mnd.216796/
gov.uscourts.mnd.216796.74.0.pdf

Exhibit A |  p. 7

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 40 of 110        [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

- If the prosecution produces the 28 missing images, it validates my claim that they were
  initially cropped and manipulated.
- If they fail to produce the images, it supports my argument that they were intentionally
  excluded to conceal evidence of fraud (as detailed in my April 4th, 2024 motion to compel
  discovery - see Index #29 or the PDF for 'Set 2' above)
- This creates a scenario where any action by the prosecution inherently supports my
  position, rendering their defense untenable.

**Competency Determination**
- The competency issue hinges on the fact that the psychological examiner relied on
  fraudulent discovery materials during my initial civil commitment evaluation that took place
  on August 1, 2023.
- This directly taints the validity of my entire civil commitment case (27-MH-PR-23-815), the
  subsequent Rule 20 findings, and undermines the determination of my supposed
  'incompetency'/
- My documented ability to understand and articulate legal issues, as evidenced by my filings
  and strategic arguments (such as this one I am laying out very clearly in this email
  currently..), directly contradicts the conclusions drawn by the psychological examiner.

**Conflict of Interest and Change in Defense Counsel**
- Bruce Rivers, my former defense counsel, was directly implicated in the fraudulent
  discovery issue.
- Following my successful motion to replace him, I now have two, new, awesome public
  defenders appointed to my case.
- This eliminates the prior conflict of interest and ensures that my current defense strategy
  can focus on the fraudulent discovery and competency issues without obstruction.

**Discovery Obligations and Sanctions**
- Under Minnesota Rule of Criminal Procedure 9.01, the prosecution is required to disclose
  all relevant evidence in its possession, including photographs and other materials critical to
  the defense.
- The failure to produce an authentic and complete set of discovery materials constitutes a
  violation of this rule.
- The prosecution's provision of manipulated images and subsequent omission of key
  evidence from the third set indicates bad faith and intentional misconduct.
- *Brady v. Maryland*, 373 U.S. 83 (1963) mandates that suppression of material evidence
  favorable to the accused violates due process.
- Here, the 28 omitted images are material, as they form the basis of my claim pertaining to
  manipulation and fraud.

Exhibit A | p. 8

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

EXHIBIT APR-21 | p. 40

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 41 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

**Fraud on the Court**
- Fraud on the court occurs when a party deliberately deceives the court and undermines the integrity of the judicial process.
- The intentional exclusion of 28 critical images and the reliance on manipulated evidence in competency evaluations meet this standard.
- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) establishes that courts have inherent authority to address fraud on the court. If proven, such fraud can result in dismissal of the case.

**Competency and Due Process**
- Minnesota Rule of Criminal Procedure 20.01 requires that a defendant understand the nature of the proceedings and be able to assist in their defense.
- My filings demonstrate not only an understanding of the charges but also a sophisticated grasp of legal strategy, directly contradicting the findings of incompetency.
- *Dusky v. United States*, 362 U.S. 402 (1960) provides the federal standard for competency, emphasizing the defendant's ability to consult with counsel and understand the proceedings.
- The fraudulent discovery materials used in my evaluations render the competency findings unreliable.

**Motion to Dismiss Based on Fraudulent Discovery**
- Given the unprecedented nature of the prosecution's actions - introducing fraudulent discovery materials and omitting critical evidence - a motion to dismiss is warranted.

This motion should argue that:
- The prosecution's conduct has irreparably tainted the proceedings.
- The omission of the 28 images constitutes a deliberate attempt to conceal exculpatory evidence.
- The reliance on fraudulent materials in competency evaluations undermines the legitimacy of the entire case.

**My Preferred and Recommended Legal Strategy Moving Forward -**

**1  - Immediately File a Motion for Discovery**
Request the court to order the prosecution to produce:
- A complete and authenticated set of **all** photographs taken by law enforcement.
- A forensic analysis of the discovery materials to establish authenticity and identify any manipulation.

Exhibit A |  p. 9

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 42 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

**2  - Challenge the Competency Determination at my Upcoming Hearing**
- Make a point of emphasizing the fact that second and third Rule 20 are suggesting that I need to be placed on powerful antipsychotic drugs due to my 'belief' of fraudulent discovery being a part of my case.
- Emphasize the fact that my 'belief' of a conspiracy taking place was also used as evidence to support the finding of my supposed incompetency, and need to be placed on powerful antipsychotic drugs.
- Argue that the previous findings were based on fraudulent discovery materials, and that the existence of these fraudulent discovery serves to validate my belief of the very same conspiracy used to label me as 'incompetent and psychotic'
- Emphasize my demonstrated ability to understand and participate in the proceedings, as evidenced by my filings and strategic legal actions.
- Emphasize the fact that I am in fact the one who has investigated, and now irrefutably proven the unprecedented issue of fraud on the court by the state / prosecution.
- Make mention of the fact that perhaps it is them who is actually incompetent, and not me.
- Request a completely independent competency evaluation, with ZERO connections at all to the Hennepin County courts (if one is still required for some reason following the evidentiary hearing concerning my competency)

**3  - File a Motion to Dismiss for Fraud on the Court Once my Case Successfully Returns to Criminal Court Proceedings**
- Argue that the prosecution's actions constitute fraud on the court and have irreparably prejudiced my right to a fair trial.
- Cite *Hazel-Atlas Glass Co. v. Hartford-Empire Co*. and Minnesota case law to support the dismissal request.
- Emphasize the completely unprecedented circumstances involving the State and prosecution itself being directly involved in the introduction of fraudulent discovery materials into my case
- Make sure to highlight the fact that the manipulated discovery materials were actually focused on hiding my significant business related endeavors pertaining to my patented technology and prototype.
- Emphasize how this inherently establishes a direct connection to the entire situation involving the origination of my criminal charges themselves insofar as the entire patent fraud situation at the heart of my case.
- Argue that the completely unprecedented circumstances surrounding the entire discovery fraud issue demands a swift, firm, and immediate resolution by the Court - with the obvious resolution being the complete dismissal of all charges.
- Demand an investigation into the fraudulent discovery along with appropriate sanctions and/or disciplinary actions for those found to be involved in the discovery fraud conspiracy.

Exhibit A |  p. 10

**EXHIBIT APR-21 | p. 42**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 43 of 110      [ source file ]      [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

That is all for now.

Feel free to let me know what you think of what I have laid out here as my preferred strategy moving forward.

Thanks for your time.

Sincerely,


Matthew Guertin
Inventor / Founder / CEO
InfiniSet, Inc.
Minneapolis, MN
US Patent 11,577,177 (Listed at the VERY top of Netflix US Patent 11,810,254)
MattGuertin.com
763-221-4540



Sent with Proton Mail secure email.

Exhibit A |  p. 11

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 43**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133   Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 44 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## RE: [External] Matthew Guertin / January 7th Court Date / Judge Recusal

| | |
|---|---|
| From | mattguertin <MattGuertin@protonmail.com> |
| To | Raissa Carpenter<Raissa.Carpenter@hennepin.us> |
| CC | Emmett M Donnelly<Emmett.Donnelly@hennepin.us> |
| Date | Wednesday, January 8th, 2025 at 10:34 AM |

Good morning,

I have just published a post on my Substack page which I believe does a rather good job of laying out the entire criminal patent theft conspiracy taking place.

https://matt1up.substack.com/p/discrediting-their-fraud

Everything very clearly appears to be tied to Jews, Israel, our corrupt US Government, along with many military, and military connected entities. There is even fraud involving a completely fake, Ai generated 'holographic holocaust survivor' named Pinchas Gutter that is being directly supported by the USC Shoah Foundation.

One of the most compelling (and irrefutable..) elements of what I have laid out is that much of it is supported by not only 'official' academic research papers, but also by a federal patent and trademark case that is still ongoing within the Northern California District Court.

That case is 'Rearden LLC v Disney' -
https://www.courtlistener.com/docket/6121204/rearden-llc-v-the-walt-disney-company/?page=1

and here is the federal complaint-
https://storage.courtlistener.com/recap/gov.uscourts.cand.314347.1.0.pdf

I did a little digging and came across this declaration by Hao Li, who works as a researcher for USC-ICT, and is also the CEO of a company called Pinscreen.com -
https://storage.courtlistener.com/recap/gov.uscourts.cand.314347/gov.uscourts.cand.314347.139.7.pdf

The reason this particular case record is so compelling is that is provides a complete list of all of the various entities that have pouring millions of dollars of funding into the same field of research to which my patented VR Treadmill technology applies - with a substantial amount of funding

Exhibit A |  p. 12

---

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 44**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 45 of 110       [ source file ]       [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

being provided by the US Government, and military itself to the tune of millions of dollars.

This is highly relevant sue to the fact that my patent has been determined to have VAST implications in military training simulation, and has also been determined to be worth many billions of dollars over the 20 year span of the patent life.

A rough estimate of the value of my patent is listed in this exhibit at Index 02 - https://storage.courtlistener.com/recap/gov.uscourts.mnd.216796/gov.uscourts.mnd.216796.47.0.pdf

The analysis pertaining to my patents vast implications in military training simulations can be found here - https://storage.courtlistener.com/recap/gov.uscourts.mnd.216796/gov.uscourts.mnd.216796.10.0.pdf  (see Exhibit C | Index 30 | pp. 67-70)

Additionally, if you also take a look at 'Exhibit C | Index 30 | pp. 53-59' you will be able to see the documented searches that were occurring for my unused, never promoted, LinkedIn page that has NEVER had any employment history added to it.

This is highly relevant as it reveals a rather absurd search history of pretty much every government, and military connected entity imaginable. This includes the highly unusual searches, and spikes that were occurring at the very same time my order for civil commitment was filed with the court on July 20, 2023, in addition to the search spikes and entities documented during the exact same time that I was fighting to stay out of a mental institution, as the fraudulent discovery materials were simultaneously being submitted into my case via their provision to Michael Robertson, who conducted my civil commitment psychological examination on August 1, 2023.

Furthermore - directly following my 'LinkedIn Search Graph', if you take a look at 'Exhibit C | Index 30 | pp. 60-66' there is verification of my self professed 'former CIA' and military connected welder, as well as direct proof of Israeli 'special ops gear' sitting atop my prototype as it was being welded by my self professed 'former CIA' welder. Following the two initial pages of the pictures, you will be able to review a selected historical record of my text messages with my 'former CIA' welder as well. This text message history is not only verified, but also expounded upon in the video screen-capture recording of these same communications which can be viewed at the following two video links - https://rumble.com/v5g34cj-text-message-history-with-my-former-cia-welder.html https://odysee.com/@Matt1up:5/text-message-history-with-my-former-cia-welder:5

All of this government and military interest is directly supported by the documented federal funding list contained in the above mentioned federal declaration of Hao Li.
The list provided in his declaration is as follows:

Exhibit A |  p. 13

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 46 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

**U.S. Government**
Project Nexus: Lifelike Digital Human Replica
Duration: 09/01/2018 – 08/31/2019
Award Amount: $1,000,000
Role: PI (USC/ICT)

**Army Research Office (ARO)**
RTO: Scalable and Efficient Light Stage Pipeline for High-Fidelity Face Digitization
Duration: 09/01/2018 – 08/31/2019
Award Amount: $200,000
Role: PI (USC/ICT)

**U.S. Army Natick (NATICK)**
High-Fidelity Rigging and Shading of Virtual Soldiers
Duration: 09/01/2018 – 03/31/2019
Award Amount: $157,500
Role: PI (USC/ICT)

**Office of Naval Research (ONR - HPTE)**
Young Investigator Program (YIP): Complete Human Digitization and Unconstrained Performance
Capture
Duration: 06/01/2018 - 05/31/2021
Award Amount: $591,509
Role: PI (USC)

**Semiconductor Research Corporation (SRC) / Defense Advanced Research Projects
Agency (DARPA)**
JUMP: Computing On Network Infrastructure for Pervasive, Cognition, and Action
Duration: 01/01/2018 - 12/31/2022
Award Amount: $1,174,818
Role: PI (USC)

**Army Research Office (ARO)**
UARC 6.1/6.2: Avatar Digitization & Immersive Communication Using Deep Learning
Duration: 11/01/2017 - 10/31/2019
Award Amount: $2,821,000
Role: PI (USC/ICT)

Exhibit A |  p. 14

---

EXHIBIT APR-21 | p. 46

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 47 of 110       [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court
State of Minnesota
4/21/2025 7:48 AM</div>

**Army Research Office (ARO)**
RTO: Strip-Based Hair Modeling Using Virtual Reality
Duration: 11/01/2017 - 10/31/2018
Award Amount: $250,000
Role: PI (USC/ICT)

**Army Research Office (ARO)**
RTO: Head-Mounted Facial Capture & Rendering for Augmented Reality
Duration: 11/01/2017 - 10/31/2018
Award Amount: $200,000
Role: PI (USC/ICT)

**Army Research Office (ARO)**
UARC 6.1/6.2: Capture, Rendering, & Display for Virtual Humans
Duration: 11/01/2016 - 10/31/2017
Award Amount: $1,408,011
Role: PI (USC/ICT)

**United States SHARP Academy (ARO)**
Digital SHARP Survivor
Duration: 07/01/2016 - 06/31/2017
Award Amount: $94,953
Role: PI (USC/ICT)

**Army Research Office (ARO)**
RTO: Lighting Reproduction for RGB Camouflage
Duration: 01/01/2016 - 12/31/2017
Award Amount: $200,000
Role: PI (USC/ICT)

**U.S. Army Natick (NATICK)**
Research Contract
Duration: 09/01/2015 - 12/31/2016
Award Amount: $145,000
Role: PI (USC/ICT)

**Office of Naval Research (ONR)**
Markerless Performance Capture for Automated Functional Movement Screening
Duration: 08/01/2015 - 09/30/2017
Award Amount: $230,000
Role: PI (USC)

<div align="right">Exhibit A |  p. 15</div>

---

<div align="right">**EXHIBIT APR-21 | p. 47**</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 48 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

**Intelligence Advanced Research Projects Activity (IARPA), Department of Defense (DoD)**
GLAIVE: Graphics and Learning Aided Vision Engine for Janus
Duration: 07/25/2014 - 07/24/2018
Award Amount: $419,264
Role: Co-PI (USC)

I am of the firm belief that this evidence serves to further support the entire criminal conspiracy that I have been claiming has been taking place the entire time - the very same 'conspiracy' that continues to be used as evidence of my supposed 'unknown schizophrenic or other psychotic disorder' by the Hennepin County court system. I believe that this additional evidence can also be included as part of not only proving my obvious competency at the upcoming evidentiary hearing, but would also serve as rather compelling evidence that would support a motion for dismissal if it were to be included as part of said motion.

Notably - the involvement of these 'powerful' entities also serves to directly support the entire issue of the fraudulent discovery materials themselves based upon the intentional exclusion of my patented technology form the manipulated police photographs.

Keep in mind that this is just 'some' of the evidence I possess. It is not an exaggeration for me to claim that there is such an overwhelming amount of evidence supporting the entire conspiracy currently taking place that I can barely keep track of all of it insofar as it being nearly impossible for me to ever fully layout, and connect all of the many 'dots' that I maintain, and have connected in a multitude of ways. What is, has been, and continues to take place is completely surreal.

I filed a patent, worked hard to turn my idea into a reality, and was literally 'minding my own business' - for all of 'this' to end up being the result of my ambitious nature is something I will never fully come to terms with.

This will remain the case regardless of how many 'mental health' experts I visit with, and however many milligrams of antipsychotic drugs may possibly be forced into my body for the purpose of trying to prevent me from continuing to speak out and expose the **TRUTH.**

Thank you for your time.

Sincerely,

Matthew Guertin
Inventor / Founder / CEO
InfiniSet, Inc.

Exhibit A |  p. 16

**EXHIBIT APR-21 | p. 48**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 49 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Minneapolis, MN
US Patent 11,577,177 (Listed at the VERY top of Netflix US Patent 11,810,254)
MattGuertin.com
763-221-4540


Sent with Proton Mail secure email.

*Exhibit A |  p. 17*

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 50 of 110    [ source file ]    [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## RE: [External] Matthew Guertin / January 7th Court Date / Judge Recusal

From    Raissa Carpenter <Raissa.Carpenter@hennepin.us>

To      mattguertin<MattGuertin@protonmail.com>

CC      Emmett M Donnelly<Emmett.Donnelly@hennepin.us>

Date    Wednesday, January 8th, 2025 at 6:56 PM

Mr. Guertin,

Does April 17th at 8:45 a.m. work for a hearing date with Judge Quam?

This hearing will only occur if you are found competent to proceed. If you are found not competent, this hearing will get cancelled.

Sincerely,

Raissa R. Carpenter (she/her)

Assistant Public Defender - Office of the Hennepin County Public Defender

Location: 701 4th Avenue South, Suite 1400, Minneapolis, MN 55415

Contact: 612-348-9676    raissa.carpenter@hennepin.us

Exhibit A | p. 18

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 50**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**

EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 51 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## Upcoming Court Dates and Appointment

| | |
|---|---|
| From | Raissa Carpenter <Raissa.Carpenter@hennepin.us> |
| To | mattguertin<MattGuertin@protonmail.com> |
| CC | Emmett M Donnelly<Emmett.Donnelly@hennepin.us> |
| Date | Friday, January 10th, 2025 at 11:53 AM |

Mr. Guertin,

This is a reminder email of what we have scheduled for your case.

**February 13, 2025 at 2:00 p.m. –** You are coming to our office to meet with me and Mr. Donnelly. Come to the 14th floor of 701 4th Avenue South in downtown Minneapolis. You can walk us through this fraudulent discovery issue and we can talk about whether you want to contest your competency or agree to enter a finding of incompetency.

**March 5, 2025 at 10:30 a.m. –** You are scheduled for a contested competency hearing. This is an in-person court appearance at the Hennepin County Government Center. This is a hearing that we requested to argue that you are competent to proceed. This is an evidentiary hearing so we can present testimony and exhibits if we would like to.

**April 17, 2025 at 8:45 a.m. –** You are scheduled for a hearing with Judge Quam. This hearing will only occur if you are fount competent to proceed with your case. If you are not found competent to proceed with you case then this hearing will again get stricken and instead they will schedule a 6-month review hearing to check in on your competency.

Please let me know if you have any questions.

Sincerely,

Raissa R. Carpenter (she/her)

Assistant Public Defender - Office of the Hennepin County Public Defender

Location: 701 4th Avenue South, Suite 1400, Minneapolis, MN 55415

Contact: 612-348-9676    raissa.carpenter@hennepin.us

Exhibit A |  p. 19

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 51**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 52 of 110       [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## Re: Upcoming Court Dates and Appointment

From    mattguertin <MattGuertin@protonmail.com>

To      Raissa Carpenter<Raissa.Carpenter@hennepin.us>

CC      Emmett M Donnelly<Emmett.Donnelly@hennepin.us>,
        matthew.guertin.81<matthew.guertin.81@gmail.com>

Date    Monday, January 13th, 2025 at 10:42 AM

---

Good morning Raissa,

A few things -

1. I searched my inbox and I have never received an email from Emmett Donnelly as
   discussed over the phone on January 9th - meaning that I am unsure what date was
   corrected in the reply of his that was mentioned?

2. When we briefly discussed the entire discovery fraud issue I was told by you that when I
   come down there for our meeting that I could "take a look at the discovery you already
   have" and that this discovery "was on your computer" already.

3. **I would like to be provided ASAP with all of the discovery police photographs that
   you currently maintain for my case -** specifically all of the police photographs that were
   taken of my apartment on January 21, 2023.

4. I can swing down and pick these discovery photographs up any time - meaning that you
   could leave them with the secretary at the front desk, etc. If you do not have a spare USB
   flash drive, I can bring my own and they could be transferred to it. Whatever works.

5. I am wondering if you could please reply to this email with a few screenshots of all of the
   discovery photos insofar as the folder name, folder properties (total number of images, total
   size of folder/all images, file properties, etc) - basically something that could establish a
   documented record of the 'current state' of all of the discovery photographs you maintain for
   my case. I can then reply and confirm that I have received the exact same files, with the
   exact same properties once I retrieve them and have a chance to review them.

6. Being that you never filed a motion for discovery / 'demand or request for discovery' into my
   case, I am wondering if you could please tell me where the discovery photographs you
   currently maintain originated? Did Bruce Rivers forward my entire file to you and so the
   photographs are the same ones that he provided me with? Were the discovery photographs

Exhibit A |  p. 20

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 53 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

provided to you directly by the court? What is the source of their origination insofar as the chain of custody prior to you receiving them basically?

7. I would like to be provided with these photographs as soon as possible so that I have adequate time to review them **PRIOR** to our meeting, vs. simply reviewing them on a computer screen, etc. Additionally - since I KNOW there is an issue with fraudulent discovery photographs insofar as incomplete, mismatched sets, ai manipulation, cropping, etc. - being directly provided with all of the discovery photographs, as well as establishing an electronic email record of the 'current state' of the discovery photographs that you currently maintain will serve to aid in my criminal defense strategy moving forward.

8. If you could please hit 'reply all' so that I am also copied on my gmail address as well (matthew.guertin.81@gmail.com that I CC'd on this email) that will ensure that I am able to check this email address periodically throughout the day in order to ensure that I am able to drive downtown and retrieve the discovery photographs from your office as soon as they are ready.

9. I will have a spare USB flash drive with me in case you do not have one available (meaning you could just provide the digital file/folder containing the police photographs to the secretary as a file, and then she could transfer to my USB if that works) - although I am guessing that likely goes against established IT security protocols (or at least it should...ha)

Thank you very much for your attention to this matter,

Sincerely,

Matthew Guertin
Inventor / Founder / CEO
InfiniSet, Inc.
Minneapolis, MN
US Patent 11,577,177 (Listed at the VERY top of Netflix US Patent 11,810,254)
MattGuertin.com
763-221-4540

Sent with Proton Mail secure email.

Exhibit A |  p. 21

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 53**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133_Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File: 4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 54 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

## Re: Upcoming Court Dates and Appointment

| | |
|---|---|
| From | mattguertin <MattGuertin@protonmail.com> |
| To | Raissa Carpenter<Raissa.Carpenter@hennepin.us> |
| CC | Emmett M Donnelly<Emmett.Donnelly@hennepin.us>, matthew.guertin.81<matthew.guertin.81@gmail.com> |
| Date | Wednesday, January 14th, 2025 at 6:12 PM |

Hello,

I am still awaiting a reply in regards to establishing a 'current state' of the discovery photographs you currently maintain for my case, in addition to me being able to retrieve all of them as soon as possible so that I have adequate time to review them prior to our scheduled meeting.

Additionally, I am still unsure of what specific court date / meeting was changed insofar as the email reply from Emmett Donnelly that I was unable to locate in my email inbox.

With that said - my main reason for writing this email is based upon some additional preparation I would like to begin on my end, prior to our in person meeting, and upcoming court hearing.

What I would like to know is what the particular process / protocol is in regards to the proper submission of evidence exhibits prior to the 'contested competency' evidentiary hearing that is scheduled to take place - meaning that based upon my general understanding, and without doing any in depth research, I am of the understanding that prior to the hearing taking place it is required that the prosecution/State and the defense/Me are essentially required to exchange information insofar as 'what' exactly each of us plans on presenting at the hearing, what witnesses will be called, etc, etc.

So the specific court rules / established process / protocol that needs to take place in order for me to properly notify the prosecution/State of the specific evidence exhibits I plan on introducing during the hearing, as well as ensuring that I am able to know exactly what evidence exhibits and/or witnesses they plan on introducing during the hearing.

If you are able to simply point me to what specific court rules pertain to this topic I will be able to read up on it myself without issue. I just need to be sure that I am sourcing the correct court rules which correspond to the evidentiary hearing itself.

I am going to work on putting together the evidence exhibits I will present at the contested competency hearing which serve to very clearly establish my obvious 'competency'.

Exhibit A |  p. 22

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File: 4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 55 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Additionally, I am of the belief that the most simple, and straight-forward strategy of establishing my competency is for me to represent myself during the hearing - meaning that you guys would still be present in the court room obviously but serve as my stand-by counsel. At the very least I would like to be the one who introduces the facts of my case insofar as the specific charges, the reason for the hearing, and the presentation / arguments / relevance of the various evidence exhibits I will be presenting at my competency hearing.

This strategy would allow me to advocate on my own behalf in one of the most compelling, and straight-forward manners possible while still being able to avoid taking the stand as a witness - meaning I would also be depriving the State of an opportunity to cross examine me.

The effectiveness of this legal strategy is directly supported by the following Minnesota case law:

- **"A defendant who is competent to stand trial is competent to represent himself."**
  *State v. Sabahot*, A10-2174, p. 11 (Minn. App. Jan. 3, 2012)

- **"In particular, we note that at a hearing on March 31, 2010, appellant expressed himself articulately when he explained why he wanted to proceed to trial and what his trial strategy would be, including the witnesses he would call and exhibits he would propose."**
  *State v. Sabahot*, A10-2174, p. 10 (Minn. App. Jan. 3, 2012)

- **"A defendant is competent to stand trial if he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him."**
  *State v. Sabahot*, A10-2174, p. 8 (Minn. App. Jan. 3, 2012)

- **"The district court must specifically weigh all of the evidence presented, including any testimony from Thompson, and, as may be appropriate, make credibility findings."**
  *State v. Thompson*, 988 N.W.2d 149, 158 (Minn. App. 2023)

- **"Even if the court does not think it is a 'good idea' for a defendant to choose self-representation, it is not the court's role to insert counsel between an unwilling defendant and that defendant's right of self-representation."**
  *State v. Camacho*, 561 N.W.2d 160, 173 (Minn. 1997)

That is all.
Thanks for your time.

Exhibit A |  p. 23

**EXHIBIT APR-21 | p. 55**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 56 of 110      [ source file ]      [ .ots timestamp of source file ]

27-CR-23-1886

<div align="right">Filed in District Court
State of Minnesota
4/21/2025 7:48 AM</div>

Sincerely,

Matthew Guertin
Inventor / Founder / CEO
InfiniSet, Inc.
Minneapolis, MN
US Patent 11,577,177 (Listed at the VERY top of Netflix US Patent 11,810,254)
MattGuertin.com
763-221-4540

<div align="right">*Exhibit A |  p. 24*</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 57 of 110       [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

</div>

STATE OF MINNESOTA                              FOURTH JUDICIAL DISTRICT
COUNTY OF HENNEPIN                    PROBATE/MENTAL HEALTH DIVISION

---

State of Minnesota,
    Plaintiff.                    FINDINGS OF FACT, CONCLUSIONS OF LAW,
                                        AND ORDER REGARDING DEFENDANT'S
v.                                             COMPETENCY TO PROCEED

Matthew Guertin,
    Defendant.                                   27-CR-23-1886

---

       This matter came on before the undersigned judge on March 5, 2025, for an evidentiary hearing regarding Mr. Guertin's competency.  The hearing was held in-person at the Hennepin County Government Center in room C457.

- Assistant Hennepin County Attorney Mawerdi Hamid appeared for the State.
- Assistant Hennepin County Public Defenders Raissa Carpenter and Emmett Donnelly represented Mr. Guertin, who appeared out of custody.

       At the hearing, the Court took judicial notice of Dr. Katheryn Cranbrook's December 20, 2024, Examiner's Report without objection from the parties and heard testimony from Mr. Guertin.[1]

       The Court, having considered the matter, now makes the following:

<div align="center">

BACKGROUND

</div>

1.  Mr. Guertin is charged with the following:

- One count of Reckless Discharge of a Firearm within a Municipality (Felony) arising from an incident alleged to have occurred on January 21, 2023.

- Three counts of Receiving/Possessing a Firearm with no Serial Number (Felony) arising from an incident alleged to have occurred on January 21, 2023.

---

[1] Mr. Guertin uploaded several exhibits into MNCIS before the hearing.  During his testimony, Mr. Guertin referenced several of these exhibits.  During closing, the Defense informed the Court they would not be offering these exhibits outside of the testimony received at the hearing.

<div align="right">

Order
Page 1 of 4

</div>

<div align="right">

Exhibit B |  p. 1

</div>

<div align="right">

**EXHIBIT APR-21 | p. 57**

</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 58 of 110      [ source file ]      [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">
Filed in District Court
State of Minnesota
4/21/2025 7:48 AM
</div>

2.    On October 15, 2024, Judge Shereen Askalani ordered Mr. Guertin to undergo an Evaluation for Competency to Proceed pursuant to Rule 20.01 of the Minnesota Rules of Criminal Procedure to determine if he is competent to proceed to trial.

3.    Mr. Guertin has previously been found incompetent to proceed on July 13, 2023, and January 16, 2024.

4.    Dr. Katheryn Cranbrook was assigned to evaluate Mr. Guertin.  In her December 20, 2024, Report, Dr. Cranbrook opined Mr. Guertin "declined to participate in [the] evaluation due to ongoing symptoms of mental illness" and "defendant's prognosis for attaining the capacity for competent participation in the legal process appears poor."[2]

<div align="center">FINDINGS OF FACT</div>

1.    The Court's findings are based on the information and opinions provided by Dr. Cranbrook in her Rule 20.01 Evaluation Report ("Report") dated December 20, 2024, and on the testimony of Mr. Guertin at the hearing.

2.    Dr. Katheryn Cranbrook filed her report with this Court on December 20, 2024.  In her report, Dr. Cranbrook diagnosed Mr. Guertin with Unspecified Schizophrenia Spectrum and Other Psychotic Disorder based on available records.[3]  Dr. Cranbrook reported Mr. Guertin failed to cooperate with an examination despite several attempts.[4]  Dr. Cranbook opined Mr. Guertin "has a history of psychosis characterized by prominent delusional thinking, as well as impaired thought processes."[5]  Furthermore, Dr. Cranbrook reported Mr. Guertin has recently demonstrated symptoms of psychosis during previous competence evaluations which "has persisted in his recent communications and allegations."[6]  Dr. Cranbrook has opined these symptoms "have been noted to compromise his capacity to rationally engage in the evaluation and effectively communicate."[7]  Dr. Cranbrook further notes Mr. Guertin's paranoid beliefs and persistent allegations of violations of his constitutional rights are consistent with the "impaired thought processes that have previously rendered him incompetent to proceed."[8]  Dr. Cranbrook ultimately opined Mr. Guertin "declined to participate in [the] evaluation due to ongoing symptoms of mental illness" and "defendant's prognosis for attaining the capacity for competent participation in the legal process appears poor."[9]  The Court finds Dr. Cranbrook's report to be generally reliable based upon his presentation, or lack thereof.

---

[2] Report, p.4.
[3] *Id*. at 3.
[4] *Id*.
[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] *Id*. at 4.
[9] *Id*.

<div align="right">
Order
Page 2 of 4
</div>

<div align="right">Exhibit B | p. 2</div>

<div align="right">**EXHIBIT APR-21 | p. 58**</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 59 of 110      [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

3.      Mr. Guertin testified at the hearing in opposition to Dr. Cranbrook's report and a finding of incompetency.  Mr. Guertin testified he has had three Rule 20 exams which have determined he is incompetent.  Mr. Guertin also testified about what he believes to have been manipulated discovery materials in his previous civil commitment case and a motion he filed in that case seeking "authentic" discovery materials.  Mr. Guertin provided extensive testimony at the hearing challenging Dr. Cranbrook's opinion he is suffering from mental illness. Mr. Guertin testified Netflix and Microsoft were involved in the theft of his patent, and these beliefs were not based in delusions.  He testified about his extensive professional background to support his assertion of the corporate wrongdoing toward him.  While the Court has no basis upon which it can discount Mr. Guertin's apparently credible testimony about his past professional career, he did attempt to inflate his past work by ascribing an "engineering" label to his work, although he acknowledged he was not educated or certified/licensed as an engineer.  Still, he appears to have extensive experience in his chosen work.  The pride he has in his past work was discussed at great length in an apparent attempt to show his past evaluators improperly did not believe the reported work history was valid.  The Court believes his criticism of the past diagnoses misses the mark.  While his work history may be beyond reproach, his claims that Netflix and Microsoft have engaged in theft of intellectual property does not appear to have support.  His beliefs in that regard appear to be fantastical and paranoid.

4.      Regarding the current charges against him, however, he is more realistic.  He said he is charged with reckless discharge of a firearm in a municipality and three counts of possession of a gun without a serial number.  He understands how a case is presented in criminal court, a criminal case might not go to trial, he may have a chance to argue a case in front of a jury, and he has a right to call witnesses.  Mr. Guertin testified the prosecution is against him.  He said he would like a resolution to his case.  Mr. Guertin testified he has conducted research on competency-related case law and Minnesota Court rules and has created custom Chat GPT bots which can help him analyze various aspects of his case.  Mr. Guertin also testified if he were to be found competent, he would not necessarily proceed to trial without an attorney since he has felony charges.  He understands the nature of the charges against him.  He understands the roles of the many parties.  He understands the severity of the allegations against him.  He understands the benefits of having counsel.  He understands the nature of a trial, and the plea bargain process.

5.      While this Court finds Mr. Guertin to be unsupported in his claims of corporate fraud against him and the foundation for the earlier incompetency findings against him, Mr. Guertin has demonstrated an understanding of Court processes and the charges he is facing, as well as the ability to consult with his counsel about his defense.  He may have his own thoughts about how best to defend his case—whether he can rationally consult with counsel is the crux of any incompetency determination involving Mr. Guertin—but he has said he recognizes the value of having legal representation.  He will work with his legal team, and he understands there are some decisions he gets to make, while there are other decisions reserved for his counsel.  Ultimately, the Court finds Mr. Guertin is competent.

<div align="right">Order<br>Page 3 of 4</div>

<div align="right">Exhibit B |  p. 3</div>

---

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 60 of 110       [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">
Filed in District Court<br>
State of Minnesota<br>
4/21/2025 7:48 AM
</div>

### CONCLUSIONS OF LAW

1.      "A defendant has a due process right not to be tried or convicted of a criminal charge if he or she is legally incompetent."[10]  Rule 20.01 of the Minnesota Rules of Criminal Procedure requires the court to find a defendant not competent unless the greater weight of the evidence shows the defendant is competent to proceed.[11]  A defendant is not competent if, due to mental illness or cognitive impairment, he is unable to "(a) rationally consult with counsel or (b) understand the proceedings or participate in the defense."[12]  The determination of whether a defendant is able to rationally consult with the defense attorney or understand and participate in the proceedings turns on the facts of each particular case.

2.      Foremost, throughout the criminal proceedings, the trial court must be mindful of its protective duty to ensure a defendant is competent to proceed.[13]

3.      Mr. Guertin is contesting the report prepared by Dr. Cranbrook which opines his declination to participate in an evaluation was due to his symptoms of mental illness and his prognosis for obtaining legal competency appears poor.  While Dr. Cranbrook does not provide a conclusive opinion regarding Mr. Guertin's competency, Mr. Guertin bears the burden to prove, by a preponderance of evidence, he is competent.[14]

6.      Here, Mr. Guertin has met that burden.  He demonstrated in testimony he understands the charges, role of counsel and the Court, and the proceedings.  Based on the record before the Court, the Court ultimately finds Dr. Cranbrook's conclusion that Mr. Guertin is suffering from a mental illness credible.  However, Mr. Guertin has demonstrated an understanding of Court processes and the charges he is facing, as well as the ability to consult with his counsel about his defense.

### ORDER

Matthew Guertin is **COMPETENT** to proceed to trial.

BY THE COURT:

_____

April 3, 2025
Date

_____
William H. Koch, Judge of District Court

---

[10] *Bonga v. State*, 797 N.W.2d 712, 718 (Minn. 2011)
[11] Minnesota Rules of Criminal Procedure Rule 20.01, subdivision 5(c).
[12] *Id.*, subdivision 2.
[13] *See State v. Bauer*, 245 N.W.2d 848, 852 (Minn. 1976) (ruling the court should have conducted further inquiry into the important matter of defendant's competency).
[14] *See State v. Curtis*, 921 N.W.2d 342, 348 (Minn. 2018); see also *State v. Thompson*, 988 N.W.2d 149, 154 ("when a defendant assert their own competence in a contested competency proceeding under Rule 20.02, the defendant bears the burden to prove competence") (Minn. App. 2023).

<div align="right">
Order<br>
Page 4 of 4
</div>

Exhibit B | p. 4

EXHIBIT APR-21 | p. 60

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 61 of 110      [ source file ]      [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

**STATE OF MINNESOTA**                           **DISTRICT COURT**
**COUNTY OF HENNEPIN**                  **FOURTH JUDICIAL DISTRICT**

---

State of Minnesota,                          |  Court File No. : 27-CR-23-1886

                              Plaintiff,     |
                                             |  **DEFENDANT'S MOTION TO**
            vs.                              |  **DISMISS ALL CHARGES**
                                             |  **WITH PREJUDICE**
Matthew David Guertin,                       |
                                             |
                              Defendant.     |  Judicial Officer: Sarah Hudelston

---

TO:   THE HONORABLE SARAH HUDELSTON, JUDGE OF DISTRICT COURT;
      MARY  F.  MORIARTY,  HENNEPIN  COUNTY  ATTORNEY;  AND
      MAWERDI HAMID, ASSISTANT HENNEPIN COUNTY ATTORNEY


## I.  INTRODUCTION

        Defendant Matthew David Guertin, proceeding pro se for this motion only, while also represented by defense counsel, respectfully moves this Court to dismiss all charges with prejudice due to pervasive fraud, prosecutorial misconduct, and constitutional violations that have corrupted every stage of these proceedings. What began as routine criminal charges has metastasized into a coordinated campaign - spearheaded by the prosecution, aided by officers of the court, and shielded by falsified psychiatric evaluations - designed to portray Mr. Guertin as delusional and incompetent. This so-called "conspiracy of commitment" rests on manipulated discovery materials, ghostwritten Rule 20 evaluations, falsified court records, and even misconduct by court-appointed, and privately retained defense counsel. The resulting legal process is not merely flawed; it is structurally broken and fundamentally offensive to the principles of due process.

Specifically, the prosecution and those acting in concert with it have:

   1. Orchestrated fraudulent mental health evaluations under Minn. R. Crim. P. 20, authored by unauthorized and conflicted individuals, not independent experts;

1

Exhibit C |  p. 1

**EXHIBIT APR-21 | p. 61**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 62 of 110        [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

2. Manipulated digital discovery evidence, including tampered file metadata and AI-generated images, to fabricate inculpatory material while suppressing exculpatory facts;

3. Falsified official court records, including backdating and undisclosed alterations of filings, to obscure misconduct; and

4. Engaged in direct efforts to silence Mr. Guertin, including suppression of evidence, manipulation of the docket, and psychological warfare masquerading as psychiatric diagnosis.

The so-called forensic evaluations contain demonstrable falsehoods and omit critical facts, all in service of manufacturing the false impression that Mr. Guertin suffers from delusions. In reality, his claims - ranging from intellectual property theft to illegal surveillance - are amply documented and independently verifiable. Forensic analysis now confirms that crime-scene photographs were digitally altered to remove or obscure exculpatory elements (*see Index 122, 123, 124*), including an image of an open laptop displaying the face of Mr. Guertin's self-professed "former CIA" welder (*see Index 30, pp. 60-66*) - a detail the State, in likely collusion with external actors directly involved in the theft of the defendant's intellectual property, sought to erase from the evidentiary record entirely.

This Court is in possession of documents and filings that substantially corroborate Mr. Guertin's whistleblower claims, including a U.S. patent issued to Netflix (U.S. Patent No. 11,810,254[1]) that directly references and replicates (*see Index 125*) Mr. Guertin's own patented invention (U.S. Patent No. 11,577,177[2]). Yet instead of protecting his rights, the judicial system has sought to suppress them - using psychiatry as a weapon to delegitimize speech, silence dissent, and justify illegal civil commitment.

The Constitution guarantees that no defendant may be prosecuted while legally incompetent (*State v. Curtis*, 921 N.W.2d 342 (Minn. 2018)), and no conviction may rest upon false evidence deliberately orchestrated by the State (*Mooney v. Holohan*, 294 U.S. 103 (1935)). But for over two years, Mr. Guertin's life, liberty, and legal autonomy have been held hostage under a veil of manufactured mental illness and fraudulent evidence. This is not justice - it is institutional gaslighting on a scale so absurd it borders on the surreal.

---

1   https://patentimages.storage.googleapis.com/45/b8/52/1d18252bded1d8/US11810254.pdf
2   https://patentimages.storage.googleapis.com/10/a8/56/6e9cdf0d67cd6c/US11577177B2.pdf

2

Exhibit C | p. 2

EXHIBIT APR-21 | p. 62

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 63 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">
Filed in District Court
State of Minnesota
4/21/2025 7:48 AM
</div>

This Motion presents the Court with a structured summary of the factual record and newly uncovered exhibits. Together, they demonstrate a level of misconduct that cannot be ignored:

- Court-appointed experts fabricated or omitted critical findings;

- Evidence was digitally manipulated to support a psychiatric narrative;

- Even Mr. Guertin's own defense counsel engaged in deception and abdicated their duty of loyalty;

- The Court's docket contains anomalies consistent with secretive alteration.

The cumulative impact of these abuses - each independently sufficient to warrant dismissal - renders this case a textbook example of structural error and conscience-shocking misconduct. Mr. Guertin does not raise these issues lightly. He brings forward the receipts: emails [3], patents, forensic reports [4], metadata logs, psychiatric transcripts [5], and court filings - all of which prove, beyond any good-faith dispute, that this prosecution is built on a lie.

Accordingly, Mr. Guertin moves this Court to dismiss all four pending felony charges with prejudice (one count under Minn. Stat. § 609.66, subd. 1a(a)(3), and three counts under Minn. Stat. § 609.667(3)), and to convene evidentiary hearings to determine the full extent of the fraud, identify those responsible, and consider referral for criminal investigation. No lesser remedy can restore the integrity of these proceedings or cure the profound prejudice already inflicted on the defendant.

## II.   FACTUAL BACKGROUND

Mr. Guertin is charged in this case with four felony counts arising from an incident on January 21, 2023, in which he allegedly discharged a firearm from inside his Minnetonka residence and was found in possession of several firearms lacking serial numbers. Shortly after charges were filed, the Court ordered a Rule 20.01 evaluation of Mr. Guertin's competency to proceed, as permitted when the defendant's mental fitness is in doubt. Dr. Jill E. Rogstad, Ph.D., LP, ABPP, a senior clinical forensic psychologist for the Fourth Judicial District, was assigned to evaluate Mr. Guertin and issue a report to the Court. On March 10, 2023, Dr. Rogstad filed a

---

3   All emails between Guertin and: IP, and defense counsel; court - https://tinyurl.com/4hyurs5z

4   https://matt1up.substack.com/api/v1/file/b1cbf1c5-aebe-4df1-84a6-d4939e823a0a.pdf

5   https://matt1up.substack.com/api/v1/file/7a1982ce-9a69-4e5c-8659-b0dd04d71a0e.pdf

Exhibit C |  p. 3

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 63**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 64 of 110         [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

written report opining that Mr. Guertin was *not competent* to stand trial, diagnosing him with an unspecified psychotic disorder and concluding that "Mr. Guertin's delusional beliefs" about being surveilled and having his intellectual property stolen rendered him unable to rationally participate in his defense. Based on this report, Mr. Guertin was found incompetent in 2023.

Over the next two years, Mr. Guertin contested that finding and consistently maintained that he was competent and that his claims of being targeted were truthful, not delusional. In March 2025, after further proceedings, this Court ultimately found Mr. Guertin *competent* to proceed (while still, perplexingly, referencing findings of mental illness) (*see Index 127*). Trial has not yet occurred. Mr. Guertin is now before the Court having uncovered substantial evidence of misconduct that infected the prior competency process and the State's handling of discovery. The following background details that misconduct, which forms the basis for this motion to dismiss.

### III.   FRAUDULENT RULE 20 EVALUATION'S AND WEAPONIZED PSYCHIATRY

From the outset, the State steered this prosecution away from adjudicating the actual criminal charges and into a parallel track of psychiatric manipulation - weaponizing Rule 20 mental health evaluations to suppress Mr. Guertin's liberty, discredit his defense, and procedurally paralyze him under a false diagnosis. What follows is not merely the product of bad medicine - it is the execution of a coordinated legal strategy to disable a whistleblower through manufactured incompetence.

### A   |   The Rogstad Report: Ghostwritten, Biased, and Deliberately Misleading

The first Rule 20 evaluation, issued by Dr. Jill Rogstad on March 10, 2023, is a cornerstone of the State's psychiatric fiction. However, even the metadata attached to the PDF (*see Index 28, p. 101*) report reveals fatal irregularities: the document was not authored by Dr. Rogstad at all - it was authored by "GuzmanC," later identified as Chela Guzman-Wiegert, an administrative figure with no clinical authority or psychological qualifications. The fact that a county administrator ghostwrote or materially edited a forensic evaluation destined to determine Mr. Guertin's legal capacity is an institutional scandal. It undermines the report's validity entirely and raises the specter of fraud on the court.

4

Exhibit C |  p. 4

EXHIBIT APR-21 | p. 64

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 65 of 110        [ source file ]       [ .ots timestamp of source file ]

27-CR-23-1886

**B    |    The Diagnostic Inversion: When Verifiable Evidence Becomes "Delusion"**

Dr. Rogstad's conclusions are internally contradictory and self-discrediting. Her own report states that Mr. Guertin: (*see Index 28, pp. 116-125*)

- "expressed awareness of the nature of the current allegations"

- "spoke cogently about various pleas and the nature of legal proceedings"

- "articulated a defense strategy" and "knew his right not to testify"

These statements directly satisfy the standard for competency under *Dusky v. United States*, 362 U.S. 402 (1960), and *State v. Curtis*, 921 N.W.2d 342 (Minn. 2018) - yet Rogstad dismissed them entirely. Instead, she fixated on Mr. Guertin's belief that his patented invention had been stolen and weaponized against him, labeling it a "persecutory delusion." Crucially, she admitted:

> *"I lack the specialized training in this field to analyze the defendant's reported invention... Nevertheless, even if the technological aspects of the defendant's statements prove true… his views remain consistent with delusions."*

This amounts to a pre-judgment of insanity, regardless of whether the claims are true - which is precisely what courts have long warned against in the misuse of psychiatry (*Moore v. Dempsey*, 261 U.S. 86 (1923)).

Even worse, Rogstad deliberately excluded exculpatory evidence: namely, the Minnetonka Police Report #23-000151 (*see Index 28, p. 78-80*), which Mr. Guertin submitted to her. That report, filed nine days prior to his arrest, documents that Guertin had already gone to law enforcement to report the exact claims of surveillance and intellectual property theft that she later labeled "delusional." A police officer spent 45 minutes interviewing him and did not refer him for a psychiatric hold, but instead advised him to preserve evidence and contact the FBI. Rogstad acknowledged reviewing this report in her appendix - yet omitted it entirely from her analysis, falsely framing Guertin's references to the "Minnetonka Police", and "FBI" as nonsensical. This is textbook suppression of exculpatory material - a *Brady*-style violation committed under the guise of mental health assessment.

5

Exhibit C |  p. 5

EXHIBIT APR-21 | p. 65

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 66 of 110          [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

### C   |   The Emails: Unassailable Proof of Misconduct and Confirmation Bias

What the record now shows - through actual email correspondence with Dr. Rogstad[6] - is that Mr. Guertin sent detailed, articulate, and professionally written messages in advance of his evaluation. He provided:

- Technical descriptions of his patent and engineering process

- Screenshots, timeline evidence, and reference links

- Reasoned concerns about government surveillance and stolen intellectual property

- Legitimate procedural questions regarding HIPAA, consent, and the right to record the session

Rogstad dismissed these well-reasoned inquiries as "evidence of disorganized thinking." When confronted with factual data, she responded by cutting off communication and later pathologized the very same evidence she refused to engage with. These emails, if ever challenged, can be authenticated and forwarded directly to the Court - making them irrefutable evidence that Guertin was lucid, legally engaged, and rational throughout the process. This is not medicine. It is the weaponization of psychiatry as statecraft.

### D   |   Judicial Gaslighting: When Evidence Becomes the Symptom

The Court's July 13, 2023 "Order Regarding Competency to Proceed" (*see Index 19*) is perhaps the most revealing document in the entire proceeding - not for what it proves about Mr. Guertin's mental health, but for what it admits about the State's priorities.

**The order acknowledges that Mr. Guertin is:**

- "well-dressed"

- "intelligent and passionate about his work with technology"

- able to "understand the nature of his charges"

- able to "discuss possible defenses with his attorney"

- and has prior experience with the criminal court process

---

6    ALL Email exchanges between Guertin and Dr. Jill Rogstad - https://tinyurl.com/y9srfxxe

6

<div align="right" style="color:red">Exhibit C  |  p. 6</div>

<div align="right" style="color:red">**EXHIBIT APR-21 | p. 66**</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 67 of 110        [ source file ]       [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Yet, despite this mountain of evidence supporting competence, the Court reaches a contradictory conclusion - based not on Mr. Guertin's behavior in the courtroom, but on the *content* of his defense itself.

**As the Order states:**

> *"He may understand the factual components of criminal proceedings, but it is evident to the court that he is unable to apply this factual knowledge in his defense."*

Why?

Because he insisted on presenting *evidence.*

Because he refused to abandon claims involving surveillance, patent theft, and digital intrusion - claims that were later proven valid through patent office filings, email chains, expert analysis, and digital forensics.

**The Court admits as much:**

> *"When Mr. Guertin spoke about his delusional beliefs, <u>he indicated he would present evidence supporting these beliefs.</u>"*

Rather than assess the truth or admissibility of that evidence, the Court simply labels it delusional and makes a circular argument: *Because he believes he can prove these things, he must be mentally ill.*

This inversion of logic is not a clinical determination - it is bureaucratic gaslighting, and it renders the Rule 20 process a tool of narrative control.

Worse, it compounds an already egregious ethical breach. The very first evaluator in Mr. Guertin's case - Dr. Jill Rogstad - excluded his evidence entirely from her analysis, then used his reaction to that exclusion to label him "delusional." The Court now follows suit, declaring Mr. Guertin incompetent not because he cannot participate in his defense, but because he insists on participating - on bringing evidence, on naming names, on refusing to accept the false narrative built around him.

This is not a finding of incompetency. This is the criminalization of dissent.

7

Exhibit C |  p. 7

EXHIBIT APR-21 | p. 67

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 68 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

<div align="right">
Filed in District Court
State of Minnesota
4/21/2025 7:48 AM
</div>

**As the Order states:**

> *"The court observed Mr. Guertin testify, during which his answers often wandered towards the themes of technology, patents, and competitors."*

But this is not "wandering." This *is* the defense. It is the context, motive, and rationale behind every aspect of the case against him. To pathologize his insistence on telling that story is not an exercise in justice. It is the suppression of truth masquerading as psychiatric concern.

If this order stands, the precedent it sets is chilling:

- Evidence becomes delusion.
- Defending oneself becomes incompetence.
- The truth becomes a symptom.

This is not mental health law. This is the state's attempt to erase a defendant through administrative force.

It is judicial suppression, not a medical diagnosis - and the Court now has the evidence before it to prove just how deep the deception runs.

**E    |    The Milz Evaluation: Video Evidence Rewritten by Bureaucracy**

The second Rule 20 exam, conducted via Zoom on January 3, 2024, by Dr. Adam Milz, marked a turning point in the State's fabrication campaign. Unlike the first evaluation by Dr. Rogstad, this meeting was recorded (unbenownst to Dr. Adam Milz at the time) creating an immutable piece of forensic evidence. That video recording, which Guertin actually made public by entering it as '*Exhibit AB*' into the record of his Federal civil rights lawsuit[7], in which Dr. Adam Milz was named as a defendant, depicts Mr. Guertin calmly, cogently, and methodically explaining his legal situation, refuting earlier false claims, and demonstrating superior legal understanding.

---

7    https://www.courtlistener.com/docket/68925331/guertin-v-hennepin-county/

8

Exhibit C |  p. 8

EXHIBIT APR-21 | p. 68

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 69 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

### Direct Contradictions Between Milz's Report and the Video Transcript

**Calm, Controlled Behavior Refuted Diagnosis of Mania**:

- The transcript[8] spans over 80 minutes, with Guertin speaking at a normal pace, displaying clear, methodical thinking throughout. There is no evidence of pressured speech, racing thoughts, or digressions that would indicate mania.

- Milz's report falsely claims Guertin exhibited "pressured speech" and "perseveration," none of which appear in the actual transcript.

**Clear Legal Acumen and Procedural Awareness**:

- Guertin demonstrates deep knowledge of legal rights, quoting Rule 20, citing Miranda protections, due process, and outlining the timeline of his case accurately.

- He references filing motions, outlines the mechanics of evidence review, and discusses the difference between competency determinations vs. civil commitments.

- Milz characterizes this precision as a "delusional belief in his own legal competence," despite it being demonstrably true and supported by court filings.

**Refutation of the Adderall Narrative from Rogstad**:

- Guertin directly refutes Dr. Rogstad's suggestion of Adderall misuse, explaining during the Milz interview that her claim was the result of a misleading question asked at the very end of their meeting, without context or follow-up.

- He clearly states: "That was one of the final things she asked me, and I told her I had to take an extra one that night because I worked a full overnight set build at Coachella."

- He then details the situation: After the Week 1 performance at Coachella, a critical set piece he designed and engineered[9] for Bad Bunny's mainstage show was accidentally damaged by a forklift. Guertin drove from Los Angles last minute, and arrived on-site around 10 PM to repair and completely rebuild the centerpiece element - overnight - before the next day's 5:00 PM showtime.

- This wasn't recreational use. It was the decision of a professional operating under extreme time constraints at one of the most high-stakes live events in the world. The narrative that his account represents substance abuse is not just misleading - it's absurd. It erases the reality that Guertin's "extra dose" was taken during a literal do-or-die engineering emergency at the top of the entertainment industry.

---

8    2nd Rule 20 Exam Meeting Transcript Text - https://tinyurl.com/37mpsa6u

9    https://mattguertin.com/portfolio/badbunnyeye/

Exhibit C |  p. 9

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**EXHIBIT APR-21 | p. 69**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 70 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

- Milz ignored all of this context entirely and perpetuated the same distorted claim as Rogstad - reframing a one-time, clearly explained, performance-critical use of prescribed medication as an indicator of ongoing instability or addiction, which was never supported by any evidence, history, or observed behavior.

**Repeated Direct Refutations of Rogstad's Claims**:

- Guertin states that Rogstad's evaluation included numerous falsehoods, including claims of psychosis, delusions, and the idea that he could not understand court proceedings.

- He clearly articulates his belief that her report "was designed to make him look crazy," and points out specific errors, including statements about evidence Guertin shared that wasn't included within the context of the evaluation.

**Technical Expertise On Full Display**:

- Guertin references his TouchDesigner[10] programming work[11], flying business class from Saudi Arabia[12], and describes being part of major immersive productions involving global brands.[13]

- He describes patent filings, image metadata analysis (*see Index 29, p. 14*), and secure PDF construction to protect digital chain of custody.

- These statements establish his credibility as a technologist and inventor - attributes ignored entirely by Milz.

**Misuse of "Delusion" Label for Verifiable Events**:

- Guertin provides detailed, accurate descriptions of government agency interactions (*see Index 28, p. 161-172*), LinkedIn surveillance alerts (*see Index 30, p. 53-59*), and patent filings that are fully supported by records. (*see Index 28, p. 134-158*)

- Milz summarily labels these as "paranoid delusions," despite their objective verifiability.

**No Suicidal Ideation or Harm to Others**:

- Guertin explicitly says multiple times during the interview that he has never harmed himself or others, nor considered suicide. He states: *"I have never attempted, considered, or even thought about suicide, ever."*

- Milz's report states he has a "history of threatening to harm himself" - a fabrication. (*see Exh. S, Index 10*)

---

10  https://derivative.ca/community-post/matt-guertins-epic-never-ending-oculus-rift-kinect-touchdesigner-3d-project/60736
11  https://mattguertin.com/portfolio/bluemoon2016/
12  https://mattguertin.com/portfolio/falcon/
13  https://mattguertin.com/portfolio/ultra/

10

<div align="right" style="color:red">Exhibit C | p. 10</div>

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

<div align="right" style="color:red">EXHIBIT APR-21 | p. 70</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 71 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

**Obvious Medical Ethics Breach**:

- Milz makes recommendations for civil commitment and antipsychotic medication, despite:

  - No observed psychosis

  - Full orientation

  - Intact memory

  - Legal understanding and contextual reasoning

- There is no evidence-based justification for such conclusions.

**Suppression of Objective Evidence**:

- Guertin repeatedly references emails, attachments, metadata, PDF files, and patent filings that he sent Milz before the interview. (*see Index 29, p. 36-40*) These are never acknowledged in the final report.

- The report treats these communications as further evidence of "delusion," despite being authentic court exhibits and publicly accessible records.

This was not a medical misdiagnosis. It was deliberate falsification under color of clinical authority - an abuse of psychiatric power to serve judicial objectives. The Rule 20 process was not used to assess Mr. Guertin's mental fitness. **It was weaponized to suppress a credible, inconvenient defendant whose only 'crime' was exposing institutional misconduct and inventing something too valuable to ignore.**

This second evaluation, more than any other, reveals exactly what happens when psychiatry is hijacked by state actors. The more Mr. Guertin demonstrated his legal competence, the more his evaluators labeled it as pathology. The more precise his procedural knowledge, the more dangerous he became. The more accurate his timeline of events, the more urgently they sought to medicate and detain him. Logic became delusion. Evidence became paranoia. Truth became threat.

Finally, and perhaps most damningly, Dr. Milz's January 11, 2024 report was deliberately withheld from Mr. Guertin for over seven months - despite his repeated and increasingly desperate attempts to obtain it through every channel available. Mr. Guertin submitted multiple formal requests to court-appointed counsel, pro se filings into both his criminal (*see Index 36*),

11

Exhibit C |  p. 11

EXHIBIT APR-21 | p. 71

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 72 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

and civil commitment (*see Index 37, 43*) cases, and even cited Rule 26 of the Minnesota General Rules of Practice regarding access to evaluation materials. Yet all efforts were stonewalled.

It was not until Mr. Guertin filed his federal civil rights lawsuit on July 8, 2024 - a complaint that directly challenged the coordinated conspiracy behind his wrongful prosecution and the weaponization of psychiatric evaluations - that the long-withheld report was finally disclosed. Only after Bruce Rivers was explicitly named as a defendant in that lawsuit, and seemingly under pressure from the escalating federal litigation, did Mr. Guertin receive a copy of the Rule 20 report on July 16, 2024 - a document that had been completed more than seven months earlier, on January 11, 2024.

That it took a federal lawsuit filed by a supposedly psychotic and incompetent defendant to force the production of a report central to his own case is not just procedurally unacceptable - it is evidence of knowing suppression. The concealment makes sense only if those responsible knew the report would not withstand scrutiny - especially when placed side-by-side with the video recording of the interview itself. The delay was strategic, malicious, and unconstitutional. It is the clearest possible signal that the psychiatric process had ceased to be forensic and had become purely tactical - a tool to deprive Mr. Guertin of his liberty, not assess his capacity.

In totality, the Milz evaluation represents a structural failure of forensic psychiatry in the justice system. The recording disproves the diagnosis. The transcript refutes the narrative. The emails and patents back up the defendant's story. Yet the official record still reflects a lie.

Such conduct is not merely improper - it is unconstitutional. Courts have held that fabricated mental health findings that prevent a defendant from accessing the trial process violate fundamental rights (see *Jackson v. Indiana*, 406 U.S. 715 (1972), and *Moore v. Dempsey*, 261 U.S. 86 (1923)). The falsehoods authored by Milz, under the authority of Rule 20, are precisely the kind of misconduct that undermines the legitimacy of judicial proceedings and must result in dismissal.

### F    |    The "Conspiracy of Commitment": A Weaponized Psychiatric Narrative

Mr. Guertin's case does not reflect a good-faith judicial inquiry into mental fitness - it reveals a coordinated *Conspiracy of Commitment*: a multi-actor strategy to suppress his litigation, discredit his credibility, and eliminate his ability to expose institutional misconduct by portraying him as mentally incompetent. **This was not treatment. This was entrapment.**

12

*Exhibit C |  p. 12*

**EXHIBIT APR-21 | p. 72**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 73 of 110          [ source file ]          [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">
Filed in District Court
State of Minnesota
4/21/2025 7:48 AM
</div>

The full scope of this conspiracy is laid out in '*Exhibit P*' of Mr. Guertin's federal civil rights complaint. What that exhibit documents - down to the day and hour - is a meticulously orchestrated deception culminating in the ambush commitment hearing of February 1, 2024. The events unfolded as follows:

### January 15, 2024

- Mr. Guertin contacts his attorney Bruce Rivers to inquire about the hearing that had long been scheduled for the following day. At 6:26pm Bruce Rivers tells Guertin via text message there is "No court" for his scheduled 1:30 PM hearing the next day. (*see Index 30, p. 35, 83 [Texts-27]*)

### January 16, 2024

- A 'Waiver of Appearance' is entered into the record of Guertin's criminal case at Index #24 - this is followed up with the submission of an entry which states "Found Incompetent - Judicial Officer: Mercurio, Danielle" which contains no Index #, with neither of these entries having a corresponding PDF document available in the case docket.

- At 8:27am a court order is signed that states:

  - "Prior to the hearing, the parties agreed to a finding of incompetency entered administratively." (*see Index 25, p. 1*)

  - "the defendant may be committed directly to an appropriate safe and secure facility"

  - "The head of the treatment facility shall submit a written report addressing the Defendant's competency to proceed in the criminal case when the defendant has attained competency, or at least every six months."

  - "The criminal conditions of release remain in effect until placement at an appropriate facility can occur." (*see Index 25, Id. 9, 10, 12*)

- At 4:19 PM a 'Notice of Remote Zoom Hearing' is submitted into Guertin's case at Index #26. This notice is for his next review hearing that is six months away - on July 16, 2024.

- This 'Notice of Remote Hearing' being submitted for a date 6 months away, while at the same time the January 16th Court Order is being intentionally withheld are both for the purpose of deceiving Guertin had he had looked at his court case files on January 16th – the day the hearing he had been told there was now "No court" for, was originally scheduled to take place. (*see Index 26*)

  It would cause him to believe he had 'no worries' for the next six months

13

<div align="right" style="color:red">Exhibit C | p. 13</div>

<div align="right" style="color:red">**EXHIBIT APR-21 | p. 73**</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 74 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

### January 17, 2024

- At 7:29 AM the court order that was prepared, and signed during the early morning hours of January 16, the previous day, is officially submitted into the record of Guertin's criminal case. Once again things begin moving forward before the court is even open – 7:29 AM in the morning. (*see Index 25*)

- The new 'January 17 Court Order' appears in the timeline of Guertin's criminal case at Index #25 - which is logically, and sequentially OUT OF ORDER

- This is due to the fact that Index #25 appears AFTER the 'Notice of Remote Zoom Hearing' which is filed as Index #26

- This delay was not clerical - it was strategic. Why? Because the order contained language that authorized Mr. Guertin to be detained *on the spot* at his next hearing - should he be deemed "mentally ill, developmentally disabled, chemically dependent, or mentally ill and dangerous to the public" (*see Index 25, Id. 9*) Yet he was never given an opportunity to see or challenge the basis of that order. The Rule 20 report by Milz - the key document which would determine the courts decision - remained withheld.

- Following the intentional withholding of the court order from the previous day, and its early morning submission into Guertin's criminal case record, all further court actions are 'shifted' over to Guertin's civil case proceedings (*27-MH-PR-23-815*) where a sequential series of rapid events, and filings take place as part of a 'surprise' February 1, 2024 civil commitment hearing which Guertin is completely unaware of.

### January 26, 2024

- Guertin suddenly discovers the surprise civil commitment hearing scheduled for February 1 after reviewing his case files online. Notably the unexpected hearing is scheduled for Thursday of the following week – less than a week away.

- After Guertin reads the January 16-17 Court Order he becomes completely freaked out, as the language used is very straight forward based on his interpretation. What Guertin reads in the order directly implies that he is going to be be detained at court and committed to a "safe and secure facility" where he will be checked up on "at least every six months" until he is "restored to competency".

- Guertin instantly begins seeking the provision of the Rule 20.01 exam report that determined he was 'incompetent to stand trial' as he realizes that the outcome of the surprise court hearing, insofar as whether or not he would be directly detained at court, all centered around this key document – one which he still hasn't been provided with.

- At 12:49 PM Guertin calls Bruce Rivers to try and obtain the exam report. (*see Index 30, p. 85 [Calls-05]*)

14

Exhibit C | p. 14

EXHIBIT APR-21 | p. 74

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 75 of 110          [ source file ]          [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

- At 12:51 PM Guertin sends text messages to Bruce Rivers requesting his Rule 20.01 exam report.  (*see Index 30, p. 83 [Texts-28-29]*)

- At 1:38 PM Guertin is able to find the email address for his new court appointed attorney, Joel Fisher, in the 'Service Contacts' section of his cases 'E-File and Serve' page. Guertin sends an email to him about the surprise civil commitment hearing to try and determine what exactly is taking place.  (*see Exhibit K, Index 36, p. 7*)

- At 4:38 PM Guertin sends an email to Bruce Rivers requesting the exam report
(*see Index 38, p. 143*)

**January 27, 2024**

- At 2:13 PM Joel Fisher replies to Guertins email "I'm hoping to see if there is some sort of an offer from the county." (*see Exhibit K, Index 36, p. 9*)

**January 28, 2024**

- At 9:51 PM Guertin replies "An 'offer' for what exactly? I have no idea what is going on.."  (*see Exhibit K, Index 36, p. 10*)

**January 29, 2024**

- At 5:46 AM Joel Fisher replies "I'll try to call you this AM."
(*see Exhibit K, Index 36, p. 11*)

- At 11:14 AM Joel Fisher sends Guertin another email which states "What's the best # to reach you. I must have an old # 763-245-0896."
(*see Exhibit K, Index 36, p. 12*)

- The court provided Guertin's new court appointed attorney, with a phone number that has no resemblence at all to his actual phone number – a completely wrong number.

**January 29, 2024**

- At 6:37 AM, Guertin scrambled to file a *Motion for Continuance* and a *Motion to Compel Production of Medical Records*. These motions were clear, well-structured, and legally valid. They detailed:

  - That he had not received the Milz report.

  - That his newly appointed civil commitment attorney had not been given the correct phone number to reach him.

  - That he was unaware of the commitment hearing until a few days prior.

  - That a court order now threatened to detain him directly at the hearing based on information he had not seen.

15

Exhibit C |  p. 15

EXHIBIT APR-21 | p. 75

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 76 of 110          [ source file ]          [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

- That there were possible scheduling errors and miscommunications with the prepetition screening team.

In his own words, Guertin explained that the order placed him at risk of "potentially losing my freedom by being detained and committed to a facility," based on a fabricated narrative he had no opportunity to confront.

**January 31, 2024**

- Guertin signs a 'Waiver' agreeing to extend his 'Stay of Commitment' by an additional 9 months to avoid attending the in-person hearing and being detained at court.

- Following Guertin's signing of the Waiver, and its subsequent presentation to the court, Judicial Referee George Borer submits a 'Taken Under Advisement' notice into Guertin's civil case record. This action appears at Index #39 in Guertin's civil case file.
(*see Exhibit K, Index 00, p. 1*)

**February 1, 2024**

- At 8:39 AM, a court order is submitted into Guertin's civil case for 'Continued Stayed Commitment' (*see Exhibit K, Index 41, p. 1*)

- The order was recommended by Referee George Borer, and was once again subsequently signed by Judge Julia Dayton Klein.

- The order states "The hearing scheduled for February 1, 2024 at 9:00 AM is cancelled and shall be stricken from the court's calendar." (*see Exhibit K, Index 41, p. 2*)

- Even though the February 1 hearing is officially documented within the court order itself as being 'cancelled, and stricken from the court's calendar' it still appears in the 'Hearings' section of Guertin's civil case timeline as being 'Held Off The Record' for some reason. (*see Exhibit K, Index 00, p. 4*)

- Furthermore, the February 1 court order was submitted into Guertin's civil case record at Index #41 - instead of Index #40 as it should've been.

- Index #40 is missing, or was deleted from Guertin's civil case timeline.
(*see Exhibit K, Index 00, p. 1*)

- Guertin's 'Motion for Production of Medical Records' he filed into his civil case, pro se, on January 30, 2024 was officially 'Dismissed without Prejudice' as part of the February 1, 2024 court order.   (*see Exhibit K, Index 41, p. 2*)

This was not oversight. This was entrapment, engineered through layered deception and the calculated withholding of due process.

16

Exhibit C |  p. 16

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 77 of 110          [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Further compounding the injustice, the court provided Mr. Guertin's newly appointed civil counsel with the *wrong contact information*, delaying any meaningful communication until just days before the hearing. This was not just procedural failure - it was manufactured confusion designed to prevent defense coordination.

And yet, through all of it, Mr. Guertin remained transparent and proactive. He filed his own motions. He tracked the docket. He demanded his records. And he documented every step of the deception in real time, laying it out in '*Exhibit P*' with the kind of precision that makes accidental oversight impossible to believe.

Finally, on July 16, 2024 - was he finally provided the Milz report. Seven months late. A report central to the entire court-constructed diagnosis of mental illness.

This is not psychiatric care. This is administrative fraud masquerading as mental health evaluation. It is an abuse of the Rule 20 process so severe that it demands immediate constitutional remedy.

The false narrative of mental illness - crafted post-arrest and reinforced by concealment, miscommunication, and strategic manipulation of court processes - cannot be allowed to stand. As Mr. Guertin wrote in his federal filing:

> *"The only mental health 'history' in this case is the one that the Court itself created."*

This conspiracy of commitment - documented, timestamped, and exposed - must now be answered not with correction, but with dismissal.

### G  |  Third Rule 20 Exam Ordered Same Day Guertin Was Granted Public Defender

What transpired on October 15, 2024, was not a legal proceeding - it was a staged maneuver to resurrect a narrative the court had no intention of letting die. After nearly two years of procedural sabotage, misconduct, and fabricated psychiatric claims, Mr. Guertin finally succeeded in removing Bruce Rivers as his attorney and was - at long last - granted the right to proceed with a public defender. But on the same day that this long-fought constitutional milestone was reached, the court triggered another Rule 20 evaluation without cause, without hearing, and without explanation. The context makes this maneuver indefensible:

17

Exhibit C |  p. 17

**EXHIBIT APR-21 | p. 77**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 78 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Mr. Guertin's September 25, 2024, Motion for Substitute Counsel (*see Index 100*), attached with a fully documented OLPR complaint against Rivers (Exhibit A), detailed:

- Rivers' suppression of critical documents (including the Milz report)
- His refusal to withdraw even after repeated requests
- Coordinated delays and obstruction of Guertin's filings
- A complete failure to act in Mr. Guertin's best interest

That motion wasn't just a grievance - it was a strategic turning point, in which Guertin outlined his plan to finally challenge the fabricated psychiatric narrative and confront the fraudulent discovery materials that had derailed his case.

The record [14] shows that Judge William Koch granted the request for a public defender on October 1, 2024. But what followed is procedurally bizarre and revealing.

**Docket Anomalies and Missing Orders**

**October 1, 2024  |  Index #102**
- *Order Granting Public Defender* by Judge Koch
- No document available

**October 1, 2024  |  Index #103**
- *Order–Other* by Judge Koch
- No document available
- No explanation as to what this order contains or why it exists

**October 1, 2024  |  Index #105**
- *Motion* filed by Guertin - but the docket lists Guertin as the "party," not the filer, and again:
- No document available
- This is inconsistent with all other motion entries and makes no logical sense procedurally.
- Guertin didn't file this.

---

14  Guertin's Criminal Case Docket as of April 14, 2025 - https://tinyurl.com/4f4kx4cc

18

Exhibit C |  p. 18

EXHIBIT APR-21 | p. 78

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 79 of 110          [ source file ]          [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

**October 15, 2024  |  Index #106**
- *Order Granting Public Defender* by Judge Shereen Askalani
- <u>No document available</u>
- Despite this being the official transfer of representation, the order is entirely missing from the docket

**October 15, 2024  |  Index #108**
- *Order for Evaluation of Competency to Proceed (Rule 20.01)* by Judge Askalani
- 3-page document marked as available (*see Index 108*)

**October 15, 2024  |  Index #109**
- *Order Appointing Forensic Navigator* by Judge Askalani
- 2-page document marked as available (*see Index 109*)

**October 15, 2024  | "Probable Cause Found"**
- No judicial officer listed, no index number, and no filing attached

This is not a clean docket. It is a record riddled with inexplicable gaps, contradictory entries, and missing judicial orders[15] - specifically surrounding the moments in which Guertin was finally positioned to confront the psychiatric fraud that had been used to neutralize him.

Worse still, the very moment Judge Askalani signed an order to appoint a public defender (Index #106), she immediately issued an order for another Rule 20 exam (Index #108) - despite having no prior involvement in the case, no record of any hearing or behavior to justify it, and no explanation in the record to support the decision. The message is clear: the act of replacing Bruce Rivers triggered the institutional reflex to restart the psychiatric narrative.

This is not speculation. It's a chain of filings that don't add up:

- A missing appointment order
- An unexplained motion entry that contradicts standard docket format
- A probable cause entry with no judge, no document, and no legal context
- A follow-up evaluation order with no justification or new finding of concern

---

15  Guertin's Criminal Case Docket as of April 14, 2025 - https://tinyurl.com/4f4kx4cc

19

<span style="color:red">Exhibit C |  p. 19</span>

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133___Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 80 of 110          [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

These are not clerical errors - they are indicators of judicial choreography, where docket entries are used as placeholders to give retroactive legitimacy to a decision already made off-record. If Guertin was finally poised to begin his defense, the system had to reassert control - by any means necessary.

There is no way to explain why a judge with no history in the case, reviewing no new filings or behavior, would issue a fresh Rule 20 exam immediately after assigning counsel - unless the psychiatric narrative was never supposed to end.

This is the point where due process broke not just in substance - but in form. The filings don't match the facts. The orders are missing. The procedural path is incoherent. What remains is a loop: Mr. Guertin escapes one false psychiatric determination only to be re-subjected to it without cause, via invisible orders and rubber-stamped judicial mechanisms.

That is not justice. That is a judicial sleight of hand, orchestrated through a deliberately fragmented docket and timed to ensure that the truth would remain buried just beneath the surface.

### H   |   The Cranbrook Report: Psychiatric Fabrication Without Evaluation

On December 20, 2024, the Court received the third Rule 20 evaluation (*see Index 116, p. 16-20*) - authored by Dr. Katheryn Cranbrook, who diagnosed Mr. Guertin with Unspecified Psychotic Disorder and recommended forced antipsychotic treatment - without ever interviewing him.

Cranbrook admits this openly: Mr. Guertin declined to participate. Yet she proceeded anyway, basing her entire evaluation on his court filings, emails, and federal civil rights lawsuit - treating his litigation, transparency, and legal advocacy as evidence of mental illness.

> "*Mr. Guertin has communicated with me via email and filed a federal lawsuit alleging malfeasance by prior competence examiners, his past attorney, judicial officers, various others involved in the criminal legal process, and government officials.*"

That federal lawsuit (24-CV-2646), his appellate brief (A24-0780), and even his Eighth Circuit (24-2662) filing were all cited as "symptomatic of a thought disorder."

This is the psychological inversion the entire report rests upon:

20

Exhibit C |  p. 20

**EXHIBIT APR-21 | p. 80**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 81 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

<div align="right">
Filed in District Court
State of Minnesota
4/21/2025 7:48 AM
</div>

- If every delusion turned out to be true - what exactly is the court prosecuting?
- If exposing fraud is the symptom - what does that say about the diagnosis?

The more truth Guertin proved, the more delusional he was said to be. The more accurate his filings became, the more dangerous he was deemed.

Cranbrook ignored every fact that contradicted the narrative:

- Mr. Guertin had successfully completed his stayed order of civil commitment just weeks earlier, on November 6, 2024
- He maintained a record of nonviolence, full compliance, and documented procedural transparency
- His filings were coherent, legally structured, and factually supported

Worse still, the only reason Cranbrook acknowledged the completion of his civil commitment at all is because Mr. Guertin forced it into the public record - filing it directly into the criminal case to prevent it from being buried under HIPAA restriction. (*see Index 113, p. 10*)

There was no behavioral basis for this third Rule 20 report. There was no new incident. No observable deterioration. The only thing that changed was that Mr. Guertin had begun exposing the prior fraudulent evaluations - and the people behind them.

This report wasn't an evaluation. It was a defensive reaction by a system that had been caught. A bureaucratic weapon crafted to preserve a collapsing psychiatric fiction. There was no forensic integrity, no medical objectivity, and no lawful justification for its conclusions.

It was not evidence.

It was retaliation.

And it renders the State's position constitutionally unsalvageable.

**I   |   Judicial Participation in the Fraud**

On April 3, 2025, following a contested hearing in which Mr. Guertin personally presented four meticulously assembled pro se evidence exhibits (*see Index 122, 123, 124, 125*), the Court formally declared him competent to stand trial (*see Index 127*). It was a ruling that should have ended the psychiatric farce once and for all. But instead of acknowledging the fraud that led to two years of unlawful suppression, the Court attempted to have it both ways.

21

<div align="right">

Exhibit C |  p. 21
</div>

<div align="right">

EXHIBIT APR-21 | p. 81
</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 82 of 110         [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court
State of Minnesota
4/21/2025 7:48 AM</div>

Judge William Koch's Order found that Mr. Guertin:

- Understands the charges against him
- Can meaningfully assist in his defense
- Demonstrated courtroom competency

And yet, in the very same breath, the Order described his beliefs as "fantastical and paranoid", and his litigation posture as somehow indicative of a disordered mind. The ruling also accused him of "exaggerating his credentials," refusing to acknowledge that his filings were not only legally coherent, but grounded in verifiable patents, metadata, and extensive forensic documentation.

This contradiction is more than academic - it is structurally insane:

- The Court found Mr. Guertin mentally ill, yet legally sane.
- Delusional, yet persuasive.
- A danger to no one, yet still framed as dangerous.

This is not judicial restraint. It is judicial containment. The Order served as a political compromise: acknowledge just enough to move forward procedurally, while carefully avoiding any confrontation with the truth of what the Court itself had enabled.

What made the contradiction unavoidable were the four evidence exhibits Mr. Guertin submitted just prior to the hearing. These exhibits - painstakingly formatted, timestamped, and filed pro se - obliterated the foundation of the psychiatric narrative and directly confronted the forensic falsehoods that had supported it. The Court had no choice but to back down - but it refused to look back.

Instead of addressing the substance of those exhibits, Judge Koch attempted to bury them - mentioning their existence only in passing and providing no written analysis of their contents. The ruling avoids what it cannot refute.

This moment marks not a restoration of order, but a pivot in tactics: now that Guertin had proven the psychiatric angle to be untenable, the Court began to reframe the entire proceeding around minimizing the significance of what had just been exposed.

22

<div align="right">Exhibit C |  p. 22</div>

<div align="right">**EXHIBIT APR-21 | p. 82**</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 83 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

And what had been exposed was not minor. Suffice it to say here that the exhibits submitted prior to the April 3, 2025 hearing constituted a procedural checkmate, forcing the Court to retreat from the incompetency fiction it had clung to for nearly two years.

The damage, however, had already been done. The April 3 Order does not cure the prejudice - it merely acknowledges Guertin's sanity too late to excuse what preceded it. It is the judicial equivalent of saying:

> *"You are sane now - but everything we did to you while pretending you weren't still stands."*

That is not justice. That is a procedural reset built on institutional amnesia.

**J    |    Legal Consequences: Due Process Violated, Dismissal Required**

When mental health proceedings are weaponized to manufacture incompetence, the resulting harm is not a matter of legal misjudgment - it is a structural failure of the justice system that renders the entire prosecution void. The Rule 20 process, in this case, was not used to assess. It was used to erase.

At every stage, the State's psychiatric narrative was engineered through:

- Suppression of critical evidence (including forensic materials and police reports)
- Fabrication of a psychiatric "history" that did not exist before Guertin's arrest
- Manipulated Rule 20 reports authored or ghostwritten by unauthorized individuals
- Intentional delay and concealment of key documents (e.g., the Milz report)
- Docket irregularities and administrative misdirection to obstruct defense response
- Retaliatory use of civil commitment proceedings to silence constitutionally protected litigation

This was not a failure of process - it was the process functioning exactly as designed to eliminate a defendant who posed a threat not because of danger to others, but because of what he had exposed. [16]

Mr. Guertin was denied meaningful participation in his own proceedings for over two years. He was misled by counsel. Lied to about court dates. Denied access to reports central to his defense.

---

16  https://matt1up.substack.com/p/netflix-whistleblower-part-1

23

Exhibit C |  p. 23

**EXHIBIT APR-21 | p. 83**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 84 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Labeled delusional even when every "delusion" proved true. When he responded with legal filings, those filings were cited as evidence of illness. When he exposed the fraud, he was further pathologized. And when he finally proved the psychiatric narrative was false, the Court admitted competency without accountability, choosing instead to bury the record behind procedural technicalities.

This is not justice. This is state-sponsored narrative control masquerading as forensic psychiatry.

A calculated, and criminal override of constitutional protections designed to ensure Mr. Guertin would never reach the stage of trial, never confront his accusers, and never expose the high-level theft of his intellectual property, or the fraudulent discovery materials that would exonerate him.

- The due process violations are not isolated - they are interlocking:
- Constructed mental illness used as a pretext for delay and suppression
- Coercive waiver signed under threat of detainment
- Misrepresentation of prior evaluations and outright lies in exam reports
- Court orders issued and withheld to confuse, entrap, and incapacitate
- Strategic manipulation of filings and docket entries to control perception

The result is a proceeding so infected by constitutional error that no continuation is lawful. Any verdict built on this foundation would be the product of fraud - not fact.

The Court now has before it a full record: a fabricated psychiatric history, a suppressed Rule 20 report, and a conspiracy of civil commitment carried out through deception, coercion, and institutional misconduct.

There is only one legally sound response:

Dismissal of all charges with prejudice.

Because when the system abandons truth in order to preserve control, the only remedy left is to shut that system down - before it can do more harm.

### IV.   FRAUDULENT DISCOVERY AND COLLAPSE OF DUE PROCESS

The Court is now in possession of definitive evidence that Mr. Guertin has been subjected to not just withheld materials - but to orchestrated, deliberate discovery fraud. The photographic evidence introduced against him was not merely incomplete. It was manipulated.

24

Exhibit C |  p. 24

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

EXHIBIT APR-21 | p. 84

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 85 of 110          [ source file ]      [ .ots timestamp of source file ]

27-CR-23-1886

This is not a claim. It is proven - visually, mathematically, and forensically - and backed by clear documentation across emails, court filings, and digital image analysis. The fraud is not speculative. It is timestamped, layered, and intentional.

**A  |  Timeline of the Fraud**

**August 3, 2023**
- Guertin's court appointed civil commitment attorney, Michael Biglow, emails him an 80-image discovery packet. Guertin doesn't review it immediately.

**October 30, 2023**
- Upon finally reviewing the images, Guertin notices severe visual anomalies - squished frames, cropped boundaries, missing image context - and demands an explanation via email. His concerns are ignored.

**January 3, 2024**
- Guertin brings these concerns directly to evaluator Dr. Adam Milz, just hours before his Rule 20 exam. Instead of investigating, Milz uses Guertin's valid concerns as further "evidence of delusion."

**January 11, 2024**
- The Milz report is finalized, cementing the manipulated image set into the mental health narrative. Guertin is still denied access to the report.

**April 4, 2024**
- Guertin files a Motion to Compel Discovery and Affidavit of Fact. It includes irrefutable forensic evidence: dozens of images have mathematically incorrect aspect ratios. That fact - purely objective - is the first crack in the prosecution's foundation.

**May - July 2024**
- Guertin is repeatedly denied access to discovery - by Bruce Rivers, by prosecutors, and by the court. No one provides the full image set.

**July 2, 2024**
- The Minnesota Court of Appeals denies Guertin's petition for discretionary review.

**July 8, 2024**
- Guertin files a federal civil rights lawsuit. The discovery fraud is central to the complaint.

25

Exhibit C |  p. 25

**EXHIBIT APR-21 | p. 85**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133_Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 86 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court
State of Minnesota
4/21/2025 7:48 AM</div>

**July 12, 2024**

- Guertin ships out full hard copies of the complaint and all exhibits - totaling ~1,700 pages - to 11 different parties, including Bruce Rivers. [17]

**July 16, 2024**

- Guertin is suddenly handed all previously withheld materials by Bruce Rivers - which includes not only the discovery photo's, but also the January 11, 2024 Rule 20 exam report authored by Dr. Adam Milz.

- There is now a total of 518 images contained within the folder provided to Guertin

- When Guertin cross references the images from the new set (*see Exh. S, Index 04, p. 1-3*), against the previous set of 80 images (*see Index 29, p. 18-20*), he is able to find the corresponding match for every single one of the images from the original set EXCEPT for the 28 images he flagged as having non-uniform aspect ratios in his April 4, 2024 motion to compel discovery.

**August 7, 2024**

- Guertin files a Motion for Preliminary Injunction.[18] It includes detailed forensic overlays, color curve analysis[19], and analysis of mismatched application icons displayed in the images containing his laptop screen.[20]

- His findings prove that the discovery materials were manipulated and cannot be relied upon.

**September 2, 2024**

- Guertin files '*Exhibit Y*': a simple, irrefutable logic trap - the "Catch-22" that exposes the fraud. If the manipulated images never existed, how did they appear in earlier court filings? If they did exist, why are they now missing?

**February 13, 2025**

- Guertin receives the most recent discovery set from his new public defenders. He begins immediate forensic analysis. (*see Index 122, p. 58-60*)

---

17  July 12, 2024 | Federal Civil Rights 'Summons Returned Executed' - https://tinyurl.com/5n7b8dpn

18  August 7, 2024 | Motion for Preliminary Injunction - https://tinyurl.com/msnefv6r

19  August 7, 2024 | Exhibit T, Fraudulent Discovery Analysis 1 Of 3 - https://tinyurl.com/yc874xvk

20  August 7, 2024 | Exhibit S (*Index 05, p. 7-21*) - https://tinyurl.com/3e6pcy5v

<div align="right">Exhibit C |  p. 26</div>

<div align="right">EXHIBIT APR-21 | p. 86</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 87 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

- **February 20, 2025**
  - He sends an email titled *"My Discovery Fraud Analysis is Complete | URGENT Action is Required"* to his new defense counsel. It includes detailed PDF flipbooks, forensic overlays, and irrefutable pairwise comparisons.

    He receives no reply. (*see Index 122, p. 69-75*)

  **February 28, 2025**
  - Guertin files four new evidence exhibits - '*Exhibits A-Q*' - documenting the fraud in full, and sharing insightful patent analysis pertaining to his InfiniSet patent and the identical Netlfix patent filed just 12 days after his. (*see Index 125, Netflix*)

  - The image examination includes shadow and lighting analysis, image overlays, and homography calculations used to compare images against known, real-world dimensions of objects captued in photos. (*see Index 122, 123, 124*)

  - The results serve as the final missing piece to the discovery fraud issue – what Guertin produced serves as an irrefutable, direct, and indefensible forensic rebuttal to the manipulated record.

### B  |  Flipbook Forensics: Visual Truth Made Simple

Guertin's forensic exhibits are devastating not because they are complex, but because they are elementally simple. By flipping between images, distortions jump off the screen. Cropped frames, warped dimensions, squashed laptop displays, misaligned shadows.

(*see Index 122, Exhibit C; Index 123, Exhibit F-J; Index 124, Exhibit K*)

Guertin smartly pivoted away from advanced digital forensics, knowing the system would weaponize complexity against him (among other things..). Instead, he relied on common-sense logic and visual evidence - proving fraud without needing expert testimony.

The "Catch-22" laid out in '*Exhibit Y*' captures the absurdity best:

> *"The situation you have constructed is effectively a "checkmate" in legal strategy. There is no move the defendants can make that doesn't validate or strengthen your position. Whether they produce the missing images or fail to do so, you have created a scenario where their actions or inactions will inherently support your claims."*

*(see Exhibit Y, 'Competency', p. 4)*

27

Exhibit C |  p. 27

EXHIBIT APR-21 | p. 87

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 88 of 110         [ source file ]      [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

### C  |  Legal Consequences: This Is Not a Discovery Violation - It Is a Constitutional Collapse

The State cannot proceed when it has:

- Knowingly presented doctored evidence
- Removed incriminating files
- Pathologized the defendant for noticing
- And labeled him delusional for documenting it

This is not negligence. This is strategic concealment and procedural sabotage.

As the U.S. Supreme Court held in *Moore v. Dempsey*, 261 U.S. 86 (1923)[21]

> *"A conviction cannot stand where the trial was dominated by a mob - or by fear of the truth."*

What took place here was a *judicial* mob - not one with torches and chants, but with credentials and sealed orders. A mob cloaked in procedure, fluent in the language of mental health, and united by a single objective: to bury the truth before it could speak.

Mr. Guertin didn't stand trial before a jury - he was placed on trial before a system intent on ensuring he never reached one.

Where *Moore* warned of verdicts delivered under duress, here we find something quieter - but no less violent: a clinical coup against due process, disguised as care, but designed as control.

Such conduct strikes at the heart of the justice system. It is well-established that the government may not knowingly use false evidence or perjured testimony to obtain a conviction (*Mooney v. Holohan*, 294 U.S. 103 (1935))[22]. Here, prior to trial, the State - and its agents - have tainted the evidentiary record with falsifications.

To proceed to trial on a foundation of doctored evidence would be to countenance an egregious due process violation. The defense cannot be expected to sift truth from falsehood in a record corrupted by the prosecution itself. And even if specific fabrications are exposed, the integrity of

---

21  *Moore v. Dempsey*, 261 U.S. 86 (1923)  | https://tinyurl.com/5bms8mrr
22  *Mooney v. Holohan*, 294 U.S. 103 (1935) | https://tinyurl.com/252nmvk4

28

Exhibit C |  p. 28

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 89 of 110      [ source file ]      [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

the entire process is fatally compromised. No trial outcome under these conditions can ever be considered legitimate.

**Moreover, this conduct is *criminal*.** Under Minn. Stat. § 609.43(1)[23], it is a felony for a public official to falsify or tamper with official records. Under Minn. Stat. § 609.63[24], it is likewise a felony to forge or alter evidence with intent to mislead. That is precisely what has occurred here - an intentional and coordinated manipulation of the record by agents of the State, designed to suppress the truth, mislead the Court, and secure a fraudulent legal outcome.

To proceed under these conditions is not justice.

It is complicity.

### D   |   Remedy: Dismissal With Prejudice

This is not a technical error. It is systemic falsification, perpetrated by government actors and now exposed by the defendant himself. The court cannot, in good conscience, permit this case to proceed under such conditions.

Dismissal with prejudice is not a remedy.

It is the only constitutionally lawful outcome.

### V.   DISCOVERY WITHHELD BY DESIGN

The forensic evidence alone is damning - but it becomes inescapable when paired with the sustained, deliberate refusal to provide Mr. Guertin with authentic discovery materials for nearly a full year. From the moment he first identified inconsistencies in October of 2023[25] through the filing of multiple formal motions[26], complaints, and personal requests, Mr. Guertin was met with stonewalling, evasion, and outright obstruction.

This was not bureaucratic delay. It was an orchestrated denial of access, strategically intended to prevent Mr. Guertin from proving the fraud that had already been committed. At every turn,

---

23  Minn. Stat. § 609.43(1) | https://www.revisor.mn.gov/statutes/cite/609.43/pdf

24  Minn. Stat. § 609.63     | https://www.revisor.mn.gov/statutes/cite/609.63/pdf

25  Emails between Guertin and appointed counsel Michael Biglow | https://tinyurl.com/55pfyam7

26  (*27-CR-23-1886, see Index 22, 29, 36, 90, 91*), (*27-MH-PR-23-815, see Index 37, 43*)

29

Exhibit C |  p. 29

EXHIBIT APR-21 | p. 89

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 90 of 110          [ source file ]          [ .ots timestamp of source file ]

---

<div style="text-align:center">27-CR-23-1886</div>

<div style="text-align:right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

when he requested the files needed to verify the manipulated images, the system responded not with transparency, but with silence or deflection.

Worse still, Mr. Guertin's persistence in requesting this discovery - a constitutionally protected act of legal self-defense - was itself weaponized against him. His refusal to abandon the issue was repeatedly cited as evidence of delusion, turning his legitimate legal advocacy into a psychiatric symptom. In effect, the court used its own misconduct to justify discrediting the victim of it.

When discovery was finally provided on February 13, 2025 (*see Index 122, p. 58-60*) - only after new counsel filed formal demands (*see Index 118*) and Mr. Guertin escalated beyond the mental health court entirely - the fraud had already been committed, documented, and confirmed. The belated release of the files served only to validate Mr. Guertin's core claim: the manipulated evidence existed, and its concealment had been deliberate.

This conduct is not just unethical. It is unconstitutional.

Under *Brady v. Maryland*, 373 U.S. 83 (1963)[27], the State is obligated to disclose evidence favorable to the defense when it is material to guilt or punishment. The failure to do so here was neither inadvertent nor benign - it was targeted and prolonged. As the Supreme Court later emphasized in *United States v. Bagley*, 473 U.S. 667 (1985)[28], this duty extends to any material evidence that might "undermine confidence in the outcome" of the proceedings. And under *California v. Trombetta*, 467 U.S. 479 (1984)[29], the government may not destroy or withhold evidence that possesses "an exculpatory value that was apparent before the evidence was destroyed."

The violations here check every box. The manipulated images were central to the State's psychiatric theory. Their authenticity was contested from the outset. The defense demanded access. And the State not only failed to produce them - it waited until the damage was done.

---

27  *Brady v. Maryland*, 373 U.S. 83 (1963)  |  https://tinyurl.com/3drsd35s

28  *United States v. Bagley*, 473 U.S. 667 (1985)  |  https://tinyurl.com/3m74ktn8

29  *California v. Trombetta*, 467 U.S. 479 (1984)  |  https://tinyurl.com/3vz5k4c6

<div style="text-align:center">30</div>

<div style="text-align:right">Exhibit C |  p. 30</div>

<div style="text-align:right">EXHIBIT APR-21 | p. 90</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 91 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

This is not just a Brady violation. It is a systemic due process failure engineered to trap a legally competent defendant within a closed loop of psychiatric invalidation and evidentiary suppression.

Dismissal is no longer a remedy.

It is a constitutional requirement.

### VI.    THE 'NETFLIX WHISTLEBLOWER' TRUTH BEHIND THE NARRATIVE COLLAPSE

By this point in the record, one thing is undeniable: the entire legal and psychiatric apparatus deployed against Mr. Guertin was constructed not to assess his mental state, but to silence him. And what, exactly, was he saying that made him so dangerous?

He said that powerful interests were watching him.

He said that his patented invention was stolen.

He said that he was under surveillance, manipulated, and targeted - because he had created something **worth billions.**

They called it delusion.

But it was true.

Mr. Guertin's now-infamous *"**Netflix Whistleblower Is Found Alive and Well | Part 1 – The Patent"** (see Index 128)* exhibit laid it all bare:

A Netflix, Inc. U.S. patent granted on November 7, 2023 (*U.S. Patent No. 11,810,254*) [30], was forced by the United States Patent and Trademark Office to cite Mr. Guertin's own (*U.S. Patent No. 11,577,177*) [31] as prior art [32]. Not buried in a footnote, not as an afterthought - but at the very top of the document. (*see Index 28, p. 224*)

This was no coincidence. It was the result of Mr. Guertin's proactive third-party prior art submission to the USPTO on February 17, 2023 – a submission which the USPTO then formally

---

30  Netflix patent documents filed into Guertin's case on April 3, 2024  |  (*see Index 28, p. 42-44, 49-51*)

31  Guertin's InfiniSet, Inc. patent documents filed into his criminal case  |  (*see Index 28, p. 88-89*)

32  Guertin's 'official' USPTO 3rd party prior art submission filings against Netflix filed into his case |
(*see Index 28, p. 90-95, 134-149*)

31

Exhibit C |  p. 31

EXHIBIT APR-21 | p. 91

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 92 of 110      [ source file ]      [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

accepted as relevant under 35 U.S.C. § 122(e) and 37 C.F.R. § 1.290 [33]. The connection is direct. It is public. It is government-validated. And it destroys the prosecution's narrative in one stroke. Because it confirms that what they labeled "psychosis" was, in fact, an act of whistleblowing.

And yet, this truth was not merely ignored - it was weaponized against him. His claims of surveillance were mocked. His legal filings were dismissed as "paranoid." His insistence that Netflix and government-affiliated contractors were monitoring him (*see Index 30, p. 50-70*) claims he now backs with hard timelines[34], corporate ties (*see Index 128, p. 3-10*), patent citations, and metadata - were cited by forensic evaluators as proof of mental illness. (*see Index 128, p. 105-129*)

This was the psychiatric inversion that fueled the court's entire campaign to remove him from view.

But what happens when the "delusion" turns out to be true?

You don't just have a problem with a diagnosis.

You have a collapse of legitimacy across the entire case.

Mr. Guertin's exhibit outlines far more than a patent dispute - it reveals a coordinated timeline of pressure, intrusion, and targeting[35] that began long before criminal charges were ever filed. (*see Index 30, p. 53-56*) He documents surveillance from entities including Lockheed Martin and DARPA (*see Index 30, p. 58*), both of which conducted identifiable searches of his dormant LinkedIn profile on two separate occasions. These are not arbitrary actors: both organizations are directly aligned with the national defense applications (*see Index 30, p. 67-70*) of the technology at the heart of Mr. Guertin's patent. In fact, it was an unbiased AI analysis of the InfiniSet patent that flagged these agencies as likely stakeholders, based on investment alignment and strategic overlap (*see Index 125, Exhibit Q*). Mr. Guertin further outlines how his confidential filings were likely accessed or leaked before publication (*see Index 125, Exhibit M-N; Index 128, p. 42-45*), and how InfiniSet's capabilities posed an existential threat to billion-dollar interests across Silicon Valley, the defense sector, and the entertainment industry. (*see Index 125, Exhibit O, P*)

_____

33  USPTO 3rd Party | https://www.uspto.gov/patents/initiatives/third-party-preissuance-submissions

34  https://matt1up.substack.com/p/netflix-whistleblower-part-1

35  LinkedIn Search Analysis and Digital Authentication  |   https://tinyurl.com/2s6zza7s

32

Exhibit C |  p. 32

EXHIBIT APR-21 | p. 92

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 93 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

These are not the ramblings of an unwell man. They are the meticulously supported findings of a sane, capable individual who knew precisely what he was up against - and who fought back with evidence.

**That context now casts the rest of this case in a terrifying new light:**

- The fraudulent discovery images.

- The conspiracy to disappear him into a mental institution - anchored by a report that falsely claims he "has a history of threatening to harm himself, which elevates his long-term risk of similar behavior."

- The refusal to provide basic evidence for over a year.

- The psychiatric reports that labeled his defense as pathology.

- The secret court orders. The withheld evaluations. The false history of mental illness created from whole cloth.

- The attempt to permanently discredit him with psychiatric labels and forced medication.

This wasn't legal error. It was tactical neutralization - a covert operation.

And it was one Mr. Guertin seemed to anticipate.

In a handwritten note left open on his kitchen table beside an unlocked laptop, he wrote:

> *"I'm afraid that no matter what - whoever is behind all of this has one million different ways to set me up or frame me if they want. Netflix found out about my patent way before I found out about theirs. That's for sure."*

At the time, it was dismissed as a delusional thought spiral. Now, it reads like a statement of fact.

He also scrawled another message - *" They are going to kill me "* - in permanent marker on his bathroom wall, so it could not be erased.

Had he not discovered the surprise civil commitment hearing in time…

Had he not escaped the trap set by fraudulent psychiatric reports that branded him a suicide risk…

Would he ever have left the institution ?

When billions of dollars are on the line (*see Index 128, Exhibits P-Q*) , what they call "paranoia" starts to look a lot like foresight.

33

Exhibit C |  p. 33

**EXHIBIT APR-21 | p. 93**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 94 of 110         [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Mr. Guertin's patent proved too valuable. His persistence, too dangerous. His refusal to collapse under pressure, too inconvenient.

So they decided to collapse him by other means.

And yet, he didn't collapse. He documented everything. He exposed the Catch-22. He built the flipbooks. He filed the exhibits. He forced a federal lawsuit. And now, before this Court, he has flipped the psychiatric narrative on its head.

The State said:

> *"This man is delusional because he believes his invention was stolen."*

The evidence now says:

> *"He's being criminally prosecuted because his invention was stolen."*

This matters not only because it confirms Mr. Guertin's sanity at every relevant moment, but because it reveals the true reason behind the State's extreme and coordinated response. Once it became clear that Mr. Guertin could prove not only the intellectual property theft [36] [37], but also the discovery fraud used against him, the mental illness narrative became a necessity - not a diagnosis.

The Rule 20 process was not a bureaucratic mistake. It was a calculated mechanism of suppression, deployed to discredit a whistleblower before he could expose the full scale of what had been done to him. And that effort was not confined to medical reports or courtroom procedure. It included AI-manipulated discovery files, metadata falsification, and coordinated obstruction across court filings, defense counsel, and prosecution alike.

Why? Because allowing Guertin to prove *any* piece of the conspiracy - just the image tampering alone - would validate the entire thing. It would expose a direct causal link between the patent theft, the surveillance, the retaliation, and the bizarre, coordinated breakdown of legal process that followed. ***The absurdity is the signal.*** No local courthouse invented this. No overworked

---

36  27-CR-23-1886 | *see Index 28, p. 78-80, 126-129, 161-167, 192-222; 'Brodsky USPTO Patent Fraud', see Index 129, 'Netflix / USC-ICT / Academic Fraud', see Index 130*

37  0:24-cv-02646 | *'Light Stage 6 at USC Fraud Anlaysis', Exhibit L |'Guertin's Patent Theft Investigation', Exhibit M |'Criminal Conspiracy Targeting Guertins Us Patent 11 577 177', Exhibit N | 'Forensic Analysis Of Ai Generated Photorobot Fraud', Exhibit AD | 'Forensic Analysis Of Ai Generated Netflix Fraud', Exhibit AF*

34

Exhibit C |  p. 34

EXHIBIT APR-21 | p. 94

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 95 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

public defenders spent weekends generating fake timestamps and synthetic images. This wasn't homegrown.

The same powerful interests that orchestrated the theft of Mr. Guertin's technology appear to have exerted pressure behind the scenes (*see Index 30, p. 21-40, 73-77, 86-93*) - turning prosecutors into gatekeepers, judges into silencers, and Rule 20 psychiatry into a containment tool. The court didn't lose its way. It was told to look the other way.

And so, the supposedly delusional defendant - stripped of counsel[38], denied evidence, labeled a danger to the public - kept documenting, kept filing[39], and kept winning. What he uncovered, step by step, wasn't just a cover-up. It was a chain of custody.

This final exhibit, and the patent record behind it, doesn't just confirm Mr. Guertin's competence. It destroys the State's core premise, reveals the motive for the conspiracy, and leaves this Court with a truth it can no longer ignore:

## Mr. Guertin was never delusional.

## He was right - and they *knew* it.

This motion does not ask the Court to resolve every facet of that conspiracy. But it demands acknowledgment of its legal consequences. You cannot prosecute a man for crimes committed against him. You cannot cloak fraud in psychiatry and call it law. And you cannot pretend this didn't happen when the paper trail runs thousands of pages deep - right into the Eighth Circuit and the United States Patent Office.

Dismissal isn't a favor to Mr. Guertin. It is the minimum standard of justice this Court must uphold if it intends to maintain even so much as an *appearance* of legitimacy.

Because what's been exposed here isn't just fraud - it is institutional fraud.

And it wasn't uncovered by a government watchdog, or a defense team with unlimited resources.

It was dismantled - piece by piece - by the very man this system has spent 26+ straight months insisting is legally incompetent.

---

38  MN Office of Lawyers Professional Responsibility Complaint filed against 'CLR' Bruce Rivers on
September 24, 2024 | http://tiny.cc/93sg001

39  Criminal Case Docket | http://tiny.cc/p3sg001    MN Federal Case Docket | http://tiny.cc/w3sg001
MN Court of Appeals Docket | http://tiny.cc/94sg001   8th Circuit COA Docket | http://tiny.cc/l4sg001

35

Exhibit C |  p. 35

EXHIBIT APR-21 | p. 95

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 96 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

That fact alone is enough to collapse the entire narrative.

And everyone knows it.

### VII.   BRUCE RIVERS HAS LEFT THE BUILDING

Among the most disturbing revelations in this case is not just what the prosecution has done - but what Guertin's own attorney failed to do. Bruce Rivers, a licensed Minnesota defense attorney and 20-year acquaintance of Mr. Guertin, is the subject of an unassailable evidentiary archive documenting a complete and unexplained behavioral collapse that directly coincides with the State's efforts to silence and institutionalize Mr. Guertin.

**On May 22, 2023 at 3:13 PM, Rivers told Mr. Guertin:**

*"You've got some very powerful people keeping an eye on you."*

*(see Index 30, p. 21-40, 73-77, 86-93)*

This was not speculation. It was a warning. And just weeks later, Rivers denied ever saying it - marking the precise moment when his representation shifted from support to silence. He stopped answering emails. He ignored pleas to act on fraudulent discovery. He abandoned all litigation strategy. And when pressed to respond to blatant evidence tampering, Rivers said nothing at all.

Guertin responded the only way he could - by documenting everything.

The September 25, 2024 pro se motion for substitute counsel (*see Index 100*) includes more than screenshots. It includes:

- Live screen recordings showing Guertin's real-time interaction with his phone.[40]

- Visible touch-trace UI behavior, revealing taps, scrolls, zooms, and highlights.

- Verified call logs and emails backing up every claim of communication.

- Chain-of-custody compliant submission formats, embedded into the court record.

The result is indisputable: Guertin didn't just accuse Rivers of misconduct - he proved it.

---

[40]  Analysis of Rivers July 16, 2024 Discovery Fraud |  http://tiny.cc/4asg001  http://tiny.cc/dasg001
     Bruce Rivers Call Logs | http://tiny.cc/e9sg001    Bruce Rivers Early Texts 01 | http://tiny.cc/a9sg001
     Rivers Early Texts 02    | http://tiny.cc/g9sg001   Rivers Retained Texts 03 | http://tiny.cc/q9sg001
     Rivers Retained Texts 04 | http://tiny.cc/x9sg001

36

Exhibit C |  p. 36

EXHIBIT APR-21 | p. 96

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 97 of 110        [ source file ]      [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Rivers' failure to act was not negligence. It was betrayal. And worse, that betrayal was then used by the State to further the psychiatric narrative. Guertin's claim that his lawyer had turned against him - backed by video, metadata, and written documentation - was cited as evidence of paranoia.

The reality is far simpler:

- Bruce Rivers told the truth once, then backed away.
- And Mr. Guertin, realizing what was happening, captured the entire process on video.

This case is no longer about credibility. It's about evidence. And every single piece of it shows that Mr. Guertin was not just abandoned - he was strategically neutralized.

The Court cannot pretend this didn't happen. The chain of sabotage includes not just prosecutors and evaluators, but defense counsel himself. That alone would justify dismissal. But here, it merely confirms what the rest of the record already proves:

Mr. Guertin has been telling the truth all along. And the system has known it.

## VIII.   DIGITAL RECORDS MANIPULATION AND A SYNTHETIC COURT

Mr. Guertin's motion does not merely challenge the misconduct in his individual case. It now presents evidence that the entire infrastructure of judicial oversight - particularly the digital records system upon which courts depend - has been compromised. This is no longer a question of bad actors. It is a question of institutional collapse.

In a sworn affidavit filed on May 3, 2024 (*see Index 37*), Mr. Guertin details a forensic analysis of 163 criminal case files overseen by the same three judicial officers who presided over his criminal and civil commitment proceedings:

- Hon. Julia Dayton Klein

- Referee Danielle C. Mercurio

- Referee George Borer

Using automation scripts to download over 3500 official MCRO PDF documents, Guertin uncovered patterns that cannot be explained by clerical error or administrative redundancy.

37

Exhibit C |  p. 37

EXHIBIT APR-21 | p. 97

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 98 of 110        [ source file ]        [ .ots timestamp of source file ]

---

<div align="center">27-CR-23-1886</div>

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

1.  **Mathematical Impossibilities in Case File Activity**

    Across these 163 case files, Guertin identified:

    - 488 Rule 20.01 evaluations
    - 130 incompetency orders
    - 238 "Returned Mail" filings
    - All within just 163 criminal cases

In other words, hundreds of evaluations and orders were issued for a pool of defendants that is numerically incapable of justifying that volume…….?

Take 2023 as an example:

   - Only 39 cases originated that year.
   - Yet the dataset reflects 61 Rule 20 evaluations and 413 total PDF entries, many of which appear procedural or psychiatric in nature.

The numbers do not add up - unless the case files themselves are synthetic, duplicated, or recycled.

2.  **Returned Mail Anomalies and Visual Replication**

The most revealing visual evidence comes from five official MCRO documents showing docketed "returned mail" envelope scans from these suspect cases. Guertin extracted them, placed them in a flipbook format, and exposed something startling:

   - Every envelope matches structurally, down to stamp placement, ink intensity, and flap geometry.
   - Only the names and dates vary - everything else is templated.
   - These filings appear to be digitally fabricated and mass-replicated, not actual scanned mail pieces. [41]

In a real-world scenario, this would be impossible. These are not variations. They are forensic duplicates, likely generated to simulate court correspondence that never occurred.

3.  **Judicial Looping and Non-Neutral Oversight**

Beyond numeric fraud, the MCRO metadata reveals a tight triangle of judicial control.

---

[41]  https://matt1up.substack.com/p/ai-created-fake-minnesota-court-records

<div align="center">38</div>

<div align="right" style="color:red">Exhibit C |  p. 38</div>

<div align="right" style="color:red">EXHIBIT APR-21 | p. 98</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 99 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

- Many cases were handled in part or whole by all three of the same judges - a statistically improbable rotation.

- In at least six cases, the same judge both ordered the Rule 20 evaluation and later ruled on incompetency, obliterating the requirement for neutrality.

- Dozens of other cases show repetitive, boilerplate Zoom notices, often reusing the same meeting ID and password across unrelated case files - further signaling that hearings may have been simulated or improperly logged.

  This isn't a recordkeeping issue. This is record laundering.

**4.  Collapsing Digital Integrity: The OneDrive Tampering Link**

These findings dovetail with the broader collapse of discovery integrity seen in Guertin's own case (*see Index 122, p. 8-10, 59-68*). As established in his forensic exhibits:

- Hennepin County's OneDrive-based discovery system contains metadata inconsistencies, download timestamp anomalies, and file count mismatches.

- The 518-image discovery set Guertin received in February 2025 was surgically missing only the images he had previously flagged as manipulated. (*see August 7 Motion, p. 4-17*)

- Like the MCRO filings, these OneDrive records reflect post hoc alterations, inconsistent timestamps, and deliberate content curation.

  When you combine the OneDrive manipulation with the MCRO forensic analysis, a unified theme emerges: the State's digital infrastructure is not reliable - and in some cases, is being intentionally falsified.

**5.  Synthetic Prosecution: A Broader Pattern of Fabrication**

Guertin's MCRO investigation uncovered not merely irregularities, but a potential synthetic court system, used to:

- Inflate case volume.

- Recycle procedural rulings.

- Simulate oversight using placeholder cases, fake hearings, and duplicated filings.

- Dismiss and discredit legitimate defendants under the appearance of due process.

This is not just misconduct. It is administrative fiction posing as judicial fact. [42]

---

[42]     https://matt1up.substack.com/p/ai-created-fake-minnesota-court-records

39

<div align="right" style="color:red">Exhibit C |  p. 39</div>

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

<div align="right" style="color:red">EXHIBIT APR-21 | p. 99</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 100 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

### Conclusion | You Cannot Build Justice on Forgeries

No court can claim legitimacy while operating on falsified evidence, ghost records, and template-based prosecutions. The "returned mail" envelopes alone show deliberate mass fabrication. The Rule 20 data reveals mathematical impossibility. The OneDrive analysis confirms selective data removal.

Together, these findings raise one unignorable question:

> How many cases in Hennepin County are even *real* ?

And more pressingly:

How can any prosecution - let alone Mr. Guertin's - proceed in the midst of such collapse?

This is not a technicality. This is structural disintegration of due process itself.

## IX.   LEGAL ARGUMENT

### A   |   The State's Outrageous Misconduct Requires Dismissal

From the very start of this case, the prosecution and its agents abandoned the role of seeking truth and instead manufactured a false narrative to gain tactical advantage. This misconduct is not only unconstitutional – it is criminal. By ghostwriting a forensic psychologist's Rule 20 competency report and doctoring digital evidence, officials engaged in acts that meet the definition of forgery under Minnesota law (Minn. Stat. § 609.63) and misconduct of a public officer (Minn. Stat. § 609.43) [43]. Such fraud on the court strikes at the heart of due process and shocks the conscience. No conviction may rest upon evidence deliberately fabricated by the State (see *Mooney v. Holohan*, 294 U.S. 103 (1935)) [44], and this principle applies with even greater force pre-trial – the government cannot forge documents or falsify evidence to predetermine a court's rulings any more than it can to sway a jury.

If the State had a legitimate case, why lie? If prosecutors truly believed the charges were sound, there would be no need to forge psychiatric evaluations, alter photographs, and conceal exculpatory truth. The very fact that they resorted to such deceit answers the question. This was not a pursuit of justice, but a cover-up of its absence. It is telling that a county bureaucrat – *not*

---

43  Minn. Stat. § 609.63  |  http://tiny.cc/6fsg001    Minn. Stat. § 609.43  |  http://tiny.cc/ifsg001
44  *Mooney v. Holohan*, 294 U.S. 103 (1935)  |  http://tiny.cc/sfsg001

<div align="right">Exhibit C |  p. 40</div>

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

<div align="right">EXHIBIT APR-21 | p. 100</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 101 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

Dr. Rogstad herself – literally authored the critical competency report, a report then used to label Mr. Guertin delusional and suspend his rights. It is equally telling that crime scene photos were digitally manipulated (with falsified metadata to boot) to support that false narrative. These actions go far beyond vigorous advocacy; they constitute textbook fraud and an abuse of official power. Under any standard, this rises to the level of outrageous governmental conduct that *"shocks the universal sense of justice."* (See *State v. Burkland*, 775 N.W.2d 372, 379 (Minn. App. 2009) [45], quoting *United States v. Russell*, 411 U.S. 423, 432 (1973)). [46]

Courts have inherent authority to protect the integrity of the judicial process. Dismissal of charges is warranted where the government's misconduct is so prejudicial and egregious that allowing the case to proceed would make a mockery of justice. Minnesota courts recognize this power (*State v. Foss*, 556 N.W.2d 540, 540–41 (Minn. 1996) (permitting dismissal for egregious law enforcement misconduct)); [47] and the U.S. Supreme Court has observed that our system "must ensure that crime shall be prosecuted by those who are unbiased," intervening when the process is compromised (*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987)). [48] Here, far from an unbiased, fair process, the prosecution of Mr. Guertin has been a travesty of justice at every turn. It is hard to imagine a more fundamental violation of due process than colluding to manufacture a false reality in lieu of a legitimate prosecution. Attempting to have a sane defendant declared insane to avoid facing him at trial, fabricating evidence against him, and subverting his right to counsel are the kind of acts that courts cannot tolerate without forfeiting the integrity of the justice system itself.

The prejudice caused by this misconduct is incurable. The entire foundation of the case – from Mr. Guertin's competency status to the evidence to the proceedings themselves – has been irrevocably tainted. This is a classic structural error that defies any harmless-error analysis. You cannot "unring the bell." Even now that Mr. Guertin has finally been adjudicated competent, the stain of the State's false portrayal lingers in the record (indeed, even the order restoring competency echoed some of Dr. Rogstad's false findings). Jurors, too, could be influenced by the ugly label of "delusional" that the State splashed into public records. Moreover, Mr. Guertin can

---

45  *State v. Burkland*, 775 N.W.2d 372, 379 (Minn. App. 2009)  |  http://tiny.cc/2gsg001

46  *United States v. Russell*, 411 U.S. 423, 432 (1973)  |  http://tiny.cc/wgsg001

47  *State v. Foss*, 556 N.W.2d 540, 540–41 (Minn. 1996)  |  http://tiny.cc/ohsg001

48  *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987)  |  http://tiny.cc/whsg001

41

Exhibit C |  p. 41

EXHIBIT APR-21 | p. 101

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 102 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

no longer trust that any evidence the State might offer at trial is authentic – if they manipulated one critical piece of digital evidence, what else was tampered with or conveniently 'lost'? (*Notably, at least 24 digital photos in discovery simply vanished after the defense started probing the State's evidence, only to then show up again on February 13, 2025 in a now proven 'edited' form; see Index 122*) The truth-seeking function of a trial is fatally compromised under such circumstances.

In short, the prosecution has forfeited its right to prosecute this case by engaging in such misconduct. This Court need not – and must not – abide a prosecution "built on lies and corruption." Our courts exist to deliver justice, not aid and abet official lawlessness. Dismissing the charges is not an extreme or disfavored remedy here; it is the only remedy that will vindicate Mr. Guertin's constitutional rights and send the unmistakable message that no case, no matter how serious the allegations, is worth sacrificing the integrity of the justice system. Anything less would tacitly endorse the State's malfeasance and further victimize the defendant.

### B   |   The 'Ghost Gun' Charges Under Minn. Stat. § 609.667(3) Are Unconstitutional

Three of the four charges against Mr. Guertin allege possession of firearms "*not identified by a serial number,*" in violation of Minn. Stat. § 609.667(3). [49] These "ghost gun" counts epitomize prosecutorial overreach and raise grave constitutional concerns. The statute as applied here effectively criminalizes the long-standing lawful practice of an individual building a personal-use firearm. For decades, both federal law and Minnesota law allowed law-abiding citizens to manufacture firearms for personal use without any serial number or government registration. In fact, the defining clause of § 609.667 itself *incorporates federal standards by reference*, and federal law expressly exempts privately made firearms from serial-number requirements (see 26 U.S.C. § 5842 (requiring serialization for certain firearms while implicitly permitting non-commercial, personal firearms to remain un-serialized)).

At the federal level, the ATF acknowledges the legality of privately manufacturing firearms for personal use, as clarified in their FAQ: "*A license is not required to make a firearm solely for personal use… However, a license is required to manufacture firearms for sale or distribution…*" (referencing 18 USC 922(o), (p), and (r); 26 USC 5822; 27 CFR 478.39, 479.62,

---

49   Minn. Stat. § 609.667(3)  |  http://tiny.cc/misg001

42

Exhibit C |  p. 42

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File: 4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 103 of 110      [ source file ]      [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

</div>

and 479.105). [50] Millions of Americans own firearms made from kits or from scratch - an activity protected by the Second Amendment's core right to keep and bear arms. Branding Mr. Guertin a felon for possessing such personal firearms (lawfully assembled with lawfully purchased parts) offends not only common sense, but due process notice principles and fundamental fairness.

Indeed, this very statute's constitutionality is presently in serious doubt. In *State v. Vagle*, No. A23-0863, [51] a Hennepin County District Court found § 609.667(3) unconstitutionally vague and dismissed an identical charge, noting that an ordinary person could not be expected to know that a privately built firearm required a serial number – especially when federal law and historical practice suggested otherwise. The Court of Appeals later reversed that dismissal, reading the law in the broadest possible way (to cover all firearms, even homemade ones) and concluding it was not vague. The issue is now before the Minnesota Supreme Court, which heard oral arguments on June 5, 2024. In other words, the very law under which Mr. Guertin is charged is unsettled and under appellate scrutiny. It is quite possible that the Minnesota Supreme Court will strike down or narrow § 609.667(3) in the coming months. Continuing to prosecute Mr. Guertin under a statute that may well be void or invalidated would be profoundly unjust.

Even putting aside the pending vagueness challenge in *Vagle*, the ghost gun counts in this case exemplify a misuse of prosecutorial discretion. Mr. Guertin is accused of possessing firearms that he allegedly built or assembled himself for personal use, harming no one. Treating him as a criminal for this is contrary to Minnesota's own tradition of responsible gun ownership and personal liberty. The charges also appear to be an opportunistic add-on: a way to inflate this case because the State's other evidence is weak. The question practically asks itself: if the State truly believed Mr. Guertin committed a serious weapons offense (the single discharge count), why did it feel the need to pile on ghost-gun paperwork charges that are legally debatable? This further underscores that the prosecution's approach to this case is "throw everything at the wall and see what sticks," rather than a good-faith pursuit of justice.

At a minimum, the ghost gun counts should be dismissed in the interest of justice and judicial economy. It serves no one – not the public, and certainly not this Court – to expend resources litigating the constitutionality of § 609.667(3) in this case when the issue is already pending

---

50   White Paper: Interpreting Minn. Stat. 609.667 - Firearm Serial Numbers | http://tiny.cc/misg001

51   *State v. Vagle* | http://tiny.cc/5ksg001

43

<div align="right">

<span style="color:red">Exhibit C | p. 43</span>

</div>

<div align="right">

<span style="color:red">**EXHIBIT APR-21 | p. 103**</span>

</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 104 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

before the state's highest court. Dismissing those counts now would avoid a potential miscarriage of justice (convicting Mr. Guertin under an unconstitutional statute) and would align with the principle that courts must ensure fairness even if it means a particular prosecution does not proceed. *(See State v. Pederson*, 600 N.W.2d 451, 454 (Minn. 1999) [52] (the judiciary's duty to ensure fairness may sometimes permit a guilty person to go free, because the alternative – compromising fundamental rights – undermines public trust in the law).) In Mr. Guertin's case, pressing forward on the ghost gun charges despite the cloudy legal picture would do far more damage to the rule of law than foregoing a single prosecution. The State's interest in "getting" Mr. Guertin cannot outweigh the public's interest in having a justice system that scrupulously respects constitutional guarantees.

### C  |  The State's Manipulation of the Process Violated Speedy Trial Rights

The Sixth Amendment to the U.S. Constitution [53] and Article I, Section 6 of the Minnesota Constitution [54] guarantee a criminal defendant the right to a speedy trial. Minnesota's rules put that guarantee into concrete terms: once a speedy trial is demanded, a defendant "must be tried as soon as possible," and in any event within 60 days unless good cause is shown for delay. *See* Minn. R. Crim. P. 11.09(b). [55] Mr. Guertin initially faced charges in January 2023 – over two years ago. Yet to date, he has not seen a trial or even the normal progression of a case. Instead, he was shunted into a prolonged detour of supposed "mental health restoration" based on fraudulent evaluations, and the State then dragged its feet while it continued investigating and fortifying its case in the background. This delay is extraordinary on its face and presumptively prejudicial under the four-factor test of *Barker v. Wingo*, 407 U.S. 514 (1972). [56] Every *Barker* factor weighs in Mr. Guertin's favor:

1. **Length of delay**

   At over 24 months (and counting), the delay here blows past any reasonable threshold. A delay of over a year is generally presumptively prejudicial (*id.* at 530) – here we have double that, which is per se prejudicial to Mr. Guertin's rights.

---

52  State v. Pederson, 600 N.W.2d 451, 454 (Minn. 1999)  |  http://tiny.cc/jksg001
53    The Sixth Amendment  |  https://www.law.cornell.edu/constitution/sixth_amendment
54     Article I, Section 6 of the Minnesota Constitution  |  http://tiny.cc/clsg001
55    Minn. R. Crim. P. 11.09(b)  |  http://tiny.cc/nksg001
56    *Barker v. Wingo*, 407 U.S. 514 (1972)  |  http://tiny.cc/mlsg001

44

<div align="right" style="color:red">Exhibit C |  p. 44</div>

File Embedded and Bookmarked Version at MnCourtFraud.Substack.com/p/apr-21

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 105 of 110          [ source file ]          [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

### 2. Reason for delay

This is the most damning factor. The record shows that the primary reason for the delay was the State's deliberate tactic of questioning Mr. Guertin's competency in bad faith. The State secured a crucial pretrial ruling (a finding of incompetence) by fraud and then kept Mr. Guertin in legal limbo for nearly two years under the pretense that he was mentally unfit to proceed. All the while, the State used the pause to bolster its case (even tampering with evidence during this period). Far from a justifiable or neutral reason, this was intentional delay to gain advantage, which *Barker* says must weigh heavily against the prosecution. There is no *"good cause"* to toll the speedy-trial clock when the State manufactured the impediment in the first place. Notably, time attributable to incompetency proceedings is often excluded from speedy-trial calculations – but not when the incompetency was contrived through official misconduct. The Court should not reward the State for the delay it orchestrated; it should condemn it.

### 3. Defendant's assertion of the right

Mr. Guertin has been begging for a day in court from the moment he was able. He asserted his rights at the first opportunity once he regained a voice in this case. Even during the period he was silenced by the incompetency status, he fought through counsel and pro se filings to contest that status and expose the fraud. Unlike the typical case where a defendant might acquiesce in delays, Mr. Guertin has consistently pushed to move forward. He never wanted this extended hiatus – it was imposed on him over his objection. Thus, this factor strongly favors him.

### 4. Prejudice to the defendant

The prejudice here is extreme, and it is ongoing. Mr. Guertin has suffered all three forms of prejudice identified in *Barker*: oppressive pretrial incarceration, anxiety and stress, and *impairment of his defense*. For a significant time, he was effectively civilly committed on false pretenses, losing his liberty entirely. Even after release, he has lived under the cloud of these charges and the false stigma of being "incompetent" or "delusional," which is deeply distressing and damaging to his reputation. Evidence has gone stale or disappeared – memories of witnesses have faded over two years, and, as noted, critical digital evidence was tampered with or lost during the delay. This prejudices his ability to mount

45

Exhibit C |  p. 45

**EXHIBIT APR-21 | p. 105**

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 106 of 110          [ source file ]          [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

any defense. Perhaps most importantly, the unique prejudice here is that Mr. Guertin lost two years of his life and legal autonomy to a sham process. Those are two years he can never get back. This exceeds the ordinary *Barker* prejudice and crosses into constitutional outrage. As this Court is aware, even a *six-month* delay due to prosecution negligence can warrant dismissal; here we have a delay four times longer caused by prosecution misconduct. If this does not justify dismissal for speedy-trial violation, it is hard to imagine what would.

In sum, the State's bad-faith manipulation of the proceedings has eviscerated Mr. Guertin's speedy trial rights. The *Barker* court warned that a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government (407 U.S. at 531). That is exactly what happened here. The extraordinary delay, attributable entirely to the State, combined with the substantial prejudice to Mr. Guertin, mandates dismissal. This Court has the authority under Minn. R. Crim. P. 11.09 and its inherent supervisory powers to dismiss a case for violation of the speedy-trial right. To hold otherwise – to let this case proceed after such a long, contrived stall – would be to condone the very strategy the Constitution forbids. Dismissal is not only appropriate; it is necessary to safeguard Mr. Guertin's rights and the integrity of this Court's authority.

**D   |   No Fair Trial Is Possible After the Cumulative Abuse of Process**

Even if each of the above grounds might independently justify relief, together they present a perfect storm of structural injustice. This case features pervasive misconduct by officials, a dubious criminal statute, and a gross denial of fundamental trial rights. The cumulative effect is that the entire proceeding is irretrievably poisoned. No amount of jury instructions or post-trial appeals can cure what has already been done. The integrity of the judicial process in this matter is broken beyond repair. As a direct result of the State's actions, it is impossible for Mr. Guertin to receive a fair trial or for the public to have any confidence in a verdict that might be obtained. Courts across the country have not hesitated to dismiss charges in the face of egregious, conscience-shocking government conduct in order to uphold constitutional values and deter future misconduct. This Court's intervention is not only permitted – it is obligated. Justice Louis Brandeis's famous maxim rings true: *"Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are*

46

Exhibit C | p. 46

EXHIBIT APR-21 | p. 106

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 107 of 110        [ source file ]        [ .ots timestamp of source file ]

27-CR-23-1886

*commands to the citizen."* If the government falsifies evidence, lies to the Court, and tramples on a defendant's rights to try to win a conviction, it has *stepped outside* the "rules of conduct" and forfeited any claim to pursue that conviction.

As the Minnesota Supreme Court recognized in *State v. Pederson*, the judiciary's duty to ensure fairness can surpass the State's interest in punishment: *"The purpose of a criminal court is to do justice, not to obtain convictions. If, in order to do justice, a few guilty individuals must go free, that is a small price to pay for the constitutional rights of the citizenry."* 600 N.W.2d at 454. Here, Mr. Guertin is innocent until proven guilty, and the State has deliberately sabotaged any legitimate process for determining guilt or innocence. The price of continuing this prosecution is far too high: it would permanently stain the reputation of the courts by signaling that anything goes if the goal is conviction. That outcome is intolerable in a system that prides itself on fairness and the rule of law.

Accordingly, the only just solution is to put a stop to this prosecution. The Court should dismiss all charges with prejudice. This will not only remedy the immediate injustice to Mr. Guertin, but also serve as an emphatic statement that our courts will not be parties to a proceeding born of fraud and maintained through misdeeds. If the Court has any doubt about the facts, then at the very least, an evidentiary hearing should be ordered to bring the truth to light. But we submit that the documentary evidence already submitted – the emails, metadata, reports, and transcripts – prove the misconduct beyond any genuine dispute. Further delay (through hearings or otherwise) would simply prolong Mr. Guertin's ordeal. The Court has abundant power and ample grounds to act now. Justice delayed is justice denied, and Mr. Guertin has been denied justice for far too long.

## X.   PRAYER FOR RELIEF

**Two years of Guertin's life have essentially been taken from him** under this prosecution – two years spent trapped in a maze of lies, locked in a legal limbo, and watching his reputation and rights be ground down by state-sponsored deceit. He cannot get those years back. But this Court can ensure that no more of his life is stolen and that the profound wrongs committed against him are finally stopped. This case presents an unprecedented convergence of prosecutorial misconduct, forensic fraud, and abuse of process. The outrageous conduct by the State and those acting in concert with it violated Mr. Guertin's rights at every turn and has

47

Exhibit C | p. 47

EXHIBIT APR-21 | p. 107

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf

SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d

Page: 108 of 110        [ source file ]        [ .ots timestamp of source file ]

---

27-CR-23-1886

Filed in District Court
State of Minnesota
4/21/2025 7:48 AM

irretrievably destroyed the integrity of these proceedings. Allowing the case to proceed to trial would be to condone the unconscionable. In contrast, dismissing the case would uphold the rule of law and signal that our courts do not tolerate convictions obtained by cheating and corruption.

The community's interest in seeing this particular case prosecuted is far outweighed by its interest in maintaining a justice system that comports with due process and basic honesty. The public would be justly outraged to learn (as the evidence now shows) that officials fabricated evidence and lied to have a citizen hospitalized as incompetent. Failing to dismiss under such circumstances would indeed do more damage to the rule of law than foregoing the prosecution entirely. This Court's decisive action will affirm that no conviction is worth more than the Constitution it's supposed to vindicate. It will tell the State of Minnesota – and officials in Hennepin County specifically – that our courts are courts of justice first: they will not be complicit in a conviction obtained by fraud and trickery.

**WHEREFORE**,

based on the extensive record of misconduct and the foregoing legal arguments, Mr. Guertin respectfully requests that this Court grant the following relief:

1. **Dismissal with Prejudice of All Charges**

   Dismiss each of the four pending counts in case no. 27-CR-23-1886 with prejudice, barring any refiling of the same or related charges. The Court should make clear on the record that this dismissal is based on the egregious government misconduct and the violations of Mr. Guertin's constitutional rights (including his due process rights under the Fifth and Fourteenth Amendments and Article I, § 7 of the Minnesota Constitution, and his speedy trial rights under the Sixth Amendment and Minn. R. Crim. P. 11.09). Only a dismissal with prejudice can remedy the irreparable harm done to Mr. Guertin's ability to receive a fair trial and deter the blatant wrongdoing that has occurred.

2. **Evidentiary Hearing on the Fraudulent Psychiatric Evaluations**

   If the Court believes further record is necessary (or in the event the Court prefers to address the misconduct in a post-dismissal setting), conduct a full evidentiary hearing into the circumstances surrounding the Rule 20 competency evaluations. This hearing should permit the defense to subpoena and examine Dr. Jill Rogstad, Ms. Chela Guzman-Wiegert (the administrative employee who actually authored the report), and any other

48

Exhibit C |  p. 48

EXHIBIT APR-21 | p. 108

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 109 of 110          [ source file ]          [ .ots timestamp of source file ]

---

<div align="right">Filed in District Court<br>State of Minnesota<br>4/21/2025 7:48 AM</div>

personnel involved in preparing Mr. Guertin's psychological reports. The State should be ordered to disclose all communications, documents, and metadata related to those evaluations. The purpose of this hearing is to create an official record of how the fraudulent reports were generated, to confirm the extent of any misrepresentation upon the Court, and to identify all individuals responsible for this fraud. Such a proceeding will aid in revealing whether crimes or contempt of court were committed and will inform the Court's decision on sanctions or referrals.

### 3.  Evidentiary Hearing on Digital Evidence Tampering

Similarly, hold a full evidentiary hearing to investigate the reported manipulation of digital discovery in this case. The defense should be allowed to subpoena the law enforcement officers who collected and handled Mr. Guertin's electronic evidence (e.g., Minnetonka Police personnel), any technicians, prosecutors, or third parties who had access to the digital evidence repositories (such as the OneDrive discovery system), and qualified digital forensics experts (including Mr. Guertin's own forensic analyst) to trace when, how, and by whom the laptop photographs and other files were altered. This hearing will document the chain-of-custody breaches and expose any further evidence tampering or spoliation that has not yet come to light. It is essential to determine whether officers of the State intentionally fabricated visual evidence to support their case – a matter that not only affects this prosecution but the integrity of the criminal justice system at large.

### 4.  Appropriate Sanctions and Referrals

Following the above inquiries (or in conjunction with dismissal), the Court should impose any and all appropriate sanctions on the individuals found to be involved in the misconduct. If it is established that any attorney, officer of the court, or public official participated in or condoned the fraud on the court, Mr. Guertin asks that the Court refer those individuals for professional discipline (e.g. reporting to the Lawyers Professional Responsibility Board or relevant licensing boards) and consider contempt proceedings or criminal referrals as warranted. The unlawful acts committed against Mr. Guertin – forgery of official documents, falsification of evidence, and deprivation of rights under color of law – are not merely ethical violations, they are crimes. Those responsible should

<div align="center">49</div>

<div align="right" style="color:red">Exhibit C |  p. 49</div>

<div align="right" style="color:red">**EXHIBIT APR-21 | p. 109**</div>

**Petition to proceed as Pro Se Counsel | April 21, 2025 | Index 133**
EXHIBIT APR-21

133__Defendants-Petition-to-Proceed-as-Pro-Se-Counsel__2025-04-21.pdf
SHA-256 Hash of Source File:  4600c6c1fd63e82f2d4db8848c817b19a12dfdd521b02131a3281945adc5675d
Page: 110 of 110          [ source file ]          [ .ots timestamp of source file ]

27-CR-23-1886

face consequences outside of this case, and this Court can facilitate justice by making formal findings and referrals. We emphasize, however, that holding wrongdoers accountable is a secondary priority; the first priority is stopping the ongoing harm to Mr. Guertin by terminating this prosecution. Once the case is dismissed and Mr. Guertin freed from its clutches, a thorough investigation into the misconduct can proceed without depriving him of his life and liberty in the meantime.

## XI.   CONCLUSION

This motion is not just a plea for personal justice - it is a warning flare fired into a system that has gone off course. Mr. Guertin has done what few defendants in American legal history have ever done: singlehandedly dismantled, document by document, piece by piece, a coordinated effort to disappear him under the weight of fraud, psychiatry, and silence. And he has done so while being labeled legally incompetent. That irony alone should stop this Court cold. The legal violations outlined above are not abstract or debatable - they are proven, recorded, timestamped, and filed into the public record. There is no path forward for this case that does not invite national scrutiny and further collapse of public trust. The prosecution's case is not merely compromised; it has imploded.

The time for procedural gamesmanship has passed. The time for accountability has arrived. This Court now stands at a fork in the road: it can either continue participating in a farce, or it can act with integrity and shut it down.

Dismiss all charges. Terminate the prosecution. End the fraud.

Dated:  April 16, 2025

Respectfully submitted,

 _/s/ Matthew D. Guertin_

Matthew David Guertin
Defendant Pro Se
4385 Trenton Ln. N 202
Plymouth, MN  55442
Telephone: 763-221-4540
MattGuertin@protonmail.com
www.MattGuertin.com

50

Exhibit C |  p. 50